UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TEAM NEW ZEALAND LIMITED,                    :

               Plaintiff,                    :          Case No. 08-Civ__ 4215 (UA/WHP)

                    :

        v.                    :

SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM          :          **NOTICE OF REMOVAL**
ALINGHI, S.A., AC MANAGEMENT, S.A.,        :
and ERNESTO BERTARELLI,                     :

            Defendants.                    :

                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Defendants Société Nautique de Genève ("SNG"), Team Alinghi, S.A., AC

Management, S.A. and Ernesto Bertarelli (collectively, "Defendants"), by and through their

attorneys Simpson Thacher & Bartlett LLP, hereby remove the above-captioned matter, pursuant

to Section 205 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 205, 28 U.S.C. § 1446, and all

applicable Local Rules of the United States District Court for the Southern District of New York

(the "Local Rules"), from the Supreme Court of the State of New York, County of New York, to

the United States District Court for the Southern District of New York.  In support of the

removal, Defendants state as follows:

        1.     This Court has jurisdiction pursuant to 9 U.S.C. §§ 202-205,  which confer

original jurisdiction in the federal district courts, regardless of the citizenship of the parties or the

amount in controversy, where the subject matter of an action or proceeding pending in a state

court relates to an arbitration agreement falling under the New York Convention on the

Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York

Convention") to which the United States is a signatory.

2.     Section 203 of the FAA provides that any action or proceeding falling under the New York Convention "shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding regardless of the amount in controversy." 9 U.S.C. § 203.

3.     Pursuant to 9 U.S.C. § 205, "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9 U.S.C. § 205.

4.     The FAA and New York Convention thus vest this Court with jurisdiction to compel arbitration where there is a written arbitration agreement that has been breached or otherwise not honored, and the arbitration agreement relates to a commercial contract that is not entirely between citizens of the United States.

5.     The subject matter of this action relates to the arbitration agreement agreed to and entered into by Plaintiff Team New Zealand Limited ("Team New Zealand"): "4. The [Royal New Zealand Yacht Squadron] and Team New Zealand each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol." (See Exhibit A, Notice of Entry by Royal New Zealand Yacht Squadron and Team New Zealand.) The Protocol referenced in the above-quoted arbitration clause referred all disputes relating to the 33rd America's Cup and the subject matter of this litigation to an Arbitration Panel appointed in accordance therewith and seated in New York. (See Exhibit B, Protocol Governing the Thirty-Third America's Cup, at Part D, §§

2

21, 26.)  As stated in section 21 of the Protocol:  "Any dispute, protest or claim arising out of or in relation to this Protocol . . . shall be resolved by arbitration in accordance with the provisions of this Protocol, except if and where otherwise expressly set forth in this Protocol."

6.    The arbitration agreement was executed on behalf of Plaintiff Team New Zealand by its Managing Director, Grant Dalton.  It falls within the New York Convention because (1) there is a written agreement; (2) it provides for arbitration before a panel seated in the United States, which is a territory of a signatory of the Convention; (3) the subject matter is commercial; and (4) it is not entirely domestic in scope as it is between citizens of different countries.  In filing this lawsuit, Team New Zealand has refused to honor the arbitration agreement.  Accordingly, this Court has original jurisdiction over this proceeding without regard to the diversity of the parties or the amount in controversy.

7.    Team New Zealand's Complaint sets forth more than one claim.  If any claim is outside the scope of the Court's original jurisdiction under 9 U.S.C.  § 203, then, as an alternative ground, this Court has supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367, since all the claims set forth in the Complaint are so related that they form part of the same case or controversy.

8.    Venue is proper under 9 U.S.C. § 205, which provides for removal of any such action to the federal district court for the district and division embracing the place where the action is pending.

9.    This removal is timely under Section 205 of the FAA, which states that an action may be removed "at any time before the trial thereof."  9 U.S.C. § 205.

3

10.    A copy of all process, pleadings, and orders served upon Defendants is filed with this notice.  (See Exhibit C, Summons and Complaint; Exhibit D, Order to Preserve Records.)

11.    A copy of this notice will be served on counsel for Plaintiff and filed with the Clerk of the Court for the Supreme Court of the State of New York, New York County.

Dated:  New York, New York
          May 2, 2008

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: _____
       Barry R. Ostrager
       Jonathan K. Youngwood
       George S. Wang
    425 Lexington Avenue
    New York, New York 10017-3909
    (212) 455-2000 (phone)
    (212) 455-2502 (fax)

**Attorneys for Defendants Société Nautique de Genève, Team Alinghi, S.A., AC Management, S.A. and Ernesto Bertarelli**

4

**EXHIBIT A**

# Notice of Entry

1. **Background**

   This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

   Definitions used in the said Protocol shall apply to this Notice of Entry.

2. **Application**

   I, John Crawford am the Commodore of the Royal New Zealand Yacht Squadron and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by [*Notary*] hereunder.

   2.1 **Yacht Club:** Royal New Zealand Yacht Squadron (RNZYS) hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

   2.2 **Deed Of Gift:** Royal New Zealand Yacht Squadron is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

   (i)   is not domiciled in Switzerland;
   (ii)  is an organised yacht club;
   (iii) is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
   (iv)  has an annual regatta on the sea or an arm of the sea.

   2.3 **Certificate of Incorporation:** An original notarized certified copy of the RNZYS certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

   2.4 **Annual Regatta:** The Notice of Race of the RNZYS annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

   2.5 **Organised:** Details, such as the RNZYS existing by-laws, as well as its organization regulations and events calendar, demonstrating how the RNZYS is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

2.6    **Representation:**

RNZYS will be represented by Team New Zealand

All communications and notices are to be sent to:

Royal New Zealand Yacht Squadron
PO Box 46182
Herne Bay
Auckland , NZ
PH   09 360 6800

3.    **Bound By Protocol**

The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

4.    **Arbitration and Dispute Resolution**

The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. RNZYS further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5.    **Entry Fee and  Performance Bond**

RNZYS submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

6.    **Challenger of Record**

The RNZYS and Team New Zealand each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, RNZYS may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The RNZYS and Team New Zealand  also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The RNZYS and Team New Zealand further acknowledge that Societé Nautique de Genève ("SNG") has commenced an arbitration proceeding before the Arbitration Panel

constituted under the Protocol in which it asks the Panel to confirm CNEV's status as Challenger of Record.

The RNZYS and Team New Zealand each accept and agree that AC Management SA, SNG, Team Alinghi and their affiliates are not responsible for any losses or damages that the RNZYS and/or Team New Zealand may incur as a result from GGYC's actions or from any court or arbitration proceedings in connection therewith.

**Signatures:**

**RNZYS:**

Name: J. C. CRAWFORD
Office: COMMODORE - RNZYS
Date: 25/07/07

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

**Team New Zealand**

By countersigning this Notice of Entry Team New Zealand confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

Name: GRANT DALTON
Office: MANAGING DIRECTOR
Date: 25/7/07

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

**EXHIBIT B**

# The Protocol Governing The Thirty Third America's Cup



# TABLE OF CONTENTS

1.    BACKGROUND

2.    PART A – DEFINITIONS – GENERAL PRINCIPLES – AMERICA'S CUP AUTHORITIES

3.    PART B – COMPETITION

4.    PART C – COMMERCIAL

5.    PART D – DISPUTE RESOLUTION AND ENFORCEMENT

6.    PART E – MISCELLANEOUS

**THE PROTOCOL GOVERNING THE**
**THIRTY THIRD AMERICA'S CUP**

(i)   **Société Nautique de Genève** ("SNG")

(ii)  **Club Náutico Español de Vela** ("Challenger of Record")

**BACKGROUND**

A.   Société Nautique de Genève is the current holder and trustee of a silver trophy
     known as the 'America's Cup' in accordance with the terms of a Deed of Gift
     dated 24 October 1887.

B    Société Nautique de Genève has received and accepted a notice of challenge
     from the Challenger of Record in accordance with the Deed of Gift

C.   Société Nautique de Genève and the Challenger of Record record in this Protocol
     the arrangements they have mutually agreed in accordance with the terms of the
     Deed of Gift

**AGREED AS FOLLOWS**

# PART A

# DEFINITIONS - GENERAL PRINCIPLES - AMERICA'S CUP AUTHORITIES

**1.    INTERPRETATION**

1 1   In the interpretation of this Protocol

(a)   **ACC Rules** means, unless otherwise specified, version 5 0 of the Rules
      Governing America's Cup Class Yachts or as the case may be new Rules
      Governing America's Cup Class Yachts to be issued by ACM, as interpreted by
      the Measurement Committee and amended from time to time

(b)   **ACC Yacht** means a yacht that complies with the ACC Rules

(c)   **ACM** means a Swiss limited liability company with headquarters in Geneva
      Switzerland appointed by SNG to help SNG organize manage and fulfill all of



3

SNG's obligations under the Deed of Gift

(d)  **Applicable Document** means any document made under authority of this Protocol and includes the documents referred to in Article 2.5;

(e)  **Arbitration Panel** means the Arbitration Panel referred to in Article 22;

(f)  **Challenger** means, except where inconsistent with the context, the Challenger of Record and all Challenging Competitors;

(g)  **Challenger of Record** means **Club Náutico Español de Vela** and includes any person or entity which undertakes that yacht club's challenge as its representative or such other Challenger as determined by Article 3.3;

(h)  **Challenger Selection** means the selection series referred to in Article 13.4;

(i)  **Challenging Competitor** means a qualified yacht club whose entry has been accepted by ACM under Article 4, and includes any person or entity which undertakes that yacht club's challenge as its representative, but does not include the Defender or Challenger of Record;

(j)  **Competition Regulations** means the regulations issued by ACM pursuant to Article 17.1;

(k)  **Competitor** means the Defender or a Challenger or any one or more of them as the case may be;

(l)  **Competitors' Commission** means a forum of all Competitors and ACM for the exchange of information and consultation, established pursuant to Article 10;

(m)  **Course Area** means one or more circles within the Race Area on which courses for racing during the Event may be set at the Venue;

(n)  **Deed of Gift** means a Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22rd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985;

(o)  **Defender** means the entity selected by SNG to defend the America's Cup in the Match on its behalf.

(p)  **Designer** means a person who has or is intended to apply substantial intellectual creativity and judgment to the determination of the shape or structure of the following: a yacht's hull, deck, cockpit, mast tube geometry of the mast, rigging appendages or sails (excluding battens and sail hardware). For the avoidance of doubt, Designer does not mean a person who designs any other components other than those listed above, or who develops, modifies, operates, analyses the results of, or provides instructions for the use of, any design tool or resource including but not limited to computer software or hardware, tow tanks or wind

4

tunnels or any other testing facility.

(q)    **Event** means the Regatta, all Qualifying Regattas, any defender trials at the Venue as determined by the Defender and SNG pursuant to Article 12 and any events that may be announced by ACM from time to time;

(r)    **Event Authority** means the person or body appointed by ACM pursuant to Article 6;

(s)    **Event Regulations** means regulations issued by ACM pursuant to Article 18.

(t)    **Hull** shall have the same meaning as ascribed in the ACC Rules. If no meaning is defined in the ACC Rules, Hull shall mean the fair body of the yacht up to the sheerline, except for the deck, appendages, mast or other equipment that may be installed;

(u)    **Match** means the 33rd match between the Defender and the winner of the Challenger Selection, subject to Article 13.4

(v)    **Measurement Committee** means the committee appointed by ACM pursuant to Article 5.4 (a) (iii)

(w)    **Net Surplus Revenue** means the revenue available for distribution to Competitors as calculated pursuant to Article 19

(x)    **Notice of Entry** means the document required from Challenging Competitors by Article 4.1;

(y)    **Notice of Race** means the Notice of Race for the Regatta and the Qualifying Regattas issued by ACM pursuant to Article 2.5

(z)    **Meteorological Data Service** means the meteorological and oceanographic data collection service described in Article 15;

(aa)    **Protocol** means this Protocol together with any amendment, or any replacement Protocol agreed by the parties that is to govern the 33rd America's Cup

(bb)    **Qualifying Regattas** means the regattas referred to in Article 11

(cc)    **Race Area** means the area of water on which Course Areas may be set.

(dd)    **Race Committee** means the committee appointed by ACM pursuant to Article 5.4 (a) (ii)

(ee)    **Racing Rules** means the rules to govern racing in the Event to be issued by ACM pursuant to Article 2.5 ;

(ff)    **Regatta** means Trials, Challenger Selection and the Match;



5

(gg)  **Regatta Director** means the person appointed by ACM pursuant to Article 7

(hh)  **Regatta Officials** means any persons appointed by ACM pursuant to Article 5 4 (a), but does not include members of the Sailing Jury or the Arbitration Panel

(ii)  **Sailing Instructions** means the rules to be issued by ACM pursuant to Article 2 5

(jj)  **Sailing Jury** means the Sailing Jury referred to in Article 22

(kk)  **Schedule** means the Event schedule to be announced by ACM pursuant to Article 13.2

(ll)  **SNG** means Société Nautique de Genève of Geneva Switzerland as holder of the America's Cup

(mm) **Technical Director** means the Technical Director of the America's Cup Class appointed by ACM pursuant to Article 8;

(nn)  **Trials** means regattas forming part of the Regatta and held prior to the Challenger Selection

(oo)  **Venue** means the venue to be determined by and announced by ACM pursuant to Article 13 1 and comprises the Competitors bases public areas all berthage areas, water space, airspace and all other areas under the control of ACM. Where the context so requires Venue shall also mean the venue of any Qualifying Regatta and any special event announced by ACM that is not held at the Venue

1.2  **Singular/Plural:** Terms defined above shall include the singular and the plural version of that defined term where the context requires

1 3  **Cross reference:** Unless otherwise specified reference to an Article is a reference to an Article in this Protocol.

1.4  **Official dictionary:** The English language shall prevail in the interpretation of this Protocol The meaning of any word used in this Protocol and any Applicable Document unless defined in Article 1.1, shall be determined by reference to the Oxford English Dictionary Second Edition – CD Rom Version 3.1 (Oxford University Press 2004) or any later issued version.

1 5  **Appendixes:** A reference to an Appendix is a reference to an Appendix to this Protocol

2.  **GENERAL PRINCIPLES**

2 1  **Protocol purpose and intent:** The general underlying purpose and intent of this Protocol shall be to promote a friendly competition between foreign yacht clubs to realize the sporting and commercial potential of the America's Cup and to encourage world-wide growth and interest in the America's Cup as the premier



event in the sport of sailing, consistent with the provisions of the Deed of Gift

2.2    **Allocation principle:** The spirit of the Event is to organize the Match between the Defender and a Challenger and a process to select such Challenger. Except as otherwise indicated in this Protocol, the interest of the Defender in the Event is one half, and the interest of the Challenger of Record is one half. This proportion of interest shall be applied, as the circumstances sensibly require, in all matters, commercial or competitive

2.3    **Fair Competition:** A Competitor shall compete in compliance with recognized principles of sportsmanship and fair play

2.4    **Event Support:** All parties to this Protocol and all Competitors shall act in a manner that supports and promotes the Event and shall not do any act or thing that damages the image or reputation of the America's Cup or the Event or brings it into disrepute

2.5    **Applicable rules:** The Event shall be governed by

(a)    the Deed of Gift;

(b)    this Protocol.

(c)    the Competition Regulations, the Event Regulations and the ACC Rules.

(d)    the Notices of Race;

(e)    the Sailing Instructions;

(f)    the Racing Rules.

2.6    **Precedence of rules:** Unless expressly provided otherwise the documents referred to in Article 2.5 shall have precedence in the order the documents are listed with the intent that any express conflict between the provisions of such documents shall be resolved in favour of the document first listed.

2.7    **Binding rules:** The Protocol is

(a)    Between SNG and the Challenger of Record, a bilateral agreement under which both parties have rights and obligations and which cannot be modified unilaterally by either party, and records the terms and conditions agreed pursuant to the mutual consent provisions of the Deed of Gift

(b)    For any other entity which is not a party hereto (especially the Challenging Competitors) a set of rules, which governs the Event and which has full binding effect over all Challenging Competitors based on their acceptance of those rules upon registration in the Event

(c)    Further rules, such as the ACC Rules, the Event Regulations, the Competition Regulations, the Notices of Race, the Sailing Instructions, the

Racing Rules and any other Applicable Document shall be binding for all Competitors. As signing parties to this Protocol, SNG and the Challenger of Record commit to exercise their best endeavors to fully enforce those rules over all Competitors and in all respects.

