UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TEAM NEW ZEALAND LIMITED.,           :
                                     :
       Plaintiff,                    :
                                     :
  – against –                         :
                                     :
SOCIÉTÉ NAUTIQUE DE GENÈVE,          :    08-CIV-4215 (WHP)
TEAM ALINGHI, S. A., AC MANAGEMENT,  :
S. A., and ERNESTO BERTARELLI        :
                                     :
       Defendants.                   :
------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REMAND

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND.........................................................................................................2

ARGUMENT..................................................................................................................................6

I. STANDARD FOR REMAND................................................................................................6

II. THIS COURT LACKS SUBJECT MATTER JURISDICTION ...............................7

    A. The New York Convention Does Not Apply Because the Purported Arbitration Clause Is Not Part of a Commercial Agreement .........8

    B. The Asserted Agreement to Arbitrate Does Not "Relate To" the Subject Matter of Plaintiff's Claims ...................................10

        1. The Protocol's Arbitration Provision Cannot Conceivably Govern the Breach of Fiduciary Duty Claim................11

        2. The Protocol's Arbitration Provision Cannot Conceivably Govern the Breach of Contract Claim .........................13

III. CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

## Cases

Page

*Beiser v. Weyler*,
  284 F.3d 665 (5th Cir. 2002) ..........................................................................................10

*Bergesen v. Joseph Muller Corp.*,
  710 F.2d 928 (2d Cir. 1983)............................................................................................8

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*,
  923 F.2d 245 (2d Cir. 1991), *cert. dismissed*, 501 U.S. 1267 (1991)............................7

*Goldberg v. Cablevision Sys. Corp.*,
  261 F.3d 318 (2d Cir. 2001)........................................................................................9, 10

*Golden Gate Yacht Club v. Societe Nautique De Geneve*,
  No. 602446/07, 2007 WL 4624020 (S.D.N.Y. Nov. 27, 2007)............................3, 6, 12

*Hamilton v. Aetna Life & Cas. Co.*,
  5 F.3d 642 (2d Cir. 1993) *cert. denied*, 510 U.S. 1130 (1994)......................................6

*Hawkins v. KPMG LLP*,
  423 F. Supp. 2d 1038 (N.D. Cal. 2006) ........................................................................11

*In re IBJ Schroder Bank & Trust Co.*,
  271 A.D.2d 322, 706 N.Y.S.2d 114 (1st Dep't 2000) ..................................................12

*In re Race's Trust*,
  9 Misc. 2d 155, 169 N.Y.S.2d 600 (N.Y. Sup. Ct. 1957).............................................12

*LaFarge Coppee v. Venezolana De Cementos, S.A.*,
  31 F.3d 70 (2d Cir. 1994)................................................................................................6

*Ledee v. Ceramiche Ragno*,
  684 F.2d 184 (1st Cir. 1982)...........................................................................................9

*Lorillard v. Clyde*,
  86 N.Y. 384 (1881) .......................................................................................................13

*Matter of Arbitration Between R3 Aerospace, Inc.
  and Marshall of Cambridge Aerospace Ltd.*,
  927 F. Supp. 121 (S.D.N.Y. 1996) .............................................................................6, 7

*New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127 (2d Cir. 1996)..................12

*Pan Atlantic Group, Inc. v. Republic Ins. Co.*, 878 F. Supp. 630 (S.D.N.Y. 1995) ..................6, 7

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)..................10

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974)..................7

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)..................6

*Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043 (2d Cir. 1991)..................7

## Statutes and Rules

9 U.S.C. § 1..................9

9 U.S.C. § 202..................8

9 U.S.C. § 205..................7, 10

28 U.S.C. § 1447(c)..................1, 6

## Other Authorities

Bogert, *Trusts and Trustees* § 393 ..................12

New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Dec. 29, 1970, 21 U.S.T. 2517..................8, 9

22 N.Y. Jur. 2d Contracts § 219..................13

Restatement (Second) of Trusts § 186 (1959) ..................12

Restatement (Third) of Trusts § 64 (2003) ..................12

Plaintiff Team New Zealand Ltd. ("TNZ") respectfully submits this memorandum of law in support of its motion to remand *Team New Zealand Ltd. v. Société Nautique De Genéve, Team Alinghi, S.A., AC Management, S.A., and Ernesto Bertarelli*, No. 08-CIV-4215, to the Supreme Court of the State of New York, New York County, pursuant to 28 U.S.C. § 1447(c).

