UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
TEAM NEW ZEALAND LIMITED, :
:
                    Plaintiff, : Case No. 08-Civ-4215
:
         v. :
:
SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM :
ALINGHI, S.A., AC MANAGEMENT, S.A., :
and ERNESTO BERTARELLI, :
:
                     Defendants :
------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND**

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 4

    A.    The Parties' Arbitration Agreement ........................................................... 5

    B.    The America's Cup Arbitration Panel ....................................................... 6

    C.    TNZ's Claims .............................................................................................. 7

ARGUMENT ........................................................................................................................... 7

    I.    The Protocol That Contains The Arbitration Clause Is Commercial ..................... 8

        A.    "Commercial" Is A Broad Term, Designed To Cover A Wide Range Of Activities ............................................................................... 8

        B.    The Protocol Involves Numerous References To Commercial Matters And Is To Govern A Regatta That Will Involve The Expenditure of Hundreds Of Millions of Dollars .................................... 9

    II.    The Subject Matter Of TNZ's Complaint Relates To Its Arbitration Agreement .................................................................................................... 10

CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

## Federal Cases

*Beisler v. Weyler*, 284 F.3d 665 (5th Cir. 2002) ........................................................................10

*Hawkins v. KPMG, LLP*, 423 F. Supp. 2d 1038 (N.D. Cal. 2006) ...............................................10

*Island Territory of Curacao v. Solitron Devices, Inc*, 356 F. Supp. 1 (S.D.N.Y 1973)..................8

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ..............................................11

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir. 1998) ..................................................11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) .........................................4

*Prograph Int'l Inc. v. Barhydt,* 928 F. Supp. 983, (N.D. Cal. 1996) ..............................................9

*Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26 (2d Cir. 2001) ............................4

*Sumitomo Corp. v. Parakopi Compania Maritima, S.A.,* 477 F. Supp. 737 (S.D.N.Y. 1979) ........9

## Federal Statutes

9 U.S.C. § 202 (2008)...................................................................................................................2, 8

9 U.S.C. § 205 (2008)...................................................................................................................2, 7

Defendants Société Nautique de Genève ("SNG"), Team Alinghi, S.A. ("Alinghi"), AC Management, S.A. ("ACM"), and Ernesto Bertarelli (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Team New Zealand Ltd.'s ("TNZ") June 4, 2008 Motion to Remand (the "Motion").

**Preliminary Statement**

SNG is the current holder and defender of the America's Cup. In the 32nd America's Cup, SNG successfully defended its title and won the Cup for a second consecutive time, on July 3, 2007. After receiving a challenge from Club Nautico Español de Vela ("CNEV"), SNG and CNEV negotiated a Protocol to govern the 33rd America's Cup (the "Protocol"). The Protocol allowed other yacht clubs to compete in the 33rd America's Cup by submitting a Notice of Entry. Later that same month, TNZ submitted such a Notice of Entry, in which TNZ "unconditionally agree[d] and accept[ed] to be bound by the dispute resolution provisions of the Protocol . . . ." Ex. A, at 2.[1] Numerous other yacht clubs likewise submitted Notices of Entry for the 33rd America's Cup. All agreed to the binding arbitration provisions of the Protocol. Ex. H.

In accordance with the parties' agreement, the arbitration panel provided for under the Protocol has been fully constituted and, as described further below, has issued a careful and well-reasoned opinion addressing critical issues relating to the 33rd America's Cup. The use of arbitration panels to resolve disputes relating arising in connection with the America's Cup has well-established roots. Two of the arbitrators serving on the 33rd America's Cup arbitration panel also served on the America's Cup arbitration panel created in accordance with the 32nd

---

[1] Citations in the form "Ex. __" refer to exhibits to the Affidavit of Barry R. Ostrager, dated June 18, 2008 ("Ostrager Affidavit").