(d)   If a Challenger disputes the binding effect of the Protocol, SNG shall be entitled to disqualify such Challenger to participate in the Event.

2.8   **Applicable law:** This Protocol, the Event and any dispute related hereto shall be subject to New York law.

## 3.   CHALLENGER OF RECORD

3.1   **First challenge accepted:** The challenge received by SNG from the Challenger of Record was the first challenge received by SNG and met the requirements of the Deed of Gift.

3.2   **Notice of withdrawal of the initial challenge:** The Challenger of Record shall give 120 days written notice of an intention to withdraw its challenge. The Challenger of Record's challenge shall remain valid until expiry of the 120 days notice period. Withdrawal of the challenge without giving notice of an intention to withdraw the challenge in accordance with this Article shall be always deemed to be a notice of intention to withdraw the challenge in compliance with this Article. SNG may by written notice to the Challenger of Record waive or shorten the notice period.

3.3   **Selection of an alternative Challenger of Record:** Upon the withdrawal or disqualification of the Challenger of Record, SNG shall select, at its sole and exclusive discretion, a new or an existing Challenging Competitor to be the new Challenger of Record. If no Challenging Competitor is willing to become the new Challenger of Record, the new Challenger of Record shall be the Challenging Competitor who was the first in time to submit to ACM a completed Notice of Entry. The new Challenger of Record shall execute this Protocol and shall be deemed to entirely replace the previous Challenger of Record in its contractual rights and duties.

3.4   **Challenger of Record duties:** The Challenger of Record shall not owe any additional duties to the Challenging Competitors over and above any duties that may be owed as between Competitors generally.

## 4.   CHALLENGING COMPETITORS

4.1   **Notice of Entry:** Other yacht clubs may become a Challenging Competitor by applying to enter the Event on or before the date to be defined by ACM pursuant to Article 4.2. Applying to enter the Event means completing and submitting a completed Notice of Entry in a form to be issued by ACM.

4.2   **Meet Challenge requirements:** To the extent any accepted Challenging Competitor might become the Challenger for the Match, any Notice of Entry will only be taken into consideration by ACM if the applicant yacht club meets all the

8

requirements to be the Challenger in the Match, as set out in the Deed of Gift, this Protocol and the Applicable Documents.

4.3 **Powers of ACM:** As part of the Event Regulations, ACM shall define at its sole discretion:

   (a) The content of the Notice of Entry form including unconditional acceptance of the dispute resolution provisions of this Protocol;

   (b) The documents that will be presented with the Notice of Entry.

   (c) The time limits for registering;

   (d) An entry fee and a late entry fee to be paid to and to form part of the revenue of ACM.

4.4 **Acceptance of Challenging Competitors:** ACM may at its sole and entire discretion, accept or reject any entry received.

4.5 **Rights and duties of Challenging Competitors:** Upon acceptance by ACM, the following duties and rights apply to each Challenging Competitor:

   (a) The Challenging Competitor must comply with the Applicable Documents.

   (b) The Challenging Competitor shall only acquire the specific and limited rights that are expressly allocated to the Challenging Competitors under this Protocol and the Applicable Documents.

   (c) Provided the Challenging Competitor has not been disqualified until the end of the Match, neither has withdrawn his entry, it shall be entitled to a share in the distribution of the Net Surplus Revenue as provided for in Article 19.2.

   (d) A Challenging Competitor is not party to this Protocol. The Challenging Competitor has an expectation to become the Challenger for the Match provided the Challenging Competitor wins the Challenger Selection.

4.6 **Withdrawal by a Challenging Competitor:** A Challenging Competitor may withdraw its entry as a Competitor by written notice to ACM. Any Challenging Competitor withdrawing its entry as a Competitor before being eliminated in competition will forfeit all fees paid on or after submitting the Notice of Entry to ACM. A Challenging Competitor which fails to participate in the Event (even partially) without the approval of ACM shall be deemed to have given notice of withdrawal of its entry and of further participation in the Event.

4.7 **Entry recourse:** There shall be a right of recourse to the Arbitration Panel for any matter related to the entry into the Event. The Arbitration Panel decision shall be final and binding on the parties.



9

5. **SNG AND ACM**

5.1 **Organizing responsibilities:** SNG shall have the sole responsibility to organize and manage the Event in such manner as it shall in its discretion determine consistent with the Deed of Gift general principles set out in Article 2

5.2 **Appointment of ACM:** To meet its obligations set out in this Protocol the Parties agree that SNG shall appoint ACM to provide professional commercial management expertise and financial resources to minimise the risk of losses All losses, expenses and costs incurred in organising and managing the Event shall be the sole responsibility of ACM.

5.3 **Management of the Event:** ACM shall have the ultimate responsibility for the management, organization, and financing of the Event. ACM shall act in a manner that is consistent with the provisions of the Deed of Gift and this Protocol

5.4 **Powers of ACM:** For the purpose of fulfilling the duties set out in Article 5.3 ACM is granted the following powers.

    (a)   the power to appoint the following persons and bodies

        (i)    the Event Authority (see Article 6).

        (ii)    the Race Committee (see Article 7).

        (iii)    the Measurement Committee (see Article 8)

        (iv)    the umpires (see Article 9).

        (v)    such other persons as are reasonably necessary in discharging the duties outlined in Article 5.3 and in meeting the purpose and intent set out in Article 2.1

    If the Challenger of Record objects to the appointment on grounds of neutrality of any person to a senior position on the Race Committee the Measurement Committee, or as an umpire it may within seven (7) days of the appointment, refer the appointment to the Sailing Jury who shall determine whether such person is capable of exercising neutral judgment to hold the position to which it is appointed.

    (b)   the power to unilaterally establish the rules listed under Article 2.5 (c) to (f)

    (c)   the power to amend such rules, provided any material amendment shall require the approval of the Defender and the Challenger of Record. If the Defender and/or the Challenger of Record unreasonably withhold their consent the Arbitration Panel shall make, upon ACM request the final decision on the proposed amendment,

    (d)   When establishing and amending those rules, ACM may impose any rule and restriction on the Competitors that are necessary to the fulfillment of its

19

duties under the Deed of Gift and this Protocol.

(e) the power to enforce the terms of the rules listed under Article 2.5. ACM shall be entitled to fine Competitors for non-compliance. Fines and penalties shall be determined taking into account the principles referred to in Article 31. A Competitor shall be entitled to appeal any fine or penalty imposed at any time to the Arbitration Panel within seven (7) days of being notified of a fine being imposed. ACM shall be entitled to deduct the fine from any moneys due at anytime to be paid to the Competitor or otherwise take any legal action necessary to recover the fine. No Competitor shall be entitled to participate in the Event where a fine remains outstanding for more than 30 days, unless an appeal has been lodged with the Arbitration Panel and remains to be decided.

(f) the power to exercise any competence and to take any decision in relation to the Event, provided such power has not been attributed to another body or person by this Protocol.

5.5 **Management fee:** ACM shall be paid a management fee of 10% of the Net Surplus Revenue.

5.6 **Commercial rights:** To assist ACM to raise all necessary funds to organise and manage the Event, all commercial rights of such Event shall vest in ACM. Such commercial rights shall include (without limitation):

(a) funds and services (if any) provided by authorities related to the Venue.

(b) sponsorship and official supplier agreements of the Event.

(c) global media rights including, but not limited to, mobile telephone rights, still images and moving images.

(d) Event merchandising.

(e) ticketing and entry fees.

(f) entertainment.

(g) concessions.

(h) such other commercial rights and fundraising opportunities as ACM or the Event Authority may identify.

6. **EVENT AUTHORITY**

6.1 **Appointment:** ACM shall appoint an Event Authority to organize and manage the Event.

6.2 **Event Authority's duties:** The Event Authority's duties which shall be discharged as it shall in its discretion determine consistent with the general principles set out




in Article 2 and the directions of ACM shall include:

(a)    organizing and managing the Event.

(b)    establishing the timing of the Event consistent with the Schedule to be announced by ACM pursuant to Article 13.2.

(c)    endeavouring to make available space at the Venue for the Competitors at reasonable cost to establish an operational base.

(d)    raising funds to meet the costs of the Event by developing the commercial rights referred to in Article 5 6 to best advantage.

(e)    promoting the Event;

(f)    meeting its other obligations under this Protocol

## 7.    RACE COMMITTEE

ACM shall appoint a Race Committee to conduct the races of the Event The Race Committee shall comprise a Regatta Director who shall be Chairman, a Principal Race Officer and such other officers as may be reasonably required

## 8.    MEASUREMENT COMMITTEE

ACM shall appoint a Measurement Committee to ensure compliance with the ACC Rules and other measurement requirements, comprising the Technical Director as its Chairman, and not less than 2 additional persons. The members of the Measurement Committee shall be appointed by ACM in consultation with the Technical Director

## 9.    UMPIRES

ACM shall appoint a Chief Umpire and, in consultation with the Chief Umpire such other umpires as may be reasonably required to umpire races of the Event.

## 10.    COMPETITORS' COMMISSION

10.1    **Forum:** ACM shall establish and invite a Competitors' Commission which shall hold regular meetings, not less than two per year, as a forum to exchange information and to consult The Competitors Commission shall have no voting powers

10 2    **Representatives:** Each Competitor and ACM shall have the right to appoint up to two representatives to the Competitors' Commission. The Regatta Director may attend to the meeting of the Competitors Commission. ACM may invite such other persons as may from time to time be appropriate. ACM, the Defender and the Challenger of Record shall collectively appoint by a majority vote a Chairman to conduct the meetings of the Competitors Commission.



10.3 **Membership to cease on elimination:** Upon a Challenger (including the Challenger of Record) withdrawing, being excused, eliminated, or disqualified by the Sailing Jury or the Arbitration Panel from further participation in the Event, such Challenger shall, unless otherwise agreed by the Sailing Jury or the Arbitration Panel, cease to be a member of the Competitors' Commission

10.4 **No power to amend** The Competitors' Commission has no power to amend this Protocol or any other Applicable Documents

10.5 **No right of making an application:** The Competitors' Commission shall have no right to make application to or make any submission to the Sailing Jury or the Arbitration Panel.

10.6 **Minutes:** Minutes of the Competitors' Commission shall be taken and distributed by ACM to all Competitors represented in the Competitors' Commission

10.7 **Funding of Competitors' Commission:** The costs of the meetings of the Competitors' Commission shall be borne by ACM as an expense under Article 19 1

# PART B

# COMPETITION

### 11.   THE QUALIFYING REGATTAS

11.1 **Qualifying Regattas.** There may be Qualifying Regattas prior to the commencement of the Challenger Selection. The Qualifying Regattas shall be held as advised by ACM when announcing the Schedule referred to in Article 13.2

11.2 **Purpose of the Qualifying Regattas:** Competitors may be required to compete in the Qualifying Regattas as determined by ACM. Such Qualifying Regattas may determine which Challengers will proceed to the Regatta. The scoring during the Qualifying Regattas may be differentially weighted as determined by ACM

11.3 **Yachts.** The Qualifying Regattas held in the years prior to the Regatta are likely to be held in ACC Yachts which comply with version 5.0 of the ACC Rules.

### 12.   DEFENDER TRIALS

SNG with the approval of the Defender may at its sole option require ACM to organize defender trials at the Venue or elsewhere in such manner and at anytime prior to the Match as it shall in its sole discretion determine, either with one or multiple defender candidates.

### 13.   THE REGATTA

13.1 **Venue:** ACM will select and announce the Venue for the Regatta on or before 31st December 2007, or such later date announced on 31st December 2007 as may be reasonably necessary to complete selection and contracting. In the event that the



13

authorities at the Venue fail to meet their contractual obligations arising from the selection of the Venue, or it becomes impossible or difficult to hold the Regatta at the Venue. ACM may, on at least 90 days notice, select an alternative venue and/or dates for the Regatta consistent with the provisions of the Deed of Gift.

13 2 **Schedule:** The dates of the Event including the Qualifying Regattas and the Regatta will be announced by ACM on or before 31st December 2007 or such later date announced on 31st December 2007 as may be reasonably required, provided that the Match will not be held before 2009 nor after 2011 and the Challenger Selection will not commence within 16 months from the announcement of the Venue and the Schedule. ACM will give the Challenger of Record an opportunity (not being less than seven days or more than 14 days) on a strictly confidential basis to make recommendations to ACM on the draft Schedule before it is published

13 3 **Trials :** There may be Trials  forming part of the Regatta which may be compulsory for all Challenging Competitors. The results of the Trials  may select the Competitors for the Challenger Selection. The Trials  may be held as advised by ACM when announcing the Schedule in accordance with Article 13.2

13 4 **Selection of the Challenger for the Match:** SNG and the Challenger of Record have agreed to hold a selection to select one Challenger to compete in the Match (the Challenger Selection) The winning Challenger of the Challenger Selection shall become the challenger under the Deed of Gift in the Match  If the winning Challenger of the Challenger Selection is for any reason ineligible to be the challenger in the Match  then the Challenger which placed second in the Challenger Selection, or failing the eligibility of that Challenger  the Challenger which gained the next highest place in the Challenger Selection and which is eligible, shall become the challenger in the Match  If no Challenger is eligible SNG will be declared the winner of the Match

13 5 **Trials and Challenger Selection format:** The Trials and Challenger Selection format shall be announced by ACM when announcing the Schedule  It may provide for the Defender an option to participate wholly or partly at its discretion in the Trials and Challenger Selection other than the final between the two Challengers to select a Challenger for the Match.

13 6 **Match format:** The winner of each race in the Match scores one point, the loser scores no points, and the winner of the Match will be decided by the first yacht to score five points

13 7 **Race Area:** The Race Area and the Course Area including their format and dimensions for the Qualifying Regattas and the Regatta, as well as the use outside those periods  shall be defined by ACM in the Competitions regulations.

## 14.   COMPETING YACHTS

14 1 **Revision of the ACC Rules:** ACM shall issue new ACC Rules on or before 31st December 2007  or such later date announced on 31st December 2007  as it may

be reasonably necessary to complete review and revision of the ACC Rules There will be a minimum of 18 months between the issue of the new ACC Rules and the first race of the Regatta in ACC Yachts measured under the new ACC Rules The new ACC Rules may provide for yachts having a maximum length overall of ninety feet in length overall. a draft whilst racing of 6.5m but with a compulsory sliding keel system capable of reducing the draft to 4.1m for entering port and docking All racing in the Regatta shall be undertaken in ACC Yachts that comply with the new ACC Rules

14.2 **Sliding keels:** Centre-board or sliding keel vessels are permitted provided they meet the requirements of the ACC Rules

14.3 **Number of authorized yachts:** The Competition Regulations issued by ACM shall determine the number of ACC Yachts that can be built. acquired or otherwise obtained by each Competitor Such rules shall include

    (a) a prohibition on the building of a new yacht that complies with or is intended to comply with ACC Rule Version 5.0 for use in the Qualifying Regattas, and

    (b) to permit the modification of one Version 5.0 or any earlier version ACC yacht up to 50% of the original hull surface for use in the Qualifying Regattas

14.4 **Construction in country:**

    (a) **Lamination of Hull:** The requirement of the Deed of Gift that the ACC Yacht of a Competitor be constructed in the country of the yacht club the Competitor is representing. shall be deemed to be satisfied by the lamination or another form of construction of all parts of the Hull in such country materials moulds and other components and hardware used in or during the lamination or other form of construction of the Hull may be obtained from any source There is no restriction on the locality of assembly. or modification of any other part of an ACC Yacht

    (b) **Inspection:** each Competitor shall arrange for a member of the Measurement Committee to inspect the Hull of that Competitor's ACC Yacht at its place of construction to affirm that the Hull has been constructed in accordance with Article 14.4 (a) Affirmation by the Measurement Committee shall be final and conclusive evidence of compliance with Article 14.4 (a)

    (c) **Free access:** the fabrication. acquisition or use of any component materials or resources used to complete an ACC Yacht may be sourced without restriction as to their country of origin. place of fabrication assembly. construction or development: for the avoidance of doubt any such component, materials or resources must nevertheless comply with the restrictions set out in the Competition Regulations and the ACC Rules

15. **METEOROLOGICAL DATA SERVICE**

**Meteorological Data Service:** The Event Authority shall establish and manage a meteorological and oceanographic data collection service at the Venue and make the data available to Competitors electronically (the Meteorological Data Service).