## PRELIMINARY STATEMENT

Plaintiff brought this lawsuit against Defendants alleging (1) breach of contract for Defendants' breach of its written agreement to hold the 33rd America's Cup in Valencia, Spain in 2009 and (2) breach of fiduciary duty relating to Defendants' actions regarding the organization of the 33rd America's Cup.

Defendants removed this action to federal court, citing Section 205 of the Federal Arbitration Act (the "FAA"), a provision that provides for removal to federal court of state law claims that are subject to certain foreign arbitration agreements. Notice of Removal ("Notice") ¶¶ 1-3. The "arbitration agreement" Defendants cite as a basis for removal is an arbitration provision contained in the rules established by Defendants and a sham challenger for the 33rd America's Cup ("the Protocol"), which the New York Supreme Court has ruled was established in violation of the Deed of Gift, the New York trust instrument that governs the America's Cup. As set forth herein, that arbitration clause is not a basis for removal under Section 205 – the only purported basis for federal jurisdiction – and this case must therefore be remanded to the New York Supreme Court.

First, the removal statute Defendants cite serves to give effect to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"). The purpose of the Convention is to provide for enforcement by each

signatory of arbitral awards made in the jurisdiction of co-signatories. The United States, in signing the Convention, expressly limited the Convention's application in the United States to *commercial* arbitration agreements. The purported "arbitration agreement" at issue here is an arbitration clause in a document that established rules for a yacht race. This is simply not a commercial arbitration agreement, by any definition, and the removal statute cited by Defendants is therefore inapplicable.

Second, even if the purported arbitration agreement were governed by the Convention, removal jurisdiction would still not obtain because the claims in this case are not related to the arbitration provisions of the Protocol. On its face, the Protocol provides for arbitration only of disputes relating to or arising out of the Protocol (and other rules governing the 33rd America's Cup created in connection with the Protocol). Plaintiff's claims in this case simply do not relate to or arise out of the Protocol. To the contrary, Plaintiff's fiduciary duty claim alleges that Defendants breached their fiduciary duties and violated the terms of the Deed of Gift by accepting a sham challenge and then unnecessarily delaying the 33rd America's Cup, and the breach of contract claim is based on Defendants' separate written agreement to hold the America's Cup in Valencia in 2009, which is nowhere mentioned in the Protocol.

This Court therefore lacks subject matter over these claims, and should remand them to New York State Court.

## FACTUAL BACKGROUND

The America's Cup is the premier sailing trophy in the world. It is the corpus of a trust established by a trust instrument executed under the laws of New York on October 24, 1887, and amended by Orders of New York Supreme Court dated December 17, 1956 and April 5, 1985 (the "Deed of Gift"). Complaint ("Compl.") ¶ 14. The Deed of Gift entitles "[a]ny organized

Yacht Club of a foreign country, incorporated, patented, or licensed by the legislature, admiralty, or other executive department, having for its annual regatta on ocean water course on the sea, or on an arm of the sea, or one which combines both" the "right of sailing a match for this Cup." When the defending club receives a challenge "fulfilling all the conditions required by this instrument," "no other challenge can be considered until the pending event has been decided." *Id.* ¶¶ 15-16. This provision ensures that the defending club cannot choose its own challenger.

The Deed of Gift provides certain base-line requirements regarding the terms of the match, but provides that the defending club and the challenging club should set additional rules by mutual consent: "The Club challenging for the Cup and the Club holding the same may, by mutual consent, make any arrangement satisfactory to both as to the dates, courses, number of trials, rules and sailing regulations, and any and all other conditions of the match." *Id.* ¶¶ 17-18.

This "mutual consent" provision ensures that the defending club will not set the terms of the race unilaterally, and, together with the "first challenger" rule, ensures fair competition. Prior to winning the 32nd America's Cup, Defendants devised a plan to circumvent those provisions should Team Alinghi, S.A. ("Alinghi") win the Cup. Specifically, Defendants first conspired with Real Federación Española de Vela ("RFEV"), which was not a yacht club at all but rather the national governing body for the sport of sailing in Spain. RFEV agreed to issue a "challenge" to Alinghi if Alinghi won the 32nd America's Cup. However, "opposition to RFEV becoming Challenger of Record for the 33rd America's Cup match arose, on the ground that it was a federation of yacht clubs, not a yacht club itself." *Golden Gate Yacht Club v. Societe Nautique De Geneve*, No. 602446/07, 2007 WL 4624020 at *3 (N.Y. Sup. Nov. 27, 2007). Based on the advice of its lawyers and at the request of Defendants, RFEV formed Club Náutico Español de Vela ("CNEV") hours before the final race in the 32nd America's Cup. Compl. ¶ 19.