America's Cup.  The 31st America's Cup likewise had an arbitration panel to resolve all disputes.  Notably, TNZ was a proponent of that America's Cup arbitration panel, as the defender of the 31st America's Cup.  Moreover, the 31st America's Cup arbitration panel was called upon to rule specifically on the validity of SNG's challenge and declared it to be valid.  Ex. G.  SNG went on to win the 31st America's Cup against nine competitors and subsequently won the 32nd America's Cup against eleven challengers.  Declaration of Fred Meyer ¶ 3 ("Meyer Decl.").

The Federal Arbitration Act ("FAA") confers subject matter jurisdiction on this Court over cases relating to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention" or "Convention").  9 U.S.C. § 205.  Section 202 of the FAA provides that:  "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."  9 U.S.C. § 202 (2008).

TNZ advances just two arguments in an effort to avoid its express agreement to arbitrate and defeat this Court's jurisdiction.  It first contends that the Protocol, which the arbitration agreement is part of, must be and is not a "commercial" agreement.  Motion at 8 ("The New York Convention Does Not Apply Because The Purported Arbitration Clause Is Not Part Of A Commercial Agreement").  While characterizing the Protocol as nothing more than a "document that established rules for a yacht race" (*id*. at 2), TNZ barely ever discusses the content of the Protocol.  Had it done so, it would have told the Court that the Protocol contains a section entitled "COMMERCIAL" and specifically sets out commercial terms including how much in proceeds each team would be entitled to.  Ex. B, at 17-19.  Indeed, in an effort to win the Cup and the tens of millions of dollars that (under TNZ's allegations) come with it, TNZ

2

itself says that it "has devoted significant resources in preparation for a 2009 race." Compl. ¶ 45. Moreover, TNZ's characterization of this dispute as entirely non-commercial flies in the face of *TNZ's own pleadings* of the commercial nature of the America's Cup detailed in its companion antitrust action: (i) "Defendants compete with Plaintiff [TNZ] and other sailing teams in the market for the right to hold the America's Cup, an international sailing competition, *which is a lucrative business opportunity*"; (ii) "[TNZ] sells the right to sponsor the team to entities located throughout the world"; and (iii) "Defendants' anticompetitive conduct has directly and proximately caused Plaintiff to suffer injury to its business." Ex. C ¶¶ 1, 10, 52 (emphasis added). While the America's Cup is undoubtedly first and foremost a sporting event, TNZ's own allegations demonstrate that there are inherent commercial aspects evidenced by, among other things, the substantial amounts spent to organize the event.

TNZ's alternate argument that its Complaint is not related to its arbitration agreement rests on equally deceitful distortions of the evidence. TNZ baldly claims that "Plaintiff's claims in this case simply do not relate to or arise out of the Protocol." Motion at 2. Yet, TNZ's Complaint alleges that "Defendants have breached their [fiduciary] duties . . . 2) by entering into the Protocol . . .; 3) by structuring the Protocol to advantage themselves . . . ." Compl. ¶ 54. Indeed, the Protocol is specifically referenced four times in the four paragraphs of this count. *Id.* ¶¶ 54-55. Nor does TNZ ever pause to explain why, if the Protocol is irrelevant, it would include over a dozen *paragraphs* discussing the Protocol, including an entire section entitled "Alinghi and Sham Challenger CNEV Form Self-Dealing Protocol." *Id.* ¶¶ 22-31. Similarly, TNZ's current protestations that the breach-of-contract claim has nothing to do with the Protocol is belied by its pleading that TNZ's "Notice of Entry to sign onto the Protocol" was part and parcel of the agreement that it claims was breached. *Id.* ¶ 58. TNZ altogether ignores

3

these fatal inconsistencies between its current efforts to avoid federal jurisdiction and the pleadings in its operative Complaint.