The service shall be provided with the specifications and procedures announced by ACM. Net costs of the Meteorological Data Service will be borne by ACM as an expense under Article 19 1 Competitors will be restricted as to other sources of meteorological and oceanographic data as set out in the Competition Regulations.

## 16.    CREW MEMBER AND DESIGNER RESTRICTIONS

16 1 **General provisions**:

(a)    The America's Cup is partly a design competition and partly a sailing competition. To preserve and protect the America's Cup as a bona fide design competition between the Competitors, and not a competition between combinations of Competitors. a Designer or a crew member who contracts with a Competitor for at least the duration of the Event or in the case of a Challenging Competitor. until its elimination from the Event (whether before or after becoming a Challenger). may not be employed or engaged in any capacity by another Competitor without the prior written consent of the first contracting Competitor which may be given at the time of contracting.

(b)    Notwithstanding the above, on or following 1 October 2008 (or such later date as may be announced by ACM). no Competitor shall engage a crew member. who was engaged by another Competitor after 31ˢᵗ of August 2007 (whether before or after becoming a Competitor in the 33ʳᵈ America's Cup)

(c)    Notwithstanding the above. on or following 30 days after issuance of the new ACC Rules pursuant to Article 13 1 (or such later date as may be announced by ACM), no Competitor shall engage a designer who was engaged by another Competitor after 31ˢᵗ of August 2007 (whether before or after becoming a Competitor in the 33ʳᵈ America's Cup)

(d)    Competitors shall promptly file with the Event Authority the names of persons contracted for the periods described above. The Event Authority shall maintain a register which shall be available electronically for inspection by any Competitor or bona fide intending Competitor

16.2    **Penalty for breach**: A Competitor that breaches this Article shall be ineligible to compete, or to continue to compete, in the Event unless the Sailing Jury is satisfied that the breach was caused by error or oversight. that the person that was wrongfully engaged has terminated all involvement with the Competitor in breach, and that no material advantage was gained

16 3    **No nationality rules**: In accordance with past practice in America's Cup competition, and following repeal of all past Trustee Interpretative Resolutions on 2 March 2003. there shall be no requirement regarding the nationality or residency of any crew member. or any Designer of a Competitor's ACC Yacht

16.4    **Power of ACM**: The restrictions regarding crew members and Designers set out in this Article may be detailed or amended in the Competition Regulations to be issued by ACM to reinforce the purpose and intent of the restriction set out in

Article 16

## 17.  FURTHER RULES AND RESTRICTIONS

17.1 **Competition Regulations:** Upon announcing the Schedule ACM shall publish the Competition Regulations consistent with the provisions of this Protocol which shall contain further competition rules and restrictions which may include (but not limited to) limiting the number of support boats; limiting the number of sails limiting modification of yachts; training and testing restrictions meteorological and oceanographic data restrictions, reconnaissance restrictions, further crew and designer restrictions, anti-doping restrictions, and anti-gambling restrictions. ACM may amend the Competition Regulations from time to time. The Competition Regulations may be published in parts at various times as may be required to guide Competitors and intending Competitors. ACM will give the Challenger of Record an opportunity (not being less than seven days or more than 14 days) on a confidential basis to make recommendations to ACM on draft Competition Regulations before they are published.

17.2 **Notice of Race and Sailing Instructions:** ACM shall issue within approximately 60 days before the first race of the Event a Notice of Race and Sailing Instructions for each race of the Event which shall be consistent with the terms of this Protocol.

17.3 **Racing Rules:** ACM shall publish the Racing Rules that shall apply to the Event within approximately 60 days before a race of the Event in which they are applicable.

# PART C

# COMMERCIAL

## 18.  EVENT REGULATIONS

No later than 31st December 2007 or such later date announced on 31st December 2007 as may be reasonably required, ACM shall publish the Event Regulations that will apply to all Competitors and will define the scope of the Competitors commercial rights to allow ACM to exploit the full commercial potential of the Event for the benefit of all Competitors collectively. ACM may amend the Event Regulations from time to time. ACM will give the Challenger of Record an opportunity (not being less than seven days or more than 14 days) on a confidential basis to make a submission to ACM on draft Event Regulations before they are published.

## 19.  NET SURPLUS REVENUE

19.1 **Calculation of the Net Surplus Revenue:** The Net Surplus Revenue shall be the total of all revenue received by ACM for the Event, less the costs of

(a)  Salaries and bonuses of staff and management engaged by ACM or its subsidiaries for the purposes of the Event

17

(b)   The Regatta Officials.

(c)   The Dispute resolution and enforcement costs.

(d)   The Race Committee;

(e)   The Measurement Committee

(f)   TV and other media production;

(g)   Sponsor fulfillment obligations;

(h)   Administration;

(i)   Promotion

(j)   Insurance;

(k)   Interest finance and banking charges;

(l)   All taxes duties, levies and social services charges payable, including any taxes incurred by ACM or its subsidiaries; for the avoidance of doubt any VAT due or paid by ACM or its subsidiaries shall be considered as an expense to be deducted under this Article

(m)   Expenses incurred by SNG in discharging its duties as holder and trustee of the America's Cup;

(n)   Costs and expenses related to the Meteorological Data Service

(o)   Costs of liquidating the Event-related assets at the end of the Match; and

(p)   Other expenses incurred by ACM or its subsidiaries in organising or promoting the Event.

but shall not include the costs of any Competitor to compete in the Event

19 2 **Distribution of the Net Surplus Revenue:** The Net Surplus Revenue shall be determined (at least on a provisional basis) within 180 days after the last race of the Match and paid within 90 days of its determination in the following priority

(a)   the payment of the management fee referred to in Article 5.5 to ACM

(b)   the residual of the Net Surplus Revenue shall be paid to the Competitors as follows.

(i)   one half to be distributed to the Defender;

(ii)   the remainder shall be distributed to the Challengers as follows (the same distribution structure that applied for the Challenger Selection for



18

the $30^t$, 31st and 32nd America's Cups)

- 40% divided equally amongst all Challengers

- 30% divided equally amongst all Challengers semi-finalists in the Challenger Selection,

- 20% divided equally amongst both Challengers finalists in the Challenger Selection;

- 10% to the winner of the Challenger Selection

(iii) notwithstanding the provisions of Article 19.2 (b) (ii) any Challenger that has withdrawn, or deemed to have withdrawn or that has been disqualified from competing further in the Qualifying Regattas or the Regatta by the Sailing Jury or the Arbitration Panel, shall not be entitled to receive any part of the Net Surplus Revenue unless the Sailing Jury or the Arbitration Panel orders the restoration in whole or in part of such entitlement where the Sailing Jury or the Arbitration Panel, as the case may be, is satisfied that forfeiture arose through inadvertence or was beyond the reasonable control of the Challenger and has not resulted in ACM or its subsidiaries incurring any significant actual or contingent liability, expense or lost revenue. Insufficient funds shall not be grounds for the Sailing Jury or the Arbitration Panel to restore in whole or in part the entitlement of a Challenger to receive any part of the Net Surplus Revenue

(c) ACM may at its sole absolute discretion make interim distributions at any time on such terms and conditions as it may determine.

19.3 **Basis of payment:** The amount payable to Competitors pursuant to Article 19.2 (b) shall be paid as a contribution to the gross expenses of each Competitor. Any amount in excess of a Competitor's gross expenses shall only be paid to such Competitor if ACM is satisfied on reasonable grounds that such payment would not breach any duty or obligation to which SNG and/or ACM is subject.

19.4 **Half yearly reports:** ACM shall, from 30 June 2008, prepare and distribute to each Competitor six-monthly reports of the forecasted Net Surplus Revenue available for distribution at the conclusion of the Event. The final report containing only the actual Net Surplus Revenue available for distribution and the distributing calculations shall be audited and distributed to each Competitor with a copy of the audit report. All reports shall be strictly confidential to the Senior Management of a Competitor. ACM may require persons having access to the reports first sign a confidentiality agreement.



## PART D

## DISPUTE RESOLUTION AND ENFORCEMENT

### 20.  MEASUREMENT COMMITTEE

20. 1 **Jurisdiction:** Except as set out in Article 20.2, all matters relating to the measurement of the ACC Yachts, the interpretation of the ACC Rules or the determination as to whether a yacht meets the ACC Rules, or the Racing Rules referred to in Article 17.3 insofar as they relate to a yacht's equipment, shall be determined by the Measurement Committee. The Measurement Committee shall have no power or authority to amend, alter, cancel or add to the ACC Rules or the Racing Rules relating to a yacht's equipment, but shall be entitled to interpret the words used in such documents. The Measurement Committee may remedy a procedural defect resulting in non-compliance by a Competitor, other than when racing, provided following the procedural defect being remedied, there will be no material advantage or prejudice to any Competitor and the remedy results in full compliance with the ACC Rules. All decisions of the Measurement Committee shall be determined by majority vote.

20. 2 **Appeal:** Decisions of the Measurement Committee within its jurisdiction shall be subject to appeal to the Sailing Jury, which shall have full powers to determine any appeal including replacing any determination or interpretation made by the Measurement Committee as it considers fair and reasonable to do so.

20. 3 **Delegation:** The Technical Director may delegate one or more of the members of the Measurement Committee to carry out measurement or inspection on behalf of the Measurement Committee. The Measurement Committee shall be entitled, in the absence of manifest error, to act on a report of any such delegated member(s)

20. 4 **Payment of Measurement Committee's fees and expenses:** Competitors shall pay reasonable fees as determined by ACM and the expenses incurred for the services of the Measurement Committee outside the time period during which the Regatta is held

### 21.  RESOLUTION BY ARBITRATION

Any dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents, the interpretation or breach thereof, shall be resolved by arbitration in accordance with the provisions of this Protocol except if and where otherwise expressly set forth in this Protocol. Such arbitration shall be final and binding.

### 22.  ARBITRATION BODIES

There shall be two dispute resolution bodies: a Sailing Jury, which shall interpret provisions or resolve disputes of a sporting or technical nature arising under the



Competition Regulations, the Notices of Race, the Sailing Instructions and the Racing Rules, and an Arbitration Panel, which shall interpret all other provisions of this Protocol or resolve other disputes. The Sailing Jury and the Arbitration Panel shall, in making any determination give effect to all provisions of this Protocol.

### 23.  JURISDICTION

The Sailing Jury and the Arbitration Panel shall have the power to determine their respective jurisdiction upon receiving an application. In case of doubt on whose jurisdiction shall prevail, the Arbitration Panel shall determine jurisdiction. Its decision shall be final and binding.

### 24.  APPOINTMENT

24.1  **Composition :** the Sailing Jury and the Arbitration Panel shall each comprise three (3) members. Members may be

(a) citizens of any country including a country of a Competitor in the Event;

(b) residents of any country, except the State of New York without the prior approval of ACM, including a country of a Competitor in the Event.

(c) members of a yacht club represented by a Competitor in the Event.

A person shall not be member of both the Sailing Jury and the Arbitration Panel at the same time, provided that a person may resign from one of the bodies and be appointed to the other.

24.2.  **Appointment:** Upon signing the Protocol, the Parties hereto have agreed in a separate document on the names of the Arbitration Panel members. The Parties will agree on the names of the Sailing Jury members no later than December 31st 2007.

24.3.  **Dismissal and replacement :** SNG and the Challenger of Record acting jointly shall also be competent to dismiss and replace the members of the Sailing Jury and the Arbitration Panel at their discretion at any time.

Upon the resignation, death or dismissal of any of the members of the Arbitration Panel or the Sailing Jury, a replacement shall be selected and appointed by SNG and the Challenger of Record acting jointly.

In case of deadlock between SNG and the Challenger of Record as to the appointment or the dismissal of a member of the Jury, the Arbitration Panel shall dismiss or appoint the juror.

In case of deadlock between SNG and the Challenger of Record as to the appointment of a member of the Arbitration Panel, SNG or the Challenger of Record may request that the International Center for Dispute Resolution (ICDR) of the American Arbitration Association appoint such member, and the parties herby

agree that the ICDR shall act as appointing authority for such purpose

## 25.   SEAT

Both the Sailing Jury and the Arbitration Panel shall have their seat in New York however they may act in any other place, or by correspondence or other means of communication at distance.

## 26.   RULES OF PROCEDURE

(a)   Both the Arbitration Panel and the Sailing Jury shall act in accordance with New York arbitration law.

(b)   The Sailing Jury shall establish the rules of procedure of the Sailing Jury consistent with this Protocol and otherwise with the rules of natural justice

(c)   The Defender and the Challenger of Record shall agree on the rules of procedure of the Arbitration Panel. If none are agreed  the Arbitration Panel and the Jury shall apply the New York arbitration law procedures.

## 27.   LANGUAGE

All proceedings of the Sailing Jury and the Arbitration Panel shall be in the English language.

## 28.   STANDING TO MAKE AN APPLICATION

All Competitors, SNG, ACM and the Event Authority, shall have standing to make applications before the Sailing Jury and the Arbitration Panel subject to their respective jurisdictions. The Race Committee and the Measurement Committee shall have standing to bring an application before the Sailing Jury to enforce any of the documents referred to in Article 2.3

## 29.   APPEAL

The decision of the Sailing Jury and the Arbitration Panel shall be final and binding, except that an appeal may be lodged before the Arbitration Panel against any determination or award of the Sailing Jury. The Arbitration Panel shal  have the power to decide on the admissibility of the appeal and its competence. The Arbitration Panel appeal awards shall then be final and binding

## 30.   TIME LIMITS

All rights to lodge and application or appeal shall be subject to the following time limits.

(a)   The time limit to lodge an application with the Sailing Jury shall be seven (7) days from when the applicant was or could with reasonable diligence have been aware of the circumstances justifying the protest.

(b)   The time limit to lodge any appeal with the Sailing Jury or the Arbitration Panel shall be seven (7) days from the time of communication of a decision or award of the Measurement Committee or the Sailing Jury

(c)   The time limit to lodge an application with the Arbitration Panel shall be three (3) months from when the applicant was or could with reasonable diligence have been aware of the circumstances justifying the protest

(d)   The Sailing Jury and the Arbitration Panel may extend the time limits if there is good reason.

(e)   During regattas the aforementioned time limits shall be reduced as follows, unless otherwise specified in the Notice of Race by ACM

    (i)   Any protest or appeal to the Jury during regattas shall be made within a time limit to be set in the Notice of Race:

    (ii)   Any appeal to the Arbitration Panel during regattas shall be made within 12 hours from the communication of the award or decision of the Sailing Jury

## 31.   NATURE OF DECISION

The decisions of both the Sailing Jury and the Arbitration Panel shall constitute binding and final arbitration awards.

## 32.   PENALTIES

The Arbitration Panel and the Sailing Jury may at their discretion penalise a Competitor in breach of this Protocol or any Applicable Document. Penalties shall be determined taking into account the surrounding circumstances any advantage gained or disadvantage sustained by other Competitors or parties and as may be necessary, the need to encourage future compliance with this Protocol or any Applicable Document

## 33.   PREVIOUS DECISIONS

The Sailing Jury and the Arbitration Panel shall not be bound by decisions or awards of any dispute resolution bodies of preceding competitions for the America's Cup.

## 34.   COSTS AND EXPENSES

The costs and expenses of the Sailing Jury and the Arbitration Panel shall be subject to the following rules.

(a)   The Sailing Jury shall only proceed upon payment of an application fee which shall be fixed by and payable to ACM  ACM shall remunerate the members of the Sailing Jury and shall reimburse their expenses

(b)    The Arbitration Panel shall only proceed upon payment of an application fee by the applicant which the Arbitration Panel shall fix being its estimate of total costs to resolve an arbitration. Such application fee shall be paid to the Arbitration Panel. The Arbitration Panel shall award all costs it has or will incur to resolve the arbitration to one or more parties to an application as it considers equitable provided that the starting basis shall be that the losing party or a party seeking an interpretation will be liable for all costs to resolve the arbitration.