3

As noted above, the Deed of Gift requires that a challenger be an actual yacht club that, at a minimum, holds an annual regatta. CNEV had no yachts. It had no members other than the directors of RFEV who executed its incorporation and registration papers. It certainly had never held an annual regatta. Nevertheless, immediately following Alinghi's victory in the 32nd America's Cup on July 3, 2007, this paper yacht club issued its "challenge," which Defendant Société Nautique De Genéve ("SNG") "accepted". *Id.* ¶¶ 20-21.

The historical practice of the defending and challenging clubs has been to issue a "protocol" that announces the rules for the next America's Cup to which the two clubs have mutually consented. The challenging and defending clubs then invite additional challengers to join the protocol by submitting a Notice of Entry. On July 5, 2007, SNG and CNEV publicly released the "Protocol Governing the Thirty Third America's Cup". *Id.* ¶ 23.

Following the release of the Protocol, there was widespread criticism in the yachting community regarding the propriety of CNEV's status as Challenger of Record. *Id.* ¶ 32. One potential challenger, the Golden Gate Yacht Club ("GGYC"), brought suit against Defendant SNG in New York Supreme Court alleging, among other things, that SNG breached the Deed of Gift and SNG's fiduciary duty to GGYC by accepting CNEV's purported challenge. *Id.* ¶ 2. GGYC alleged that CNEV was an invalid challenger because it existed only on paper and because it failed to hold an annual regatta, as required by the Deed of Gift, at the time of its "challenge".

In an attempt to preempt the New York Supreme Court's consideration of the issues presented in GGYC's lawsuit, SNG invoked the jurisdiction of the "Arbitration Panel," established by the Protocol, just as it attempts to do here. The Arbitration Panel consists of three

4

members appointed by Defendants and the sham challenger, CNEV. Protocol (attached as Exhibit B to Defendants' Notice of Removal) ¶ 24.2.

GGYC refused to participate in the arbitration. This refusal, however, did not stop the Arbitration Panel from issuing an opinion, based on SNG's and CNEV's unopposed submissions, which exonerated SNG and upheld the validity of CNEV's alleged challenge. Compl. ¶ 31. The grounds upon which the Arbitration Panel based its decision are wholly unsupported, as demonstrated by the New York Supreme Court's decision, discussed below.

Meanwhile, due to the lack of credibility created by Defendants' conduct surrounding the Protocol, only a few teams entered the 33rd America's Cup, and these teams were weak in terms of sponsorship, popularity, and successful racing history. Team New Zealand, a well-respected and successful racing team by any comparison, did not sign on immediately because it was unwilling to enter a race where Defendants reserved near-unfettered discretion for themselves. Of particular concern to Plaintiff was the fact that the Protocol allowed Defendants to choose when and where the next America's Cup race would take place. Id. ¶¶ 32-39.

For these reasons, Plaintiff and Defendants entered into negotiations regarding TNZ's potential entry into the 33rd America's Cup. Negotiations centered on the question of when and where the next America's Cup race would take place. Ultimately, in a written agreement between Plaintiff and Defendants, Defendants promised, among other things, that the 33rd America's Cup would take place in Valencia, Spain in 2009. Id. ¶¶ 38-44.

Based on this promise, TNZ agreed to enter the race and immediately began preparation. Among other things, TNZ settled its budget for the 2009 event, negotiated amounts to be provided by its major sponsors, and entered into employment contracts with a number of parties. Id. ¶¶ 44-45. In order to enter the race, Plaintiff, like all participants, was required to submit an

entry form, the "Notice of Entry," which contains a provision requiring adherence to the Protocol, including the arbitration provision contained therein. On November 22, 2007, Defendants announced, through AC Management, S.A. ("ACM"), that the 33rd America's Cup *would not* be held in Valencia in 2009. *Id.* ¶ 46.

On November 27, 2007, the New York Supreme Court held that "CNEV's challenge is invalid and that GGYC is Challenger of Record pursuant to the Deed." *Golden Gate Yacht Club v. Societe Nautique De Geneve*, No. 602446/07, 2007 WL 4624020 at *10 (N.Y. Sup. Nov. 27, 2007). The court held that CNEV's failure to have an annual regatta "nullifies its purported role as Challenger of Record of the 33rd America's Cup." *Id.* at *7; *see also* Compl. ¶¶ 49-50. The court denied SNG's motion for reargument and renewal on March 17, 2008. Accordingly, the Protocol purportedly negotiated between SNG and CNEV will not govern the 33rd America's Cup. Instead, GGYC and Alinghi will either negotiate a new protocol or race pursuant to the default provisions of the Deed of Gift.