While TNZ alleges the invalidity of the Protocol, the validity of the Protocol as a whole is irrelevant because it is well established that an agreement to arbitrate is a separable agreement and enforceable regardless of the validity of the Protocol as a whole. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001). The principle of "severability" dictates that an arbitration clause is legally separable from the remainder of the contract containing the arbitration clause on which an arbitration panel's jurisdiction is based. *Prima Paint*, 388 U.S. at 403-04. Thus, where, as here, the parties have clearly agreed to empower the arbitrators to resolve any challenges to the existence of the contract as a whole, any challenge is appropriately adjudicated by an arbitrator rather than by a court. TNZ makes no claim to the contrary. For this same reason, TNZ's discussion of the ongoing New York state court litigation between SNG and Golden Gate Yacht Club ("GGYC") is irrelevant. TNZ's agreement to arbitrate is valid and enforceable whether or not GGYC ultimately succeeds in invalidating CNEV as Challenger of Record.

**Background**

SNG, a Swiss yacht club, is the current holder and defender of the last two America's Cups. On March 2, 2003, in the 31st America's Cup race, SNG's representative in the race, Alinghi, defeated the then-current defender, TNZ. Meyer Decl. ¶ 3. On July 3, 2007, in the 32nd America's Cup, Alinghi successfully defended its title. *Id.* Shortly after the 32nd America's Cup, SNG received a challenge from CNEV and negotiated a Protocol with CNEV to govern the 33rd America's Cup (the "Protocol"). Compl. ¶¶ 21, 23; Meyer Decl. ¶ 4. The Protocol allowed other yacht clubs to compete in the 33rd America's Cup by submitting a Notice of Entry. Ex. B,

4

at 8-9. Numerous yacht clubs, including TNZ, have submitted Notices of Entry to compete for the 33rd America's Cup. Ex. H.[2]

### A.     The Parties' Arbitration Agreement

On July 25, 2007, TNZ submitted such a Notice of Entry, agreeing to take part in the 33rd America's Cup under the terms set forth in the Protocol. Compl. ¶¶ 39-44. This Notice of Entry was executed on behalf of Plaintiff Team New Zealand by its Managing Director, Grant Dalton. Ex. A, at 3. In the Notice of Entry, TNZ agreed to be bound by the dispute resolution provisions of the Protocol:

> **4. Arbitration and Dispute Resolution**
>
> The RNZYS [Royal New Zealand Yacht Squadron] and Team New Zealand each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol . . . .

Ex. A, at 2.[3]

The Protocol's dispute resolution provisions, in turn, include the following broadly worded arbitration agreement:

> **21. RESOLUTION BY ARBITRATION**
>
> Any dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents, the interpretation or breach thereof, shall be resolved by arbitration in accordance with the provisions of this Protocol, except if and where otherwise expressly set forth in this Protocol. Such arbitration shall be final and binding.

Ex. B, at 20.

---

[2]     These yacht clubs include: (1) Royal Thames Yacht Club; (2) Deutscher Challenger Yacht Club; (3) Circolo Vela Gargnano; (4) Gamla Stans Yacht Sällskap; (5) Club Nautico Gaeta; (6) Reale Yacht Club Canottieri Savoia; (7) Real Club Nautico Denia; (8) Yacht Club de Saint-Tropez; (9) Royal Belgian Sailing Club; (10) Royal Cape Yacht Club. Ex. H.

[3]     The Notice of Entry further provides that: "The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the terms of . . . the Protocol, and all applicable rules and obligations referred to in such Protocol . . . ." Ex. A, at 2.

5

By its terms, the dispute resolution mechanism in the Protocol—which TNZ expressly agreed to—requires arbitration of all claims "arising out of or in relation to this Protocol and/or the Applicable Documents." The term "Applicable Documents," in turn, is defined to "include[] the documents referred to in Article 2.5." Ex. B, at 4. The first document listed in Article 2.5 is the Deed of Gift. *Id.* at 7. Thus, TNZ's arbitration agreement clearly mandates arbitration of all claims arising out of or in relation to either the Protocol or the Deed of Gift.