(c)    Except as provided above, all revenue generated by the Sailing Jury and/or the Arbitration Panel shall be paid to ACM and be included in ACM's revenue for the calculation of the Net Surplus Revenue

**35.    RESORT TO COURTS PROHIBITED**

Each person or entity, including its officers, members and employees, having the right to make an application to the Sailing Jury or the Arbitration Panel hereunder shall not resort to any other court or tribunal than the Sailing Jury and the Arbitration Panel. Any such resort shall constitute a breach of this Protocol Notwithstanding the above, nothing shall prevent SNG from making any application it considers in its sole discretion appropriate regarding the administration of the Deed of Gift.

# PART E

# MISCELLANEOUS

**36.    AMENDMENTS**

36 1    **Amendments by the parties:** SNG and the Challenger of Record may from time to time amend this Protocol by the deletion of terms and/or the addition of new terms.

36. 2    **Amendments required by authority:** SNG may, after providing notice to the Defender and the Challenger of Record, modify this Protocol to meet the requirements of any authority having jurisdiction over the Deed of Gift as to the manner in which SNG is to administer the Deed of Gift.

**37.    COSTS AND EXPENSES TO COMPETE**

Unless expressly provided otherwise in writing by ACM, all costs and expenses incurred in competing in the Event, including any Qualifying Regatta, and in meeting all obligations under this Protocol and the Applicable Documents shall be the sole and exclusive responsibility of the Competitor incurring such costs

**38.    LIABILITY AND INSURANCE**

24

38. 1 **Own risk:** Every Competitor taking part in the Event does so at its own risk and responsibility.

38. 2 **Indemnity:** Each Competitor shall protect, indemnify and hold harmless SNG, the Defender, the Challenger of Record, any other Competitor, the Competitors Commission, ACM, the Event Authority, the Sailing Jury, the Arbitration Panel, any Regatta Official, their respective directors, officers, employees and contractors, from and against any and all liabilities, damages, indemnity, compensation, costs and expenses (including all legal fees incurred) whatsoever resulting from any claims, proceedings or actions brought by such Competitor and arising directly or indirectly out of or in any way connected with the acceptance of their challenge and performance in the Event or other associated event provided that such indemnity shall not apply to any proceedings in front of the Sailing Jury or the Arbitration Pane

38. 3 **Insurance:** ACM shall obtain from third party a liability insurance cover for the Event and for all Regatta Officials, the Sailing Jury and the Arbitration Panel or such commercial terms as it shall determine. The cost of insurance cover shall be borne by ACM as an expense under Article 19.1

38. 4 **Postponement or cancellation:** Neither SNG, nor the Defender, nor ACM, nor the Event Authority, nor any Regatta Official, nor any of their directors, officers, employees, agents or contractors shall be liable to any Competitor or Regatta Official or any of their directors, officers, employees, agents or contractors for any losses, damages, injury, loss of profits, loss of prospective profits, consequential damages, penalties or inconvenience, whether direct or indirect, however arising, as a result of the postponement or cancellation of the Event or part thereof due to any event, occurrence or circumstances beyond the reasonable control of SNG, the Defender, ACM or the Event Authority including but not limited to acts of God terrorism, war, government intervention or regulation, public health, environmental conditions, strikes, lockouts, other industrial acts or any other force majeure circumstance.

DATED this _____ day of _____ at Valencia, Spain

**Third** _____ Copy (three original copies on total)

**Société Nautique de Genève**
by

**The Challenger of Record**
by

25

## AMENDMENT NUMBER 1 TO THE PROTOCOL GOVERNING THE THIRTY- THIRD AMERICA'S CUP DATED 3 July 2007

1. **Société Nautique de Genève**

2. **Club Nautico Español de Vela**

**BACKGROUND**

A   The parties are signatories to the Protocol Governing the Thirty-Third America's Cup dated 3 July 2007 (the **Protocol**) made in accordance with the terms of a Deed of Gift dated 24 October 1887

B   The parties have agreed to further amend the Protocol in accordance with Article 36 1 of the Protocol as set forth in this document

**AGREED AS FOLLOWS**

1. **ARTICLE 2.3 FAIR COMPETITION**

   **Existing language:**

   "A Competitor shall compete in compliance with recognised principles of sportsmanship and fair play"

   **be replaced by:**

   "Qualifying Regatta and Regatta will be conducted and Competitors shall compete in compliance with recognised principles of sportsmanship and fair play "

2. **ARTICLE 2.7(d) DISQUALIFICATION**

   **Existing language**

   "If a Challenger disputes the binding effect of the Protocol. SNG shall be entitled to disqualify such Challenger to participate in the Event"

   **be replaced by:**

   "If a Challenger disputes the binding effect of the Protocol. SNG shall be entitled to disqualify such Challenger to participate in the Event provided that the affected Challenger shall be entitled to protest any such disqualification within fourteen days of notice of disqualification being received to the Arbitration Panel. and any disqualification shall be suspended pending the outcome of such protest "

3.    **ARTICLE 4.4 ENTRY ACCEPTANCE OR REJECTION**

**Existing language:**

"**Acceptance of Challenging Competitors:** ACM may  at its sole and entire discretion accept or reject any entry received"

**be replaced by:**

"**Acceptance of Challenging Competitors:** Subject to Article 4 7, ACM may accept or reject any entry received provided that ACM may only reject an entry on one or more of the following grounds

(a)      Failure or inability
         i    to comply with the terms of the Deed of Gift, the terms of Protocol or any
              entry requirement established under Article 4.3 of the Protocol or
         ii   to accept the binding effect of the Protocol or
         iii  to accept the jurisdiction of the Arbitration Panel and the Sailing jury as
              provided for under Part D of the Protocol.

(b)      There is a lack of space to accommodate a competitor in the organised structure
         of the competition

(c)      Provide an equitable balance of competing nations

(d)      A team has foregone an opportunity or deadline to submit an entry under Article
         4"

4.    **ARTICLE 24.3 ARBITRATION PANEL**

**Existing Language:**

"**Dismissal and replacement:** SNG and the Challenger of Record acting jointly shall also be competent to dismiss and replace the members of the Sailing Jury and the Arbitration Panel at their discretion at any time

Upon the resignation  death or dismissal of any of the members of the Arbitration Panel or the Sailing Jury, a replacement shall be selected and appointed by SNG and the Challenger of Record acting jointly

In case of deadlock between SNG and the Challenger of Record as to the appointment or the dismissal of a member of the Jury  the Arbitration Panel shall dismiss or appoint the juror

In case of deadlock between SNG and the Challenger of Record as to the appointment of a member of the Arbitration Panel  SNG or the Challenger of Record may request that the International Centre for Dispute Resolution (ICDR) of the American Arbitration Association

appoint such member  and the parties herby agree that the ICDR shall act as appointing
authority for such purpose

**be replaced by:**

**"Replacement:**

Upon the resignation  death  or significant unavailability during the Regatta  of any of the
members of the Arbitration Panel or the Sailing Jury  a replacement shall be selected and
appointed by SNG and the Challenger of Record acting jointly

In case of deadlock between SNG and the Challenger of Record as to the appointment of
a member of the Jury  the Arbitration Panel shall appoint the juror

In case of deadlock between SNG and the Challenger of Record as to the appointment of
a member of the Arbitration Panel  SNG or the Challenger of Record may request that the
International Centre for Dispute Resolution (ICDR) of the American Arbitration Association
appoint such member  and the parties herby agree that the ICDR shall act as appointing
authority for such purpose

5.   **ARTICLE 36.1 – AMENDMENT OF THE PROTOCOL**

**Existing Language**

**"Amendments by the parties**: SNG and the Challenger of Record may from time to time
amend this Protocol by the deletion of terms and/or the addition of new terms "

**be replaced by:**

**"Amendments by the parties**: SNG and the Challenger of Record may from time to time
amend this Protocol by the deletion of terms and/or the addition of new terms provided
that no amendment shall be made to the following without the prior approval of the
Arbitration Panel

(a)       Article 24 3 – Replacement

(b)       Article 25 - the seat of arbitration

(c)       Article 27 – the language of proceedings

(d)       Article 26 (e) (a) and (c) – the applicable law and rules of procedure

(e)       Any rules of procedure of the Arbitration Panel





(f)     Article 21 and 23 - Resolution by Arbitration and Jurisdiction; and

(g)     Article 36.1 - power to amend this Protocol.

**Dated** this 20th day of September  2007

**Signed by Société Nautique de Geneve**

**Signed by Club Nautico Español de Vela**

**EXHIBIT C**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | | |
|---|---|---|
| TEAM NEW ZEALAND LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | Index No. 600 662 /08 |
| | ) | |
| SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM | ) | Date Purchased 3/6/08 |
| ALINGHI, S. A., AC MANAGEMENT, S.A., and | ) | |
| ERNESTO BERTARELLI, | ) | **SUMMONS** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

TO THE ABOVE-NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** and required to serve upon plaintiff's

attorneys an answer to the complaint in this action within 20 days after the service of this

summons, exclusive of the date of the summons, or within 30 days after service is

complete if this summons is not personally delivered to you within the State of New

York. In case of your failure to answer or appear, judgment will be taken against you by

default for the relief demanded in the complaint.

Plaintiff designates New York County as the place of trial. Venue is based on

N.Y. C.P.L.R. §503(a) in that neither party is deemed to be a resident of the State of New

York. Defendants Société Nautique de Genève, Team Alinghi, S.A. and AC

Management, S.A., are associations organized under the laws of the Swiss Confederation

("Switzerland") and have their principal place of business in the Republic and Canton of

Geneva, Switzerland. Defendant Ernesto Bertarelli is a citizen and resident of

Switzerland.  Plaintiff Team New Zealand Limited is a corporation organized under the

laws of New Zealand with its principal place of business in Auckland, New Zealand.


Dated: New York, New York
       March 6, 2006

                                        BOIES, SCHILLER & FLEXNER LLP

                          By:

                                        Philip M. Bowman
                                        575 Lexington Avenue
                                        New York, New York 10022
                                        Telephone: (212) 446-2300

                                        Attorneys for Plaintiff Team New Zealand

Defendants' addresses:

Société Nautique de Genève
Port Noir
CH-1223 Cologny
Switzerland

Team Alinghi, S.A.
PSE Parc Scientifique,
Site de L'EPFL
1015 Lausanne
Switzerland

AC Management, S.A.
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

Ernesto Bertarelli
c/o Team Alinghi, S.A.
PSE Parc Scientifique,
Site de L'EPFL
1015 Lausanne
Switzerland

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |  |
|---|---|---|
| TEAM NEW ZEALAND LIMITED, | ) | |
| Plaintiff, | ) | |
| -against- | ) | Index No. 600662/08 |
| SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM ALINGHI, S. A., AC MANAGEMENT, S.A., and ERNESTO BERTARELLI, | ) | **COMPLAINT** |
| Defendants. | ) | |

Plaintiff Team New Zealand Limited ("TNZ"), by and through its undersigned counsel, states for its Complaint, with knowledge of its own acts and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.       This action arises out of (i) Defendants' breaches of fiduciary duties as trustee of a New York trust established by a Deed of Gift pursuant to which Defendants hold in trust the America's Cup, the premiere sailing trophy in the world, for the purpose of promoting sailing competition, and (ii) Defendants' breach of a contract entered into by Plaintiff and Defendants regarding the time and place of the next America's Cup race.

2.       This action is related to a case brought by Golden Gate Yacht Club ("GGYC") against Defendant Société Nautique de Genève ("SNG") on July 20, 2007, currently pending in the Supreme Court of New York before the Honorable Justice Cahn and bearing the index number 602446/07. In that action, GGYC alleged that SNG breached the Deed of Gift and

1

SNG's fiduciary duty to GGYC in accepting the purported challenge of Club Náutico Español de Vela ("CNEV"). GGYC, who served a Notice of Challenge upon SNG on July 11, 2007, also sought a declaratory judgment that GGYC, not CNEV, was the Challenger of Record.

3.    As described in detail below, Defendants accepted an invalid challenge from a sham yacht club in order to establish terms for the next America's Cup that grossly benefit Defendants at the expense of the trust's beneficiaries, in violation of the Deed of Gift and Defendants' fiduciary duties.

4.    Thereafter, in an effort to achieve credibility for the self-dealing protocol they had promulgated, Defendants sought to induce Plaintiff, an established and successful sailing team, to participate in the 33rd America's Cup. Because Plaintiff exists for the sole purpose of competing in the America's Cup, it agreed to participate. However, it did not want to be subject to Defendants' whims regarding when and where the next America's Cup would be held, and therefore agreed to participate in the match *on the condition* that Defendants undertook and promised to hold the next America's Cup race in Valencia, Spain, in 2009. In reliance on Defendants' undertaking and promise to hold the next race in Valencia in 2009, TNZ has spent millions of dollars in preparation for the 2009 event.

5.    On or about November 22, 2007, Defendants announced that the next America's Cup race will not take place in Valencia in 2009. Defendants have not provided an alternative time or place. As a result of Defendants' actions, there is a serious risk that Plaintiff will not survive to challenge Defendants in a deferred race or, alternatively, will survive as a team whose resources are seriously depleted and whose competitive abilities are thereby seriously weakened, outcomes that reward Defendants for their unlawful actions.

2

## THE PARTIES

6.     Plaintiff TNZ, a world class sailing team, is a corporation organized under the laws of New Zealand with its principal place of business in Auckland, New Zealand. TNZ, as representative of non-party Royal New Zealand Yacht Squadron ("RNZYS"), won the America's Cup in 1995 and successfully defended the Cup in 2000. It also won the Louis Vuitton Cup in 2007, which entitled it to challenge the defender in the 2007 America's Cup.

7.     Defendant Société Nautique de Genève ("SNG") is a yacht club based in Geneva, Switzerland. It is the current holder of the America's Cup, which it won in 2003 and 2007 through its affiliate, Defendant Team Alinghi, S.A. ("Alinghi"). As the current holder of the America's Cup, SNG is the trustee of the trust, formed under the laws of the State of New York, which holds the America's Cup trophy for the benefit of all competitors.

8.     Defendant Alinghi is a sailing team affiliated with, and the representative of, SNG and is the winner of the 2003 and 2007 America's Cup competitions. As such, it shares in and assumes the same obligations of trust owed by SNG.

9.     Defendant AC Management, S.A. ("ACM") is a Swiss limited liability company with headquarters in Geneva, Switzerland, appointed by SNG to organize, manage, and fulfill all of SNG's obligations under the Deed of Gift.

10.     Defendant Ernesto Bertarelli, a Swiss citizen, is the founder and owner of both Alinghi and ACM.

## JURISDICTION AND VENUE

11.     This court may exercise jurisdiction over Defendants pursuant to C.P.L.R. §§ 301 and/or 302.

3

12.    This court may exercise jurisdiction over the subject matter of this claim pursuant to N.Y. Bus. Corp. Law § 1314(b)(5).

13.    Venue lies in this Court pursuant to C.P.L.R. § 503(a).

## FACTUAL BACKGROUND

The Deed Of Gift

14.    The America's Cup sailing competition is governed by a trust instrument executed under the laws of New York on October 24, 1887, as amended by Orders of this Court dated December 17, 1956 and April 5, 1985 (the "Deed of Gift"). The corpus of the trust is a trophy known as the America's Cup. George L. Schuyler, as the sole surviving owner of the yacht America that won the Cup in a match on August 22, 1851, designated the Cup to be held "in trust, nevertheless, for the following uses and purposes," namely that "[t]his Cup is donated upon the conditions that it shall be preserved as a perpetual Challenge Cup for friendly competition between foreign countries."

15.    The Deed of Gift entitles "[a]ny organized Yacht Club of a foreign county, incorporated, patented or licensed by the legislature, admiralty, or other executive department, having for its annual regatta on ocean water course on the sea, or on an arm of the sea, or one which combines both" the "right of sailing a match for this Cup."

16.    The Deed of Gift states that "when a challenge from a Club fulfilling all the conditions required by this instrument has been received, no other challenge can be considered until the pending event has been decided."

17.    The Deed of Gift provides certain base-line requirements regarding the terms of the match, but provides that the defending club and the challenging club should set additional rules by mutual consent: "The Club challenging for the Cup and the Club holding the same may,

by mutual consent, make any arrangement satisfactory to both as to the dates, courses, number of
trials, rules and sailing regulations, and any and all other conditions of the match, in which case
also the ten months' notice may be waived." The ability to set such rules, based on mutual
consent, ensures that competition for the America's Cup will be fair and that the Cup shall be
preserved "for friendly competition between foreign countries."