## ARGUMENT

### I.     Standard for Remand

Under subsection 1447(c), remand is authorized "'on the basis of any defect in removal procedure' or because 'the district court lacks subject matter jurisdiction.'" *LaFarge Coppee v. Venezolana De Cementos, S.A.*, 31 F.3d 70, 72 (2d Cir. 1994) (quoting *Hamilton v. Aetna Life & Cas. Co.*, 5 F.3d 642, 644 (2d Cir. 1993) *cert. denied*, 510 U.S. 1130 (1994)). Federal removal statutes "should be restrictively interpreted so as to 'scrupulously confine' removal jurisdiction to the precise limits which the statute has defined." *Matter of Arbitration Between R3 Aerospace, Inc. and Marshall of Cambridge Aerospace Ltd.*, 927 F. Supp. 121, 123 (S.D.N.Y. 1996) (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941)); *see also Pan Atlantic*

*Group, Inc. v. Republic Ins. Co.*, 878 F. Supp. 630, 637 (S.D.N.Y. 1995) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute[s] narrowly, resolving any doubts against removability.") (modification in original) (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991). The burden of establishing that removal jurisdiction is proper rests on the removing defendant, not the party seeking remand. *Pan Atlantic Group*, 878 F. Supp. at 637; *see also R3 Aerospace*, 927 F. Supp. at 123 ("The removing party bears the burden of establishing federal jurisdiction.").

## II.     This Court Lacks Subject Matter Jurisdiction.

This case should be remanded because this Court lacks subject matter jurisdiction. In their Notice of Removal, Defendants' purported basis for removal is Section 205 of the FAA. Section 205 is part of the implementation and codification of the Convention. As noted above, the "goal of the Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions on the whole," *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250 (2d Cir. 1991), *cert. dismissed*, 501 U.S. 1267 (1991), and to "unify the standards by which agreements to arbitrate are observed." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

> Section 205, which permits removal of certain state cases, provides in relevant part:
>
> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205. Section 202 defines those arbitration agreements or awards that "fall under" the Convention, as conditioned by the United States when it signed onto the New York Convention:

7

"An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." 9 U.S.C. § 202.

Accordingly, in order to establish subject matter jurisdiction under Section 205, Defendants must demonstrate (1) that there is an arbitration agreement between the parties that falls under the Convention and (2) that this arbitration agreement "relates to" the subject matter of Plaintiff's action. Defendants assert in their Notice of Removal that the dispute resolution provisions found in the Protocol, coupled with Plaintiff's Notice of Entry, form an "arbitration agreement" that "referred all disputes relating to the 33rd America's Cup and the subject matter of this litigation to an Arbitration Panel appointed in accordance therewith and seated in New York," and that this "arbitration agreement" falls under the Convention. Notice ¶¶ 5-6. As set forth below, both assertions are wrong.

### A. The New York Convention Does Not Apply Because the Purported Arbitration Clause Is Not Part of a Commercial Agreement.

The Convention explicitly contemplated that signatories would accede to the treaty on the condition that it would apply only to legal relationships considered to be commercial. The Convention provides that "[w]hen signing, ratifying or acceding to this Convention" any nation "may also declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration." New York Convention, art. I(3), Dec. 29, 1970, 21 U.S.T. 2517. This reservation was included to assure that a substantial number of nations would join the Convention, the purpose of which was to secure the effective enforcement of arbitration awards in the international commerce community. *See Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 929 (2d Cir. 1983) (noting that "previous international agreements had not proved

effective in securing enforcement of arbitral awards; nor had private arbitration through the American Arbitration Association, the International Chamber of Commerce, the London Court of Arbitration and the like been completely satisfactory because of problems in enforcing awards."). When the United States signed onto the Convention, it conditioned its participation as permitted by Article I(3): "The United States of America will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the United States." New York Convention, Note by the Department of State, Dec. 29, 1970, 21 U.S.T. 2517. *See Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982) (observing that a court must resolve four questions to determine whether an agreement falls under the Convention, including, "(3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial?").