### B.     The America's Cup Arbitration Panel

The arbitration panel under the Protocol has already been fully constituted, with its seat in New York, and consists of Henry Peter from Switzerland, Graham McKenzie from New Zealand, and Dr. Luis María Cazorla Prieto from Spain (collectively, the "Arbitration Panel"). Ex. D. The 33rd America's Cup arbitration panel has already decided other matters presented to it relating to the 33rd Cup. Ex. E. Having received the benefit of numerous submissions in connection with the 33rd America's Cup, Ex. E, at 9-11; Ex. H, the 33rd America's Cup arbitration panel issued a carefully reasoned award constituting nearly one hundred pages. Ex. E.

The use of arbitration panels to resolve all disputes relating to the America's Cup is well established in America's Cup history. Two of the three arbitrators on the 33rd America's Cup arbitration panel also served on the arbitration panel created in accordance with the Protocol for the 32nd America's Cup. Meyer Decl. ¶ 6. Likewise in the 31st America's Cup, in which TNZ was the defender of the Cup, there was an America's Cup arbitration panel to resolve disputes relating to the America's Cup. That particular arbitration panel was called upon to rule on the validity of SNG's challenge, which was declared valid. Ex. G. SNG then went on to win

6

the 31st America's Cup against nine competitors and subsequently won the 32nd America's Cup against eleven competitors. Meyer Decl. ¶ 3.

### C.  TNZ's Claims

TNZ's Complaint asserts two causes of action. The first count alleges breach of SNG's alleged fiduciary duties under the Deed of Gift and is premised on TNZ's claim that SNG negotiated an unfair Protocol. Compl. ¶ 54. The second count alleges that Defendants breached a contract whereby TNZ submitted its Notice of Entry in exchange for Defendants' promise to stage the 33rd America's Cup in 2009 in Valencia, Spain. *Id*. ¶ 58.

TNZ devotes a large portion of its Complaint to (i) cataloguing complaints with the fairness and validity of the Protocol and (ii) discussion of the GGYC state court litigation presently on appeal and awaiting a decision from the New York Appellate Division, First Department. As noted above, the validity of the Protocol is irrelevant because TNZ's agreement to arbitrate is a separable agreement that is enforceable regardless of the validity of the Protocol as a whole. The GGYC litigation is irrelevant because whether or not GGYC ultimately succeeds in invalidating CNEV as Challenger of Record, TNZ's agreement to arbitrate is valid and enforceable.

## Argument

Section 205 of the FAA allows removal of any action relating to an arbitration agreement falling under the New York Convention: "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9 U.S.C. § 205.

Section 202 of the FAA defines what agreements will be deemed to fall under the Convention: "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." *Id*. § 202. As defined in Section 202, the agreements falling under the Convention include those agreements described in Section 2—specifically, "any maritime transaction or a contract evidencing a transaction involving commerce." *Id.* § 2.

TNZ concedes that all of the requirements for subject matter jurisdiction are met here, except that TNZ contends that (i) the arbitration agreement is contained in a Protocol that is not "commercial" as that term is used in Section 202; and (ii) the subject matter of its claims asserted in this action is not covered under its agreement to arbitrate. Neither of these claims has merit.

I.   **The Protocol That Contains The Arbitration Clause Is Commercial**

    A.   **"Commercial" Is A Broad Term, Designed To Cover A Wide Range Of Activities**

TNZ does not cite a single case that interprets the "commercial" requirement of the New York Convention. This is not surprising because there is not a single opinion that supports its narrowly constrained definition of the term.