18.     If the challenging club and the defending club cannot mutually agree on the terms
of the match, the Deed of Gift establishes certain default rules that will govern the terms of the
match.

Alinghi Accepts The Purported "Challenge" Of Sham Challenger CNEV

19.     Before Alinghi had even won the 32nd America's Cup, Defendants agreed with
Real Federación Española de Vela ("RFEV"), the national governing body for the sport of
sailing in Spain (not a yacht club at all), that RFEV would issue a "challenge" to Alinghi if
Alinghi won the America's Cup. However, "opposition to RFEV becoming Challenger of
Record for the 33rd America's Cup match arose, on the ground that it was a federation of yacht
clubs, not a yacht club itself." *Golden Gate Yacht Club v. Societe Nautique De Geneve*, No.
602446/07, 2007 WL 4624020 at *3 (N.Y. Sup. Nov. 27, 2007). Acting on the advice of its
lawyers and at the request of Defendants, RFEV quickly formed CNEV.

20.     CNEV has no yachts. It has no members other than the directors of RFEV who
executed its incorporation and registration papers days before CNEV issued its challenge.
CNEV had no telephone number and no website. As of the date of CNEV's challenge, CNEV
had never held an annual regatta, which is one of the few qualifications required by the Deed of
Gift. CNEV attempted to hold two "regattas," one of which involved children sailing during a
training session and the other of which CNEV co-sponsored with another yacht club. Neither of

these "regattas" satisfies the Deed of Gift's requirement because, among other reasons, they both post-date CNEV's purported challenge.

21.     On July 2, 2007, the day before the final race in the 32nd America's Cup series, pursuant to its agreement with Defendants, CNEV announced that, if SNG successfully defended the Cup, CNEV would challenge SNG for the 33rd America's Cup. On July 3, 2007, Alinghi, representing SNG, defended the America's Cup by defeating TNZ in the final race.   CNEV immediately issued its purported challenge, which SNG accepted.

Alinghi And Sham Challenger CNEV Form Self-Dealing Protocol

22.     Historically, the challenging club and the defending club issue a "protocol" that announces the rules for the next America's Cup to which the two clubs have mutually consented. Additional challengers are invited to join the protocol by submitting a Notice of Entry.  Instead of following that procedure, Defendants issued a protocol that grants to themselves the right to set the terms of the next America's Cup unilaterally.

23.     On July 5, 2007 SNG and CNEV publicly released the "Protocol Governing the Thirty Third America's Cup" (the "Protocol").

24.     The Protocol provides that SNG may appoint ACM, a commercial organization owned and controlled by Ernesto Bertarelli (who also owns Alinghi), as the Event Authority. The Protocol awards ACM "the ultimate responsibility for the management, organization, and financing of the Event." Thus, Defendants secured for themselves the rights to set the terms of the Cup.

25.     For example, ACM has the power, in its sole discretion, to appoint the members of the Race Committee, the Measurement Committee, Umpires, and "such other persons as are reasonably necessary in discharging the duties outlined" in the Protocol. ACM has the power to

6

fine competitors for "non-compliance" of rules, to deduct fines from any moneys due to competitors, and to take legal action necessary to recover outstanding fines. ACM may "impose any rule and restriction on the Competitors that are necessary to the fulfillment of its duties under the Deed of Gift and this Protocol." ACM even has the power to cherry-pick who those competitors will be, inasmuch as ACM "may accept or reject any entry received" based on four enumerated yet expansive grounds, including failure to abide by the Deed of Gift or the terms of the Protocol.

26.    Unlike the 32nd America's Cup Protocol, which was negotiated between SNG and GGYC, the 33rd America's Cup Protocol eliminates the rights of challenging competitors. The 32nd Protocol established the Challenger Commission, which consisted of a representative from each challenging team and enjoyed certain voting rights. The 33rd Protocol replaces the Challenger Commission with a "Competitors' Commission," which has no voting powers. The 32nd Protocol provided that the Challenger of Record represented the interests of all challengers, whereas the 33rd Protocol here absolves CNEV of such duty, stating that "the Challenger of Record shall not owe any additional duties to the Challenging Competitors."

27.    Unlike the 32nd America's Cup Protocol, which adopted pre-existing America's Cup Class ("ACC") Rules, the Protocol allows ACM, in its sole discretion, to issue new ACC Rules that will determine the class of yacht allowed to participate in the match. ACM may also amend those rules, provided that CNEV and Alinghi give their token approval. The Protocol requires only that ACM provide challengers 18 months to prepare, design, finance, and build a vessel for the match. Alinghi, as an affiliate of ACM, will have access to rules before they are issued and will thus have longer than its competitors to prepare.

28.     ACM may also determine the event's racing schedule 16 months before the first race and may withhold the Notice of Race and Sailing Instructions until "approximately 60 days before the first race of the Event." ACM may withhold the Racing Rules until "approximately 60 days before a race of the Event in which they are applicable." Again, this allows Alinghi to have access to information before its competitors.

29.     Furthermore, the Trials and Challenger Selection format announced by ACM "may provide for the Defender an option to participate wholly or partly at its discretion in the Trials and Challenger Selection other than the final between the two Challengers to select a Challenger for the Match." Thus, SNG has reserved its right to compete against a variety of challengers without facing elimination.

30.     SNG has delegated the following additional duties to ACM in its sole discretion: to determine time limits for registering; to issue Competition Regulations, including limitations for training and testing; to take and distribute the minutes of the Competitors' Commission to all competitors represented; to determine whether there will be qualifying regattas and how they shall be scored; to decide whether competitors may build one, two, or more new boats; to determine and change venue; to determine the race and course areas and limit their use outside the racing periods; and to amend unilaterally the restrictions regarding crew members and designers.

31.     The Protocol established an Arbitration Panel to resolve disputes relating to the Protocol. However, the Panel has demonstrated that it is not independent. In an effort to preempt the New York Supreme Court's consideration of the issue whether CNEV's challenge and the Protocol are valid under the Deed of Gift, SNG and CNEV submitted unopposed papers requesting that the Arbitration Panel deem CNEV's challenge valid and that the Protocol

8

complies with the Deed of Gift. The Arbitration Panel "arbitrated" the issue even though GGYC refused to participate. The "opposition" cited by the Arbitration Panel consisted of a letter by GGYC's lawyers stating that GGYC *would not* participate in the "arbitration" and a review of "the contents of all the material placed on GGYC's website up to the date of this Decision, including the documents filed with the Supreme Court for the State of New York." Unsurprisingly, the Arbitration Panel issued a lengthy decision in favor of exonerating SNG and upholding the validity of the CNEV challenge, on grounds that are wholly unsupportable, as demonstrated by the decision of the New York Supreme Court.

Alinghi Courts TNZ To Enter The America's Cup

32.    After SNG announced that it accepted CNEV's purported challenge, there was considerable criticism in the yachting community regarding the propriety of CNEV's status as the Challenger of Record. Following the issuance of the Protocol, yachting commentators and potential challengers criticized the terms of the Protocol, noting that SNG had unfairly usurped its status as defending club in issuing a protocol that gave SNG near exclusive control over the terms of the match.

33.    As a result of the yachting community's reaction to Defendants' acts, only a few teams signed onto the Protocol by submitting a Notice of Entry. These teams were weak in terms of sponsorship, popularity, and successful racing history. None of the teams that joined the Protocol had ever won the America's Cup.

34.    TNZ, on the other hand, is a well-respected and successful racing team. As alleged above, TNZ successfully challenged Young America in the 29th America's Cup and then successfully defended the Cup by defeating Luna Rossa in the 30th America's Cup. TNZ won

the Challenger Selection Series in 2007 (called the Louis Vuitton Cup), earning the right to challenge Alinghi in the final match of the 32nd America's Cup.

35.    In an effort to overcome the lack of credibility surrounding CNEV's status as Challenger of Record and the propriety of the invalid Protocol, SNG sought the entry of TNZ in late July 2007. The entry of TNZ would lend considerable credibility to both the Event and the Protocol. Without the entry of high profile teams and in particular TNZ, Defendants would not be able to secure the sponsorship and backing necessary to make the 33rd America's Cup a financial success. Furthermore, without TNZ and similar teams, the America's Cup, historically the premiere event in world class yachting, would become little more than side show recital starring SNG.

36.    Defendants were particularly interested in securing TNZ's entry because of the history of rivalry and fierce competition between TNZ and Alinghi in recent years. Alinghi acquired the America's Cup by defeating TNZ in 2003, disrupting what could have been TNZ's third straight America's Cup victory. Alinghi then successfully defended itself against TNZ's challenge in the 32nd America's Cup, winning the final race by one second. Alinghi understood that this rivalry enhanced the interest in the America's Cup. Furthermore, Defendants understood that if TNZ entered the race, other challenging teams would follow TNZ's lead.

37.    In addition, pursuant to ACM's agreement with the city of Valencia, Valencia would provide certain contract money only if Defendants could secure the entry of at least nine teams. TNZ's entry to the 33rd America's Cup was thus critical to Defendants.

10

The Parties Negotiate And Reach An Agreement

38.    Ernesto Bertarelli, founder and owner of Alinghi and ACM, personally negotiated with Grant Dalton, Managing Director of TNZ, regarding TNZ's potential entry into the 33rd America's Cup race.

39.    During the negotiations, TNZ expressed concern regarding the Protocol's unilateral reservation of ACM's right to choose when the next America's Cup race would take place. This issue was critical to TNZ because TNZ needed to be able to prepare for the event. TNZ needed to know when the event would take place because it needed to know when to hire staff, sign leases and sponsorship agreements, settle the amounts of sponsorship payments, and begin construction of boats. It needed to know where the event would take place because, among other things, it needed to lease space and hire staff at the location. Indeed, TNZ refused to sign onto the Protocol unless the parties agreed in advance upon the location and date of the 33rd America's Cup. Defendants, eager for TNZ to enter the race, agreed, among other things, that the 33rd America's Cup would take place in Valencia, Spain, in 2009.

40.    Specifically, on July 25, 2007, James Farmer, a director of TNZ, sent a letter via email to Hamish Ross, General Counsel for Alinghi. A true and correct copy of that email and letter is attached as Exhibit A. Farmer wrote:

> "Following our discussion and those between Grant Dalton and Ernesto Bertarelli, I can say that an entry can be sent to you tonight (New Zealand time) if the following is agreed:
> 1. The Event will be in 2009 in Valencia and there will be a very early announcement to that effect."

41.    The letter addresses six other conditions demanded by TNZ, regarding the announcement and substance of Regulations and Class Rules, the sailing of new boats, selection of bases at the Event, and deferment of the entry fee.

11

42.    Farmer wrote, "It would be appreciated if you would email me back as soon as possible your agreement to the terms contained in this letter. On receipt of your email I will immediately email back the entry signed by the Squadron [RNZYS]."

43.    At 11:21 p.m. on July 25, 2007, Hamish Ross responded to Farmer's letter as follows: "Thank you for your email and the attached latter, *I confirm that I am instructed by Ernesto to accept the terms set out in your letter (paragraphs 1-7), as well as the understandings reached between Grant and Ernesto.*" (emphasis added). Ross continued, "Meanwhile, we intend announcing the entry at the press conference this afternoon." Exhibit A.

44.    In response to Ross's email, TNZ emailed a Notice of Entry signed by RNZYS and TNZ. A true and correct copy of that email and Notice of Entry is attached as Exhibit B.

45.    In reliance upon the parties' agreement that the 33rd America's Cup race would be held in Valencia, Spain in 2009, TNZ settled its budget for a 2009 event. TNZ negotiated amounts to be provided by its major sponsors based on that budget. TNZ also entered into employment contracts with a number of parties, all of whose employment would be necessary to ensure TNZ's successful challenge for the Cup. Those key personnel included yachtsmen, designers, and senior management. TNZ has devoted significant resources in preparation for a 2009 race in Valencia.

Defendants Announce That They Will Not Hold The 33rd America's Cup In Valencia In 2009

46.    On November 22, 2007, before the ruling of the court described below, Defendants (through ACM) announced that the 33rd America's Cup *would not* be held in Valencia in 2009 but did not indicate where or when it would be held, although making it clear Event will be deferred until at least 2011. In doing so, Defendants have chosen to put their own

12

personal and commercial interests ahead of the interests of the Event, the standing of the America's Cup, and the interests of other competitors, including Plaintiff.

47.    Defendants postponed the Cup despite the fact that GGYC offered a settlement proposal to SNG that would have preserved the plans for the 2009 America's Cup race in Valencia. Other challengers, including TNZ, supported this proposal. SNG rejected the proposal.

48.    The effect of Defendants' breach has been and continues to be substantial. Costs for deferring the event from 2009 to 2011 will exceed tens of millions of dollars. In taking steps to mitigate such damage, including placing key employees on retainers in place of their former full time contracts, TNZ has suffered both the loss of goodwill and intellectual property. Given this harm, a strong possibility exists that TNZ will not survive a lengthy delay, an outcome that would reward SNG for its wrongful acts by eliminating one of SNG's most serious rivals.

Justice Cahn Holds That CNEV's Challenge Is Invalid

49.    On November 27, 2007, Justice Cahn held that "CNEV's challenge is invalid, and that GGYC is Challenger of Record pursuant to the Deed." *Golden Gate Yacht Club v. Societe Nautique De Geneve*, No. 602446/07, 2007 WL 4624020 at *10 (N.Y. Sup. Nov. 27, 2007). Justice Cahn held that CNEV's failure to have an annual regatta "nullifies its purported role as Challenger of Record of the 33rd America's Cup." *Id.* at *7.

50.    Under that ruling, the Protocol purportedly negotiated between SNG and CNEV is necessarily invalid, null and void, and unenforceable.

## COUNT ONE – BREACH OF FIDUCIARY DUTY

51.    TNZ incorporates by reference paragraphs 1 through 50 above, as if set forth herein.

13

52.    Defendants have violated the fiduciary duties of care, loyalty, good faith and honesty that they owe as holders and trustees of the America's Cup. Defendants owe these duties to all potential competitors, as beneficiaries under the Deed of Gift.

53.    As trustee, Defendants were, and continue to be, under a duty to enforce the terms of the trust instrument, the Deed of Gift, and not to act in a manner contrary to the interests of the beneficiaries of the trust, including Plaintiff.

54.    As demonstrated by the above allegations, Defendants failed, and continue to fail, to exercise the care required by the Deed of Gift. Defendants have breached their duties of care, loyalty, good faith, and honesty 1) by accepting CNEV's invalid challenge; 2) by entering into the Protocol without engaging in the consensual process contemplated by mutual consent clause of the Deed of Gift; 3) by structuring the Protocol to advantage themselves at the expense of the trust's beneficiaries; and 4) by unnecessarily postponing the 33rd America's Cup. These acts violate the terms of the Deed of Gift.

55.    As demonstrated by the above allegations, Defendants are engaging in self-dealing 1) by accepting CNEV's invalid challenge; 2) by entering into the Protocol without engaging in the consensual process contemplated by mutual consent clause of the Deed of Gift; 3) by structuring the Protocol to advantage themselves at the expense of the trust's beneficiaries; and 4) by unnecessarily postponing the 33rd America's Cup. These acts violate the terms of the Deed of Gift and demonstrate that SNG is unfit to continue as trustee of the trust established by that Deed.

## COUNT TWO – BREACH OF CONTRACT

56.    TNZ incorporates by reference paragraphs 1 through 55 above, as if set forth herein.

14

57.     TNZ and Defendants entered into a valid contract supported by valuable consideration on July 25, 2007.

58.     In that contract, Defendants agreed, among other things, that the 33rd America's Cup would be held in Valencia, Spain in 2009.  TNZ agreed, based on that condition, among others, that it would submit a Notice of Entry to sign onto the Protocol for the 33rd America's Cup.

59.     On November 22, 2007, Defendants announced that they would not hold the 33rd America's Cup in Valencia, Spain in 2009.

60.     This act constitutes a breach of contract.

61.     Defendants have caused and continue to cause damage to TNZ through this breach in an amount to be determined at trial.