Here, the "legal relationship" out of which the alleged arbitration agreement arises is simply not a commercial relationship. The parties are competitors in a yacht race. The Protocol containing the asserted arbitration clause is a document setting forth the rules of that yacht race, and providing for arbitration of disputes relating to or arising out of those rules. While Chapter 2 of the FAA does not provide a definition of "commercial,"[1] the word "commercial" generally means "[o]f or relating to commerce." *Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318, 326 n.10 (2d Cir. 2001) (citing *The American Heritage Dictionary of the English Language* 371 (4th ed. 2000)). Various dictionary definitions of "commerce" include "the buying and selling of

---

[1] Chapter 1 of the FAA provides a geographical description of the word "commerce": "'commerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

9

goods; the exchange between men of the products of nature or art; buying and selling together; trading; exchange of merchandise; and the exchange or buying and selling of commodities on a large scale involving transportation from place to place." *Id.* (citing *The Oxford English Dictionary* (1989) and *Merriam-Webster's Collegiate Dictionary* (10th ed. 2000)). None of these definitions describes an agreement concerning the rules for a yacht race. Since the relationship between the parties is not commercial,[2] the asserted agreement to arbitrate does not fall under the Convention. This Court therefore lacks subject matter jurisdiction and should remand to state court.

### B. The Asserted Agreement to Arbitrate Does Not "Relate To" the Subject Matter of Plaintiff's Claims.

Even if the purported arbitration agreement did fall under the Convention, this Court would still lack subject matter jurisdiction over Plaintiff's claims because the claims do not related to the purported arbitration agreement. Section 205 permits removal "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. Courts have grappled with the meaning of the phrase "relates to" in the context of Section 205, and the Supreme Court has observed that subject matter jurisdiction under Section 205 raises "a difficult and novel question," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999). While the Second Circuit has not opined on the proper application of the "relates to" standard, various courts have interpreted the phrase to mean, on the one hand, "at least as much as having a possible effect on the outcome of an issue or decision," *see Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002), and, on the other hand, "a reasonable possibility – something more than a 'frivolous' or 'fanciful' argument – that

---

[2] This is not to say that Defendants' conduct, including in enacting the Protocol, has not had an effect on commerce, since it has restricted the ability of Plaintiff and others to sell sponsorship rights.

10

defendants will be able to assert the arbitration clause to compel arbitration of plaintiff's claims," see *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1047 (N.D. Cal. 2006). However, whatever standard applies, removal is improper here because the alleged arbitration agreement cannot conceivably affect the outcome of this action.

> 1. The Protocol's Arbitration Provision Cannot Conceivably Govern the Breach of Fiduciary Duty Claim.

The Protocol's dispute resolution provisions are limited to any dispute "arising out of or in relation to this Protocol and/or the Applicable Documents, the interpretation or breach thereof". Protocol ¶ 21. The Protocol states that "Applicable Document means any document made under authority of this Protocol and includes the documents referred to in Article 2.5." *Id.* ¶1.1(d). Article 2.5 lists the "applicable rules" governing the Event: the Deed of Gift, the Protocol, the Competition Regulations, Event Regulations, ACC Rules, the Notices of Race, the Sailing Instructions, and the Racing Rules. *Id.* ¶ 2.5. Plaintiff's breach of fiduciary duty claim plainly does not relate to the Protocol, the Competition Regulations, Event Regulations, ACC Rules, Notices of Race, Sailing Instructions, or Racing Rules. The only "applicable rule" to which the claim arguably relates is the Deed of Gift. However, the term "Applicable Documents" in the Protocol cannot be read to include the Deed of Gift for two reasons. First, the term Applicable Document "*means* any document made under authority of this Protocol". *Id.* 1.1(d) (emphasis added). The Deed of Gift, executed in 1887, was plainly not created under the authority of the Protocol. The term "Applicable Document" must thus be read to include only those documents listed in Article 2.5 that were created under the authority of the Protocol.

Second, if the Protocol were to be interpreted as requiring arbitration of all disputes arising out of the Deed of Gift, the arbitration clause would violate the terms of the Deed of Gift, and, accordingly, would be invalid under New York law. "It is settled that the duties and powers

11

of a trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of loyalty to the beneficiaries." *In re IBJ Schroder Bank & Trust Co.*, 271 A.D.2d 322, 322, 706 N.Y.S.2d 114, 114 (1st Dep't 2000). Specifically, the trustee of a trust only has such power to change its terms as is granted by the terms of the trust. Restatement (Third) of Trusts § 64 (2003). *See also New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127, 132 (2d Cir. 1996) ("[T]he trustee can properly exercise such powers *and only such powers* as (a) are conferred upon him in specific words by the terms of the trust, or (b) are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust.") (citing Restatement (Second) of Trusts § 186 (1959))(emphasis added); *In re Race's Trust*, 9 Misc. 2d 155, 156, 169 N.Y.S.2d 600, 602 (N.Y. Sup. Ct. 1957) ("Whether an express trust may be revoked, altered or amended depends upon the wording of the trust instrument relating thereto."); Bogert, *Trusts and Trustees* § 393 ("Nor has the trustee power to alter the trust with respect to the methods of administration prescribed by the settlor, unless this authority is set forth in the trust instrument.").