In *Island Territory of Curacao v. Solitron Devices, Inc.*, this Court concluded that the "commercial" limitation was "to exclude matrimonial and other domestic relations awards, political awards, and the like." 356 F. Supp. 1, 13 (S.D.N.Y 1973); *id.* ("It has been said in this connection (Quigley, Convention on Foreign Arbitral Awards, 58 A.B.A.J. 821, 823 (1972)): 'In the case of the United States reservation it seems clear that the full scope of 'commerce' and 'foreign commerce', as those terms have been broadly interpreted, is available for arbitral

8

agreements and awards.'"). Likewise in *Prograph Int'l Inc. v. Barhydt*, another district court explained that any agreement that Congress could regulate under its Commerce Clause authority should qualify as an agreement falling under the Convention. 928 F. Supp. 983, 988-89 (N.D. Cal. 1996); *accord Sumitomo Corp. v. Parakopi Compania Maritima, S.A.,* 477 F. Supp. 737, 740-41 (S.D.N.Y. 1979) (rejecting constrained interpretation of "commercial"). TNZ has not cited a single opinion that finds an arbitration agreement to fall outside the "commercial" requirement, other than in obvious contexts such as international diplomatic or political disputes and domestic relations awards.

>   B. **The Protocol Involves Numerous References To Commercial Matters And Is To Govern A Regatta That Will Involve The Expenditure of Hundreds Of Millions of Dollars**

The Protocol (which TNZ itself characterizes its arbitration agreement as being part of) is "commercial" under any standard. Indeed, the Protocol contains a section entitled "COMMERCIAL." Ex. B, at 17. In this section, the Protocol sets forth how much in proceeds each participating team, including TNZ, will be entitled to. *Id.* at 17-19. TNZ received approximately $14 million in the 32nd America's Cup. Meyer Decl. ¶ 2. And TNZ stood to reap even more in the 33rd Cup.

The America's Cup is a huge economic endeavor. The 32nd America's Cup cost approximately $240 million to organize. Meyer Decl. ¶ 2. The multi-challenger event contemplated by the Protocol for the 33rd America's Cup is anticipated to involve similar levels of expenditures. *Id.*

TNZ itself pleads that it has spent or committed to substantial resources in an effort to win the Cup (and the tens of millions of dollars that, under TNZ's own allegations, come with it). And *TNZ's own pleadings* in the companion antitrust action demonstrate the commercial nature of the America's Cup under TNZ's own view: (i) "Defendants compete with

Plaintiff [TNZ] and other sailing teams in the market for the right to hold the America's Cup, an international sailing competition, *which is a lucrative business opportunity*"; (ii) "[TNZ] sells the rights to sponsor the team to entities located throughout the world"; and (iii) "Defendants' anticompetitive conduct has directly and proximately caused Plaintiff to suffer injury to its business." Ex. C ¶¶ 1, 10, 52.

## II.   The Subject Matter Of TNZ's Complaint Relates To Its Arbitration Agreement

TNZ's contention that the subject matter of its Complaint is not covered under its arbitration agreement is meritless.

TNZ concedes that Defendants are *not* required at this stage to demonstrate the clause compels arbitration of this dispute. TNZ states that the Second Circuit has yet to address the issue, and thus relies on the standards articulated in *Beisler v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) and *Hawkins v. KPMG, LLP*, 423 F. Supp. 2d 1038, 1047 (N.D. Cal. 2006).

In *Beisler*, the Fifth Circuit explained that:

> [T]he district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Beisler*, 284 F.3d at 669. In *Hawkins*, the district court stated: "[I]n order to establish jurisdiction defendants must show, based on the pleadings and petition for removal, as well as judicially noticeable materials, that there is a reasonable possibility that defendants will be able to assert the arbitration clause to compel arbitration of plaintiff's claims . . . ." *Hawkins*, 423 F. Supp. 2d at 1047.

Either standard is easily satisfied here. TNZ signed a broad arbitration agreement, which provided that: "Any dispute, protest or claim arising out of or in relation to this Protocol

10

and/or the Applicable Documents [defined to include the Deed of Gift], the interpretation or breach thereof, shall be resolved by arbitration in accordance with the provisions of this Protocol . . . ." Ex. B, at 20. Thus, TNZ's arbitration agreement covers all disputes arising out of or in relation to either the Protocol or the Deed of Gift. In the case of a "broad" arbitration agreement such as this, the Second Circuit has explained that "if the allegations underlying the claim touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 77 (2d Cir. 1998)).