### RELIEF REQUESTED

62.     Based on the foregoing, TNZ requests that the Court

    a.  Award TNZ actual and consequential damages in an amount to be established at trial, as a result of the allegations set forth herein as established at trial;

    b.  Award TNZ interest of any award of actual damages at the rates prescribed by actual law;

    c.  Award TNZ an amount sufficient to reimburse it for all expenses, including costs and attorneys fees, that have been reasonably incurred;

d.  Declare that SNG be removed as trustee of the trust established by the Deed of

    Gift; and

e.  Grant TNZ such other relief as justice may require.


Dated: New York, New York

    March 6, 2008

                                        Respectfully submitted,

                                        BOIES, SCHILLER & FLEXNER, LLP

                                        _____
                                        David Boies
                                        333 Main Street
                                        Armonk, New York 10504
                                        (914) 749-8200

                                        Philip M. Bowman
                                        575 Lexington Avenue, 7th Floor
                                        New York, New York 10022
                                        (212) 446-2300

# Exhibit A

**From:** Yvonne.Kirby@alinghi.com on behalf of Hamish.Ross@alinghi.com
**Sent:** Wednesday, 25 July 2007 11:21 p.m.
**To:** James Farmer
**Subject:** Re:

**Follow Up Flag:** Follow up
**Flag Status:** Purple

**Attachments:** ETNZ Alinghi ltr.25.7.07.doc

Dear Jim,

Thank you for your email and the attached letter, I confirm that I am instructed by Ernesto to accept the terms set out in your letter (paragraphs 1-7), as well as the understandings reached between Grant and Ernesto.

I look forward to receiving by email the Squadron entry which I will pass onto ACM who will confirm acceptance shortly. Meanwhile, we intend announcing the entry at the press conference this afternoon.

Thank you for your assistance, we are conscious that you are unwell and we apologise for keeping you out of bed.

Kind regards

Hamish Ross

Team Alinghi
Base Alinghi
Port America's Cup
Muelle de la Aduana s/n
Valencia 46024
Spain
Spanish Mobile +34 667101071 (active )
NZ Mobile +64 21 939 719 (inactive)
Valencia Office +34 963 817697
Email : hamish.ross@alinghi.com
Skype: hamishross
Google Talk: ross.hg

"James Farmer" <jamesfarmer@queenscounsel.co.nz>

| | To: | <hamish.ross@alinghi.com> |
| --- | --- | --- |
| 25/07/2007 13:02 | cc: | |
| | Subject: | |

Hamish,
See attached letter, which is a revised version of my earlier one. Please email me back as soon as you can.
Regards,
Jim

**EMIRATES TEAM NEW ZEALAND**

25 July 2007

Hamish Ross
General Counsel
Alinghi

Dear Hamish,

Following our discussions and those between Grant Dalton and Ernesto Bertarelli, I can say that an entry can be sent to you tonight (New Zealand time) if the following is agreed:

1.  The Event will be in 2009 in Valencia and there will be a very early announcement to that effect.

2.  The Event and other Regulations and the Class Rule will all be determined and announced before the end of October 2007;

3.  The Regulations will provide, as you have outlined to me, that all competitors may build a maximum of 2 of the new boat but may only have one boat sailing at a time, whether in training, trialling or otherwise;

4.  Subject to 3, we would want an assurance that there will no restrictions or prohibitions (whether as to time or otherwise) on sailing either new boat in the home waters of the team;

5.  Alinghi will agree that 2 of our designers meet with your designers on 15 September (as suggested by Michel Bonnefous to Grant) at which time the thinking and drafts of your designers about the Class Rule would be outlined. Your designers would be willing to listen to (though not bound by) any suggestions that our designers might have. Similar meetings would take place each fortnight thereafter until the Class Rule is announced. It is understood that representatives of the other 3 teams that have entered to date would have a similar opportunity.

6.  We would want first right to have (at our option) our previous base or the Oracle base allocated to us, such decision to be taken by us by the end of September 2007.

7.  Payment of the 50,000 euro entry fee would be deferred until the end of the year.

1

Other matters have, I understand, been discussed and agreed between Grant and Ernesto directly.

There are other matters which I know other challengers are concerned about – such as the emasculation of the Challenger Commission and changes of personnel of the judicial bodies – and there are various detailed provisions in the Protocol that could usefully be the subject of discussion with a view to their improvement. However, all we would say about that at this stage is that you may need to think about those issues if you want to get other existing teams entering.

It would be appreciated if you would email me back as soon as possible your agreement to the terms contained in this letter. On receipt of your email I will immediately email back the entry signed by the Squadron. I should indicate that it is not notarised but I will undertake to arrange for a notarised version to be sent to you as soon as practicable.

Kind regards,


Jim Farmer

# Exhibit B

**From:** Hamish.Ross@alinghi.com
**Sent:** Thursday, 26 July 2007 12:41 a.m.
**To:** James Farmer
**Subject:** RE:

**Follow Up Flag:** Follow up
**Flag Status:** Purple

**Attachments:** ETNZ entry 33AC.pdf

Thanks Jim
If we could get a formal completed Notice in the post in due course, notarised and with the documents attached.
Kind regards

Hamish Ross

Team Alinghi
Base Alinghi
Port America's Cup
Muelle de la Aduana s/n
Valencia 46024
Spain
Spanish Mobile +34 667101071 (active )
NZ Mobile +64 21 939 719 (inactive)
Valencia Office +34 963 817697
Email : hamish.ross@alinghi.com
Skype: hamishross
Google Talk: ross.hg

| | | |
|---|---|---|
| "James Farmer" <jamesfarmer@queenscounsel.co.nz> | **To:** | <Hamish.Ross@alinghi.com> |
| | **cc:** | |
| 07/25/2007 01:21 PM | **Subject:** | RE: |

Thanks, Hamish.  Here is the entry.
I wouldn't want to overstate my illness - just flu.  My only concern is that Grant was off to bed before me.
Thanks for getting this to a satisfactory conclusion.
I will do what I can with the other teams with whom I have some influence.
Regards,
Jim

**From:** Yvonne.Kirby@alinghi.com on behalf of Hamish.Ross@alinghi.com
**Sent:** Wed 25/07/2007 11:20 p.m.
**To:** James Farmer
**Subject:** Re:

Dear Jim,

Thank you for your email and the attached letter, I confirm that I am instructed by Ernesto to accept the terms set out in your letter (paragraphs 1-7), as well as the understandings reached between Grant and Ernesto.

I look forward to receiving by email the Squadron entry which I will pass onto ACM who will confirm acceptance shortly. Meanwhile, we intend announcing the entry at the press conference this afternoon.

Thank you for your assistance, we are conscious that you are unwell and we apologise for keeping you out of bed.

Kind regards

Hamish Ross

Team Alinghi
Base Alinghi
Port America's Cup
Muelle de la Aduana s/n
Valencia 46024
Spain
Spanish Mobile +34 667101071 (active )
NZ Mobile +64 21 939 719 (inactive)
Valencia Office +34 963 817697
Email : hamish.ross@alinghi.com
Skype: hamishross
Google Talk: ross.hg

"James Farmer" <jamesfarmer@queenscounsel.co.nz>

To:       <hamish.ross@alinghi.com>

25/07/2007 13:02

cc:
Subject:

Hamish,
See attached letter, which is a revised version of my earlier one. Please email me back as soon as you can.
Regards,
Jim

# Notice of Entry

1. **Background**

This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

Definitions used in the said Protocol shall apply to this Notice of Entry.

2. **Application**

I, John Crawford am the Commodore of the Royal New Zealand Yacht Squadron and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by [*Notary*] hereunder.

2.1 **Yacht Club:** Royal New Zealand Yacht Squadron (RNZYS) hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

2.2 **Deed Of Gift:** Royal New Zealand Yacht Squadron is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

    (i)    is not domiciled in Switzerland;
    (ii)    is an organised yacht club;
    (iii)    is incorporated, patented or, licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
    (iv)    has an annual regatta on the sea or an arm of the sea.

2.3 **Certificate of Incorporation:** An original notarized certified copy of the RNZYS certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

2.4 **Annual Regatta:** The Notice of Race of the RNZYS annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

2.5 **Organised:** Details, such as the RNZYS existing by-laws, as well as its organization regulations and events calendar, demonstrating how the RNZYS is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

**2.6    Representation:**

RNZYS will be represented by Team New Zealand

All communications and notices are to be sent to: ;

Royal New Zealand Yacht Squadron
PO Box 46182
Herne Bay
Auckland , NZ
PH   09 360 6800

**3.    Bound By Protocol**

The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

**4.    Arbitration and Dispute Resolution**

The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. RNZYS further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

**5.    Entry Fee and Performance Bond**

RNZYS submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

**6.    Challenger of Record**

The RNZYS and Team New Zealand each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, RNZYS may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The RNZYS and Team New Zealand also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record, and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The RNZYS and Team New Zealand further acknowledge that Societé Nautique de Genève ("SNG") has commenced an arbitration proceeding before the Arbitration Panel

constituted under the Protocol in which it asks the Panel to confirm CNEV's status as Challenger of Record.

The RNZYS and Team New Zealand each accept and agree that AC Management SA, SNG, Team Alinghi and their affiliates are not responsible for any losses or damages that the RNZYS and/or Team New Zealand may incur as a result from GGYC's actions or from any court or arbitration proceedings in connection therewith.

**Signatures:**

**RNZYS:**

Name: J. C. CRAWFORD
Office: COMMODORE - RNZYS
Date: 25/07/07

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

**Team New Zealand**

By countersigning this Notice of Entry Team New Zealand confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

Name: GRANT DALTON
Office: MANAGING DIRECTOR
Date: 25/7/07

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

**EXHIBIT D**

SUPREME COURT OF THE STATE OF NEW YORK    NEW YORK COUNTY

PRESENT: _____    PART _____
                    Justice

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion:    ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this ~~motion~~

RECEIVED

MOTION SUPPORT

FILED

MAR 07 2008

NEW YORK
COUNTY CLERKS OFFICE

Dated: 3-6-08    _____
                                                              J.S.C.

Check one:    ☐ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate    ☒ DO NOT POST    ☐ REFERENCE    

**SUPREME COURT OF THE STATE OF NEW YORK**
**CIVIL TERM, NEW YORK COUNTY**
**COMMERCIAL DIVISION SUPPORT OFFICE**
**60 CENTRE STREET  - ROOM 148**
**NEW YORK,  NEW YORK  10007-1474**

**646-386- 3020**

**Index Number:** _66062/68_    **Motion Sequence Number:** _001_

_RJI_

**TO: JUSTICE** _Cahn_
Re: _Team New Zealand v Societe Nautique_
**ROOM** _232_        **I.A.S. PART** _4Cm_

**IF YOUR HONOR WISHES TO GRANT THIS EX-PARTE ORDER FOR:**

_preservation of certain evidence which_
_may be lost or destroyed absent an_
_ex parte order._

**PLEASE SIGN THE ORDER,** _if your Honor agrees that_
_ex parte relief is appropriate._

**Order is approved as to form.**

**PLEASE RETURN THE ORDER TO ROOM 119 FOR PROCESSING.**

CLERK'S INITIALS

PROVED

REME COURT
TE OF NEW YORK
MERCIAL DIVISION
PORT OFFICE
☐ X-MOT
OT

At the IAS Part _____ 49 _____ of the Supreme
Court of the State of New York, held in and for
the County of New York at the Courthouse, 60
Centre Street, New York, New York 10007 on
the _6_ day of March, 2008.

005592

003341

PRSENT: HON. _____, JUSTICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| TEAM NEW ZEALAND LIMITED., | MOTION SEQUENCE # 001 |
| Plaintiff, |  |
| -against- | Index No. 600662 /08 |
| SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM ALINGHI, S. A., AC MANAGEMENT, S.A., and ERNESTO BERTARELLI, | EX - PARTE |
| Defendants. | ORDER COMPELLING DEFENDANTS TO PRESERVE CERTAIN MATERIAL AS EVIDENCE |

FILED

MAR 07 2008

NEW YORK
COUNTY CLERKS OFFICE

INDEX NUMBER 600662   YEAR 2008
6' RJI FEE                    95.00
15 MOTIONS                    45.00
TOTAL                        140.00
CHECK                         95.00
CHECK                         45.00

DATE          TIME
CHRIS CREAZIER
10692 1000  06 MAR 08 11:43 AM

Upon the annexed Affirmation of Philip M. Bowman, dated March 6, 2008, and it

appearing that Defendants Société Nautique de Genève ("SNG"), Team Alinghi, S.A.

("Alinghi"), AC Management, S.A. ("ACM"), and Ernesto Bertarelli are in the

possession of relevant documents relating to the above-captioned action, and it appearing

that absent an order, there is a significant risk that relevant evidence will be lost or

destroyed, and it appearing that an order compelling the preservation certain material as

evidence will not unduly burden defendants; it is hereby

ORDERED, that Defendants SNG, Alinghi, ACM and Ernesto Bertarelli preserve

the following material:

1

1. All communications among and between Defendants regarding the 33rd America's Cup.

2. All communications between Defendants and Club Nautico Espanol de Vela ("CNEV") regarding the 33rd America's Cup.

3. All communications between Defendants and Real Federación Española de Vela ("RFEV") regarding the 33rd America's Cup.

4. All documents relating to the incorporation of CNEV.

5. All documents relating to the drafting, revision, editing, or negotiating of the Protocol for the 33rd America's Cup (the "Protocol"), including all drafts of the Protocol.

6. All documents relating to any agreement between Defendants and CNEV regarding the 33rd America's Cup.

7. All documents relating to Defendants' attempts to convince Plaintiff Team New Zealand Limited ("TNZ") to enter the 33rd America's Cup.

8. All documents relating to any agreements between Defendants and the City of Valencia.

9. All documents relating to Defendants' decision to delay the 33rd America's Cup; and it is further;

ORDERED that this Order be served upon Defendants with the Summons and Complaint.

ENTER:

_____
J.S.C.

FILED

MAR 0 7 2008

NEW YORK
COUNTY CLERK'S OFFICE

ORAL ARGUMENT
DIRECTED

J.S.C.

☐ DO NOT POST

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------

TEAM NEW ZEALAND LIMITED )
)
Plaintiff, )
)
-against- )    Index No. *600662* /08
)
SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM )
ALINGHI, S. A., AC MANAGEMENT, S.A., and )
ERNESTO BERTARELLI, )    **AFFIRMATION OF PHILIP**
Defendants. )    **M. BOWMAN AND**
)    **REQUEST FOR ORDER**
)    **COMPELLING**
)    **DEFENDANTS TO**
)    **PRESERVE CERTAIN**
)    **MATERIAL AS EVIDENCE**
)
)
)
)
)

------------------------------------------

PHILIP M. BOWMAN, an attorney duly admitted to the Courts of the State of

New York, hereby affirms under the penalties of perjury:

1.      I am member of the law firm of Boies, Schiller & Flexner LLP, 575

Lexington Avenue, New York, New York 10022, attorneys for Team New Zealand

Limited ("TNZ").

2.      On March 6, 2008, TNZ brought an action against Defendants Société

Nautique de Genève ("SNG"), Team Alinghi, S.A. ("Alinghi"), AC Management, S.A.

("ACM"), and Ernesto Bertarelli in the Supreme Court of New York by filing a summons

and complaint (attached hereto as Exhibit 1) alleging breaches of fiduciary duties and

contract.

3.      Upon information and belief, the Defendants are in the possession of

certain materials that are relevant to this action and that cannot be sought from any other

1

sources. These materials include communications between and among the Defendants, communications between Defendants and Club Nautico Espanol de Vela ("CNEV"), and drafts of the Protocol for the 33rd America's Cup (the "Protocol"). There is a significant risk that this evidence will either be lost or destroyed, absent an order that this evidence be preserved.

4.    Preservation of this material will not unduly burden Defendants in any way.

5.    Plaintiff respectfully requests that this Court enter an Order compelling Defendants to preserve the following materials:

a. All communications among and between Defendants regarding the 33rd America's Cup.

b. All communications between Defendants and CNEV regarding the 33rd America's Cup.

c. All communications between Defendants and Real Federación Española de Vela ("RFEV") regarding the 33rd America's Cup.

d. All documents relating to the incorporation of CNEV.

e. All documents relating to the drafting, revision, editing, or negotiating of the Protocol, including all drafts of the Protocol.

f. All documents relating to any agreement between Defendants and CNEV regarding the 33rd America's Cup.

g. All documents relating to Defendants' attempts to convince Plaintiff Team New Zealand ("TNZ") to enter the 33rd America's Cup.

h.  All documents relating to any agreements between Defendants and the City of Valencia.

i.  All documents relating to Defendants' decision to delay the 33rd America's Cup.