Here, it cannot be disputed that the Deed of Gift does not require that disputes relating to the Deed of Gift must be arbitrated. As the New York Supreme Court observed, "there is nothing in the Deed that mandates that disputes be resolved by arbitration." *Golden Gate Yacht Club v. Societe Nautique De Geneve*, No. 602446/07, 2007 WL 4624020 at *8. Nor does the Deed of Gift provide that the defending club has the power, acting unilaterally or in concert with the Challenger of Record, to establish such a provision.[3] A requirement to arbitrate disputes

---

[3] The mutual consent clause, which serves as a means of ensuring the fairness of the match, clearly does not provide the trustee with the power to add an arbitration clause. The Deed of Gift contemplates that the defending and challenging clubs will mutually consent only to "dates, courses, number of trials, rules and sailing regulations, and any and all other conditions *of the*

12

arising out of the Deed of Gift would thus be an amendment of the trust instrument, and is not permitted under New York law. Contracts should be construed, where possible, in a way that upholds them and makes them valid. *See Lorillard v. Clyde*, 86 N.Y. 384, 384 (1881) ("An agreement will not be adjudged illegal when it is capable of construction which will uphold and make it valid."); 22 N.Y. Jur. 2d Contracts § 219. Thus, the arbitration clause should, if possible, be interpreted not to govern claims arising under the Deed of Gift. If, on the other hand, the Protocol is interpreted as governing disputes arising out of the Deed of Gift, then the entire arbitration provision is invalid. Either way, Plaintiff's breach of fiduciary duty claim is not subject to an arbitration agreement.[4]

        2. The Protocol's Arbitration Provision Cannot Conceivably Govern the Breach of Contract Claim.

As discussed above, the arbitration agreement cited by Defendants covers only disputes relating to or arising out of the Protocol and the Applicable Documents. Plaintiff's breach of contract claim is based on Defendants' breach of a written promise to hold the America's Cup in Valencia in 2009. Specifically, on July 25, 2007, James Farmer, a director of TNZ, sent a letter via email to Hamish Ross, General Counsel for Alinghi, in which Mr. Farmer wrote that TNZ would enter the 33rd America's Cup "if the following is agreed: 1. The Event will be in 2009 in Valencia and there will be a very early announcement to that effect." Compl. ¶ 40; *see also* Exhibit A to the Complaint. In response, Mr. Ross wrote, "I confirm that I am instructed by Ernesto [Bertarelli] to accept the terms set out in your letter (paragraphs 1-7), as well as the

---

*match*." (emphasis added). The mutual consent clause does not authorize the defending or challenger clubs to make provisions which extend *beyond* the upcoming match.

[4] The Arbitration Panel that Defendants seek to have arbitrate this dispute is the same panel that issued an opinion based on one sided submissions that was unsupported by the law and directly contrary to the New York Supreme Court's decision.

understandings reached between Grant and Ernesto." Compl. ¶ 43; *see also* Exhibit A to the Complaint.

Defendants' promise to hold the America's Cup in Valencia in 2009 was thus entirely separate from the Protocol. Indeed, it is nowhere mentioned in the Protocol or any of the Applicable Documents, which do not specify the time or the place for the 33rd America's Cup. Plaintiff's claim for breach of that agreement therefore does not relate to or arise out of the Protocol or the Applicable Documents, and is therefore not governed by the asserted arbitration agreement.

## CONCLUSION

For the foregoing reasons, this case should be remanded to the Supreme Court of New York, New York County, for further disposition.

Dated: June 4, 2008

Respectfully submitted,

BOIES, SCHILLER & FLEXNER, LLP

_____
David Boies (DB-4399)
333 Main Street
Armonk, New York 10504
(914) 749-8200

Philip M. Bowman (PB-9222)
575 Lexington Avenue, 7th Floor
New York, New York 10022
(212) 446-2300

*Attorneys for Plaintiff Team New Zealand*