Here, both of the causes of action asserted in TNZ's Complaint relate to the Protocol, which is why TNZ goes on for pages to catalog its many complaints with the Protocol in its Complaint. The Complaint includes a section entitled "Alinghi and Sham Challenger CNEV Form Self-Dealing Protocol." Complaint ¶¶ 22-31. And, when it gets to outlining the two specific causes of action TNZ is asserting, the Complaint focuses again on the Protocol:

**Breach of Fiduciary Duty Claim**

- "Defendants have breached their duties of care, loyalty, good faith, and honesty . . . 2) by entering into the Protocol without engaging in the consensual process contemplated by mutual consent clause of the Deed of Gift; 3) by structuring the Protocol to advantage themselves at the expense of the trust's beneficiaries . . . ." *Id*. ¶ 54.

- "Defendants are engaging in self-dealing . . . 2) by entering into the Protocol without engaging in the consensual process contemplated by mutual consent clause of the Deed of Gift; 3) by structuring the Protocol to advantage themselves at the expense of the trust's beneficiaries . . . ." *Id*. ¶ 55.

**Breach of Contract Claim**

- "TNZ agreed, based on that condition, among others, that it would submit a Notice of Entry to sign onto the Protocol for the 33rd America's Cup." *Id*. ¶ 58.

11

Even if the claims somehow did not relate to the Protocol, TNZ concedes they do relate to the Deed of Gift. Its contention that the Deed of Gift is not an "Applicable Document" as defined in the arbitration provision of the Protocol contravenes the definition of Applicable Document as including all documents referred to in Article 2.5. Ex. B, at 4. The very first document listed in Article 2.5 is the Deed of Gift. *Id.* TNZ next sets up a strawman by arguing that the arbitration agreement is invalid because it would require arbitration of all disputes relating to the Deed of Gift and SNG cannot unilaterally dictate such an arbitration requirement. Motion at 11-13. What TNZ ignores is that the arbitration agreement does not purport to bind *all* beneficiaries. Rather, TNZ's arbitration agreement does not bind anyone other than TNZ and RZNYS. There is not a single case cited by TNZ that suggests in any way that such an arbitration agreement between two parties would be invalid.

**Conclusion**

For the reasons set forth above, Defendants respectfully request that this Court deny the Motion in its entirety.

Dated:      New York, New York
            June 18, 2008

                            Respectfully submitted,
                            SIMPSON THACHER & BARTLETT LLP


                            By   s/ Barry R. Ostrager
                                 Barry R. Ostrager
                                 Jonathan K. Youngwood
                                 George S. Wang
                            425 Lexington Avenue
                            New York, New York 10017-3954
                            (212) 455-2000 (phone)
                            (212) 455-2502 (fax)
                            bostrager@stblaw.com (email)
                            jyoungwood@stblaw.com (email)
                            gwang@stblaw.com (email)

                            **Attorneys for Defendants Société Nautique de Genève, Team Alinghi, S.A., AC Management, S.A., and Ernesto Bertarelli**

## CERTIFICATE OF SERVICE

I, Karli Johnsen, hereby certify under the penalty of perjury that on June 18, 2008 I served a true and correct copy of the attached:

- **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**
- **DECLARATION OF FRED MEYER**
- **AFFIDAVIT OF BARRY R. OSTRAGER**

upon:   Philip M. Bowman
Boies, Schiller & Flexner, LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022

David Boies
Boies, Schiller & Flexner, LLP
333 Main Street
Armonk, NY 10504

by tendering a true copy of the same in a properly addressed envelope to Federal Express for one-day overnight delivery service.

Dated: New York, New York

   June 18, 2008

*/s/ Karli Johnsen*
Karli Johnsen