6.  No previous application has been made for the relief requested.

WHEREFORE, I respectfully request pursuant to CPLR § 3104(a) that an Order be issued and entered compelling Defendants to preserve the material listed in paragraph 8 above.

Dated: New York, New York
       March 6, 2008

_____
Philip M. Bowman

3

**EXHIBIT 1**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| TEAM NEW ZEALAND LIMITED,<br><br>                              Plaintiff,<br><br>          -against-<br><br>SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM<br>ALINGHI, S. A., AC MANAGEMENT, S.A., and<br>ERNESTO BERTARELLI,<br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Index No. *600662* /08

**COMPLAINT**

Plaintiff Team New Zealand Limited ("TNZ"), by and through its undersigned counsel, states for its Complaint, with knowledge of its own acts and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      This action arises out of (i) Defendants' breaches of fiduciary duties as trustee of a New York trust established by a Deed of Gift pursuant to which Defendants hold in trust the America's Cup, the premiere sailing trophy in the world, for the purpose of promoting sailing competition, and (ii) Defendants' breach of a contract entered into by Plaintiff and Defendants regarding the time and place of the next America's Cup race.

2.      This action is related to a case brought by Golden Gate Yacht Club ("GGYC") against Defendant Société Nautique de Genève ("SNG") on July 20, 2007, currently pending in the Supreme Court of New York before the Honorable Justice Cahn and bearing the index number 602446/07.  In that action, GGYC alleged that SNG breached the Deed of Gift and

1

SNG's fiduciary duty to GGYC in accepting the purported challenge of Club Náutico Español de Vela ("CNEV"). GGYC, who served a Notice of Challenge upon SNG on July 11, 2007, also sought a declaratory judgment that GGYC, not CNEV, was the Challenger of Record.

3.      As described in detail below, Defendants accepted an invalid challenge from a sham yacht club in order to establish terms for the next America's Cup that grossly benefit Defendants at the expense of the trust's beneficiaries, in violation of the Deed of Gift and Defendants' fiduciary duties.

4.      Thereafter, in an effort to achieve credibility for the self-dealing protocol they had promulgated, Defendants sought to induce Plaintiff, an established and successful sailing team, to participate in the 33rd America's Cup. Because Plaintiff exists for the sole purpose of competing in the America's Cup, it agreed to participate. However, it did not want to be subject to Defendants' whims regarding when and where the next America's Cup would be held, and therefore agreed to participate in the match *on the condition* that Defendants undertook and promised to hold the next America's Cup race in Valencia, Spain, in 2009. In reliance on Defendants' undertaking and promise to hold the next race in Valencia in 2009, TNZ has spent millions of dollars in preparation for the 2009 event.

5.      On or about November 22, 2007, Defendants announced that the next America's Cup race will not take place in Valencia in 2009. Defendants have not provided an alternative time or place. As a result of Defendants' actions, there is a serious risk that Plaintiff will not survive to challenge Defendants in a deferred race or, alternatively, will survive as a team whose resources are seriously depleted and whose competitive abilities are thereby seriously weakened, outcomes that reward Defendants for their unlawful actions.

2

## THE PARTIES

6.      Plaintiff TNZ, a world class sailing team, is a corporation organized under the laws of New Zealand with its principal place of business in Auckland, New Zealand.  TNZ, as representative of non-party Royal New Zealand Yacht Squadron ("RNZYS"), won the America's Cup in 1995 and successfully defended the Cup in 2000.   It also won the Louis Vuitton Cup in 2007, which entitled it to challenge the defender in the 2007 America's Cup.

7.      Defendant Société Nautique de Genève ("SNG") is a yacht club based in Geneva, Switzerland.  It is the current holder of the America's Cup, which it won in 2003 and 2007 through its affiliate, Defendant Team Alinghi, S.A. ("Alinghi").  As the current holder of the America's Cup, SNG is the trustee of the trust, formed under the laws of the State of New York, which holds the America's Cup trophy for the benefit of all competitors.

8.      Defendant Alinghi is a sailing team affiliated with, and the representative of, SNG and is the winner of the 2003 and 2007 America's Cup competitions.   As such, it shares in and assumes the same obligations of trust owed by SNG.

9.      Defendant AC Management, S.A. ("ACM") is a Swiss limited liability company with headquarters in Geneva, Switzerland, appointed by SNG to organize, manage, and fulfill all of SNG's obligations under the Deed of Gift.

10.     Defendant Ernesto Bertarelli, a Swiss citizen, is the founder and owner of both Alinghi and ACM.

## JURISDICTION AND VENUE

11.     This court may exercise jurisdiction over Defendants pursuant to C.P.L.R. §§ 301 and/or 302.

3

12.    This court may exercise jurisdiction over the subject matter of this claim pursuant to N.Y. Bus. Corp. Law § 1314(b)(5).

13.    Venue lies in this Court pursuant to C.P.L.R. § 503(a).

## FACTUAL BACKGROUND

The Deed Of Gift

14.    The America's Cup sailing competition is governed by a trust instrument executed under the laws of New York on October 24, 1887, as amended by Orders of this Court dated December 17, 1956 and April 5, 1985 (the "Deed of Gift"). The corpus of the trust is a trophy known as the America's Cup. George L. Schuyler, as the sole surviving owner of the yacht America that won the Cup in a match on August 22, 1851, designated the Cup to be held "in trust, nevertheless, for the following uses and purposes," namely that "[t]his Cup is donated upon the conditions that it shall be preserved as a perpetual Challenge Cup for friendly competition between foreign countries."

15.    The Deed of Gift entitles "[a]ny organized Yacht Club of a foreign county, incorporated, patented or licensed by the legislature, admiralty, or other executive department, having for its annual regatta on ocean water course on the sea, or on an arm of the sea, or one which combines both" the "right of sailing a match for this Cup."

16.    The Deed of Gift states that "when a challenge from a Club fulfilling all the conditions required by this instrument has been received, no other challenge can be considered until the pending event has been decided."

17.    The Deed of Gift provides certain base-line requirements regarding the terms of the match, but provides that the defending club and the challenging club should set additional rules by mutual consent: "The Club challenging for the Cup and the Club holding the same may,

4

by mutual consent, make any arrangement satisfactory to both as to the dates, courses, number of

trials, rules and sailing regulations, and any and all other conditions of the match, in which case

also the ten months' notice may be waived." The ability to set such rules, based on mutual

consent, ensures that competition for the America's Cup will be fair and that the Cup shall be

preserved "for friendly competition between foreign countries."

18.    If the challenging club and the defending club cannot mutually agree on the terms

of the match, the Deed of Gift establishes certain default rules that will govern the terms of the

match.

<u>Alinghi Accepts The Purported "Challenge" Of Sham Challenger CNEV</u>

19.    Before Alinghi had even won the 32nd America's Cup, Defendants agreed with

Real Federación Española de Vela ("RFEV"), the national governing body for the sport of

sailing in Spain (not a yacht club at all), that RFEV would issue a "challenge" to Alinghi if

Alinghi won the America's Cup. However, "opposition to RFEV becoming Challenger of

Record for the 33rd America's Cup match arose, on the ground that it was a federation of yacht

clubs, not a yacht club itself." *Golden Gate Yacht Club v. Societe Nautique De Geneve*, No.

602446/07, 2007 WL 4624020 at *3 (N.Y. Sup. Nov. 27, 2007). Acting on the advice of its

lawyers and at the request of Defendants, RFEV quickly formed CNEV.

20.    CNEV has no yachts. It has no members other than the directors of RFEV who

executed its incorporation and registration papers days before CNEV issued its challenge.

CNEV had no telephone number and no website. As of the date of CNEV's challenge, CNEV

had never held an annual regatta, which is one of the few qualifications required by the Deed of

Gift. CNEV attempted to hold two "regattas," one of which involved children sailing during a

training session and the other of which CNEV co-sponsored with another yacht club. Neither of

5

these "regattas" satisfies the Deed of Gift's requirement because, among other reasons, they both post-date CNEV's purported challenge.

21.    On July 2, 2007, the day before the final race in the 32nd America's Cup series, pursuant to its agreement with Defendants, CNEV announced that, if SNG successfully defended the Cup, CNEV would challenge SNG for the 33rd America's Cup.  On July 3, 2007, Alinghi, representing SNG, defended the America's Cup by defeating TNZ in the final race.   CNEV immediately issued its purported challenge, which SNG accepted.

Alinghi And Sham Challenger CNEV Form Self-Dealing Protocol

22.    Historically, the challenging club and the defending club issue a "protocol" that announces the rules for the next America's Cup to which the two clubs have mutually consented. Additional challengers are invited to join the protocol by submitting a Notice of Entry.  Instead of following that procedure, Defendants issued a protocol that grants to themselves the right to set the terms of the next America's Cup unilaterally.

23.    On July 5, 2007 SNG and CNEV publicly released the "Protocol Governing the Thirty Third America's Cup" (the "Protocol").

24.    The Protocol provides that SNG may appoint ACM, a commercial organization owned and controlled by Ernesto Bertarelli (who also owns Alinghi), as the Event Authority. The Protocol awards ACM "the ultimate responsibility for the management, organization, and financing of the Event."  Thus, Defendants secured for themselves the rights to set the terms of the Cup.

25.    For example, ACM has the power, in its sole discretion, to appoint the members of the Race Committee, the Measurement Committee, Umpires, and "such other persons as are reasonably necessary in discharging the duties outlined" in the Protocol.  ACM has the power to

fine competitors for "non-compliance" of rules, to deduct fines from any moneys due to competitors, and to take legal action necessary to recover outstanding fines. ACM may "impose any rule and restriction on the Competitors that are necessary to the fulfillment of its duties under the Deed of Gift and this Protocol." ACM even has the power to cherry-pick who those competitors will be, inasmuch as ACM "may accept or reject any entry received" based on four enumerated yet expansive grounds, including failure to abide by the Deed of Gift or the terms of the Protocol.

26.    Unlike the 32nd America's Cup Protocol, which was negotiated between SNG and GGYC, the 33rd America's Cup Protocol eliminates the rights of challenging competitors. The 32nd Protocol established the Challenger Commission, which consisted of a representative from each challenging team and enjoyed certain voting rights. The 33rd Protocol replaces the Challenger Commission with a "Competitors' Commission," which has no voting powers. The 32nd Protocol provided that the Challenger of Record represented the interests of all challengers, whereas the 33rd Protocol here absolves CNEV of such duty, stating that "the Challenger of Record shall not owe any additional duties to the Challenging Competitors."

27.    Unlike the 32nd America's Cup Protocol, which adopted pre-existing America's Cup Class ("ACC") Rules, the Protocol allows ACM, in its sole discretion, to issue new ACC Rules that will determine the class of yacht allowed to participate in the match. ACM may also amend those rules, provided that CNEV and Alinghi give their token approval. The Protocol requires only that ACM provide challengers 18 months to prepare, design, finance, and build a vessel for the match. Alinghi, as an affiliate of ACM, will have access to rules before they are issued and will thus have longer than its competitors to prepare.

7

28.     ACM may also determine the event's racing schedule 16 months before the first race and may withhold the Notice of Race and Sailing Instructions until "approximately 60 days before the first race of the Event." ACM may withhold the Racing Rules until "approximately 60 days before a race of the Event in which they are applicable." Again, this allows Alinghi to have access to information before its competitors.

29.     Furthermore, the Trials and Challenger Selection format announced by ACM "may provide for the Defender an option to participate wholly or partly at its discretion in the Trials and Challenger Selection other than the final between the two Challengers to select a Challenger for the Match." Thus, SNG has reserved its right to compete against a variety of challengers without facing elimination.

30.     SNG has delegated the following additional duties to ACM in its sole discretion: to determine time limits for registering; to issue Competition Regulations, including limitations for training and testing; to take and distribute the minutes of the Competitors' Commission to all competitors represented; to determine whether there will be qualifying regattas and how they shall be scored; to decide whether competitors may build one, two, or more new boats; to determine and change venue; to determine the race and course areas and limit their use outside the racing periods; and to amend unilaterally the restrictions regarding crew members and designers.

31.     The Protocol established an Arbitration Panel to resolve disputes relating to the Protocol. However, the Panel has demonstrated that it is not independent. In an effort to preempt the New York Supreme Court's consideration of the issue whether CNEV's challenge and the Protocol are valid under the Deed of Gift, SNG and CNEV submitted unopposed papers requesting that the Arbitration Panel deem CNEV's challenge valid and that the Protocol

complies with the Deed of Gift. The Arbitration Panel "arbitrated" the issue even though GGYC refused to participate. The "opposition" cited by the Arbitration Panel consisted of a letter by GGYC's lawyers stating that GGYC *would not* participate in the "arbitration" and a review of "the contents of all the material placed on GGYC's website up to the date of this Decision, including the documents filed with the Supreme Court for the State of New York." Unsurprisingly, the Arbitration Panel issued a lengthy decision in favor of exonerating SNG and upholding the validity of the CNEV challenge, on grounds that are wholly unsupportable, as demonstrated by the decision of the New York Supreme Court.

Alinghi Courts TNZ To Enter The America's Cup

32.    After SNG announced that it accepted CNEV's purported challenge, there was considerable criticism in the yachting community regarding the propriety of CNEV's status as the Challenger of Record. Following the issuance of the Protocol, yachting commentators and potential challengers criticized the terms of the Protocol, noting that SNG had unfairly usurped its status as defending club in issuing a protocol that gave SNG near exclusive control over the terms of the match.

33.    As a result of the yachting community's reaction to Defendants' acts, only a few teams signed onto the Protocol by submitting a Notice of Entry. These teams were weak in terms of sponsorship, popularity, and successful racing history. None of the teams that joined the Protocol had ever won the America's Cup.

34.    TNZ, on the other hand, is a well-respected and successful racing team. As alleged above, TNZ successfully challenged Young America in the 29th America's Cup and then successfully defended the Cup by defeating Luna Rossa in the 30th America's Cup. TNZ won

9

the Challenger Selection Series in 2007 (called the Louis Vuitton Cup), earning the right to challenge Alinghi in the final match of the 32nd America's Cup.

35.     In an effort to overcome the lack of credibility surrounding CNEV's status as Challenger of Record and the propriety of the invalid Protocol, SNG sought the entry of TNZ in late July 2007. The entry of TNZ would lend considerable credibility to both the Event and the Protocol. Without the entry of high profile teams and in particular TNZ, Defendants would not be able to secure the sponsorship and backing necessary to make the 33rd America's Cup a financial success. Furthermore, without TNZ and similar teams, the America's Cup, historically the premiere event in world class yachting, would become little more than side show recital starring SNG.

36.     Defendants were particularly interested in securing TNZ's entry because of the history of rivalry and fierce competition between TNZ and Alinghi in recent years. Alinghi acquired the America's Cup by defeating TNZ in 2003, disrupting what could have been TNZ's third straight America's Cup victory. Alinghi then successfully defended itself against TNZ's challenge in the 32nd America's Cup, winning the final race by one second. Alinghi understood that this rivalry enhanced the interest in the America's Cup. Furthermore, Defendants understood that if TNZ entered the race, other challenging teams would follow TNZ's lead.

37.     In addition, pursuant to ACM's agreement with the city of Valencia, Valencia would provide certain contract money only if Defendants could secure the entry of at least nine teams. TNZ's entry to the 33rd America's Cup was thus critical to Defendants.

10

The Parties Negotiate And Reach An Agreement

38.    Ernesto Bertarelli, founder and owner of Alinghi and ACM, personally negotiated with Grant Dalton, Managing Director of TNZ, regarding TNZ's potential entry into the 33rd America's Cup race.

39.    During the negotiations, TNZ expressed concern regarding the Protocol's unilateral reservation of ACM's right to choose when the next America's Cup race would take place. This issue was critical to TNZ because TNZ needed to be able to prepare for the event. TNZ needed to know when the event would take place because it needed to know when to hire staff, sign leases and sponsorship agreements, settle the amounts of sponsorship payments, and begin construction of boats. It needed to know where the event would take place because, among other things, it needed to lease space and hire staff at the location. Indeed, TNZ refused to sign onto the Protocol unless the parties agreed in advance upon the location and date of the 33rd America's Cup. Defendants, eager for TNZ to enter the race, agreed, among other things, that the 33rd America's Cup would take place in Valencia, Spain, in 2009.

40.    Specifically, on July 25, 2007, James Farmer, a director of TNZ, sent a letter via email to Hamish Ross, General Counsel for Alinghi. A true and correct copy of that email and letter is attached as Exhibit A. Farmer wrote:

> "Following our discussion and those between Grant Dalton and Ernesto Bertarelli, I can say that an entry can be sent to you tonight (New Zealand time) if the following is agreed:
> 1.    The Event will be in 2009 in Valencia and there will be a very early announcement to that effect."

41.    The letter addresses six other conditions demanded by TNZ, regarding the announcement and substance of Regulations and Class Rules, the sailing of new boats, selection of bases at the Event, and deferment of the entry fee.

11

42.    Farmer wrote, "It would be appreciated if you would email me back as soon as possible your agreement to the terms contained in this letter. On receipt of your email I will immediately email back the entry signed by the Squadron [RNZYS]."

43.    At 11:21 p.m. on July 25, 2007, Hamish Ross responded to Farmer's letter as follows: "Thank you for your email and the attached latter, *I confirm that I am instructed by Ernesto to accept the terms set out in your letter (paragraphs 1-7), as well as the understandings reached between Grant and Ernesto.*" (emphasis added).   Ross continued, "Meanwhile, we intend announcing the entry at the press conference this afternoon." Exhibit A.

44.    In response to Ross's email, TNZ emailed a Notice of Entry signed by RNZYS and TNZ.  A true and correct copy of that email and Notice of Entry is attached as Exhibit B.

45.    In reliance upon the parties' agreement that the 33rd America's Cup race would be held in Valencia, Spain in 2009, TNZ settled its budget for a 2009 event.  TNZ negotiated amounts to be provided by its major sponsors based on that budget.  TNZ also entered into employment contracts with a number of parties, all of whose employment would be necessary to ensure TNZ's successful challenge for the Cup.  Those key personnel included yachtsmen, designers, and senior management.  TNZ has devoted significant resources in preparation for a 2009 race in Valencia.

Defendants Announce That They Will Not Hold The 33rd America's Cup In Valencia In 2009

46.    On November 22, 2007, before the ruling of the court described below, Defendants (through ACM) announced that the 33rd America's Cup *would not* be held in Valencia in 2009 but did not indicate where or when it would be held, although making it clear Event will be deferred until at least 2011.  In doing so, Defendants have chosen to put their own

personal and commercial interests ahead of the interests of the Event, the standing of the

America's Cup, and the interests of other competitors, including Plaintiff.

47.    Defendants postponed the Cup despite the fact that GGYC offered a settlement

proposal to SNG that would have preserved the plans for the 2009 America's Cup race in

Valencia. Other challengers, including TNZ, supported this proposal. SNG rejected the

proposal.

48.    The effect of Defendants' breach has been and continues to be substantial. Costs

for deferring the event from 2009 to 2011 will exceed tens of millions of dollars. In taking steps

to mitigate such damage, including placing key employees on retainers in place of their former

full time contracts, TNZ has suffered both the loss of goodwill and intellectual property. Given

this harm, a strong possibility exists that TNZ will not survive a lengthy delay, an outcome that

would reward SNG for its wrongful acts by eliminating one of SNG's most serious rivals.

Justice Cahn Holds That CNEV's Challenge Is Invalid

49.    On November 27, 2007, Justice Cahn held that "CNEV's challenge is invalid, and

that GGYC is Challenger of Record pursuant to the Deed." *Golden Gate Yacht Club v. Societe*

*Nautique De Geneve*, No. 602446/07, 2007 WL 4624020 at *10 (N.Y. Sup. Nov. 27, 2007).

Justice Cahn held that CNEV's failure to have an annual regatta "nullifies its purported role as

Challenger of Record of the 33rd America's Cup." *Id.* at *7.

50.    Under that ruling, the Protocol purportedly negotiated between SNG and CNEV is

necessarily invalid, null and void, and unenforceable.

## COUNT ONE -- BREACH OF FIDUCIARY DUTY

51.    TNZ incorporates by reference paragraphs 1 through 50 above, as if set forth

herein.

52.    Defendants have violated the fiduciary duties of care, loyalty, good faith and honesty that they owe as holders and trustees of the America's Cup. Defendants owe these duties to all potential competitors, as beneficiaries under the Deed of Gift.

53.    As trustee, Defendants were, and continue to be, under a duty to enforce the terms of the trust instrument, the Deed of Gift, and not to act in a manner contrary to the interests of the beneficiaries of the trust, including Plaintiff.

54.    As demonstrated by the above allegations, Defendants failed, and continue to fail, to exercise the care required by the Deed of Gift. Defendants have breached their duties of care, loyalty, good faith, and honesty 1) by accepting CNEV's invalid challenge; 2) by entering into the Protocol without engaging in the consensual process contemplated by mutual consent clause of the Deed of Gift; 3) by structuring the Protocol to advantage themselves at the expense of the trust's beneficiaries; and 4) by unnecessarily postponing the 33rd America's Cup. These acts violate the terms of the Deed of Gift.

55.    As demonstrated by the above allegations, Defendants are engaging in self-dealing 1) by accepting CNEV's invalid challenge; 2) by entering into the Protocol without engaging in the consensual process contemplated by mutual consent clause of the Deed of Gift; 3) by structuring the Protocol to advantage themselves at the expense of the trust's beneficiaries; and 4) by unnecessarily postponing the 33rd America's Cup. These acts violate the terms of the Deed of Gift and demonstrate that SNG is unfit to continue as trustee of the trust established by that Deed.

## COUNT TWO – BREACH OF CONTRACT

56.    TNZ incorporates by reference paragraphs 1 through 55 above, as if set forth herein.

57.    TNZ and Defendants entered into a valid contract supported by valuable consideration on July 25, 2007.

58.    In that contract, Defendants agreed, among other things, that the 33rd America's Cup would be held in Valencia, Spain in 2009.  TNZ agreed, based on that condition, among others, that it would submit a Notice of Entry to sign onto the Protocol for the 33rd America's Cup.

59.    On November 22, 2007, Defendants announced that they would not hold the 33rd America's Cup in Valencia, Spain in 2009.

60.    This act constitutes a breach of contract.

61.    Defendants have caused and continue to cause damage to TNZ through this breach in an amount to be determined at trial.

## **RELIEF REQUESTED**

62.    Based on the foregoing, TNZ requests that the Court

   a.   Award TNZ actual and consequential damages in an amount to be established at trial, as a result of the allegations set forth herein as established at trial;

   b.   Award TNZ interest of any award of actual damages at the rates prescribed by actual law;

   c.   Award TNZ an amount sufficient to reimburse it for all expenses, including costs and attorneys fees, that have been reasonably incurred;

15

d.  Declare that SNG be removed as trustee of the trust established by the Deed of

Gift; and

e.  Grant TNZ such other relief as justice may require.


Dated: New York, New York

March 6, 2008


Respectfully submitted,

BOIES, SCHILLER & FLEXNER, LLP

David Boies
333 Main Street
Armonk, New York 10504
(914) 749-8200

Philip M. Bowman
575 Lexington Avenue, 7th Floor
New York, New York 10022
(212) 446-2300

16

**EXHIBIT A**

⊗

**From:** Yvonne.Kirby@alinghi.com on behalf of Hamish.Ross@alinghi.com
**Sent:** Wednesday, 25 July 2007 11:21 p.m.
**To:** James Farmer
**Subject:** Re:

**Follow Up Flag:** Follow up
**Flag Status:** Purple

**Attachments:** ETNZ Alinghi ltr.25.7.07.doc

Dear Jim,

Thank you for your email and the attached letter, I confirm that I am instructed by Ernesto to accept the terms set out in your letter (paragraphs 1-7), as well as the understandings reached between Grant and Ernesto.

I look forward to receiving by email the Squadron entry which I will pass onto ACM who will confirm acceptance shortly. Meanwhile, we intend announcing the entry at the press conference this afternoon.

Thank you for your assistance, we are conscious that you are unwell and we apologise for keeping you out of bed.

Kind regards

Hamish Ross

Team Alinghi
Base Alinghi
Port America's Cup
Muelle de la Aduana s/n
Valencia 46024
Spain
Spanish Mobile +34 667101071 (active )
NZ Mobile +64 21 939 719 (inactive)
Valencia Office +34 963 817697
Email : hamish.ross@alinghi.com
Skype: hamishross
Google Talk: ross.hg

"James Farmer" <jamesfarmer@queenscounsel.co.nz>

25/07/2007 13:02

To:     <hamish.ross@alinghi.com>
cc:
Subject:

Hamish,
See attached letter, which is a revised version of my earlier one. Please email me back as soon as you can.
Regards,
Jim

EMIRATES TEAM NEW ZEALAND

25 July 2007

Hamish Ross
General Counsel
Alinghi

Dear Hamish,

Following our discussions and those between Grant Dalton and Ernesto Bertarelli, I can say that an entry can be sent to you tonight (New Zealand time) if the following is agreed:

1.  The Event will be in 2009 in Valencia and there will be a very early announcement to that effect.

2.  The Event and other Regulations and the Class Rule will all be determined and announced before the end of October 2007;

3.  The Regulations will provide, as you have outlined to me, that all competitors may build a maximum of 2 of the new boat but may only have one boat sailing at a time, whether in training, trialling or otherwise;

4.  Subject to 3, we would want an assurance that there will no restrictions or prohibitions (whether as to time or otherwise) on sailing either new boat in the home waters of the team;

5.  Alinghi will agree that 2 of our designers meet with your designers on 15 September (as suggested by Michel Bonnefous to Grant) at which time the thinking and drafts of your designers about the Class Rule would be outlined. Your designers would be willing to listen to (though not bound by) any suggestions that our designers might have. Similar meetings would take place each fortnight thereafter until the Class Rule is announced. It is understood that representatives of the other 3 teams that have entered to date would have a similar opportunity.

6.  We would want first right to have (at our option) our previous base or the Oracle base allocated to us, such decision to be taken by us by the end of September 2007.

7.  Payment of the 50,000 euro entry fee would be deferred until the end of the year.

1

Other matters have, I understand, been discussed and agreed between Grant and Ernesto directly.

There are other matters which I know other challengers are concerned about – such as the emasculation of the Challenger Commission and changes of personnel of the judicial bodies – and there are various detailed provisions in the Protocol that could usefully be the subject of discussion with a view to their improvement. However, all we would say about that at this stage is that you may need to think about those issues if you want to get other existing teams entering.

It would be appreciated if you would email me back as soon as possible your agreement to the terms contained in this letter. On receipt of your email I will immediately email back the entry signed by the Squadron. I should indicate that it is not notarised but I will undertake to arrange for a notarised version to be sent to you as soon as practicable.

Kind regards,


Jim Farmer

2

**EXHIBIT B**

**From:** Hamish.Ross@alinghi.com
**Sent:** Thursday, 26 July 2007 12:41 a.m.
**To:** James Farmer
**Subject:** RE:

**Follow Up Flag:** Follow up
**Flag Status:** Purple

**Attachments:** ETNZ entry 33AC.pdf

Thanks Jim
If we could get a formal completed Notice in the post in due course, notarised and with the documents attached.
Kind regards

Hamish Ross

Team Alinghi
Base Alinghi
Port America's Cup
Muelle de la Aduana s/n
Valencia 46024
Spain
Spanish Mobile +34 667101071 (active )
NZ Mobile +64 21 939 719 (inactive)
Valencia Office +34 963 817697
Email : hamish.ross@alinghi.com
Skype: hamishross
Google Talk: ross.hg

| | | |
|---|---|---|
| "James Farmer" <jamesfarmer@queenscounsel.co.nz> | **To:** | <Hamish.Ross@alinghi.com> |
| | **cc:** | |
| 07/25/2007 01:21 PM | **Subject:** | RE: |

Thanks, Hamish.  Here is the entry.
I wouldn't want to overstate my illness - just flu. .My only concern is that Grant was off to bed before me.
Thanks for getting this to a satisfactory conclusion.
I will do what I can with the other teams with whom I have some influence.
Regards,
Jim

---

**From:** Yvonne.Kirby@alinghi.com on behalf of Hamish.Ross@alinghi.com
**Sent:** Wed 25/07/2007 11:20 p.m.
**To:** James Farmer
**Subject:** Re:

Dear Jim,

Thank you for your email and the attached letter, I confirm that I am instructed by Ernesto to accept the terms set out in your letter (paragraphs 1-7), as well as the understandings reached between Grant and Ernesto.

I look forward to receiving by email the Squadron entry which I will pass onto ACM who will confirm acceptance shortly. Meanwhile, we intend announcing the entry at the press conference this afternoon.

Thank you for your assistance, we are conscious that you are unwell and we apologise for keeping you out of bed.

Kind regards

Hamish Ross

Team Alinghi
Base Alinghi
Port America's Cup
Muelle de la Aduana s/n
Valencia 46024
Spain
Spanish Mobile +34 667101071 (active )
NZ Mobile +64 21 939 719 (inactive)
Valencia Office +34 963 817697
Email : hamish.ross@alinghi.com
Skype: hamishross
Google Talk: ross.hg

| "James Farmer" <jamesfarmer@queenscounsel.co.nz> | To: | <hamish.ross@alinghi.com> |
|---|---|---|
| 25/07/2007 13:02 | cc: | |
| | Subject: | |

Hamish,
See attached letter, which is a revised version of my earlier one.  Please email me back as soon as you can.
Regards,
Jim

## Notice of Entry

1. **Background**

   This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

   Definitions used in the said Protocol shall apply to this Notice of Entry.

2. **Application**

   I, John Crawford am the Commodore of the Royal New Zealand Yacht Squadron and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by [Notary] hereunder.

   2.1 **Yacht Club:** Royal New Zealand Yacht Squadron (RNZYS) hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

   2.2 **Deed Of Gift:** Royal New Zealand Yacht Squadron is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

   (i)     is not domiciled in Switzerland;
   (ii)    is an organised yacht club;
   (iii)   is incorporated, patented or, licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
   (iv)    has an annual regatta on the sea or an arm of the sea.

   2.3 **Certificate of Incorporation:** An original notarized certified copy of the RNZYS certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

   2.4 **Annual Regatta:** The Notice of Race of the RNZYS annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

   2.5 **Organised:** Details, such as the RNZYS existing by-laws, as well as its organization regulations and events calendar, demonstrating how the RNZYS is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

2.6    **Representation:**

RNZYS will be represented by Team New Zealand

All communications and notices are to be sent to: ;

Royal New Zealand Yacht Squadron
PO Box 46182
Herne Bay
Auckland , NZ
PH  09 360 6800

3.    **Bound By Protocol**

The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

4.    **Arbitration and Dispute Resolution**

The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. RNZYS further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5.    **Entry Fee and Performance Bond**

RNZYS submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

6.    **Challenger of Record**

The RNZYS and Team New Zealand each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, RNZYS may become the Challenger of Record, as provided under Article 3.3 of the Protocol.



The RNZYS and Team New Zealand  also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The RNZYS and Team New Zealand further acknowledge that Societé Nautique de Genève ("SNG") has commenced an arbitration proceeding before the Arbitration Panel

constituted under the Protocol in which it asks the Panel to confirm CNEV's status as Challenger of Record.

The RNZYS and Team New Zealand each accept and agree that AC Management SA, SNG, Team Alinghi and their affiliates are not responsible for any losses or damages that the RNZYS and/or Team New Zealand may incur as a result from GGYC's actions or from any court or arbitration proceedings in connection therewith.

Signatures:

RNZYS:

Name: J. C. CRAWFORD
Office: COMMODORE - RNZYS
Date: 25/07/07

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

Team New Zealand

By countersigning this Notice of Entry Team New Zealand confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

Name: GRANT DALTON
Office: MANAGING DIRECTOR
Date: 25/7/07

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]