**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
TEAM NEW ZEALAND LIMITED,                                      :
                                                               :
                              Plaintiff,                       :    Case No. 08-Civ-4215
                                                               :
            v.                                                 :    **AFFIDAVIT OF BARRY R.**
                                                               :    **OSTRAGER**
SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM                               :
ALINGHI, S.A., AC MANAGEMENT, S.A.,                           :
and ERNESTO BERTARELLI,                                        :
                                                               :
                              Defendants                       :
---------------------------------------------------------------x

STATE OF NEW YORK     )
                      : ss:
COUNTY OF NEW YORK    )

Barry R. Ostrager, Esq., being duly sworn, deposes and says:

1.      I am a member of the law firm Simpson Thacher & Bartlett LLP, attorneys for

Defendants, Société Nautique de Genève, Team Alinghi, S.A., AC Management, S.A., and

Ernesto Bertarelli (collectively, "Defendants").  I respectfully submit this affidavit in connection

with Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand.  I am

fully familiar with the facts and circumstances stated herein, based on personal knowledge, the

attached documents, and review of the files maintained by my firm.

2.      Attached hereto as Exhibit A is a true and correct copy of the Notice of Entry for

Royal New Zealand Yacht Squadron, dated July 25, 2007.

3.      Attached hereto as Exhibit B is a true and correct copy the signed Protocol

Governing the 33rd America's Cup, dated July 3, 2007.

4.      Attached hereto as Exhibit C is a true and correct copy of Plaintiff's Complaint

filed in the Southern District of New York, Case No. 08-CV-2228, dated March 6, 2008.

5.    Attached hereto as Exhibit D is a true and correct copy a news article entitled "Three Prestigious Members Nominated for Arbitration Panel," dated July 31, 2007.

6.    Attached hereto as Exhibit E is a true and correct copy of the 33rd America's Cup Arbitration Panel Decision in Case No. ACAP 33/01, dated September 7, 2007.

7.    Attached hereto as Exhibit F is a true and correct copy of the provisional distribution calculations prepared by AC Management SA as of September 16, 2007.

8.    Attached hereto as Exhibit G is a true and correct copy of the 31st America's Cup Arbitration Panel Decision in Case No. ACAP 00/06, dated December 17, 2000.

9.    Attached hereto as Exhibit H is a true and correct copies of the Notices of Entry for the following yacht clubs: (1) Royal Thames Yacht Club; (2) Deutscher Challenger Yacht Club; (3) Circolo Vela Gargnano; (4) Gamla Stans Yacht Sällskap; (5) Club Nautico Gaeta; (6) Reale Yacht Club Canottieri Savoia; (7) Real Club Nautico Denia; (8) Yacht Club de Saint-Tropez; (9) Royal Belgian Sailing Club; (10) Royal Cape Yacht Club.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Barry R. Ostrager, Esq.

Sworn to before me this 18th day of
June, 2008.

_____
Notary Public
STEPHANIE V. CROSSKEY
NOTARY PUBLIC, State of New York
No. 01CR6157463
Qualified in New York County
Commission Expires December 11, 2010

2

**EXHIBIT A**

# Notice of Entry

## 1.     Background

This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

Definitions used in the said Protocol shall apply to this Notice of Entry.

## 2.     Application

I, John Crawford am the Commodore of the Royal New Zealand Yacht Squadron and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by [Notary] hereunder.

**2.1**     **Yacht Club:** Royal New Zealand Yacht Squadron (RNZYS) hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

**2.2**     **Deed Of Gift:** Royal New Zealand Yacht Squadron is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

(i)     is not domiciled in Switzerland;
(ii)     is an organised yacht club;
(iii)     is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
(iv)     has an annual regatta on the sea or an arm of the sea.

**2.3**     **Certificate of Incorporation:** An original notarized certified copy of the RNZYS certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

**2.4**     **Annual Regatta:** The Notice of Race of the RNZYS annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

**2.5**     **Organised:** Details, such as the RNZYS existing by-laws, as well as its organization regulations and events calendar, demonstrating how the RNZYS is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

2.6     **Representation:**

RNZYS will be represented by Team New Zealand

All communications and notices are to be sent to:

Royal New Zealand Yacht Squadron
PO Box 46182
Herne Bay
Auckland , NZ
PH   09 360 6800

3.      **Bound By Protocol**

The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

4.      **Arbitration and Dispute Resolution**

The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. RNZYS further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5.      **Entry Fee and Performance Bond**

RNZYS submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

6.      **Challenger of Record**

The RNZYS and Team New Zealand each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, RNZYS may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The RNZYS and Team New Zealand  also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The RNZYS and Team New Zealand further acknowledge that Societé Nautique de Genève ("SNG") has commenced an arbitration proceeding before the Arbitration Panel



constituted under the Protocol in which it asks the Panel to confirm CNEV's status as Challenger of Record.

The RNZYS and Team New Zealand each accept and agree that AC Management SA, SNG, Team Alinghi and their affiliates are not responsible for any losses or damages that the RNZYS and/or Team New Zealand may incur as a result from GGYC's actions or from any court or arbitration proceedings in connection therewith.

Signatures:

RNZYS:

Name: J. C. CRAWFORD
Office: COMMODORE - RNZYS
Date: 25/07/07

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

**Team New Zealand**

By countersigning this Notice of Entry Team New Zealand confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

Name: GRANT DALTON
Office: MANAGING DIRECTOR
Date: 25/7/07

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

**EXHIBIT B**

# The Protocol Governing The Thirty Third America's Cup



# TABLE OF CONTENTS

1. BACKGROUND

2. PART A – DEFINITIONS – GENERAL PRINCIPLES – AMERICA'S CUP AUTHORITIES

3. PART B – COMPETITION

4. PART C – COMMERCIAL

5. PART D – DISPUTE RESOLUTION AND ENFORCEMENT

6. PART E – MISCELLANEOUS

**THE PROTOCOL GOVERNING THE
THIRTY THIRD AMERICA'S CUP**

(i)    **Société Nautique de Genève** ("SNG")

(ii)   **Club Náutico Español de Vela** ("Challenger of Record")

**BACKGROUND**

A.    Société Nautique de Genève is the current holder and trustee of a silver trophy known as the "America's Cup" in accordance with the terms of a Deed of Gift dated 24 October 1887.

B.    Société Nautique de Genève has received and accepted a notice of challenge from the Challenger of Record in accordance with the Deed of Gift.

C.    Société Nautique de Genève and the Challenger of Record record in this Protocol the arrangements they have mutually agreed in accordance with the terms of the Deed of Gift.

**AGREED AS FOLLOWS**

# PART A

# DEFINITIONS - GENERAL PRINCIPLES - AMERICA'S CUP AUTHORITIES

1.    **INTERPRETATION**

1.1    In the interpretation of this Protocol:

(a)    **ACC Rules** means, unless otherwise specified, version 5.0 of the Rules Governing America's Cup Class Yachts or as the case may be new Rules Governing America's Cup Class Yachts to be issued by ACM, as interpreted by the Measurement Committee and amended from time to time;

(b)    **ACC Yacht** means a yacht that complies with the ACC Rules;

(c)    **ACM** means a Swiss limited liability company with headquarters in Geneva, Switzerland, appointed by SNG to help SNG organize, manage and fulfill all of



3

SNG's obligations under the Deed of Gift;

(d)  **Applicable Document** means any document made under authority of this Protocol and includes the documents referred to in Article 2.5;

(e)  **Arbitration Panel** means the Arbitration Panel referred to in Article 22;

(f)  **Challenger** means, except where inconsistent with the context, the Challenger of Record and all Challenging Competitors;

(g)  **Challenger of Record** means Club Náutico Español de Vela and includes any person or entity which undertakes that yacht club's challenge as its representative, or such other Challenger as determined by Article 3.3;

(h)  **Challenger Selection** means the selection series referred to in Article 13.4;

(i)  **Challenging Competitor** means a qualified yacht club whose entry has been accepted by ACM under Article 4, and includes any person or entity which undertakes that yacht club's challenge as its representative, but does not include the Defender or Challenger of Record;

(j)  **Competition Regulations** means the regulations issued by ACM pursuant to Article 17.1;

(k)  **Competitor** means the Defender or a Challenger or any one or more of them as the case may be;

(l)  **Competitors' Commission** means a forum of all Competitors and ACM for the exchange of information and consultation, established pursuant to Article 10;

(m)  **Course Area** means one or more circles within the Race Area on which courses for racing during the Event may be set at the Venue;

(n)  **Deed of Gift** means a Deed of Gift dated 24 October 1887 between George L Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985;

(o)  **Defender** means the entity selected by SNG to defend the America's Cup in the Match on its behalf;

(p)  **Designer** means a person who has or is intended to apply substantial intellectual creativity and judgment to the determination of the shape or structure of the following: a yacht's hull, deck, cockpit, mast tube, geometry of the mast rigging appendages or sails (excluding battens and sail hardware). For the avoidance of doubt, Designer does not mean a person who designs any other components other than those listed above, or who develops, modifies, operates, analyses the results of, or provides instructions for the use of, any design tool or resource including but not limited to computer software or hardware, tow tanks or wind



4

tunnels or any other testing facility;

(q)   **Event** means the Regatta, all Qualifying Regattas, any defender trials at the Venue as determined by the Defender and SNG pursuant to Article 12, and any events that may be announced by ACM from time to time;

(r)   **Event Authority** means the person or body appointed by ACM pursuant to Article 6;

(s)   **Event Regulations** means regulations issued by ACM pursuant to Article 18;

(t)   **Hull** shall have the same meaning as ascribed in the ACC Rules. If no meaning is defined in the ACC Rules, Hull shall mean the fair body of the yacht up to the sheerline, except for the deck, appendages, mast or other equipment that may be installed;

(u)   **Match** means the 33rd match between the Defender and the winner of the Challenger Selection, subject to Article 13.4;

(v)   **Measurement Committee** means the committee appointed by ACM pursuant to Article 5.4 (a) (iii);

(w)   **Net Surplus Revenue** means the revenue available for distribution to Competitors as calculated pursuant to Article 19;

(x)   **Notice of Entry** means the document required from Challenging Competitors by Article 4.1;

(y)   **Notice of Race** means the Notice of Race for the Regatta and the Qualifying Regattas issued by ACM pursuant to Article 2.5 ;

(z)   **Meteorological Data Service** means the meteorological and oceanographic data collection service described in Article 15;

(aa)  **Protocol** means this Protocol together with any amendment, or any replacement Protocol agreed by the parties that is to govern the 33rd America's Cup.

(bb)  **Qualifying Regattas** means the regattas referred to in Article 11;

(cc)  **Race Area** means the area of water on which Course Areas may be set;

(dd)  **Race Committee** means the committee appointed by ACM pursuant to Article 5.4 (a) (ii);

(ee)  **Racing Rules** means the rules to govern racing in the Event to be issued by ACM pursuant to Article 2.5 ;

(ff)  **Regatta** means Trials, Challenger Selection and the Match;

 

5

(gg) **Regatta Director** means the person appointed by ACM pursuant to Article 7;

(hh) **Regatta Officials** means any persons appointed by ACM pursuant to Article 5.4 (a), but does not include members of the Sailing Jury or the Arbitration Panel;

(ii) **Sailing Instructions** means the rules to be issued by ACM pursuant to Article 2.5 ;

(jj) **Sailing Jury** means the Sailing Jury referred to in Article 22;

(kk) **Schedule** means the Event schedule to be announced by ACM pursuant to Article 13.2;

(ll) **SNG** means Société Nautique de Genève of Geneva, Switzerland, as holder of the America's Cup;

(mm) **Technical Director** means the Technical Director of the America's Cup Class appointed by ACM pursuant to Article 8;

(nn) **Trials** means regattas forming part of the Regatta and held prior to the Challenger Selection

(oo) **Venue** means the venue to be determined by and announced by ACM pursuant to Article 13.1 and comprises the Competitors' bases, public areas, all berthage areas, water space, airspace and all other areas under the control of ACM. Where the context so requires, Venue shall also mean the venue of any Qualifying Regatta, and any special event announced by ACM that is not held at the Venue.

1.2 **Singular/Plural:** Terms defined above shall include the singular and the plural version of that defined term where the context requires.

1.3 **Cross reference:** Unless otherwise specified, reference to an Article is a reference to an Article in this Protocol.

1.4 **Official dictionary:** The English language shall prevail in the interpretation of this Protocol. The meaning of any word used in this Protocol and any Applicable Document, unless defined in Article 1.1, shall be determined by reference to the Oxford English Dictionary, Second Edition – CD Rom Version 3.1 (Oxford University Press 2004) or any later issued version.

1.5 **Appendixes:** A reference to an Appendix is a reference to an Appendix to this Protocol.

## 2. GENERAL PRINCIPLES

2.1 **Protocol purpose and intent:** The general underlying purpose and intent of this Protocol shall be to promote a friendly competition between foreign yacht clubs, to realize the sporting and commercial potential of the America's Cup, and to encourage world-wide growth and interest in the America's Cup as the premier

6

event in the sport of sailing, consistent with the provisions of the Deed of Gift.

2.2　**Allocation principle:** The spirit of the Event is to organize the Match between the Defender and a Challenger and a process to select such Challenger. Except as otherwise indicated in this Protocol, the interest of the Defender in the Event is one half, and the interest of the Challenger of Record is one half. This proportion of interest shall be applied, as the circumstances sensibly require, in all matters, commercial or competitive.

2.3　**Fair Competition:** A Competitor shall compete in compliance with recognized principles of sportsmanship and fair play.

2.4　**Event Support:** All parties to this Protocol and all Competitors shall act in a manner that supports and promotes the Event and shall not do any act or thing that damages the image or reputation of the America's Cup or the Event or brings it into disrepute.

2.5　**Applicable rules:** The Event shall be governed by:

　　(a)　the Deed of Gift;

　　(b)　this Protocol;

　　(c)　the Competition Regulations, the Event Regulations and the ACC Rules;

　　(d)　the Notices of Race;

　　(e)　the Sailing Instructions;

　　(f)　the Racing Rules.

2.6　**Precedence of rules:** Unless expressly provided otherwise, the documents referred to in Article 2.5 shall have precedence in the order the documents are listed with the intent that any express conflict between the provisions of such documents shall be resolved in favour of the document first listed.

2.7　**Binding rules:** The Protocol is:

　　(a)　Between SNG and the Challenger of Record, a bilateral agreement under which both parties have rights and obligations and which cannot be modified unilaterally by either party, and records the terms and conditions agreed pursuant to the mutual consent provisions of the Deed of Gift.

　　(b)　For any other entity which is not a party hereto (especially the Challenging Competitors), a set of rules, which governs the Event and which has full binding effect over all Challenging Competitors based on their acceptance of those rules upon registration in the Event.

　　(c)　Further rules, such as the ACC Rules, the Event Regulations, the Competition Regulations, the Notices of Race, the Sailing Instructions, the

7




Racing Rules and any other Applicable Document shall be binding for all Competitors. As signing parties to this Protocol, SNG and the Challenger of Record commit to exercise their best endeavors to fully enforce those rules over all Competitors and in all respects.

(d) If a Challenger disputes the binding effect of the Protocol, SNG shall be entitled to disqualify such Challenger to participate in the Event.

2.8 **Applicable law:** This Protocol, the Event and any dispute related hereto shall be subject to New York law.

## 3.  CHALLENGER OF RECORD

3. 1 **First challenge accepted:** The challenge received by SNG from the Challenger of Record was the first challenge received by SNG, and met the requirements of the Deed of Gift.

3. 2 **Notice of withdrawal of the initial challenge:** The Challenger of Record shall give 120 days written notice of an intention to withdraw its challenge. The Challenger of Record's challenge shall remain valid until expiry of the 120 days notice period. Withdrawal of the challenge without giving notice of an intention to withdraw the challenge in accordance with this Article shall be always deemed to be a notice of intention to withdraw the challenge in compliance with this Article. SNG may by written notice to the Challenger of Record waive or shorten the notice period.

3. 3 **Selection of an alternative Challenger of Record:** Upon the withdrawal or disqualification of the Challenger of Record, SNG shall select, at its sole and exclusive discretion, a new or an existing Challenging Competitor to be the new Challenger of Record. If no Challenging Competitor is willing to become the new Challenger of Record, the new Challenger of Record shall be the Challenging Competitor who was the first in time to submit to ACM a completed Notice of Entry. The new Challenger of Record shall execute this Protocol and shall be deemed to entirely replace the previous Challenger of Record in its contractual rights and duties.

3. 4 **Challenger of Record duties:** The Challenger of Record shall not owe any additional duties to the Challenging Competitors over and above any duties that may be owed as between Competitors generally.

## 4.  CHALLENGING COMPETITORS

4. 1 **Notice of Entry:** Other yacht clubs may become a Challenging Competitor by applying to enter the Event on or before the date to be defined by ACM pursuant to Article 4.2. Applying to enter the Event means completing and submitting a completed Notice of Entry in a form to be issued by ACM.

4. 2 **Meet Challenge requirements:** To the extent any accepted Challenging Competitor might become the Challenger for the Match, any Notice of Entry will only be taken into consideration by ACM if the applicant yacht club meets all the




8

requirements to be the Challenger in the Match, as set out in the Deed of Gift. this Protocol and the Applicable Documents.

4. 3  **Powers of ACM:** As part of the Event Regulations, ACM shall define at its sole discretion:

   (a)  The content of the Notice of Entry form including unconditional acceptance of the dispute resolution provisions of this Protocol;

   (b)  The documents that will be presented with the Notice of Entry;

   (c)  The time limits for registering;

   (d)  An entry fee and a late entry fee to be paid to and to form part of the revenue of ACM;

4. 4  **Acceptance of Challenging Competitors:** ACM may. at its sole and entire discretion, accept or reject any entry received.

4. 5  **Rights and duties of Challenging Competitors:** Upon acceptance by ACM, the following duties and rights apply to each Challenging Competitor

   (a)  The Challenging Competitor must comply with the Applicable Documents

   (b)  The Challenging Competitor shall only acquire the specific and limited rights that are expressly allocated to the Challenging Competitors under this Protocol and the Applicable Documents.

   (c)  Provided the Challenging Competitor has not been disqualified until the end of the Match, neither has withdrawn his entry, it shall be entitled to a share in the distribution of the Net Surplus Revenue as provided for in Article 19.2

   (d)  A Challenging Competitor is not party to this Protocol. The Challenging Competitor has an expectation to become the Challenger for the Match, provided the Challenging Competitor wins the Challenger Selection.

4. 6  **Withdrawal by a Challenging Competitor:** A Challenging Competitor may withdraw its entry as a Competitor by written notice to ACM. Any Challenging Competitor withdrawing its entry as a Competitor before being eliminated in competition will forfeit all fees paid on or after submitting the Notice of Entry to ACM. A Challenging Competitor which fails to participate in the Event (even partially) without the approval of ACM shall be deemed to have given notice of withdrawal of its entry and of further participation in the Event.

4. 7  **Entry recourse:** There shall be a right of recourse to the Arbitration Panel for any matter related to the entry into the Event. The Arbitration Panel decision shall be final and binding on the parties.




9

**5.    SNG AND ACM**

5. 1    **Organizing responsibilities:** SNG shall have the sole responsibility to organize and manage the Event in such manner as it shall in its discretion determine consistent with the Deed of Gift general principles set out in Article 2.

5. 2    **Appointment of ACM:** To meet its obligations set out in this Protocol, the Parties agree that SNG shall appoint ACM to provide professional commercial management expertise and financial resources to minimise the risk of losses. All losses, expenses and costs incurred in organising and managing the Event shall be the sole responsibility of ACM.

5. 3    **Management of the Event:** ACM shall have the ultimate responsibility for the management, organization, and financing of the Event. ACM shall act in a manner that is consistent with the provisions of the Deed of Gift and this Protocol.

5. 4    **Powers of ACM:** For the purpose of fulfilling the duties set out in Article 5.3, ACM is granted the following powers:

(a)    the power to appoint the following persons and bodies:

(i)    the Event Authority (see Article 6);

(ii)    the Race Committee (see Article 7);

(iii)    the Measurement Committee (see Article 8);

(iv)    the umpires (see Article 9);

(v)    such other persons as are reasonably necessary in discharging the duties outlined in Article 5.3 and in meeting the purpose and intent set out in Article 2.1.

If the Challenger of Record objects to the appointment on grounds of neutrality of any person to a senior position on the Race Committee, the Measurement Committee, or as an umpire, it may within seven (7) days of the appointment, refer the appointment to the Sailing Jury who shall determine whether such person is capable of exercising neutral judgment to hold the position to which it is appointed.

(b)    the power to unilaterally establish the rules listed under Article 2.5 (c) to (f);

(c)    the power to amend such rules, provided any material amendment shall require the approval of the Defender and the Challenger of Record. If the Defender and/or the Challenger of Record unreasonably withhold their consent, the Arbitration Panel shall make, upon ACM request, the final decision on the proposed amendment;

(d)    When establishing and amending those rules, ACM may impose any rule and restriction on the Competitors that are necessary to the fulfillment of its

10

duties under the Deed of Gift and this Protocol;

(e)    the power to enforce the terms of the rules listed under Article 2.5. ACM shall be entitled to fine Competitors for non-compliance. Fines and penalties shall be determined taking into account the principles referred to in Article 31. A Competitor shall be entitled to appeal any fine or penalty imposed at any time to the Arbitration Panel within seven (7) days of being notified of a fine being imposed. ACM shall be entitled to deduct the fine from any moneys due at anytime to be paid to the Competitor, or otherwise take any legal action necessary to recover the fine. No Competitor shall be entitled to participate in the Event where a fine remains outstanding for more than 30 days, unless an appeal has been lodged with the Arbitration Panel and remains to be decided.

(f)    the power to exercise any competence and to take any decision in relation to the Event, provided such power has not been attributed to another body or person by this Protocol.

5.5    **Management fee:** ACM shall be paid a management fee of 10% of the Net Surplus Revenue.

5.6    **Commercial rights:** To assist ACM to raise all necessary funds to organise and manage the Event, all commercial rights of such Event shall vest in ACM. Such commercial rights shall include (without limitation):

(a)    funds and services (if any) provided by authorities related to the Venue;

(b)    sponsorship and official supplier agreements of the Event;

(c)    global media rights including, but not limited to, mobile telephone rights, still images and moving images;

(d)    Event merchandising;

(e)    ticketing and entry fees;

(f)    entertainment;

(g)    concessions;

(h)    such other commercial rights and fundraising opportunities as ACM or the Event Authority may identify.

## 6.    EVENT AUTHORITY

6.1    **Appointment:** ACM shall appoint an Event Authority to organize and manage the Event.

6.2    **Event Authority's duties:** The Event Authority's duties which shall be discharged as it shall in its discretion determine consistent with the general principles set out

11

in Article 2 and the directions of ACM, shall include:

(a)   organizing and managing the Event;

(b)   establishing the timing of the Event consistent with the Schedule to be announced by ACM pursuant to Article 13.2;

(c)   endeavouring to make available space at the Venue for the Competitors at reasonable cost to establish an operational base;

(d)   raising funds to meet the costs of the Event by developing the commercial rights referred to in Article 5.6 to best advantage;

(e)   promoting the Event;

(f)   meeting its other obligations under this Protocol.

## 7.   RACE COMMITTEE

ACM shall appoint a Race Committee to conduct the races of the Event. The Race Committee shall comprise a Regatta Director who shall be Chairman, a Principal Race Officer and such other officers as may be reasonably required.

## 8.   MEASUREMENT COMMITTEE

ACM shall appoint a Measurement Committee to ensure compliance with the ACC Rules and other measurement requirements, comprising the Technical Director as its Chairman, and not less than 2 additional persons. The members of the Measurement Committee shall be appointed by ACM in consultation with the Technical Director.

## 9.   UMPIRES

ACM shall appoint a Chief Umpire and, in consultation with the Chief Umpire, such other umpires as may be reasonably required to umpire races of the Event.

## 10.   COMPETITORS' COMMISSION

10.1 **Forum:** ACM shall establish and invite a Competitors' Commission which shall hold regular meetings, not less than two per year, as a forum to exchange information and to consult. The Competitors' Commission shall have no voting powers.

10.2 **Representatives:** Each Competitor and ACM shall have the right to appoint up to two representatives to the Competitors' Commission. The Regatta Director may attend to the meeting of the Competitors' Commission. ACM may invite such other persons as may from time to time be appropriate. ACM, the Defender and the Challenger of Record shall collectively appoint by a majority vote a Chairman to conduct the meetings of the Competitors' Commission.

12

10.3 **Membership to cease on elimination:** Upon a Challenger (including the Challenger of Record) withdrawing, being excused, eliminated, or disqualified by the Sailing Jury or the Arbitration Panel from further participation in the Event, such Challenger shall, unless otherwise agreed by the Sailing Jury or the Arbitration Panel, cease to be a member of the Competitors' Commission.

10.4 **No power to amend:** The Competitors' Commission has no power to amend this Protocol or any other Applicable Documents.

10.5 **No right of making an application:** The Competitors' Commission shall have no right to make application to or make any submission to the Sailing Jury or the Arbitration Panel.

10.6 **Minutes:** Minutes of the Competitors' Commission shall be taken and distributed by ACM to all Competitors represented in the Competitors' Commission.

10.7 **Funding of Competitors' Commission:** The costs of the meetings of the Competitors' Commission shall be borne by ACM as an expense under Article 19.1.

# PART B

## COMPETITION

### 11.  THE QUALIFYING REGATTAS

11.1 **Qualifying Regattas:** There may be Qualifying Regattas prior to the commencement of the Challenger Selection. The Qualifying Regattas shall be held as advised by ACM when announcing the Schedule referred to in Article 13.2.

11.2 **Purpose of the Qualifying Regattas:** Competitors may be required to compete in the Qualifying Regattas as determined by ACM. Such Qualifying Regattas may determine which Challengers will proceed to the Regatta. The scoring during the Qualifying Regattas may be differentially weighted as determined by ACM.

11.3 **Yachts:** The Qualifying Regattas held in the years prior to the Regatta are likely to be held in ACC Yachts which comply with version 5.0 of the ACC Rules.

### 12.  DEFENDER TRIALS

SNG with the approval of the Defender may at its sole option require ACM to organize defender trials at the Venue or elsewhere in such manner and at anytime prior to the Match as it shall in its sole discretion determine, either with one or multiple defender candidates.

### 13.  THE REGATTA

13. 1 **Venue:** ACM will select and announce the Venue for the Regatta on or before 31st December 2007, or such later date announced on 31st December 2007 as may be reasonably necessary to complete selection and contracting. In the event that the

13

authorities at the Venue fail to meet their contractual obligations arising from the selection of the Venue, or it becomes impossible or difficult to hold the Regatta at the Venue, ACM may, on at least 90 days notice, select an alternative venue and/or dates for the Regatta consistent with the provisions of the Deed of Gift.

13. 2 **Schedule:** The dates of the Event including the Qualifying Regattas and the Regatta will be announced by ACM on or before 31st December 2007 or such later date announced on 31st December 2007 as may be reasonably required, provided that the Match will not be held before 2009 nor after 2011, and the Challenger Selection will not commence within 16 months from the announcement of the Venue and the Schedule. ACM will give the Challenger of Record an opportunity (not being less than seven days or more than 14 days) on a strictly confidential basis to make recommendations to ACM on the draft Schedule before it is published.

13. 3 **Trials ,:** There may be Trials  forming part of the Regatta which may be compulsory for all Challenging Competitors. The results of the Trials  may select the Competitors for the Challenger Selection. The Trials  may be held as advised by ACM when announcing the Schedule in accordance with Article 13.2.

13. 4 **Selection of the Challenger for the Match:** SNG and the Challenger of Record have agreed to hold a selection to select one Challenger to compete in the Match (the Challenger Selection). The winning Challenger of the Challenger Selection shall become the challenger under the Deed of Gift in the Match. If the winning Challenger of the Challenger Selection is for any reason ineligible to be the challenger in the Match, then the Challenger which placed second in the Challenger Selection, or failing the eligibility of that Challenger, the Challenger which gained the next highest place in the Challenger Selection and which is eligible, shall become the challenger in the Match. If no Challenger is eligible, SNG will be declared the winner of the Match.

13. 5 **Trials and Challenger Selection format:** The Trials and Challenger Selection format shall be announced by ACM when announcing the Schedule. It may provide for the Defender an option to participate wholly or partly at its discretion in the Trials and Challenger Selection other than the final between the two Challengers to select a Challenger for the Match.

13. 6 **Match format:** The winner of each race in the Match scores one point, the loser scores no points, and the winner of the Match will be decided by the first yacht to score five points.

13. 7 **Race Area:** The Race Area and the Course Area including their format and dimensions for the Qualifying Regattas and the Regatta, as well as the use outside those periods, shall be defined by ACM in the Competitions regulations.

## 14.   COMPETING YACHTS

14.1 **Revision of the ACC Rules:** ACM shall issue new ACC Rules on or before 31st December 2007, or such later date announced on 31st December 2007, as it may

  

14

be reasonably necessary to complete review and revision of the ACC Rules. There will be a minimum of 18 months between the issue of the new ACC Rules and the first race of the Regatta in ACC Yachts measured under the new ACC Rules. The new ACC Rules may provide for yachts having a maximum length overall of ninety feet in length overall, a draft whilst racing of 6.5m, but with a compulsory sliding keel system capable of reducing the draft to 4.1m for entering port and docking. All racing in the Regatta shall be undertaken in ACC Yachts that comply with the new ACC Rules.

14.2 **Sliding keels:** Centre-board or sliding keel vessels are permitted provided they meet the requirements of the ACC Rules.

14.3 **Number of authorized yachts:** The Competition Regulations issued by ACM shall determine the number of ACC Yachts that can be built, acquired or otherwise obtained by each Competitor. Such rules shall include

    (a)  a prohibition on the building of a new yacht that complies with or is intended to comply with ACC Rule Version 5.0 for use in the Qualifying Regattas; and

    (b)  to permit the modification of one Version 5.0 or any earlier version ACC yacht up to 50% of the original hull surface for use in the Qualifying Regattas.

14.4 **Construction in country:**

    (a)  **Lamination of Hull:** The requirement of the Deed of Gift that the ACC Yacht of a Competitor be constructed in the country of the yacht club the Competitor is representing, shall be deemed to be satisfied by the lamination or another form of construction of all parts of the Hull in such country: materials, moulds and other components and hardware used in or during the lamination or other form of construction of the Hull may be obtained from any source. There is no restriction on the locality of assembly, or modification of any other part of an ACC Yacht.

    (b)  **Inspection:** each Competitor shall arrange for a member of the Measurement Committee to inspect the Hull of that Competitor's ACC Yacht at its place of construction to affirm that the Hull has been constructed in accordance with Article 14.4 (a). Affirmation by the Measurement Committee shall be final and conclusive evidence of compliance with Article 14.4 (a).

    (c)  **Free access:** the fabrication, acquisition or use of any component, materials or resources used to complete an ACC Yacht may be sourced without restriction as to their country of origin, place of fabrication, assembly, construction or development; for the avoidance of doubt, any such component, materials or resources must nevertheless comply with the restrictions set out in the Competition Regulations and the ACC Rules.

## 15.  METEOROLOGICAL DATA SERVICE

**Meteorological Data Service:** The Event Authority shall establish and manage a meteorological and oceanographic data collection service at the Venue and make the data available to Competitors electronically (the Meteorological Data Service).

15

The service shall be provided with the specifications and procedures announced by ACM. Net costs of the Meteorological Data Service will be borne by ACM as an expense under Article 19.1. Competitors will be restricted as to other sources of meteorological and oceanographic data as set out in the Competition Regulations.

## 16.   CREW MEMBER AND DESIGNER RESTRICTIONS

16.1 **General provisions**:

(a)   The America's Cup is partly a design competition and partly a sailing competition. To preserve and protect the America's Cup as a bona fide design competition between the Competitors, and not a competition between combinations of Competitors, a Designer or a crew member who contracts with a Competitor for at least the duration of the Event, or in the case of a Challenging Competitor, until its elimination from the Event (whether before or after becoming a Challenger), may not be employed or engaged in any capacity by another Competitor without the prior written consent of the first contracting Competitor which may be given at the time of contracting.

(b)   Notwithstanding the above, on or following 1 October 2008 (or such later date as may be announced by ACM), no Competitor shall engage a crew member, who was engaged by another Competitor after 31st of August 2007 (whether before or after becoming a Competitor in the 33rd America's Cup)..

(c)   Notwithstanding the above, on or following 30 days after issuance of the new ACC Rules pursuant to Article 13.1 (or such later date as may be announced by ACM), no Competitor shall engage a designer, who was engaged by another Competitor after 31st of August 2007 (whether before or after becoming a Competitor in the 33rd America's Cup).

(d)   Competitors shall promptly file with the Event Authority the names of persons contracted for the periods described above. The Event Authority shall maintain a register which shall be available electronically for inspection by any Competitor or bona fide intending Competitor.

16.2 **Penalty for breach**: A Competitor that breaches this Article shall be ineligible to compete, or to continue to compete, in the Event unless the Sailing Jury is satisfied that the breach was caused by error or oversight, that the person that was wrongfully engaged has terminated all involvement with the Competitor in breach, and that no material advantage was gained.

16.3 **No nationality rules:** In accordance with past practice in America's Cup competition, and following repeal of all past Trustee Interpretative Resolutions on 2 March 2003, there shall be no requirement regarding the nationality or residency of any crew member, or any Designer, of a Competitor's ACC Yacht.

16.4 **Power of ACM:** The restrictions regarding crew members and Designers set out in this Article may be detailed or amended in the Competition Regulations to be issued by ACM to reinforce the purpose and intent of the restriction set out in



16

Article 16.

## 17. FURTHER RULES AND RESTRICTIONS

17.1 **Competition Regulations:** Upon announcing the Schedule, ACM shall publish the Competition Regulations consistent with the provisions of this Protocol, which shall contain further competition rules and restrictions which may include (but not limited to) limiting the number of support boats; limiting the number of sails; limiting modification of yachts; training and testing restrictions; meteorological and oceanographic data restrictions, reconnaissance restrictions, further crew and designer restrictions, anti-doping restrictions, and anti-gambling restrictions. ACM may amend the Competition Regulations from time to time. The Competition Regulations may be published in parts at various times as may be required to guide Competitors and intending Competitors. ACM will give the Challenger of Record an opportunity (not being less than seven days or more than 14 days) on a confidential basis to make recommendations to ACM on draft Competition Regulations before they are published.

17.2 **Notice of Race and Sailing Instructions:** ACM shall issue within approximately 60 days before the first race of the Event a Notice of Race and Sailing Instructions for each race of the Event which shall be consistent with the terms of this Protocol.

17.3 **Racing Rules:** ACM shall publish the Racing Rules that shall apply to the Event within approximately 60 days before a race of the Event in which they are applicable.

# PART C

# COMMERCIAL

## 18. EVENT REGULATIONS

No later than 31st December 2007 or such later date announced on 31st December 2007 as may be reasonably required, ACM shall publish the Event Regulations that will apply to all Competitors and will define the scope of the Competitors' commercial rights to allow ACM to exploit the full commercial potential of the Event for the benefit of all Competitors collectively. ACM may amend the Event Regulations from time to time. ACM will give the Challenger of Record an opportunity (not being less than seven days or more than 14 days) on a confidential basis to make a submission to ACM on draft Event Regulations before they are published.

## 19. NET SURPLUS REVENUE

19.1 **Calculation of the Net Surplus Revenue:** The Net Surplus Revenue shall be the total of all revenue received by ACM for the Event, less the costs of:

(a) Salaries and bonuses of staff and management engaged by ACM or its subsidiaries for the purposes of the Event;




17

(b)    The Regatta Officials;

(c)    The Dispute resolution and enforcement costs;

(d)    The Race Committee;

(e)    The Measurement Committee;

(f)    TV and other media production;

(g)    Sponsor fulfillment obligations;

(h)    Administration;

(i)    Promotion;

(j)    Insurance;

(k)    Interest, finance and banking charges;

(l)    All taxes, duties, levies and social services charges payable, including any taxes incurred by ACM or its subsidiaries; for the avoidance of doubt, any VAT due or paid by ACM or its subsidiaries shall be considered as an expense to be deducted under this Article;

(m)    Expenses incurred by SNG in discharging its duties as holder and trustee of the America's Cup;

(n)    Costs and expenses related to the Meteorological Data Service;

(o)    Costs of liquidating the Event-related assets at the end of the Match; and

(p)    Other expenses incurred by ACM or its subsidiaries in organising or promoting the Event.

but shall not include the costs of any Competitor to compete in the Event.

19. 2 **Distribution of the Net Surplus Revenue:** The Net Surplus Revenue shall be determined (at least on a provisional basis) within 180 days after the last race of the Match and paid within 90 days of its determination in the following priority:

(a)    the payment of the management fee referred to in Article 5.5 to ACM;

(b)    the residual of the Net Surplus Revenue shall be paid to the Competitors as follows:

(i)    one half to be distributed to the Defender;

(ii)    the remainder shall be distributed to the Challengers as follows (the same distribution structure that applied for the Challenger Selection for



18

the 30th, 31st, and 32nd America's Cups):

- 40% divided equally amongst all Challengers;

- 30% divided equally amongst all Challengers semi-finalists in the Challenger Selection;

- 20% divided equally amongst both Challengers finalists in the Challenger Selection;

- 10% to the winner of the Challenger Selection;

(iii) notwithstanding the provisions of Article 19.2 (b) (ii), any Challenger that has withdrawn, or deemed to have withdrawn, or that has been disqualified from competing further in the Qualifying Regattas or the Regatta by the Sailing Jury or the Arbitration Panel, shall not be entitled to receive any part of the Net Surplus Revenue unless the Sailing Jury or the Arbitration Panel orders the restoration in whole or in part of such entitlement where the Sailing Jury or the Arbitration Panel, as the case may be, is satisfied that forfeiture arose through inadvertence or was beyond the reasonable control of the Challenger, and has not resulted in ACM or its subsidiaries incurring any significant actual or contingent liability, expense or lost revenue; insufficient funds shall not be grounds for the Sailing Jury or the Arbitration Panel to restore in whole or in part the entitlement of a Challenger to receive any part of the Net Surplus Revenue.

(c) ACM may at its sole absolute discretion make interim distributions at any time on such terms and conditions as it may determine.

19. 3 **Basis of payment:** The amount payable to Competitors pursuant to Article 19.2 (b) shall be paid as a contribution to the gross expenses of each Competitor. Any amount in excess of a Competitor's gross expenses shall only be paid to such Competitor if ACM is satisfied on reasonable grounds that such payment would not breach any duty or obligation to which SNG and/or ACM is subject.

19. 4 **Half yearly reports:** ACM shall, from 30 June 2008, prepare and distribute to each Competitor six-monthly reports of the forecasted Net Surplus Revenue available for distribution at the conclusion of the Event. The final report containing only the actual Net Surplus Revenue available for distribution and the distributing calculations shall be audited and distributed to each Competitor with a copy of the audit report. All reports shall be strictly confidential to the Senior Management of a Competitor. ACM may require persons having access to the reports first sign a confidentiality agreement.



19

## PART D

## DISPUTE RESOLUTION AND ENFORCEMENT

### 20.   MEASUREMENT COMMITTEE

20. 1 **Jurisdiction:** Except as set out in Article 20.2, all matters relating to the measurement of the ACC Yachts, the interpretation of the ACC Rules, or the determination as to whether a yacht meets the ACC Rules, or the Racing Rules referred to in Article 17.3 insofar as they relate to a yacht's equipment, shall be determined by the Measurement Committee. The Measurement Committee shall have no power or authority to amend, alter, cancel or add to the ACC Rules or the Racing Rules relating to a yacht's equipment, but shall be entitled to interpret the words used in such documents. The Measurement Committee may remedy a procedural defect resulting in non-compliance by a Competitor, other than when racing, provided following the procedural defect being remedied, there will be no material advantage or prejudice to any Competitor and the remedy results in full compliance with the ACC Rules. All decisions of the Measurement Committee shall be determined by majority vote.

20. 2 **Appeal:** Decisions of the Measurement Committee within its jurisdiction shall be subject to appeal to the Sailing Jury, which shall have full powers to determine any appeal including replacing any determination or interpretation made by the Measurement Committee as it considers fair and reasonable to do so.

20. 3 **Delegation:** The Technical Director may delegate one or more of the members of the Measurement Committee to carry out measurement or inspection on behalf of the Measurement Committee. The Measurement Committee shall be entitled, in the absence of manifest error, to act on a report of any such delegated member(s).

20. 4 **Payment of Measurement Committee's fees and expenses:** Competitors shall pay reasonable fees as determined by ACM and the expenses incurred for the services of the Measurement Committee outside the time period during which the Regatta is held.

### 21.   RESOLUTION BY ARBITRATION

Any dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents, the interpretation or breach thereof, shall be resolved by arbitration in accordance with the provisions of this Protocol, except if and where otherwise expressly set forth in this Protocol. Such arbitration shall be final and binding.

### 22.   ARBITRATION BODIES

There shall be two dispute resolution bodies: a Sailing Jury, which shall interpret provisions or resolve disputes of a sporting or technical nature arising under the

20

Competition Regulations, the Notices of Race, the Sailing Instructions and the Racing Rules, and an Arbitration Panel, which shall interpret all other provisions of this Protocol or resolve other disputes. The Sailing Jury and the Arbitration Panel shall in making any determination give effect to all provisions of this Protocol.

## 23. JURISDICTION

The Sailing Jury and the Arbitration Panel shall have the power to determine their respective jurisdiction upon receiving an application. In case of doubt on whose jurisdiction shall prevail, the Arbitration Panel shall determine jurisdiction. Its decision shall be final and binding

## 24. APPOINTMENT

24.1. **Composition** : the Sailing Jury and the Arbitration Panel shall each comprise three (3) members. Members may be

(a) citizens of any country including a country of a Competitor in the Event,

(b) residents of any country, except the State of New York without the prior approval of ACM, including a country of a Competitor in the Event,

(c) members of a yacht club represented by a Competitor in the Event.

A person shall not be member of both the Sailing Jury and the Arbitration Panel, at the same time, provided that a person may resign from one of the bodies and be appointed to the other.

24.2. **Appointment:** Upon signing the Protocol, the Parties hereto have agreed in a separate document on the names of the Arbitration Panel members. The Parties will agree on the names of the Sailing Jury members no later than December 31st, 2007.

24.3. **Dismissal and replacement** :SNG and the Challenger of Record acting jointly shall also be competent to dismiss and replace the members of the Sailing Jury and the Arbitration Panel at their discretion at any time.

Upon the resignation, death or dismissal of any of the members of the Arbitration Panel or the Sailing Jury, a replacement shall be selected and appointed by SNG and the Challenger of Record acting jointly.

In case of deadlock between SNG and the Challenger of Record as to the appointment or the dismissal of a member of the Jury, the Arbitration Panel shall dismiss or appoint the juror.

In case of deadlock between SNG and the Challenger of Record as to the appointment of a member of the Arbitration Panel, SNG or the Challenger of Record may request that the International Center for Dispute Resolution (ICDR) of the American Arbitration Association appoint such member, and the parties herby




21

agree that the ICDR shall act as appointing authority for such purpose.

### 25. SEAT

Both the Sailing Jury and the Arbitration Panel shall have their seat in New York, however they may act in any other place, or by correspondence or other means of communication at distance.

### 26. RULES OF PROCEDURE

(a) Both the Arbitration Panel and the Sailing Jury shall act in accordance with New York arbitration law.

(b) The Sailing Jury shall establish the rules of procedure of the Sailing Jury consistent with this Protocol and otherwise with the rules of natural justice

(c) The Defender and the Challenger of Record shall agree on the rules of procedure of the Arbitration Panel. If none are agreed, the Arbitration Panel and the Jury shall apply the New York arbitration law procedures.

### 27. LANGUAGE

All proceedings of the Sailing Jury and the Arbitration Panel shall be in the English language.

### 28. STANDING TO MAKE AN APPLICATION

All Competitors, SNG, ACM and the Event Authority, shall have standing to make applications before the Sailing Jury and the Arbitration Panel subject to their respective jurisdictions. The Race Committee and the Measurement Committee shall have standing to bring an application before the Sailing Jury to enforce any of the documents referred to in Article 2.3.

### 29. APPEAL

The decision of the Sailing Jury and the Arbitration Panel shall be final and binding, except that an appeal may be lodged before the Arbitration Panel against any determination or award of the Sailing Jury. The Arbitration Panel shall have the power to decide on the admissibility of the appeal and its competence. The Arbitration Panel appeal awards shall then be final and binding.

### 30. TIME LIMITS

All rights to lodge and application or appeal shall be subject to the following time limits:

(a) The time limit to lodge an application with the Sailing Jury shall be seven (7) days from when the applicant was or could with reasonable diligence have been aware of the circumstances justifying the protest.




22

(b)    The time limit to lodge any appeal with the Sailing Jury or the Arbitration Panel shall be seven (7) days from the time of communication of a decision or award of the Measurement Committee or the Sailing Jury.

(c)    The time limit to lodge an application with the Arbitration Panel shall be three (3) months from when the applicant was or could with reasonable diligence have been aware of the circumstances justifying the protest.

(d)    The Sailing Jury and the Arbitration Panel may extend the time limits if there is good reason.

(e)    During regattas, the aforementioned time limits shall be reduced as follows, unless otherwise specified in the Notice of Race by ACM:

(i)    Any protest or appeal to the Jury during regattas shall be made within a time limit to be set in the Notice of Race;

(ii)   Any appeal to the Arbitration Panel during regattas shall be made within 12 hours from the communication of the award or decision of the Sailing Jury.

## 31.   NATURE OF DECISION

The decisions of both the Sailing Jury and the Arbitration Panel shall constitute binding and final arbitration awards.

## 32.   PENALTIES

The Arbitration Panel and the Sailing Jury may at their discretion penalise a Competitor in breach of this Protocol or any Applicable Document. Penalties shall be determined taking into account the surrounding circumstances, any advantage gained or disadvantage sustained by other Competitors or parties, and as may be necessary, the need to encourage future compliance with this Protocol or any Applicable Document.

## 33.   PREVIOUS DECISIONS

The Sailing Jury and the Arbitration Panel shall not be bound by decisions or awards of any dispute resolution bodies of preceding competitions for the America's Cup.

## 34.   COSTS AND EXPENSES

The costs and expenses of the Sailing Jury and the Arbitration Panel shall be subject to the following rules:

(a)    The Sailing Jury shall only proceed upon payment of an application fee which shall be fixed by and payable to ACM. ACM shall remunerate the members of the Sailing Jury and shall reimburse their expenses.

 

23

(b)  The Arbitration Panel shall only proceed upon payment of an application fee by the applicant which the Arbitration Panel shall fix being its estimate of total costs to resolve an arbitration. Such application fee shall be paid to the Arbitration Panel. The Arbitration Panel shall award all costs it has or will incur to resolve the arbitration to one or more parties to an application as it considers equitable provided that the starting basis shall be that the losing party or a party seeking an interpretation will be liable for all costs to resolve the arbitration.

(c)  Except as provided above, all revenue generated by the Sailing Jury and/or the Arbitration Panel shall be paid to ACM and be included in ACM's revenue for the calculation of the Net Surplus Revenue.

## 35.  RESORT TO COURTS PROHIBITED

Each person or entity, including its officers, members and employees, having the right to make an application to the Sailing Jury or the Arbitration Panel hereunder shall not resort to any other court or tribunal than the Sailing Jury and the Arbitration Panel. Any such resort shall constitute a breach of this Protocol. Notwithstanding the above, nothing shall prevent SNG from making any application it considers in its sole discretion appropriate regarding the administration of the Deed of Gift.

# PART E

# MISCELLANEOUS

## 36.  AMENDMENTS

36. 1 **Amendments by the parties:** SNG and the Challenger of Record may from time to time amend this Protocol by the deletion of terms and/or the addition of new terms.

36. 2 **Amendments required by authority:** SNG may, after providing notice to the Defender and the Challenger of Record, modify this Protocol to meet the requirements of any authority having jurisdiction over the Deed of Gift as to the manner in which SNG is to administer the Deed of Gift.

## 37.  COSTS AND EXPENSES TO COMPETE

Unless expressly provided otherwise in writing by ACM, all costs and expenses incurred in competing in the Event, including any Qualifying Regatta, and in meeting all obligations under this Protocol and the Applicable Documents shall be the sole and exclusive responsibility of the Competitor incurring such costs.

## 38.  LIABILITY AND INSURANCE

24

38. 1 **Own risk:** Every Competitor taking part in the Event does so at its own risk and responsibility.

38. 2 **Indemnity:** Each Competitor shall protect, indemnify and hold harmless SNG, the Defender, the Challenger of Record, any other Competitor, the Competitors' Commission, ACM, the Event Authority, the Sailing Jury, the Arbitration Panel, any Regatta Official, their respective directors, officers, employees and contractors, from and against any and all liabilities, damages, indemnity, compensation, costs and expenses (including all legal fees incurred) whatsoever resulting from any claims, proceedings or actions brought by such Competitor and arising directly or indirectly out of or in any way connected with the acceptance of their challenge and performance in the Event or other associated event provided that such indemnity shall not apply to any proceedings in front of the Sailing Jury or the Arbitration Panel.

38. 3 **Insurance:** ACM shall obtain from third party a liability insurance cover for the Event and for all Regatta Officials, the Sailing Jury and the Arbitration Panel on such commercial terms as it shall determine. The cost of insurance cover shall be borne by ACM as an expense under Article 19.1.

38. 4 **Postponement or cancellation:** Neither SNG, nor the Defender, nor ACM, nor the Event Authority, nor any Regatta Official, nor any of their directors, officers, employees, agents or contractors shall be liable to any Competitor or Regatta Official or any of their directors, officers, employees, agents or contractors for any losses, damages, injury, loss of profits, loss of prospective profits, consequential damages, penalties or inconvenience, whether direct or indirect, however arising, as a result of the postponement or cancellation of the Event or part thereof due to any event, occurrence or circumstances beyond the reasonable control of SNG, the Defender, ACM or the Event Authority including but not limited to acts of God, terrorism, war, government intervention or regulation, public health, environmental conditions, strikes, lockouts, other industrial acts or any other force majeure circumstance.

DATED this 3rd day of JULY 2007 at Valencia, Spain

Third_____ Copy (three original copies on total)

**Société Nautique de Genève**
by:

**The Challenger of Record**
by:

25

**EXHIBIT C**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

TEAM NEW ZEALAND LIMITED.,

    Plaintiff,

     – *against* –

SOCIÉTÉ NAUTIQUE DE GENÈVE,
TEAM ALINGHI, S. A., AC MANAGEMENT,
S. A., and ERNESTO BERTARELLI

    Defendants.

------------------------------------------------------x

**08 CV    2228**

**COMPLAINT AND
JURY DEMAND**

Case No.

## COMPLAINT

    Plaintiff Team New Zealand Limited ("TNZ") by and through its undersigned counsel,

states for its Complaint, with knowledge of its own acts and upon information and belief as to all

other matters, as follows:

### Summary of the Action

    1.    This action arises out of the anticompetitive conduct of Defendants Société

Nautique de Genève ("SNG"), Team Alinghi, S.A. ("Alinghi"), AC Management, S.A.

("ACM"), and Ernesto Bertarelli, and their co-conspirators, Real Federación Española de Vela

("RFEV") and Club Náutico Español de Vela ("CNEV"). Defendants compete with Plaintiff and

other sailing teams in the market for the right to hold the America's Cup, an international sailing

competition, which is a lucrative business opportunity, and in the market to sell sponsorship

rights for America's Cup sailing teams. Defendants have sought to monopolize and have

monopolized the market for the right to hold the America's Cup, and have acted in concert with

CNEV and RFEV to restrain trade in the market to sell sponsorship rights for America's Cup

sailing teams in violation of Sections 1 and 2 of the Sherman Act.

2.      Under the Deed of Gift, the trust instrument that governs the America's Cup, any "organized yacht club" that meets certain criteria (including having an annual regatta on the sea or an arm of the sea) can challenge the defender of the Cup.  The defender is required to accept the first challenge and the defender and the challenger are to agree on terms for the next competition.

3.      Prior to successfully defending the America's Cup in July 2007, in an effort to solidify Alinghi's market power in the relevant markets, to monopolize the market for the right to hold the America's Cup and to unreasonably restrain competition in the market for the sale of sponsorship rights, instead of allowing an existing yacht club to issue a genuine challenge, Defendants conspired with RFEV, the Spanish national governing body for the sport of sailing, to form a sham "yacht club", CNEV, to issue a "challenge" to Alinghi (should Alinghi be the winner).  CNEV existed only on paper.  It had no real members and no yachts.  It had never held a single regatta, let alone and annual regatta on the sea or an arm of the sea.  It is not – in any sense of the word – an "organized" yacht club.

4.      In furtherance of Defendants' attempted monopolization and conspiracy to restrain trade, the day before Alinghi won the America's Cup, CNEV announced that it would issue its "challenge" if Alinghi won.  When Alinghi won the America's Cup on behalf of SNG (beating Plaintiff TNZ five races to two), CNEV issued its purported challenge and Defendants accepted.

5.      The purpose of the arrangement between Defendants and CNEV was to enable Alinghi to enhance its dominant position in the relevant markets, to weaken competitors, and to unreasonably restrain trade and reduce competition by ensuring that it would face a fabricated "challenger" that would enable Alinghi to avoid competition and to establish terms for the next

2

America's Cup that would advantage Alinghi and disadvantage its competitors. That is exactly what happened. Defendants "negotiated" a Protocol with CNEV that essentially gave ACM, a corporation owned and controlled by Ernesto Bertarelli (the owner of Alinghi), total discretion in setting the terms of the next America's Cup.

6.    Defendants' conduct has directly and substantially harmed competition and consumers. Specifically, it enabled Defendants to establish a Protocol for the next America's Cup that unreasonably restrains trade and reduces competition by heavily favoring Defendants and unfairly disadvantaging their competition. This unfairly enhances Defendants' prospects of winning the next Cup, which means, among other things, that Defendants' rivals will have a dramatically decreased incentive to compete in the America's Cup, and therefore in the market to sell sponsorship rights, with the result that there will be fewer sellers of sponsorship rights. Defendants' actions also enable them to postpone the America's Cup indefinitely. This will likely cause less well-funded teams to exit the market, because teams rely on sponsorship, which is difficult to obtain for an event to be held at some indefinite time in the future, and because it is expensive to maintain a team over an extended period of time. This will further limit the number of sellers of sponsorship rights. Defendants' actions have also harmed the quality of the event, since viewers will not want to watch an event that is not a competition among the best sailing teams, particularly where one team has skewed the rules in its favor. This directly negatively impacts the quality of the sponsorship rights.

7.    In addition, Defendants sought to eliminate Plaintiff as a competitor by inducing Plaintiff to enter the next America's Cup race (by promising to hold the Cup in Valencia in 2009) and then, after Plaintiff entered the competition and expended considerable sums in

reliance on Alinghi's promise and undertaking, reneging on its promise, causing Plaintiff serious damage, raising its costs and threatening to eliminate it as a competitor.

8.     Finally, Defendants refused to reach a reasonable settlement with the Golden Gate Yacht Club ("GGYC") that would have enabled the America's Cup to proceed in Valencia in 2009.  Again, this delay has the effect of eliminating competitors in the market who cannot afford to continue to pay sailing and design teams and other staff without receiving sponsorship money.

9.     All of these actions were intended to and did have the effect of stifling competition in the market for sponsorship of America's Cup teams.  In addition, Defendants' actions were undertaken with the intent to monopolize the market for the right to hold the America's Cup.

**The Parties**

10.     Plaintiff Team New Zealand ("TNZ"), a world class racing team, is a corporation organized under the laws of New Zealand with its principal place of business in Auckland, New Zealand.  TNZ represents the Royal New Zealand Yacht Squadron ("RNZYS"), the Challenger in the final match for the 32nd America's Cup and previous defender of the Cup.  TNZ organizes sailing teams to compete in the America's Cup.  It sells the rights to sponsor the team to entities located throughout the world, including the United States.

11.     Defendant SNG is a yacht club organized under the laws of Switzerland and based in Geneva, Switzerland.  It is the current holder of the America's Cup, which it won in 2003 and 2007 through its affiliate, Alinghi.  As the current holder of the America's Cup, SNG is the trustee of the trust, formed under the laws of the State of New York, which holds the America's Cup trophy for the benefit of all competitors.

4

12.     Defendant Alinghi is a sailing team affiliated with, and representative of, SNG and is the winner of the 2003 and 2007 America's Cup. It sells the rights to sponsor the team to entities located throughout the world, including the United States.

13.     Defendant AC Management, S.A. ("ACM") is a Swiss limited liability company with headquarters in Geneva, Switzerland, appointed by SNG to organize, manage, and fulfill all of SNG's obligations under the Deed of Gift.

14.     Defendant Ernesto Bertarelli, a Swiss citizen, is the founder and owner of both Alinghi and ACM.

### The Co-Conspirators

15.     Real Federación Española de Vela (Royal Spanish Sailing Federation) ("RFEV") is the national governing body for the sport of sailing in Spain. RFEV is a private organization with its principal place of business in Madrid, Spain. While its members include yacht clubs, it is not itself a yacht club. RFEV conspired with Defendants and others to restrain trade in the relevant markets, as alleged herein.

16.     CNEV is a paper yacht club incorporated in Valencia, Spain established by RFEV as part of the conspiracy alleged herein to restrain trade in the relevant markets. CNEV conspired with Defendants and others to restrain trade in the relevant markets, as alleged herein.

### Jurisdiction and Venue

17.     Plaintiff brings this action under Sections 4 and 15 of the Clayton Act (15 U.S.C. §§ 15, 26) and Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2). This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1337(a).

18.     The Defendants transact business within this District.  Accordingly, this Court has personal jurisdiction over each Defendant, and venue is proper under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b).

### Trade and Commerce

19.     The America's Cup is broadcast in the United States to millions of viewers.  In addition, teams that compete in the America's Cup sell substantial amounts of sponsorship rights to entities located in the United States and doing business in the United States.  Defendants' anticompetitive conduct has had a substantial effect on interstate commerce.

### Factual Background

**A.     The Relevant Markets**

20.     The Defendants' antitrust violations have occurred in the market to sell the rights to sponsor defenders and challengers in the America's Cup competition, and in the market for the right to hold the America's Cup.

21.     The America's Cup is the most prestigious sailing competition in the world and the longest-running sports competition in the world.  The America's Cup trophy itself is the corpus of a trust established under the laws of New York by a Deed of Gift dated October 24, 1887 that gave the trophy to the New York Yacht Club to be held in trust as a "challenge" trophy to promote friendly sailing competition among nations (the "Deed of Gift").  The Deed of Gift establishes the rules that govern the competition for the Cup.

22.     Under the Deed of Gift, any yacht club that meets the requirements for a challenger set forth therein has the right to challenge the yacht club that holds the Cup.  Among other things, to be a legitimate challenger under the Deed of Gift, the challenger must be an organized yacht club that holds an annual regatta.

6

23.     The America's Cup is the third most watched sporting event in the world.  In 2007, over 2.7 billion people watched the 32nd America's Cup either live or on television.  Over 2.8 million people visited the America's Cup port to see the participants and the races.  The official internet site of the America's Cup received 16.6 million visits during 2007.  These audiences are an attractive market to advertisers, and they enable teams that compete in the America's Cup to sell sponsorship rights to cover the costs of fielding a racing team, which can be up to $200 million, and to try to make a profit.

24.     The viewership of the America's Cup is international in scope, comprises people interested in sailing, and includes many affluent consumers.  Sponsors cannot easily substitute sponsorship of the America's Cup for another sporting event.

25.     Teams compete directly for sponsorship, since the audience for all teams is obviously the same.  Teams compete on a number of grounds, but the most significant is the ability to win.  Sponsors are simply more interested in sponsoring a winner than sponsoring a loser.  This is reflected in the advertising slogan used by ACM in the 32nd America's Cup: "There is no Second."

26.     The defender of the America's Cup has an additional means of generating revenue.  Specifically, the defender has the right to select the location of the next competition. Hosting the America's Cup is, like the Olympics, extremely valuable to the host city.  It is estimated that the global economic impact of hosting the 32nd America's Cup is more than $9 billion for the host country, Spain.  The city of Valencia, Spain received investment exceeding $1.8 billion.  The event also created more than 60,000 jobs.  Accordingly, as with the Olympics, cities compete for the right to host the Cup.  Among other things, potential host cities offer concessions to the defending team.  These can be extremely valuable to a team.  It is estimated

that the City of Valencia and the Spanish government provided ACM with concessions valued at $135 million in connection with the 32nd America's Cup.

## B.    Market Power

27.    Under the Deed of Gift, the defender has a certain degree of control over the rules for the next America's Cup. The Deed of Gift provides that "The Club challenging for the Cup and the Club holding the same may, by mutual consent, make any arrangement satisfactory to both as to the dates, courses, number of trials, rules and sailing regulations, and any and all other conditions of the match." Accordingly, the defender of the Cup enjoys substantial market power in the relevant markets.

28.    Alinghi has abused and extended this market power, by, among other things, conspiring with RFEV to facilitate the creation of CNEV and then issuing a Protocol for the next America's Cup that gives almost unlimited power to its agent ACM and substantially limits competition. In return for its involvement in the conspiracy, RFEV cemented Valencia as the host city and Spain as the host country for the 33rd America's Cup.

29.    As evidence of Defendants' market power, several teams, including Plaintiff (although on the basis of concessions obtained by contract from Defendants as to the timing and venue of the Event, among other things), agreed to sign onto Defendants' one-sided protocol for the 33rd America's Cup and sponsors have purchased sponsorship rights, despite the decreased quality of the event, because there are no substitutes.

## C.    The Defendants' Concerted Anticompetitive Conduct

30.    Before Alinghi had even won the 32nd America's Cup, Defendants began to conspire to fix the terms of the next America's Cup so that Defendants could eliminate their

competitors in the market for the right to hold the America's Cup (a right granted to the defender), severely weaken the competitive ability of such competitors and thereby unreasonably restrain trade and limit competition in the market to sell team sponsorship.

31.    The most significant hurdle to Defendants' dominance in the market was the fact that, under the Deed of Gift, the defender is required to either negotiate terms for the next competition with the first valid challenger or race the event pursuant to the Deed's default rules. The purpose of this requirement is to ensure that rules are set that facilitate vigorous competition. In order to sidestep that rule, Defendants had to find a "challenger" that would not negotiate vigorously and would enable Defendants to establish a Protocol for the next race that would give SNG and its affiliate Alinghi an unfair advantage so that it could reduce competition in the relevant markets.

32.    The Deed of Gift also limits the market power of the defending club by requiring that it accept the first challenge posed by a yacht club fulfilling the Deed's requirements: "And when a challenge from a Club fulfilling all the conditions required by this instrument has been received, no other challenge can be considered until the pending event has been decided."

33.    To circumvent the limitations imposed by the Deed of Gift on Defendant's market power, Defendants agreed with RFEV, which is the Spanish national sailing federation, not a yacht club at all, that RFEV would issue a "challenge" to Alinghi if Alinghi won the America's Cup. However, it became clear to Defendants and the co-conspirators that RFEV could not be a valid challenger because it was a national federation, not a yacht club. Acting on the advice of its lawyers and the request of Defendants, RFEV quickly formed CNEV.

34.    CNEV has no yachts. It has no members other than the directors of RFEV who executed its incorporation and registration papers days before CNEV issued its challenge.

9

CNEV had no telephone number and no website. As of the date of CNEV's challenge, CNEV had never held an annual regatta, which is one of the few qualifications required by the Deed of Gift. CNEV attempted to hold two "regattas," one of which involved children sailing during a training session and the other of which CNEV co-sponsored with another yacht club. Neither of these "regattas" satisfies the Deed of Gift's requirement because, among other reasons, they both post-date CNEV's purported challenge.

35.    On July 2, 2007, the day before the final 32nd America's Cup race, pursuant to its agreement with Defendants, CNEV announced that, if SNG successfully defended the Cup, CNEV would challenge SNG for the 33rd America's Cup. On July 3, 2007, Alinghi, representing SNG, defended the America's Cup by defeating TNZ. CNEV immediately issued its purported challenge, which SNG accepted.

36.    SNG then "negotiated" a protocol for the next America's Cup with the paper yacht club CNEV. On July 5, 2007 SNG and CNEV distributed the "Protocol Governing the Thirty Third America's Cup" (the "Protocol").

37.    The Protocol provides that SNG may appoint ACM, a commercial organization owned and controlled by Ernesto Bertarelli (who also owns Alinghi), as the Event Authority. The Protocol awards ACM "the ultimate responsibility for the management, organization, and financing of the Event." Thus, Defendants secured for themselves the right to set the terms of the Cup so that they could reduce competition by unfairly disadvantaging their competitors.

38.    For example, ACM has the power, in its sole discretion, to appoint the members of the Race Committee, the Measurement Committee, Umpires, and "such other persons as are reasonably necessary in discharging the duties outlined" in the Protocol. ACM has the power to fine competitors for "non-compliance" of rules, to deduct fines from any moneys due to

10

competitors, and to take legal action necessary to recover outstanding fines. ACM may "impose any rule and restriction on the Competitors that are necessary to the fulfillment of its duties under the Deed of Gift and this Protocol." ACM even has the power to cherry-pick who those competitors will be, inasmuch as ACM "may accept or reject any entry received" based on four enumerated yet expansive grounds, including failure to abide by the Deed of Gift or the terms of the Protocol.

39.     Unlike the 32nd America's Cup Protocol, which was negotiated between SNG and the Golden Gate Yacht Club ("GGYC"), the 33rd America's Cup Protocol eliminates the rights of challenging competitors. The 32nd Protocol established the Challenger Commission, which consisted of a representative from each challenging team and enjoyed certain voting rights. The 33rd Protocol replaces the Challenger Commission with a "Competitors' Commission," which has no voting powers. The 32nd Protocol provided that the Challenger of Record represented the interests of all challengers, whereas the 33rd Protocol here absolves CNEV of such duty, stating that "the Challenger of Record shall not owe any additional duties to the Challenging Competitors."

40.     Unlike the 32nd America's Cup Protocol, which adopted pre-existing America's Cup Class ("ACC") Rules, the Protocol allows ACM to issue new ACC Rules that will determine the class of yacht allowed to participate in the match. ACM may also amend those rules, provided that CNEV and Alinghi give their token approval. The Protocol requires only that ACM provide challengers 18 months to prepare, design, finance, and build a vessel for the match. Alinghi, as an affiliate of ACM, will have access to rules before they are issued and will thus have longer than its competitors to prepare.

41.    ACM may also determine the event's racing schedule 16 months before the first race and may withhold the Notice of Race and Sailing Instructions until "approximately 60 days before the first race of the Event." ACM may withhold the Racing Rules until "approximately 60 days before a race of the Event in which they are applicable." Again, this allows Alinghi to have access to information before its competitors.

42.    Furthermore, the Trials and Challenger Section format announced by ACM "may provide for the Defender an option to participate wholly or partly at its discretion in the Trials and Challenger Selection other than the final between the two Challengers to select a Challenger for the Match." Thus, SNG has reserved its right to compete against a variety of challengers without facing elimination.

43.    SNG has delegated the following additional duties to ACM in its sole discretion: to determine time limits for registering; to issue Competition Regulations, including limitations for training and testing; to take and distribute the minutes of the Competitors' Commission to all competitors represented; to determine whether there will be qualifying regattas and how they shall be scored; to decide whether competitors may build one, two, or more new boats; to determine and change venue; to determine the race and course areas and limit their use outside the racing periods; and to amend unilaterally the restrictions regarding crew members and designers.

44.    The Protocol also established an Arbitration Panel to resolve disputes relating to the Protocol. However, the Panel has proven itself not to be independent. Specifically, on July 20, 2007, GGYC filed a complaint against SNG in the Supreme Court of New York. GGYC alleged that SNG breached its fiduciary duty to GGYC and the Deed of Gift by accepting CNEV's purported challenge and by issuing the invalid protocol. GGYC, who served a Notice

12

of Challenge upon SNG on July 11, 2007, also sought a declaratory judgment that GGYC, not CNEV, was the Challenger of Record. In an effort to preempt the New York Supreme Court's consideration of this issue, SNG and CNEV submitted unopposed papers requesting that the Arbitration Panel deem CNEV's challenge valid and that the Protocol complies with the Deed of Gift. The Arbitration Panel "arbitrated" the issue even though GGYC refused to participate. The "opposition" cited by the Arbitration Panel consisted of a letter by GGYC's lawyers stating that GGYC *would not* participate in the "arbitration" and a review of "the contents of all the material placed on GGYC's website up to the date of this Decision, including the documents filed with the Supreme Court for the State of New York." Unsurprisingly, the Arbitration Panel issued a lengthy decision in favor of SNG and upheld the validity of the CNEV challenge, on grounds that are wholly unsupportable, as demonstrated by the decision of the New York Supreme Court.

45.     In addition to conspiring to create rules for the next America's Cup that disadvantage its competitors, Defendants have threatened to put Plaintiff and other potential competitors out of business, thereby unreasonably restraining trade in the relevant markets and monopolizing the market for the right to hold the America's Cup by unilaterally postponing the next Cup. The Cup was originally scheduled to take place in Valencia, Spain in 2009. In reliance upon Defendants' undertaking and promise that the Cup would be held in Valencia, Spain in 2009, Plaintiff settled its budget for a 2009 event. It negotiated amounts to be provided by its major sponsors based on that budget. It also entered into employment contracts with a number of parties, all of whose employment would be necessary to ensure its successful challenge for the Cup. Those key personnel included yachtsmen, designers, and senior management. TNZ has devoted significant resources in preparation for a 2009 race in Valencia.

13

46.    TNZ is in the business of challenging and defending the America's Cup. In the sailing world, there is no substitute for the America's Cup. While TNZ was not willing to enter the 33rd America's Cup on the terms announced by SNG and CNEV in the Protocol, which granted ACM full discretion as to the event's timing, TNZ was willing to sign onto the Protocol on the condition, among others, that the next America's Cup would be held in Valencia in 2009.

47.    Defendants subsequently unilaterally declared that the event would be delayed until at least 2011. Defendants also refused to agree to a proposal to settle the GGYC lawsuit that would have enabled the Cup to proceed in 2009. Defendants know that Plaintiff and other potential competitors cannot continue to pay the costs of running a team for an indefinite amount of time without sponsorship, and that sponsors will not pay for an event if they do not know when or where it will take place. These actions were undertaken with the intent to, and had the effect of, reducing competition in the relevant markets by dramatically increasing the costs of Plaintiff and other competitors in competing against Defendants for the America's Cup.

**D.    Anticompetitive Effects of Defendants' Unlawful Conduct**

48.    Defendants' actions have had a direct and substantial negative effect on competition in the relevant markets. The Protocol established pursuant to Defendants' conspiracy with CNEV unfairly enhances Defendants' prospects of winning the next Cup such that Defendants' rivals have a dramatically decreased incentive to compete in the America's Cup and therefore to sell sponsorship rights. This means that there will be fewer sellers of sponsorship rights.

49.    In addition, Defendants' indefinite postponement of the Cup will likely cause teams that are not as well funded as Alinghi to exit the market. The delay has already

14

substantially raised Plaintiff's costs and Plaintiff will likely be forced to exit the market if the event is delayed until 2011. This will further limit the number of sellers of sponsorship rights.

50.  Defendants' actions have also affected the quality of the event. Sailing fans do not want to watch an event that is not a competition among the best sailing teams, particularly where one team has skewed the rules in its favor.

51.  These effects have been felt strongly in the United States. United States sponsors and sponsors who are licensed to conduct business in the United States, including Emirates, Toyota, and BMW, have been negatively affected by Defendants' acts. In addition, viewers in the United States have been harmed by the delay and the degradation of quality.

**E.    Injury to TNZ**

52.  Defendants' anticompetitive conduct has directly and proximately caused Plaintiff to suffer injury to its business and property. Plaintiff's injuries are of the type the antitrust laws were designed to prevent, and those injuries flow directly from the aspects of Defendants' conduct that make it unlawful.

53.  Specifically, Plaintiff has suffered, among other things:

(a) Increased costs as a result of Defendants' delay of the event.

(b) Lost revenues from sponsorship due to the decrease in the perceived quality of the America's Cup, and due to Plaintiff's decreased chances of winning.

## CLAIMS FOR RELIEF

### Count I
### Sherman Act § 1: Conspiracy to Restrain Trade

54.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55.    Defendants have engaged in a combination and conspiracy to unreasonably restrain trade in the relevant markets.

56.    In furtherance of this conspiracy, Defendants have promulgated the Protocol and taken other actions that disadvantage or exclude rivals in the market to sell sponsorship of America's Cup teams.

57.    This conspiracy has caused significant harm to competition in the relevant markets.

58.    As a result of the conspiracy and its harm to competition, Plaintiff has suffered substantial and continuing injuries.

**Count II**
**Sherman Act § 2: Conspiracy to Monopolize**

59.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 58 as if fully set forth herein.

60.    Defendants have engaged in a combination and conspiracy to monopolize the market for the right to hold the America's Cup sailing competition.

61.    In furtherance of this conspiracy, Defendants have promulgated the Protocol and taken other actions that disadvantage or exclude rivals in the market to hold the America's Cup.

62.    This conspiracy has caused significant harm to competition in the relevant markets.

63.    As a result of the conspiracy and its harm to competition, Plaintiff has suffered substantial and continuing injuries.

**Count III**
**Sherman Act § 2: Attempted Monopolization**

16

64.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65.    Defendants possess market power in the market for the right to hold the America's Cup.

66.    There is a dangerous probability that Defendants will achieve monopoly power in the market for the right to hold the America's Cup.

67.    Defendants have a specific intent to monopolize the market for the right to hold the America's Cup.

68.    In furtherance of this attempted monopolization, Defendants have promulgated the Protocol and taken other actions that disadvantage or exclude rivals in the market to hold the America's Cup.

69.    These actions have caused significant harm to competition in the relevant markets.

70.    As a result of this attempted monopolization and its harm to competition, Plaintiff has suffered substantial and continuing injuries.

## Count IV
### Sherman Act § 2: Monopolization

71.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 70 as if fully set forth herein.

72.    Defendants possess monopoly power in the market for the right to hold the America's Cup.

73.    Defendants have willfully obtained and/or maintained that monopoly power.

74.    Intending to exercise that monopoly power, Defendants have promulgated the Protocol and taken other actions that disadvantage or exclude rivals in the market to hold the America's Cup.

75.    These actions have caused significant harm to competition in the relevant markets.

76.    As a result of this monopolization and its harm to competition, Plaintiff has suffered substantial and continuing injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

a.    Declare, adjudge and decree that Defendants have committed the violations of federal law alleged herein;

b.    Order that the Defendants, their directors, officers, employees, agents, successors, owners and members be enjoined and retrained from continuing the anticompetitive acts alleged herein;

c.    Award Plaintiff full compensation for the damages it has sustained, from each Defendant, jointly and severally, on each of Plaintiff's claims for relief, in an amount to be determined at trial, and to be trebled according to law, plus interest, attorneys' fees and costs of suit, and such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a trial by jury.

Dated: March 6, 2008

Respectfully submitted,

BOIES, SCHILLER & FLEXNER, LLP

_____

David Boies (DB-4399)
333 Main Street
Armonk, New York 10504
(914) 749-8200

Philip M. Bowman (PB-9222)
575 Lexington Avenue, 7th Floor
New York, New York 10022
(212) 446-2300

**EXHIBIT D**

# 33rd America's Cup

## THREE PRESTIGIOUS MEMBERS NOMINATED FOR ARBITRATION PANEL

*31-07-2007*

AC Management (ACM), as the Event Authority for the 33rd America's Cup, is pleased to announce the nomination of the Arbitration Panel that will resolve disputes in the frame of the 33rd America's Cup, except sporting and technical issues which will be solved by a separate Sailing Jury to be established by the end of the year. The Arbitration Panel will also act as an appeal body for decisions of the Sailing Jury.

The Arbitration Panel will be composed of three members with a long-term experience in sports law: Professor Henry Peter, from Switzerland, who will chair the Panel, Graham McKenzie, from New Zealand and Luis María Cazorla Prieto, from Spain. Both Mr.McKenzie and Professor Peter served on the Jury of the 32nd America's Cup. Prof. Henry Peter was also a member of the 31st America's Cup Arbitration Panel.

### Arbitration Panel Member Profiles

**- Henry Peter**
Swiss and French nationality. Obtained a Law Degree (1976-1979) and Diploma of Superior Studies (DES) in commercial law at the Law School of the University of Geneva (1983). He was admitted to the Geneva bar after ranking first among all candidates (November 1981). Was a teaching assistant at the University of Geneva (1982-1983) and visiting scholar at the University of Berkeley, California (1983-1984). Worked with the law firm Carter, Ledyard & Milburn in New York before establishing himself as a Lawyer in Lugano (Ticino, Switzerland) in 1984. Obtained his PhD in Law in Geneva in 1988. Has been partner of his firm since 1988 (currently Peter, Bernasconi & Partners). Since October 1997, is Professor at the Department of commercial law of the University of Geneva and, since 1998, Head of the joint Master in Business Law (MBL) program of the Universities of Lausanne and Geneva.
Since November 2001 he is Vice-Chairman of the disciplinary chamber of the Swiss Olympic Association in charge of doping cases; between 2003 and 2006 he has been Chairman of the Geneva Business Law Association (AGDA); since 2003 he is member of the Swiss experts group on company reorganisation appointed by the Federal Office of Justice. Since 2004 he is member of the Swiss Takeover Board and, since 2007, of the Sanction Committee of the Swiss Stock Exchange (SWX). Since 1994 he is consul of Sweden for the Italian part of Switzerland.
Other merits: Member of the editing board of the Swiss Review of Business Law, member of the board of the Centre of banking and financial law of the University of Geneva., frequently arbitrator in international disputes relating to commercial and sports matters, director of several Swiss and foreign companies.
He is the author, co-author or editor of several books and numerous scientific publications.

**- Graham McKenzie**
A recently retired partner (1982-2006) in the major law firm Bell Gully, in New Zealand. He obtained a Bachelors of law degree at Victoria University of Wellington (1974) and a Masters of law degree from Warwick University, England (1978). He is a Notary Public. He is admitted as a Barrister and Solicitor in New Zealand and Queensland, Australia.
He has extensive experience of acting for large corporates in share and asset acquisitions relating to either selling or purchasing of existing businesses. He has been involved with a number of substantial joint venture projects in New Zealand and overseas. His corporate experience includes advising a range of corporate sectors including the aircraft, super yacht, construction, food and technology and wine industries.
Mr.McKenzie is a Director of several public companies. He is Deputy Chairman of Saint Kentigern Trust Board (a substantial New Zealand educational Trust) and a Trustee of the Bruce McLaren Trust. He has sailed both competitively and for leisure in New Zealand and the Pacific for many years in a wide range of yachts.
He was a member of the Americas Cup Jury for the 32nd Americas Cup.

**- Luis María Cazorla Prieto**
Doctor of Law with Special and highest Distinction at the Complutense University, Madrid; Professor doctor of Financial and Taxation Law at the King Juan Carlos University, Madrid, at the present moment, Complutense University, Madrid (1977-1995) and Burgos University (1995-1999); practicing Lawyer, head of practice specialising in Taxation, Business, Administrative, Sport and Labour Law. He was awarded the Grand Cross of San Raimundo de Peñafort (2005), the highest Spanish distinction for a jurist, and the Medal of Sporting Merit (1998).
Cazorla is the author of more than forty books about law, sport, sociology and literature. Throughout his career he has held the following positions: Director General Tax Minister's Office (1979-1981), Secretary General of Congress of Deputies (1982-1988), Chief Counsel to the Spanish Parliament (1982-1988), Secretary General of the Central Electoral Commission (1982-1988), Vice-president Editorial Committee of Thomson-Aranzadi Press (1998), Member of the COI 2000 Commission of the International Olympic

**NEWS**

*05-09-2007*
» Alinghi and ACM forward with plans America's Cup

*28-08-2007*
» Golden Gate Yac Société Nautique d Arbitration/Litigat (as of 24 August 2)

*31-07-2007*
» Three prestigiou nominated for Arbi

*25-07-2007*
» 33rd America's C published: Valenci 2009...and more.

*24-07-2007*
» Two more Challe the 33rd America's

«   »

**ENTRY**
» 33rd America's C

**DOCUMENTS**
» Protocol
» Notice of Entry

**GGYC case court**
» Memorandum of opposition to Preli Injunction
» Affidavit - Mique
» Affidavit - Hamis

**LINKS**
» Auction
» 32nd America's C Website

Committee and its Executive Committee (1999), Member of the Juridical Commission of the International Olympic Committee (2000-2002) and the Commission Law and Sport of the Olympic Committee (2005-5007), General Secretary of the Board of Directors of Bolsas y Mercados Españoles, Holding Society of Mercados y Sistemas Financieros, S.A. (Spanish Stock market) (2002), first Vice-president of the Spanish Olympic Committee (2005-2007), He was also Vice-Chairman of the Court of Arbitration of the Spanish Olympic Committee and Vice-president of the Spanish Sport Law Association.

**EXHIBIT E**



# 33rd America's Cup

## AMERICA'S CUP ARBITRATION PANEL

**ACAP 33 / 01**

**Decision**

**September 7, 2007**

**APPLICANT:**

- Société Nautique de Genève ("**SNG**" or the "**Applicant**")

**IN THE MATTER** of the Protocol governing the 33rd America's Cup (the "**Protocol**").

**AND**

**IN THE MATTER** of an application filed by SNG on July 20, 2007 in respect of the validity of the challenge of Club Nautico Español de Vela ("**CNEV**") for the 33rd America's Cup.

# TABLE OF CONTENTS

**THE PROCEEDINGS**

**THE PARTIES' POSITION**

**1.** In favor of SNG's submission
**2.** Against SNG's submission

**THE ISSUES AT STAKE**

**THE FACTS**

**1. SNG**
**2. CNEV**
**3.** The Protocol
**4.** Other Challengers
**5. GGYC's** Challenge
**6.** The New York lawsuit

**DISCUSSION OF THE ISSUES**

**1.** Jurisdiction of the Panel

    *1.1. Issues*
    *1.2. Applicable rules and discussion*
        1.2.1.  The competence of the Panel to rule on its own jurisdiction
        1.2.2.  The Panel's jurisdiction to rule on the present matter
    *1.3. Conclusion*

**2.** Eligibility to challenge

*2.1. Issue*

*2.2. Applicable rules*

*2.3. Discussion of the submissions*

    2.3.1.  Preliminary comment

    2.3.2.  What constitutes "an organized yacht club"?

    2.3.3.  What constitutes "incorporated, patented or licensed"?

    2.3.4.  What constitutes an "annual regatta"?

    2.3.5.  Trustee duties

*2.4. Conclusion*


**3.  COMPLIANCE OF THE PROTOCOL WITH THE DEED OF GIFT**


*3.1. Issue*

*3.2. Applicable rule*

*3.3. Discussion*

    3.3.1.  Does the Protocol comply with the Deed of Gift?

    3.3.2.  Should some specific clauses be reconsidered by the Defender and the Challenger of Record?

*3.4. Conclusion*


**SUMMARY OF THE DECISION**


**PUBLICATION OF THE DECISION**


**COSTS**

**THE PROCEEDINGS**

[1]   On July 20, 2007 at 19.42 Central European Time ("**CET**"), corresponding to 13.42 New York time, the 33rd America's Cup Arbitration Panel ("**ACAP 33**" or the "**Panel**") received an application from SNG (acting through Team Alinghi) (the "**Application**") in respect of the validity of the challenge made by CNEV on July 3, 2007 for the 33rd America's Cup.

[2]   The Application read:

> "*There has been issued raised by prospective competitors in the 33rd America's Cup, including the Golden Gate Yacht Club, as to the validity of the challenge of Club Nautico Espanol de Vela. SNG as Trustee of the America's Cup makes an application to the Panel for a declaration that the challenge received from Club Nautico Espanol de Vela on 3rd July 2007 and accepted by SNG on the same date, is a valid challenge under the terms of the Deed of Gift of 24th October 1887, and that SNG is obliged to meet that challenge under the terms of the Deed of Gift.*
>
> *SNG understands the Challenger of Record is intending to make a substantially similar application on Monday, if they do so SNG would withdraw this application unless there is good reason to continue with it.*
>
> *We look forward to the Panel's directions and timetable for party submissions in due course*".

[3]   On July 23, 2007 at 9.33 CET, the Panel received an email from SNG supplementing the Application, which read as follows:

> "*I confirm SNG would like to proceed with it's application in light of reports of an apparently subsequent filing in the New York Supreme Court by Golden Gate Yacht Club on substantially the same issues, rather than withdraw the*

4

*application. It would like the matter to be determined as soon as possible but recognising the need to allow for all interested parties to have an opportunity to make submissions.*

*SNG can file its submissions on 24 hours notice.*

*It is appropriate that sporting issues are resolved by the dispute resolution bodies established by the sport rather than in the courts, a concept which is strongly endorsed, in relation to the America's Cup, in the Mercury Bay opinion of the New York Court of Appeals the highest appellate court with jurisdiction to rule on matters arising under the Deed of Gift.*

*Finally, there is a small typographical in the application , the word "issued" in the first line should have read " issues" which needs to be corrected."*

[4]    On July 23, 2007, the Panel issued **Directions no 1** which stated:

*"APPLICATION*

*1    The 33rd America's Cup Panel (ACAP 33) has received an application from SNG (acting through Team Alinghi, SNG) on Friday, July 20, 2007 at 7.42 p.m. (Swiss time) (the Application).*

*2    The Application read as follows:*

*"Dear Professor Peter,*

*There has been issued raised by prospective competitors in the 33rd America's Cup, including the Golden Gate Yacht Club, as to the validity of the challenge of Club Nautico Espanol de Vela. SNG as Trustee of the America's Cup makes an application to the Panel for a declaration that the challenge received from Club Nautico Espanol de Vela on 3rd July 2007*

*and accepted by SNG on the same date, is a valid challenge under the terms of the Deed of Gift of 24th October 1887, and that SNG is obliged to meet that challenge under the terms of the Deed of Gift.*

*SNG understands that Challenger of Record is intending to make a substantially similar application on Monday. If they do so SNG would withdraw this application unless there is good reason to continue with it.*

*We look forward to the Panel's directions and timetable for party submissions in due course."*

**3**  *The Application was supplemented by mail received from SNG on July 23, 2007 at 9.33 a.m. which read as follows:*

*"Dear Professor Peter*

*Thank you for your email.*

*I confirm SNG would like to proceed with it's application in light of reports of an apparently subsequent filing in the New York Supreme Court by Golden Gate Yacht Club on substantially the same issues, rather than withdraw the application. It would like the matter to be determined as soon as possible but recognising the need to allow for all interested parties to have an opportunity ti make submissions.*

*SNG can file its submissions on 24 hours notice.*

*It is appropriate that sporting issues are resolved by the dispute resolution bodies established by the sport rather than in the courts, a concept which is strongly endorsed, in relation to the America's Cup, in the Mercury Bay opinion of the New York Court of Appeals the highest appellate court with jurisdiction to rule on matters arising under the Deed of Gift.*

*Finally, there is a small typographical in the application , the word "issued" in the first line should have read " issues" which needs to be corrected.".*

### *Directions and Timetable*

**4**  *SNG to inform ACAP 33 by **July 24, 2007 at 5.00 p.m.** whether any Challenges have been made, and if so what Challengers have already formally declared that they accept the terms of the Protocol, and that SNG has accepted them as Challengers to the 33rd America's Cup, so that they can be advised of and be given the opportunity to participate in the present proceedings. The persons to whom such advice is to be provided are to be advised to ACAP 33, including contact details of the applicable representatives of GGYC.*

**5**  *SNG shall, by **Wednesday July 25, 2007 at 5.00 p.m.** provide in writing their full case.*

**6**  *CNEV shall, by **Friday July 27, 2007 at 12.00 a.m.**, submit in writing their full case.*

**7**  *GGYC is invited, by not later **than Friday, July 27, 2007 at 5.00 p.m.**, to inform ACAP 33, SNG and CNEV whether they are willing to take part to these proceedings and, if so, (i) as a party,  submitting to the jurisdiction of ACAP 33, or (ii)  by presenting their case, without prejudice to the existence and/or jurisdiction of ACAP 33 including the basis and reasons therefore.*

**8**  *Should GGYC decide to participate in the present proceedings whether under 7 (i) or (ii) above, GGYC is invited to present its response to the Application by not later than **Tuesday August 14 2007 at 12.00 a.m**.*

9  *Should any party consider they are not able to meet any part of this timetable they may request an extension of time which request should include the reasons for such extension and requested extended date(s).*

10  *Pursuant to clause 34 (b) of the Protocol:*
*"The Arbitration Panel shall only proceed upon payment of an application fee by the applicant which the Arbitration Panel shall fix being its estimate of total costs to resolve an arbitration. Such application fee shall be paid to the Arbitration Panel.".*
*ACAP 33 considers that it is difficult for it to estimate the total costs of these proceedings at this stage. An advance on costs of EURO 25'000 shall however be required from SNG, to be transferred on the following account: [...]*

11  *Any reference made herein to date or time shall be deemed to be Spanish time (which is equal to Swiss time).*

12  *Any communication shall be made by e-mail to all three members of ACAP 33 with a copy to all participants in these proceedings, currently SNG, CNEV GGYC (subject to their confirming that they will participate in the present proceedings) and possible other participants (see 1 above), unless expressly directed otherwise.*

13  *Further directions will be issued as may be appropriate.*

14  *An opportunity will be given by further directions for any party who chooses to participate in this case to respond to other parties submissions".*

[5]    On July 24, 2007 at 16.52 CET, the Panel received a notice from AC Management ("**ACM**") which read:

"*1. REPRESENTATION*

*This notice is made by AC Management SA ("ACM") in the frame of ACAP 33 / 01 dated 23RD July 2007 in which the Arbitration Panel invited SNG to inform ACAP 33 whether any Challenges have been made, and if so what Challengers have already formally declared that they accept the terms of the Protocol, and were accepted as Challengers to the 33rd America's Cup, so that they can be advised of and given the opportunity to participate in the proceedings.*

*2. GENERAL CONSIDERATIONS*

*This notice is respectfully made by ACM and not by SNG, to the extent the Protocol governing the 33rd America's Cup provides that yacht clubs wishing to become a Challenging Competitor shall apply by completing and submitting a Notice of Entry in a form to be issued by ACM, and that ACM may accept or reject any entry received at its sole and entire discretion (article 4).*

*3. NOTICE*

*As per its request, ACM hereby informs ACAP 33 that, in addition to CNEV, two Challenges have been made to date, who each formally declared that it "unconditionally agrees and accepts to be bound by the terms of the Deed of Gift, the Protocol and all applicable rules and obligations referred to in such Protocol, including but not limited to those which will be contained in the documents listed in article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time".*
*These Challenges are the following:*
*1. <u>Yacht Club:</u>*
*ROYAL CAPE YACHT CLUB ["**RCYC**"]*
*PO BOX 772*

*CAPE TOWN*

*8000*

*REPUBLIC OF SOUTH AFRICA*

*Tel.: +27 021 4211354*

*Fax: + 27 021 4216028*

*e-mail: info@rcyc.co.za*

*Representative:*

*RAYMOND CRAIG MIDDLETON*

*C/O ROYAL CAPE YACHT CLUB*

*PO BOX 772*

*CAPE TOWN*

*8000*

*REPUBLIC OF SOUTH AFRICA*

*Tel.: +27 021 5931620*

*Fax: +27 021 5931714*

*e-mail: craig@quantumsails.co.za*

*2. Yacht Club:*

*ROYAL THAMES YACHT CLUB LIMITED ["**RTYCL**"]*

*60, KNIGHTSBRIDGE*

*LONDON, SW1X 7LF*

*UNITED KINGDOM*

*Attn.: The Secretary, Captain David Freeman, LVO, Royal Navy*

*Fax.: + 44 0(20) 7245 9470*

*e-mail: secretary@royalthames.com*

*Tel.: + 44 0(20) 7235 2121*

*Representative:*

*TEAMORIGIN LLP*

*80, STRAND,*

*LONDON, WC2R 0NN*

*UNITED KINGDOM*

*Attn: Sir Keith Mills (Team Principal)*

*Fax: + 44 020 7152 4300*

*Email: keithmills@teamorigin.com*

*Tel.: + 44 020 7152 6600"*

[6]   On July 25, 2007, the Panel issued **Directions no 2** which stated:

*"1   ACAP 33 has issued first directions in this case on July 23, 2007 (copy enclosed; Directions no 1).*

*2   In point 4 of Directions no 1, SNG was invited to advice ACAP 33 as to what Challengers, in addition to the Challenger of Record, had declared that they accept the terms of the Protocol and were accepted as Challengers of the XXXIII America's Cup.*

*3   Within the deadline set by ACAP 33 an answer was given by ACM, not by SNG. Pursuant to the Protocol, ACM is in fact competent in that respect. ACM's reply dated July 24, 2007 is enclosed.*

*4   Pursuant to ACM's e-mail, two Challengers have now accepted the terms of the Protocol and been accepted as Challengers, namely Royal Cape Yacht Club, Cape Town, Republic of South Africa (RCYC), acting through Raymond Craig Middleton, Cape Town, Republic of South Africa, and Royal Thames Yacht Club Limited, London, United Kingdom (RTYCL), acting through Teamorigin LLP, London, United Kingdom.*

*Directions and Timetable*

*5   Both RCYC and RTYCL, as well as ACM, are entitled to take part in the present proceedings and, in addition to the all three ACAP 33 members and to the parties already mentioned under point 12 of Directions no 1,*

*shall directly receive all and any submissions, responses or communication, by e-mail.*

**6** *RCYC and RTYCL may by* **Tuesday August 14, 2007** *at 12.00 a.m. (Swiss time), provide their respective submissions in respect of the case.*

**7** *Further directions will be issued as may be appropriate including an opportunity to respond to any submissions received."*

[7] On July 25, 2007 at 13.44 CET, the Panel received an email from SNG which read:

*"Owing to the imminent venue announcement and other related announcements this afternoon, I have been requested to seek from the Panel an extension of time until 1700hrs Friday 25th July 2007. I appreciate this may cause the rescheduling of other submission for which SNG apologises."*

[8] On July 25, 2007 at 13.47 CET, the Panel received an email from CNEV which read:

*"The Challenger of Record does not oppose to Alinghi's petition, on the contrary, we fully understand their reasons for requesting an extension of the period.*

*We would like to have two or three days after SNG application for the submission of our, so we kindly ask that if SNG petition is accepted, CNEV is given a new term for submission until August 1, 2007."*

[9] On July 25, 2007, the Panel issued **Directions no 3** which stated:

*"1 ACAP 33 has received from SNG today at 13.44 p.m. the following application:*

*"Dear Professor Peter*

12

*Owing to the imminent venue announcement and other related announcements this afternoon, I have been requested to seek from the Panel an extension of time until 1700hrs Friday 25th July 2007. I appreciate this may cause the rescheduling of other submission for which SNG apologises."*

**2** *ACAP 33 has thereafter received from CNEV at 13.47 p.m. the following application:*

*"Dear Professor Peter,*

*The Challenger of Record does not oppose to Alinghi's petition, on the contrary, we fully understand their reasons for requesting an extension of the period.*

*We would like to have two or three days after SNG application for the submission of our, so we kindly ask that if SNG petition is accepted, CNEV is given a new term for submission until August 1, 2007."*

**<u>Directions and Timetable</u>**

**3** *Both applications are accepted by ACAP 33 and the respective deadlines are extended accordingly."*

[10]  On July 27, 2007 at 13.06 CET, the Panel received a notice from ACM which read:

*"1. REPRESENTATION*
*This notice is made by AC Management SA ("ACM") in the frame of ACAP 33 / 01 dated 23rd July 2007 in which the Arbitration Panel invited SNG to inform ACAP 33 whether any Challenges have been made, and if so what Challengers have already formally declared that they accept the terms of the*

Protocol, and were accepted as Challengers to the 33rd America's Cup, so that they can be advised of and given the opportunity to participate in the proceedings.

A first notice was made by ACM on 24th July 2007, informing the Arbitration Panel of the entry of ROYAL CAPE YACHT CLUB and ROYAL THAMES YACHT CLUB LIMITED. The present notice is to inform the Arbitration Panel of an additional entry.


## 2. GENERAL CONSIDERATIONS

This notice is respectfully made by ACM and not by SNG, to the extent the Protocol governing the 33rd America's Cup provides that yacht clubs wishing to become a Challenging Competitor shall apply by completing and submitting a Notice of Entry in a form to be issued by ACM, and that ACM may accept or reject any entry received at its sole and entire discretion (article 4).


## 3. NOTICE

As per its request, ACM hereby informs ACAP 33 that, in addition to CNEV, ROYAL CAPE YACHT CLUB and ROYAL THAMES YACHT CLUB LIMITED, an additional Notice of Entry was received on 25th July 2007 and accepted on 26th July 2007. This new Challenge is namely:

Yacht Club:

ROYAL NEW ZEALAND YACHT SQUADRON

101 Curran Street

Westhaven

Auckland 1147

New Zealand

Attn: Mr J.C. Crawford

Tel.: + 64 93 60 68 09

Fax: + 64 93 60 68 02

e-mail: n/a

*Representative:*

*TEAM NEW ZEALAND*

*c/o ROYAL NEW ZEALAND YACHT SQUADRON*

*101 Curran Street*

*Westhaven*

*Auckland 1147*

*New Zealand*

*Attn: Mr Grant Dalton*

*Tel.: + 64 21 923 023*

*Fax: + 64 93 606 802*

*e-mail: grant.dalton@emiratesteamnz.com*

*ACM confirms that this additional Challenge formally declared that it "unconditionally agrees and accepts to be bound by the terms of the Deed of Gift, the Protocol and all applicable rules and obligations referred to in such Protocol, including but not limited to those which will be contained in the documents listed in article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time". "*

[11]  On July 27, 2007, the Panel issued **Directions no 4** which stated:

> *"**1**  In point 4 of Directions no 1, SNG was invited to advise ACAP 33 as to which Challenger(s), in addition to the Challenger of Record, had declared that it (they) accept(s) the terms of the Protocol and was (were) accepted as Challenger(s) in respect of the XXXIII America's Cup.*

> ***2**  Pursuant to an e-mail received by ACAP 33 from ACM on July 27, 2007 (copy enclosed), another Challenger has now accepted the terms of the Protocol and been accepted as Challenger, namely Royal New Zealand Yacht Squadron (RNZYS) of Auckland, New Zealand, acting through Team New Zealand, Auckland, New Zealand.*

### Directions and Timetable

**3**  *RNZYS is entitled to take part in the present proceedings and, in addition to the three ACAP 33 members and to the parties already mentioned under point 12 of Directions no 1 and under point 5 of Directions no 2, shall directly receive all and any submissions, responses or communications, by e-mail.*

**4**  *RNZYS as well as, for the avoidance of doubt, all parties hereto and GGYC receive herewith copy of Directions no 1 through no 3.*

**5**  *RNZYS may, by **Tuesday August 14, 2007 at 12.00 a.m.** (Swiss time), provide its submission in respect of the case."*

[12]  On July 27, 2007 at 15.50 CET, the Panel received an email (enclosing a submission) from SNG which read:

**"Submissions**
*I attach submissions made on behalf of SNG. Due to the size of the attachments, I will send these by separate emails so that there is a good chance of them being received without problems.*
*I have sent a copy to the representative CNEV, and will await the Panel's directions as regards other parties.*

**Confidentiality**
*As regards any party who is not an entered competitor in the 33rd America's Cup, SNG strongly believes they should not be given access to submissions made to the Panel unless they have agreed to become a party to the arbitration. The reason for this that at least one party, GGYC, has filed an application in the Supreme Court of New York, it is believed access to SNG's application to the Panel and it will result in a considerable advantage to GGYC*

16

*in those proceedings if it does not commit to participate in the arbitration, but receives the submissions. As a consequence, SNG requests that all submissions to the Panel remain confidential to the Panel and to parties who have agreed entered the 33rd America's Cup, or have agreed to become parties to the arbitration. This should include periods after the Panel has delivered its decision.*

*Notwithstanding this, SNG fully supports and endorses GGYC being given every opportunity to become a party and to make submissions to the Panel. Any additional time given to SNG or another party should in fairness be extended to GGYC and other parties.*

*SNG also recommends if this has not already occurred that copies of the Panel's invitation to become a party to the proceedings be faxed and couriered to other interested parties, including GGYC."*

[13]    Pursuant to its submission attached to its aforesaid email dated July 27, 2007, SNG asked the Panel to confirm that:

*"[...] 13.1 The challenge of Club Nautico Español de Vela is a valid challenge under the terms of the Deed of Gift. SNG is obliged to meet the challenge of Club Nautico Español de Vela.*

*13.2 Société Nautique de Genève is under a legal obligation as holder of the America's Cup and Trustee of the America's Cup to accept the challenge of Club Nautico Español de Vela both by virtue of the terms of the Deed of Gift, the past decisions of the New York State courts, and the history and tradition of the America's Cup. It is also under an express legal obligation not to consider another challenge until the challenge of Club Nautico Español de Vela has been decided.*

*13.3 Société Nautique de Genève as trustee of the America's Cup determined that the challenge of Club Nautico Español de Vela complied with the terms of the Deed of Gift in a manner consistent with similar decisions made by past*

17

*trustees, and with the decisions of the New York State courts. SNG was mindful that in addition to complying with the terms of the Deed of Gift, the club, albeit newly formed, was the Real Federacion Española de Vela, a challenger in the 32nd America's Cup and would be represented by Desafio Español a strong and credible competitor.*

*13.4 Société Nautique de Genève and Club Nautico Español de Vela reached terms satisfactory to them by mutual consent as to the conduct of the 33rd America's Cup. No other party is entitled to disturb those arrangements. It remains open for prospective challengers to review those terms and decide whether or not to apply to participate in the competition."*

[14]  On July 27, 2007 at 17.12 CET, the Panel received a letter from Golden Gate Yacht Club's ("**GGYC**") lawyers Latham & Watkins LLP, New York (James V. Kearney), challenging the Panel's jurisdiction and the validity of CNEV's challenge and some Articles of the Protocol, which read:

*"The Golden Gate Yacht Club ("GGYC") has received notice that Societe Nautique de Geneve ("SNG") and Club Nautico Espanol de Vela ("CNEV") plan to submit to arbitration the validity of the challenge of CNEV.[1]*

*The format and process set up for this arbitration in The Protocol Governing the Thirty Third America's Cup ("Protocol") violate the most basic principles of justice and independence common to illegitimate adjudicatory bodies and are an affront to the most basic sensibilities common to all law abiding people. A dispute resolution proceeding in which the parties to the proceeding are in agreement (in this case CNEV and SNG), and in which the judges may be removed, and the rules of procedure may be changed, at any time and for any reason by the parties to the arbitration, will be viewed by the public and the sailing community as nothing more than a kangaroo court.*

---

[1] *Unsigned letter from Henry Peter, Chairman of the arbitration panel, captioned "ACAP 33 / 01: Application filed by SNG on July 20, 2007, in respect of the validity of the challenge of Club Nautico Espanol de Vela (CNEV) for the 33rd Americas Cup," dated July 23, 2007.*

*The arbitration process will further damage the sport of yachting as it will be viewed with no more validity, and no less frivolity, than CNEV's attempt to meet the annual regatta requirement for the Challenger of Record by holding a sailing school.[2] Its continuation day to day will provide compelling on-going proof that SNG's Protocol for the 33rd America's Cup was designed by SNG to put the fox in charge of the henhouse.*

*The question presented to the arbitration panel by SNG is whether it violated the terms of the Deed of Gift and its legal duty to comply with and enforce those terms under New York law by accepting CNEV's challenge. In a transparent attempt to lend legitimacy to the arbitration panel, SNG in its letter to the arbitration panel dated July 23, 2007, ironically refers to a New York Court of Appeals decision captioned Mercury Bay Boating Club v. San Diego Yacht Club and argues that it "is appropriate that sporting issues are resolved by the dispute resolution bodies established by the sport rather than in the courts."*

*In fact, as the arbitration panel must be aware, the Mercury Bay opinion held that the New York courts have the authority to interpret the trust instrument, the Deed of Gift, and determine whether a successor trustee, in this case SNG, has complied with its terms. Indeed, the Mercury Bay opinion refers to amicus briefs submitted jointly on behalf of "renowned yachtsmen from the United States, Great Britain and Australia and yacht clubs of undisputed standing" for the proposition that the court has jurisdiction over the*

---

[2] *The Deed of Gift requires that a bona fide yacht club challenge for the Cup. Pursuant to the Deed of Gift, "[a]ny organized Yacht Club of a foreign country, incorporated, patented, or licensed by the legislature, admiralty, or other executive department, having for its annual regatta an ocean water course on the sea, or on an arm of the sea, or one which combines both, shall always be entitled to the right of sailing a match of this Cup " Demonstrating its failure to comply with the terms of the Deed of Gift regarding an annual regatta, CNEV sought to hold a sham regatta after its purported challenge for the America's Cup which was announced by the Spanish Sailing Federation on July 13, 2007, the very same day that the regatta was supposed to take place. Reports have indicated that the sham regatta was actually a sailing training session.*

*administration of the Deed of Gift. Mercury Bay Boating Club, Inc. v. San Diego Yacht Club, 76 N.Y.2d 256, 278 (N.Y. 1990).*

*GGYC is disappointed that Henry Peter, appointed chairman of the arbitration panel, would even consider SNG' s application to arbitrate knowing the panel lacks jurisdiction over this issue. Mr. Peter, in his book entitled, "Arbitration in The America's Cup," concedes that "the New York State Supreme Court . . . has jurisdiction over the Deed of Gift" to decide upon the "interpretation of the deed of gift" and whether a "challenge was valid." Henry Peter, Arbitration in the America 's Cup, (2003), p.4.*

*Indeed, the panel's willingness to engage in this arbitration in the face of this legal precedent suggests its members are beholden to the parties who appointed them in a secret document and who retain the power to remove them. The Protocol, published only two days after SNG won the 32nd America's Cup, states that SNG and CNEV "have agreed in a separate document on the names of the Arbitration Panel members." See Protocol ¶ 24.2. The letter has never been publicly disclosed, to our knowledge, nor has the identity of the arbitrators; and until we received notification from Mr. Peter, we did not even know he was the panel's chairman. Nor have we yet been advised of the names of the other members.*

*Not only does this arbitration panel lack jurisdiction, the clubs opposed to SNG and CNEV on the issue presented are frozen out from the adjudication since they will not and cannot have standing before the arbitration panel. Under the Protocol only a yacht club accepted as a Challenger has standing before the panel; but to become a Challenger, a yacht club must submit to the terms of the Protocol which includes granting SNG the power to disqualify any Challenger who disputes the binding effect of the Protocol. An adjudicatory proceeding over the validity of the Protocol in which a yacht club must accept the Protocol before they can challenge its validity, while SNG retains the right*

to terminate their standing if they challenge any provision of the Protocol, is a fatally flawed proceeding.

It offends basic notions of justice that one side to a dispute, SNG and CNEV collectively, would retain hegemonic control over an adjudicatory panel and its proceedings while the other side remains powerless.[3] Moreover, any real adversary can be disqualified from the competition just far disputing a provision of the Protocol. See Protocol ¶ 2.7(d).

Moreover, SNG and CNEV retain the sole power to modify anything they desire regarding the arbitration, including but not limited to the powers of the arbitration panel, the jurisdiction of the arbitration panel, procedures of the arbitration panel, and even the official language of the arbitration panel. See Protocol ¶ 36.1. The issue of whether CNEV is a legitimate challenger is not contested by CNEV or SNG and their masquerading as adversaries while the real adversaries are rendered impotent is not a legitimate legal proceeding but rather a mockery of justice. Civilized countries have long done away with such tribunals and no legitimate arbitration panel would agree to operate under these conditions. This may explain the striking omission from the 33rd Protocol of the requirement in the 32nd Protocol that arbitration panel members be "fair minded and possess good judgment."

It is subterfuge to have SNG and CNEV's hand picked arbitrators, replaceable at the their whim, sitting in a forum and under rules wholly controlled by SNG and CNEV, and judging an issue that the parties to the arbitration do not dispute. The disgrace and shame brought upon the America's Cup by this charade threatens to inflict a crippling blow to the sport. This arbitration, if it chooses to proceed, will not and cannot have any involvement from GGYC, and will be viewed with the same disdain by the public and sailing community as CNEV's sham regatta."

---

[3] SNG's letter to the Panel of July 20,2007 expects that CNEV would make an application to the Panel on July 23, 2007 but did not disclose how SNG knew this information.

[15]  On July 28, 2007, the Panel issued **Directions no 5** which stated:

> "*1    Within the deadline set in Directions no 1, i.e. Friday July 27, 2007 at 5.00*
> *p.m., GGYC have submitted their reply and reasons thereof to ACAP 33*
> *through a letter dated July 27, 2007 from their lawyers Latham & Watkins*
> *LLP, New York (James V. Kearney).*
>
> **_Directions and Timetable_**
>
> *2    GGYC submission is enclosed hereto for parties to this case's*
> *consideration.*
>
> *3    For all parties' information, the members of ACAP 33 are:*
> *- Chairman: Professor Henry Peter, Lugano, Switzerland. Henry Peter is a*
> *lawyer. He was member of the Arbitration Panel of the 31st America's Cup*
> *and member of the Jury of the 32nd America's Cup;*
> *- Members:*
>> *.Graham McKenzie, Auckland, New Zealand. Graham McKenzie is*
>> *a lawyer. He was member of the Jury of the 32nd America's Cup.*
>> *.Dr. Luis Cazorla Prieto, Madrid, Spain. Luis Cazorla Prieto is a*
>> *lawyer.*
>
> **ACM** *will issue full particulars of all three members of ACAP 33 by* **August**
> **2, 2007**. *A copy will be directly sent by ACM to all addressees hereof.*
>
> *4    To the best of ACAP 33's understanding, GGYC's letter means that they*
> *have decided not to take part to the present proceedings any further.*
> **GGYC** *is however invited to confirm this expressly by* **Tuesday August 7,**
> **2007 at 6 p.m.**, *Swiss time., or, alternatively, to take part to this case as*
> *provided in Directions no 1. GGYC's letter dated July 27, 2007 and the*

*detailed reasons contained therein shall in any event remain part of the present proceedings and be duly considered by ACAP 33.*

5    *Alinghi, acting on behalf of SNG, in providing its submission on July 27, 2007 requested that it be kept confidential and confined only to the parties taking part in this case. ACAP 33 considers that it is important for its proceedings to be transparent as a matter of principle and that there must be a substantive reason for granting any confidentiality order. It does not appear to ACAP 33 that any such reason exists in this case, at least at this stage. ACAP 33 however recognises that where a prospective party to a case is not an accepted Challenger for the 33rd America's Cup and where they have expressly chosen not to participate in a given case there is no proper basis for them to receive from any party copies of any further submission, document or, generally, communication. In any event, when this case will have been decided, the full written decision will be made publicly available.*

6    *Accordingly, unless GGYC advises that it wishes to take part in this case as aforesaid, no further communication or document regarding these proceedings will be sent to GGYC.*

7    *Subject to the aforesaid, the timetable set in ACAP 33's previous Directions remains unchanged.*

8    *Further directions will be issued in due course."*

[16]  On July 31, 2007, ACM published a press release on its website (www.americascup.com) publically announcing the nomination of the Panel members and providing Panel members profiles.

[17]  On August 1, 2007 at 17.01 CET, the Panel received a submission from CNEV in support of the SNG Application and submission.

[18]  On August 2, 2007 at 19.28 CET, the Panel received an email from ACM which read:

> *"ACM is hereby respectfully asking for some clarification as to whether it may provide a submission in respect of the case.*
>
> *Indeed, point 5 of the Directions no 2 dated 25th July 2007 provides that "both RCYC and RTYCL, as well as ACM, are entitled to take part in the present proceedings and [...] shall directly receive all and any submissions, responses or communication, by e-mail" whereas point 6 thereof sets forth that "RCYC and RTYCL may by Tuesday August 14, 2007 at 12:00 a.m. (Swiss time), provide their respective submissions in respect of the case" without referring to ACM.*
>
> *I would therefore be thankful if you could clarify the situation, it being specified that ACM would normally use the possibility of providing such a submission."*

[19]  On August 6, 2007, the Panel issued **Directions no 6** which stated:

> *"1    With its submission filed on August 1, 2007 at 17.01 CNEV requested:*
>
> > *"6.2 We would also want to offer the testimony of relevant officers of the Royal Spanish Sailing Federation and Club Nautico Espagnol de Vela to support our statements in this submission. Either this testimony may take place in writing through afidavits or by means of oral in a testimony hearing, or both, as the Arbitration Panel deems more convenient.".*
>
> *2    On August 2, 2007, at 19.28, ACM pointed out that Directions no 2 dated 25th July 2007 provides that*

*"both RCYC and RTYCL, as well as ACM, are entitled to take part in the present proceedings and [...] shall directly receive all and any submissions, responses or communication, by e-mail"*

*whereas point 6 thereof sets forth that*

*"RCYC and RTYCL may by Tuesday August 14, 2007 at 12:00 a.m. (Swiss time), provide their respective submissions in respect of the case"*

*without referring to ACM.*

## **_Directions and Timetable_**

**3**  *CNEV is instructed to submit all testimonies in writing in the form of affidavits to be filed with ACAP 33 and sent to all parties hereto by* **Thursday August 14, 2007 at 12.00 a.m**. *(Swiss time).*

**4**  *ACAP 33 reserves the right to hear the witnesses and the parties on the occasion of a hearing, if any.*

**5**  **ACM** *is entitled to file a submission by* **Thursday August 14, 2007 at 12.00 a.m**. *Copy thereof shall simultaneously be sent to all three members of ACAP 33 as well as to all parties hereto within such deadline.*

**6**  *Further directions, if appropriate, will be issued in due course."*

[20] On August 8, 2007 at 12.54 CET, the Panel received a submission from ACM which read:

"*1. REPRESENTATION*

*This submission in the frame of ACAP 33 / 01 is filed by AC Management SA ("ACM") based on the Arbitration Panel's Directions no 6 dated 6th August 2007 whereby the Arbitration Panel entitled ACM to file a submission by 14th August 2007.*

*2. SUBMISSION*

*The Protocol governing the 33rd America's Cup (the "Protocol") gives ACM the competence to accept or reject entries at its discretion (art. 4.4), except however for what concerns the acceptance of the Challenger of Record which remains within the competence of the America's Cup Trustee, SNG (art 3.1).*

*The Protocol further gives ACM the competence to define the content of the Notice of Entry and the documents that will be presented with the Notice of Entry (art. 4.3). A copy of the Notice of Entry issued by ACM is attached hereto as* <u>Schedule 1</u>. *This Notice of Entry is also posted on AC33 entry section of ACM's website (<u>http://www.americascup.com</u>).*

*This Notice of Entry sets forth the requirements to challenge, based on the Deed of Gift which terms are reminded under points 2.2 to 2.5 of said Notice. Basically, the requirements to qualify are that the yacht club:*

        *(i)     is not domiciled in Switzerland;*
        *(ii)    is an organised yacht club;*
        *(iii)   is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and*

26

> > (iv)    *has or will have an annual regatta on the sea or an arm of the sea.*

*ACM carefully reviewed the documents which were provided by CNEV, i.e. the Notice of Challenge of 29th June, SNG's acceptance and the relating Notarial Deed of 3rd July, as well as the Notarial Deed of CNEV's incorporation and initial statutes of 19th June 2007, CNEV's internal rules of 19th June 2007, the Notarial Deed relating to the revised statutes of 27th June 2007, as well as CNEV registration with the competent "Registro de Entidades Deportivas de la Comunitat Valenciana" (Registry of Sportive Entities of the Valencian Community) on 28 June 2007.*

*In addition, CNEV provided documents evidencing that it organizes several regattas on the sea, in particular the information relating to the Optimist Regatta which took place on 13th and 14th July 2007 as well as the Notice of Regatta for the "Vuelta España a Vela 2007" which are attached to CNEV's submission of 1st August.*

*In their respective Submissions of 27th July and 1st August, SNG and CNEV further explained and demonstrated that CNEV meets the qualifications to challenge required in the Deed of Gift.*

*As mentioned above, these qualifications are also applied to Challenging Competitors and compliance therewith is systematically examined by ACM when receiving an application to become a Challenging Competitor from a yacht club.*

*In this respect, should CNEV's challenge have been an application subject to ACM's assessment and approval, ACM would have accepted it without restriction.*

*Moreover, CNEV's application being the first challenge received by the trustee of the 33rd America's Cup, ACM believes that SNG had the obligation to accept it, as per the provisions of the Deed of Gift.*

*ACM is therefore fully supporting SNG's acceptance of CNEV as Challenger of Record and believes there is no doubt as to its validity.*

*One could even argue that the question raised by some prospective competitors with respect to the validity of CNEV's challenge is in reality nothing but an attempt to ultimately modify the arrangements made by the Defender and the Challenger of Record, as reflected in the Protocol they have mutually agreed in accordance with the terms of the Deed of Gift.*

*ACM respectfully underlines the gravity of any such attempt which could seriously affect the stakeholders, protagonists and all participants of the 33rd America's Cup and have severe consequences on the Event, including as concerns the commitments made by the hosts of the Event: Valencia, the Comunidad Valenciana and Spain.*

**3. SUBMISSION**

*In view of the above, ACM respectfully submits that CNEV's challenge as Challenger of Record is valid and that any attempt to question its validity should be disregarded."*

[21] On August 13, 2007 at 16.06 CET, the Panel received a submission from RTYCL which included *inter alia*:

> *"[...]*
> **5. Impact of uncertainty**
>
> *5.1 Until the application before this Panel in this matter is decided and until the matters raised in the Complaint are resolved or settled, there is uncertainty as to the terms upon which RTYC may compete in the 33rd America's Cup and indeed uncertainty as to whether or not RTYC will be permitted to compete in the 33rd America's Cup.*
>
> *5.2 This uncertainty damages RTYC's ability to raise funds from sponsors (which understandably wish to know whether the party they wish to sponsor will indeed take part in the event), to employ staff, to plan, to know whether and to what extent to expend further funds on all matters relevant to becoming an effective challenger and ultimately jeopardises RTYC's ability to become a viable competitor.*
>
> *5.3 A quick decision from this Panel declaring CNEV's challenge and the Protocol valid will provide the certainty RTYC needs, will save RTYC and its representative TEAMORIGIN from potentially wasting substantial sums of money and will ultimately make for a more competitive event."*

[22] On August 14, 2007 at 11.53 CET, the Panel received two affidavits from CNEV in support of its submission, one by Mr. Manuel Chirivella, Chairman of CNEV and Vice-Chairman of the Spanish Royal Sailing Federation ("**SRSF**") (dated August 13, 2007), and one by Mr. Gerardo Pombo García, Chairman of SRSF (dated August 10, 2007) (see below point [55] to [57]).

[23]  On August 16, 2007, the Panel issued **Directions no 7** which stated:

> **"1**  *Following ACAP 33's Directions no 1 through 6, the following has been received:*
>
> - *on July 27, 2007, a submission by SNG;*
> - *on July 27, 2007, a letter from GGYC;*
> - *on August 1, 2007, a submission by CNEV;*
> - *on August 8, 2007, a submission by ACM;*
> - *on August 13, 2007, a submission by RTYCL;*
> - *on August 14, 2007, from CNEV, affidavits by Mr. Manuel Chirivella (Chairman of CNEV and Vice-Chairman of the Spanish Royal Sailing Federation) and Mr. Gerardo Pombo Garcia (Chairman of the Spanish Royal Sailing Federation).*
>
> **2**  *In its previous Directions, ACAP 33 has reserved further directions with regard to additional submissions and/or to hearing witnesses and/or the parties.*
>
> **3**  *No party has requested to file further submissions and/or documents and/or affidavits and/or to be heard and/or that witnesses or experts be heard.*
>
> **4**  *In its submission, RTYCL, page 5, has insisted on the urgency of the matter since:*
>
> *"5.1 Until the application before this Panel in this matter is decided and until the matters raised in the Complaint are resolved or settled, there is uncertainty as to the terms upon which RTYC may compete in the 33rd America's Cup and indeed uncertainty as to whether or not RTYC will be permitted to compete in the 33rd America's Cup.*

*5.2 This uncertainty damages RTYC's ability to raise funds from sponsors (which understandably wish to know whether the party they wish to sponsor will indeed take part in the event), to employ staff, to plan, to know whether and to what extent to expend further funds on all matters relevant to becoming an effective challenger and ultimately jeopardises RTYC's ability to become a viable competitor.*

*5.3 A quick decision from this Panel declaring CNEV's challenge and the Protocol valid will provide the certainty RTYC needs, will save RTYC and its representative TEAMORIGIN from potentially wasting substantial sums of money and will ultimately make for a more competitive event.".*

### *Directions and Timetable*

**5**  *It is believed that each party has received all of the aforesaid submissions, letter and affidavits. Should this not be the case, such party is invited to inform ACAP 33's Chairman by* **Monday August 20, 2007 at 5.00 p.m.** *(Swiss time). The relevant document will be forwarded forthwith to such party.*

**6**  *Should any party, having or not filed a submission so far, desire to file a (further) submission in view of the aforesaid submissions, letter and affidavits, it is invited to do so by* **Thursday August 23, 2007 at 5.00 p.m.** *(Swiss time).*

**7**  *Should any party desire to express itself or submit the testimony of witnesses or experts on the occasion of a hearing, it is invited to state so by* **Tuesday August 21, 2007 at 5.00 p.m.** *(Swiss time).*

**8**  *Further directions will be issued in due course."*

31

[24]  On August 17, 2007 at 04.15 CET, the Panel received an email from SNG which read:

> "In response to the Jury's Directions No. 7, SNG responds as follows:
>
> 1. It confirms receipt of the documents listed.
>
> 2. It does not seek to make further submissions in response.
>
> 3. It does not seek a hearing in the matter because it believes the relevant issues and evidence is sufficiently clear and are uncontested.
>
> 4. SNG supports the statements made by RTYC regarding the desirability for an early determination.
>
> One matter in SNG's submission which has been kindly brought to SNG's attention by Counsel for CNEV. It concerns paragraph 11.4 and comments made about Don Gerardo Pombo Garcia. He was not a member of the America's Cup Arbitration Panel during 2000 - 2003, his brother was hence the confusion. The words "He was a member of the America's Cup Arbitration Panel during the 31st America's Cup" should be deleted from Paragraph 11.4 of SNG's submission."

[25]  On August 24, 2007, the Panel issued **Directions no 8** which stated:

> "1   In points 5, 6 and 7 of its Directions no 7, ACAP 33 has stated:
>
>> "5   It is believed that each party has received all of the aforesaid submissions, letter and affidavits. Should this not be the case, such party is invited to inform ACAP 33's Chairman by Monday August 20, 2007 at 5.00 p.m. (Swiss time). The relevant document will be forwarded forthwith to such party.
>>
>> 6   Should any party, having or not filed a submission so far, desire to file a (further) submission in view of the aforesaid submissions, letter and affidavits, it is invited to do so by Thursday August 23, 2007 at 5.00 p.m. (Swiss time).

7   *Should any party desire to express itself or submit the testimony of witnesses or experts on the occasion of a hearing, it is invited to state so by Tuesday August 21, 2007 at 5.00 p.m. (Swiss time)."*

**2**   *Within the deadlines set in Directions no 7, SNG has submitted a reply to ACAP 33 on August 17, 2007 at 04:15am as follows:*

*"In response to the Jury's Directions No. 7, SNG responds as follows:*
1. *It confirms receipt of the documents listed.*
2. *It does not seek to make further submissions in response.*
3. *It does not seek a hearing in the matter because it believes the relevant issues and evidence is sufficiently clear and are uncontested.*
4. *SNG supports the statements made by RTYC regarding the desirability for an early determination.*

*One matter in SNG's submission which has been kindly brought to SNG's attention by Counsel for CNEV. It concerns paragraph 11.4 and comments made about Don Gerardo Pombo Garcia. He was not a member of the America's Cup Arbitration Panel during 2000 - 2003, his brother was hence the confusion. The words "He was a member of the America's Cup Arbitration Panel during the 31st America's Cup" should be deleted from Paragraph 11.4 of SNG's submission."*

**3**   *Within the deadlines set in Directions no 7, no party has informed ACAP 33 that it had not received all of the submissions mentioned under point 1 of Directions no 7, no party other than SNG has filed or requested to file a further submission, letter or affidavit, and no party has expressed its desire to be heard or submit the testimony of witnesses or experts on the occasion of a hearing.*

_**Directions and Timetable**_

**4**   _Subject to yet unforeseen developments, ACAP 33 considers that it now disposes of all necessary elements in order to render its decision._

**5**   _Should any other Challenger accept the terms of the Protocol and be accepted as Challenger of the XXXIII America's Cup before ACAP 33's decision is rendered, ACAP 33 reserves the right to grant said Challenger the opportunity to file a submission._

**6**   _Further directions, if appropriate, will be issued in due course."_

[26]  On August 30, 2007 at 13.45 CET, the Panel received a notice from ACM which read:

**"1. REPRESENTATION**

_This notice is made by AC Management SA ("ACM") in the frame of the Arbitration Panel's Directions 23rd July and 24th August 2007 in which the Arbitration Panel invited SNG to inform ACAP 33 of new entries of Challengers having accepted the terms of the Protocol, whose challenge was accepted as Challenging Competitor._

_Two notices were made by ACM on respectively 24th and 27th July 2007, informing the Arbitration Panel of the entry of ROYAL CAPE YACHT CLUB, ROYAL THAMES YACHT CLUB LIMITED and ROYAL NEW ZEALAND YACHT SQUADRON. The present notice is to inform the Arbitration Panel of an additional entry._

**2. NOTICE**

_ACM hereby informs the Arbitration Panel that, in addition to CLUB NAUTICO ESPANOL DE VELA, ROYAL CAPE YACHT CLUB, ROYAL THAMES_

*YACHT CLUB LIMITED and ROYAL NEW ZEALAND YACHT SQUADRON, an additional Notice of Entry dated 10th August 2007 was accepted by ACM on 30th August 2007.*

*This new Challenging Competitor is namely:*

*Yacht Club:*

*DCYC – DEUTSCHER CHALLENGER YACHT CLUB e.V. ["DCYC"]*

*Nepomukweg 4-6*

*D- 82319 STARNBERG*

*Attn.: Mr Willy Kuhweide – Commodore*

*Tel.:  +49 (0) 8151 3238*

*Fax.: +49 (0) 8151 28222*

*e-mail: info@dcyc.de*

*Representative:*

*UNITED INTERNET TEAM GERMANY*

*Deutsche Challenge S.L.U.*

*Muelle de Nazaret s/n*

*Port America's Cup – Base 2*

*46024 VALENCIA*

*Spain*

*Attn.: Mr Michael Scheeren – Syndicate Chief*

*Tel.:  +49 (0) 171 7875382*

*Fax.: +34 (0) 96 320 4471*

*e-mail: m.scheeren@ui-team-germany.de*

*ACM confirms that this additional Challenging Competitor formally declared that it "unconditionally agrees and accepts to be bound by the terms of the Deed of Gift, the Protocol and all applicable rules and obligations referred to in such Protocol, including but not limited to those which will be contained in the documents listed in article 2.5 of the said Protocol, and any amendment to*

*such Protocol or such rules and obligations that may be issued from time to time".*"

[27]  On August 30, 2007, the Panel issued **Directions no 9** which stated:

"*1    In point 5 of its Directions no 8, ACAP 33 has stated:*

*"Should any other Challenger accept the terms of the Protocol and be accepted as Challenger of the XXXIII America's Cup before ACAP 33's decision is rendered, ACAP 33 reserves the right to grant said Challenger the opportunity to file a submission."*

*2    Pursuant to an e-mail received by ACAP 33 from ACM on Thursday, August 30, 2007 at 1.45 p.m. (CET) (copy enclosed), another Challenger has now accepted the terms of the Protocol and been accepted as Challenger, namely Deutscher Challenger Yacht Club ("DCYC") of Starnberg, Germany, acting through United Internet Team Germany, Valencia, Spain.*

**<u>Directions and Timetable</u>**

*3    DCYC is entitled to take part in the present proceedings and, in addition to the three ACAP 33 members and to the parties already mentioned under point 12 of Directions no 1, under point 5 of Directions no 2 and under point 3 of Directions no 4, shall directly receive all and any submissions, responses or communications, by e-mail.*

*4    To that effect, DCYC receives herewith copy of the following documents:*
   - *SNG's Application dated July 20, 2007;*
   - *The submissions received by ACAP 33 from SNG (on July 27, 2007), GGYC (through a letter received on July 27, 2007 from their counsel Latham & Watkins LLP (James V. Kearney)), CNEV (on*

*August 1, 2007), ACM (on August 8, 2007) and RTYCL (on August 13);*

- *Two affidavits received by ACAP 33 from CNEV on August 14, 2007, one by Mr. Manuel Chirivella, Chairman of CNEV and Vice-Chairman of the Spanish Royal Sailing Federation (dated August 13, 2007), and one by Mr. Gerardo Pombo García, Chairman of SRSF (dated August 10, 2007); and*

- *ACAP 33's Directions no 1 through no 8.*

**5**   *DCYC may, by **Tuesday, September 4, 2007 at 5 p.m. (CET)**, produce a submission in respect of the case.*

**6**   *Further directions will be issued as appropriate."*

[28]   On August 31, 2007 at 20.58 CET, the Panel received an email from SNG which read:

*"The Members of the Jury are likely to be aware from media reports of additional ex-parte proceedings instituted by GGYC last week, which resulted in a procedural order of the Supreme Court. Copies of the order and the documents filed have now been posted by GGYC on its home page and can be accessed at http://www.ggyc.com/.*

*In short, the order accelerates by nine days the time by which SNG must file its first response GGYC's filings, but is restricted to the ex-parte application for an expedited trial, for SNG to provide the location of the match sought by GGYC, and provide the rules and regulations of such match. The date for filing the response is 1500hrs 5th September 2007 and a hearing has been setdown for 1400hrs 10th September 2007 (all NY time) to address these issues.*

*The order does not affect SNG's application to the Panel or the work of the Panel.*

*SNG is will make available to the Panel the documents it files with the Court in response."*

[29]    On September 4, 2007 at 11.42 CET, the Panel's Chairman received an email from DCYC which read:

*"Please see the mail I sent to the Challenger and Michel."*

The email mentioned by DCYC was sent to all other Challengers and ACM on September 4, 2007 at 11.28 CET, and read:

*"We have read the documents about the arbitration panel and we don't wish to delay the process with details.*

*So we concur in and agree to the submission made by SNG and we respond to your invitation CNEV as being valid and binding."*

[30]    On September 5, 2007 at 20.48 CET, the Panel received an email from CNEV which read:

*"CNEV would like to update certain aspects of its submission:*

a)  ***Regatta organised by CNEV called Vuelta España a Vela.*** *As advanced in our submission dated August 1, this regatta has started on September 3 . It is organised by CNEV, RFEV and the company Deportevents. This competition is sailed in boats RO 340 of 34 feet and there are 10 boats competing. The regatta is divided in 7 races starting September 3 in Ceuta (Spanish territory in North Africa) and finalising September 22 in Badalona (near Barcelona). The first race, Ceuta-Cadiz, has been completed. Full information is available in Spanish on www.vueltavela.com.*

*In the last paragraph of the first screen, it can be read "the Vuelta España a Vela is organised by the Real Federación Española de Vela, Deportevents and Club Nautico Español...". The fact that the CNEV is one of the organising bodies it can also be read in the notice of race attached to our first submission.*

*We attach herewith the translation of the news appearing on the RFEV webpage www.rfev.es in which they refer to this regatta. We also attach several news that are available on internet about this regatta, this last in Spanish.*

b) ***Certifications from RFEV and Federacion de Vela de la Comunidad Valenciana.*** *in these certificates is certified that CNEV is a licenced club at both state and local autonomous community level. These certifications have been obtained due to GGYC suggestion that the CNEV was not properly licenced in the New York litigation case.*

c) ***Incorporation documents.*** *We also attach the Incorporation Public Deed and by-laws of CNEV and the translation of this first deed, the second in which there are certain amendments (not relevant to this case) is being translated and will be filed next week.*

*We believe that these documents do not affect other parties' arguments or submissions and simply update the situation. Therefore in our opinion should be accepted by the ACAP without further requirements.*

*We are sending the documents mentioned above in subsequent e-mails."*

[31]    On September 6, 2007 at 09.53 CET, the Panel received an email from CNEV enclosing CNEV's Incorporation Deed dated June 19, 2007 (and its translation in English), CNEV's Articles of Incorporation (and its translation in English), a report from the "Conselleria de Cultura, Educacio i Esport" dated June 20, 2007 requiring

39

some amendments to be made to the CNEV's Articles of Incorporation, and an official certificate dated June 28, 2007 issued by the "Conselleria de Cultura, Educacio i Esport" of the Community of Valencia confirming that CNEV had been registered in the Register of Sport Entities of the Community of Valencia.

[32]    On September 6 and 7, 2007, all members of the Panel met in Lugano, Switzerland for its final deliberation.


## THE PARTIES' POSITION

[33]    Out of the five submissions received by the Panel, four (from CNEV, ACM, RTYCL and DCYC) support SNG's submission. GGYC, in the letter from its lawyers dated July 27, 2007, strongly opposed SNG's position.

### 1.  IN FAVOR OF SNG'S SUBMISSION

[34]    CNEV, ACM, RTYCL and DCYC submitted that they agree with SNG's position. They provided additional comments in their respective submissions.

[35]    CNEV, in its submission dated August 1, 2007, quoted the decision of the New York Court of Appeals of April 25, 1990 (the Mercury Case):

> "[...] Ultimately [...] it must be the contestants, not the courts, who define the traditions and ideals of the sport."

[36]    ACM pointed out in its submission dated August 8, 2007 that:

> "One could even argue that the question raised by some prospective competitors with respect to the validity of CNEV's challenge is in reality nothing but an attempt to ultimately modify the arrangements made by the

*Defender and the Challenger of Record, as reflected in the Protocol they have mutually agreed in accordance with the terms of the Deed of Gift.*

*ACM respectfully underlines the gravity of any such attempt which could seriously affect the stakeholders, protagonists and all participants of the 33rd America's Cup and have severe consequences on the Event, including as concerns the commitments made by the hosts of the Event: Valencia, the Comunidad Valenciana and Spain."*

[37]    In its submission dated August 13, 2007, RTYCL stated:

*"[...]*

*3.1 [...] in submitting its Challenge, it [RTYCL] accepted CNEV's challenge as a valid challenge under the terms of the Deed of Gift and has accepted CNEV as Challenger of Record.*

*3.2 Further, RTYC has, in submitting its Challenge, accepted the Protocol as an arrangement made by mutual consent between SNG and CNEV satisfactory to both, in accordance with the terms of the Deed of Gift.*

*3.3 By accepting the Protocol unequivocally on its terms, RTYC accepts (amongst other things) the procedures and authorities under which the Protocol may be amended and pursuant to which further America's Cup rules may be created, communicated and challenged. RTYC voluntarily submitted to take part in the 33rd America's Cup  on these terms and is now bound contractually to continue to accept these terms."*

[38]    In this respect, ACM also underlined in its submission that it systematically examines these qualifications *"when receiving an application to become a Challenging Competitor from a yacht club."*

[39]    RTYCL's submission also read:

> "[...] 3.6 RTYC would be aggrieved if a third party, in this instance GGYC, which has not challenged as required under the Protocol and does not have the necessary locus to influence the amendment of the Protocol or the creation or amendment of the rules envisaged by the Protocol is able effectively, by submitting a complaint to the New York or any other court and/or succeeding in its claim, to subvert the contractual jurisdiction of this Panel and thereby circumvent the right of legitimate challengers under the Deed of Gift and the Protocol to have their case heard on all matters regarding the 33rd America's Cup by this Panel."

[40]    Moreover, RTYCL claimed that:

> "Until the application before this Panel in this matter is decided and until the matters raised in the Complaint are resolved or settled, there is uncertainty as to the terms upon which RTYC may compete in the 33rd America's Cup and indeed uncertainty as to whether or not RTYC will be permitted to compete in the 33rd America's Cup
>
> This uncertainty damage RTYC's ability to raise funds from sponsors (which understandably wish to know whether the party they wish to sponsor will indeed take part in the event), to employ staff, to plan, to know whether and to what extent to expend further funds on all matters relevant to becoming an effective challenger and ultimately jeopardises RTYC's ability to become a viable competitor.
>
> A quick decision from this Panel declaring CNEV's challenge and the Protocol valid will provide the certainty RTYC needs, will save RTYC and its representative TEAMORIGIN from potentially wasting substantial sums of money and will ultimately make for a more competitive event."

## 2. AGAINST SNG'S SUBMISSION

[41]    GGYC strongly opposed SNG's position in its letter sent to the Panel's Chairman on July 27, 2007.

[42]    On more than one occasion, namely on July 23, 2007 (Directions no 1) and on July 28, 2007 (Directions no 5), GGYC was formally invited to take part in the proceedings, including on a without prejudice basis. However, GGYC chose only to file their attorneys' letter dated July 27, 2007, which is part of the formal case record (see point [14]). Nevertheless, in reaching its decision, the Panel has considered GGYC attorneys' letter dated July 27, 2007 and also considered the contents of all of the material placed on GGYC's website up to the date of this Decision, including the documents filed with the Supreme Court for the State of New York.

[43]    In the said letter (see point [14]) and a press release of August 22, 2007 included on the GGYC website, GGYC claimed that "*the Protocol violates the most basic principles of justice and independence common to all legitimate adjudicatory bodies*" and that the Panel lacks jurisdiction over the Application.

[44]    Regarding the validity of CNEV and its challenge, GGYC's concerns were stated to include that:

- *"It is not a bona fide yacht club.*
- *It was created and is controlled by Real Federación Española de Vela (RFEV), which is itself not a yacht club.*
- *It was formed for the sole purpose of making a challenge only days before its challenge was made and accepted.*
- *Contrary to the Deed it has never held an annual regatta anywhere, and*
- *It appears to have accepted the loss of Challenger rights in the new Protocol in a way that no genuine Challenger who was seeking a fair contest would."*

[45]    Moreover, GGYC also stated that:

"We believe that the protocol must be rejected in order to protect the status of the America's Cup as a genuine sporting contest.

We do not believe this protocol is valid, fair, or in the spirit of racing that the Cup stands for. It is clearly not the result of the mutual consent process between a defender and a legitimate challenger that is prescribed in the Deed of Gift.

Our chief concerns about the Protocol are:
- It is invalid because SNG entered into it with an invalid Challenger, CNEV.
- The defender, through the company it has formed to manage the event, America's Cup Management (ACM) can reject any entry – even if it complies with all requirements. Once disqualified, there is no provision for the challenger to contest this ruling. See AC 33 Protocol clauses 2.7 (d), 4.4
- ACM have the power to appoint the event authority, and all officials. (The Challenger of Record (see below) can only object on grounds of neutrality of judgment. See Protocol clause 5.4
- ACM can impose any rule on any team. See Protocol clause 5.4 (b)(d)
- The new Protocol does away with the independent Challenger Commission which represented well all challengers in AC 32. See Protocol clause 10.1
- The defender will unilaterally create a new design rule governing the boats to be raced, with seemingly only very minor input from the COR; and can develop this rule well in advance of advising challengers so that they have a much shorter window to develop a rival boat. See Protocol clause 14.1

- *The Defender gains the right to gain valuable information and advantage by participating in the Challenger selection series, but Challengers will not be permitted to participate in any Defender series. See Protocol clause 13.5"*

[46]    In respect of the Panel as such and its Rules of Procedure, GGYC stated *inter alia* that:

> *"[...]*
>
> *The format and process set up for this arbitration in The Protocol Governing the Thirty Third America's Cup ("Protocol") violate the most basic principles of justice and independence common to illegitimate adjudicatory bodies and are an affront to the most basic sensibilities common to all law abiding people. A dispute resolution proceeding in which the parties to the proceeding are in agreement (in this case CNEV and SNG), and in which the judges may be removed, and the rules of procedure may be changed, at any time and for any reason by the parties to the arbitration, will be viewed by the public and the sailing community as nothing more than a kangaroo court.*
>
> *[...]*
>
> *[...] the panel's willingness to engage in this arbitration in the face of this legal precedent suggests its members are beholden to the parties who appointed them in a secret document and who retain the power to remove them.*
>
> *[...]*
>
> *Moreover, SNG and CNEV retain the sole power to modify anything they desire regarding the arbitration, including but not limited to the powers of the arbitration panel, the jurisdiction of the arbitration panel, procedures of the arbitration panel, and even the official language of the arbitration panel. See Protocol ¶ 36.1. The issue of whether CNEV is a legitimate challenger is not*

*contested by CNEV or SNG and their masquerading as adversaries while the real adversaries are rendered impotent is not a legitimate legal proceeding but rather a mockery of justice. Civilized countries have long done away with such tribunals and no legitimate arbitration panel would agree to operate under these conditions. This may explain the striking omission from the 33rd Protocol of the requirement in the 32nd Protocol that arbitration panel members be "fair minded and possess good judgment."*

*It is subterfuge to have SNG and CNEV's hand picked arbitrators, replaceable at the their whim, sitting in a forum and under rules wholly controlled by SNG and CNEV, and judging an issue that the parties to the arbitration do not dispute."*

## THE ISSUES AT STAKE

[47]    The following three different issues arise in the present case:

1.   Jurisdiction of the Panel

2.   Eligibility to challenge

3.   Compliance of the Protocol with the Deed of Gift

## THE FACTS

## 1.  SNG

[48]    On July 3, 2007, SNG, a yacht club organized under the laws of Switzerland, defended its title in the 32nd America's Cup sailing match with RNZYS, and won the 32nd America's Cup match in Valencia. SNG is therefore currently the holder and

trustee of the America's Cup in accordance with the terms of the Deed of Gift dated 24 October 1887 (the "**Deed of Gift**").

## 2. CNEV

[49]    CNEV has filed with the Panel documents which record the following:

1.  On June 19, 2007, a Deed of Incorporation of CNEV was executed in front of a Public Notary in Madrid;

2.  On June 20, 2007, the legal department of the local authority, namely the "*Conselleria de Cultura, Educacio i Esport*", required some amendments to be made to CNEV's Articles of Incorporation;

3.  On June 27, 2007, CNEV's Articles of Incorporation were amended by Notarial Deed executed in Valencia in order to comply with the aforesaid June 20, 2007 requirements;

4.  On June 28, 2007, an official certificate was issued by the "*Conselleria de Cultura, Educacio i Esport*" of the Community of Valencia confirming that CNEV had been registered in the Register of Sport Entities of the Community of Valencia as a corporation in compliance with the laws of Spain.

[50]    In its email to the Panel dated September 5, 2007 and in the documents attached to the same, CNEV submitted certificates declaring that CNEV "*is a sport corporation legally constituted within the Government of the Comunidad Valenciana*" and that "*it holds the Club license from June 20, 2007*" (Certificates by D. Manuel Cabrera Aynat, Secretary of the Sailing Federation of the Valencian Community, and D. Gerardo Pombo Garcia).

[51]    CNEV's Deed of Incorporation dated June 19, 2007, submitted by CNEV on September 6, 2007, provides that:

    "*[...]*

*FIRST*

*[...] the following resolutions have been adopted by unanimous vote:*

1) *To incorporate a sports company denominated "[CNEV]" which corporate domicile for the purpose of the notices shall be [...], which will be subject to Law 4 of December 20th, 1993 concerning Sports Activities of the Generalitat of Valencia.*

2) *The corporate purpose of the Club shall be that detailed under Article Number 1 of the Articles of Incorporation, this is to say, the promotion of water sports activities, and in particular, the promotion of sailing practices through the organization of national as well as international regattas with in the national territory.*

3) *To approve the Articles of Incorporation that shall rule the sports company, which are attached [...].*

4) *To designate the first Board of Directors that will be made up by the following persons*

> *Chairman: Mr. Manual José Chirivella Bonet*
>
> *Vice-Chairman: Mr. José María Martín Puertas*
>
> *Treasurer-Secretary: Mr. José Angel Rodríguez Santos*
>
> *Board Member: Mr. Luis Francisco Merino Bayona*

*[...]*

*SECOND*

*This deed shall be registered with the Registry of Sports Companies of the Autonomous Community of Valencia.*

*[...]*

*In agreement with the provisions of Article 17 bis of Notary Publics, this document enjoys the condition of public instrument, and its contents are presumed complete and truthful."*

[52]   On July 3, 2007, upon conclusion of the 32nd America's Cup Match, SNG received a written challenge for the America's Cup from CNEV. With the challenge, CNEV submitted documents regarding its incorporation and organization, as well as its

other qualifications to serve as Challenger of Record under the Deed of Gift. This challenge was accepted and signed by SNG on the same day.

[53]    On July 14, 2007, CNEV organized a regatta of the Optimist Class in Santander[4].

[54]    CNEV also organized with RFEV and the company Deportevents the Regatta "*Vuelta a España a Vela*" that started on September 3, 2007 and is scheduled to finish on September 22, 2007. This regatta is sailed on boats RO 340 of 34 feet and is divided into seven races starting on September 3 in Ceuto (Spanish territory in North Africa) and finishing on September 22 in Badalona (near Barcelona). The regatta is 776 nautical miles long and stops in several cities on the south coast of Spain, namely Cadiz, Malaga, Cartagena, Alicante, Valencia and Castellon. Ten boats are competing in this regatta[5].

[55]    The two affidavits submitted by CNEV on August 14, 2007 support these facts.

[56]    The affidavit by Mr. Manuel Chirivella dated August 13, 2007 reads:

> "*1.    I am the Chairman of the Club Nàutico Español de Vela (CNEV) and the Vice-Chairman of the Spanish Royal Sailing Federation (RFEV}, Challenger of the XXXII America's Cup.*
>
> *2.    The project headed by RFEV in the XXXII America's Cup was a success and the Sponsors assure their intention to maintain or increase their budgets for the XXXIII America's Cup before the termination of the XXXII. Given that we have for a new resources campaign it was decided by the RFEV to be a Challenger in the next Cup. It also considered the possibility of being Challenger of Record in order to help the next venue to be Valencia.*

---

[4] See the affidavit by Mr. Manuel Chirivella, infra point [56] and CNEV's submission dated August 1, 2007.
[5] See the documents attached to the email received by the Panel from CNEV on September 5, 2007, supra point [30].

3.  Our lawyers consider that the possibility of being a Royal Federation Challenger may be disputed, and advised the incorporation of a Club in order to formalize the Challenge. RFEV resolved, to incorporate a Club for this purpose, with certain conditions to be met

    (i)Continuity of the same philosophy as in the XXXII America's Cup.
    (ii) The Club should represent the entire Spanish Sailing Community.
    (iii)The Club should have real content.
    (Iv)The Club has to fulfill all the requirements of the Deed of Gift.

4.  On June 19, 2007 the Club was incorporated and included the following people:

    (a)  Manuel Chirivella, Vice-Chairman of the Royal Spanish Sailing Federation. He won the "Copa del Rey" in 1999 in IMS. He has won also in IMS "Copa de la Reina" in 1993, 1995 and 1999.
    (b)  José Maria Martin, second Vice-Chairman of the Royal Spanish Sailing Federation and chairman of the Madrid Federation.
    (c)  José Angel Rodriguez, third Vice-Chairman of the Royal Spanish Sailing Federation. He is also Chairman of the Galician Federation. He is an International Umpire.
    (d)  Luis Merino, Vice-Chairman of the Royal Spanish Sailing Federation. He is Chairman of the Royal Yacht Club of Malaga
    (e)  Gerardo Pombo, the Chairman of the Royal Spanish Sailing Federation, and previously the technical secretary during 20 years. He was the captain on the Spanish Olympic sailing team of Barcelona 92. He is a member of the Spanish Olympic Committee.

    All of them are members of the RFEV, so RFEV controls the decisions to be taken by the new incorporated Club.

5.  The main activities that the Club has been carrying out are:

(a) *Negotiating a collaboration agreement with the CAR (Center of Sailing Training in Santander where the Spanish Sailing Olympic Team is trained). As a first activity we organized a Regatta the 14fh of July of the Optimist Class. The promotion of sailing among young people is a priority for the CNEV.*

(b) *Organizing Several Regattas. Due to the short time since the incorporation there is, in the short term, only one that will take place during the month of September: la "Vuelta España a Vela". There are other Regattas under consideration. The organization of Regattas is the main activity of the Club and all the members of the board have huge experience in this field, on top of that the RFEV will give full support to this end.*

(c) *We will organize the "Club Nautico Español de Vela Annual Regatta", "Trofeo Desafio Español". We want to do that in Valencia, open to several classes specially RN.*

(d) *I hereby formally undertake on behalf of CNEV to maintain the above referred Regatta Annually for all the time that the XXXIII America's Cup will last.*

6. *I have read the submission of SNG and I found it correct in relation to the facts related to CNEV with only a minor error where Getardo Pombo is confused with his brother Fernando who was for a short period of time Chairman of the Arbitration Panel in the XXXI America's Cup."*

[57]    The affidavit by Mr. Gerardo Pombo García dated August 10, 2007 reads:

*"1.    I am the Chairman of the Spanish Royal Sailing Federation (Real Federacion Espanola de Vela). This Federation is incorporated under the law 10/1990 of 15th of October and is at body who has as purpose the supervision, control, organization, etc of all activities related with Sailing in all the territory of Spain. Is the only Federation of Sailing that exists in*

*Spain and represent Spain in front of the International Federation and any other Sportive Organism. The Federation is affiliated to the International Sailing Federation (ISAF), the European Sailing Federation (EUROSAF) and Off Shore Racing Congress (ORC). Is also member of the Olympic Spanish Committee. In the XXXII America's Cup the Royal Spanish Federation was a Challenger. The reason why we acted as Challenger was in order to try to solve the problem that existed because of the dispute among different Yacht Clubs which were difficulting to obtain the necessary recourses for having an Spanish Team in the XXXII America's Cup.*

2.  *I have read the Afidavit signed by Manuel Chirivella and I agree with the content of the same.*

3.  *It is one of the activities of the Royal Spanish Federation the organization and promotion of national and international Regattas inside the Spanish territory and the Federation count with enough recourses far organizing Regattas in Spain.*

4.  *The RFEV fully support CNEV and announce that it will give enough support for organizing Regattas in a regular basis.*

5.  *RFEV is the responsible of CAR (Center of High Rendiment of Santander), and we are currently negotiating with the CNEV a close relationship in order to promote the America's Cup in the young Spanish Sailors we plan to establish regular Regattas which would be promoted and organized by CNEV the winners of such Regattas will be invited by CNEV to the headquarters of the Team Desafio Espanol.*

6.  *The 14th of July it took place a regatta of Optimist Class organized in Santander by CNEV.*

> 7.    CNEV together with RFEV organized la "Vuelta a Espana a Vela" that will
> take place between the 1st and 24th of September in Class RO 34."

## 3. THE PROTOCOL

[58]    On July 3, 2007, CNEV and SNG signed the Protocol. The Protocol states in its
"Background" section, that "*B. Société Nautique de Genève has received and
accepted a notice of challenge from the Challenger of Record in accordance with
the Deed of Gift.*"

[59]    On July 5, 2007, the signed Protocol was publicly released.

## 4. OTHER CHALLENGERS

[60]    The following other Challengers have been accepted by the Defender, through
ACM: RCYC, RTYCL, RNZYS and DCYC[6].

[61]    Upon applying to take part to the 33rd America's Cup, all Challengers have formally
declared in their respective Notice of Entry (paragraph 3. "Bound by the Protocol")
that they "*unconditionally agree and accept to be bound by the terms of the said
Deed of Gift, the Protocol, and all applicable rules and obligations referred to in
such Protocol including but not limited to those which will be contained the
documents listed in Article 2.5 of the said Protocol, and any amendment to such
Protocol or such rules and obligations that may be issued from time to time.* "

[62]    In the same Notice of Entry (paragraph 4. "Arbitration and Dispute Resolution"), all
Challengers have stated that they "*unconditionally agree and accept to be bound by
the dispute resolution provisions of the Protocol and by the decisions rendered by
the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance
with such provisions of the Protocol. [ The relevant Challenger ] further
unconditionally submit to the exclusive jurisdictions of the Measurement Committee,*

---

[6] As seen in the description of the Proceedings (see supra [1] to [32]).

*Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.*"

## 5. GGYC's Challenge

[63]    On July 11, 2007, GGYC's representatives delivered a letter to the President of SNG which disputed the validity of CNEV's challenge, claiming that CNEV "*was not a bona fide yacht club*" and that it had "*not performed any of the duties of the Challenger as contemplated by the Deed of Gift*". GGYC "*demand[ed] recognition as the legitimate Challenger of Record of the 33rd America's Cup*", as its challenge was "*a bona fide challenge*" and as it is "*fully prepared to meet all of the obligations of the Challenger*". Accordingly, on July 11, 2007, GGYC's representatives hand-delivered to SNG's Secretary-General at the SNG clubhouse in Geneva a challenge to sail the 33rd America's Cup.

## 6. The New York lawsuit

[64]    On July 20, 2007, GGYC filed a suit against SNG in the Supreme Court for the State of New York[7] (which was served on SNG on August 17, 2007[8]) seeking a Court ruling on the legitimacy of the Protocol, and in particular seeking "*(i) a declaration that CNEV's challenge and the Protocol are void; (ii) a declaration that GGYC's challenge is valid; (iii) that judgment be entered in favor of GGYC and against SNG enjoining SNG from promulgating rules and regulations pursuant to the Protocol and directing SNG to reject CNEV's challenge; (iv) that judgment be entered in favor of GGYC and against SNG enjoining SNG to accept GGYC's notice and implement the terms of the Deed of Gift by participating with GGYC in the establishment of a protocol through a consensual process and failing that to proceed with the match under the rules expressly set forth in the Deed of Gift; and*

---

[7] Copies of the such Supreme Court proceedings were obtained from GGYC's website (www.ggyc.com).
[8] See the press release published on August 28, 2007 on the 33rd America's Cup website "Golden Gate Yacht Club v. Société Nautique de Genève: Arbitration/Litigation status (as of 24 August 2007)".

*(v) that GGYC shall have all such further and other relief as is just and proper in this case"*.

[65]    On August 22, 2007, GGYC applied to the same Court to seek an expedited schedule for the case commenced by GGYC's complaint under which discovery (the exchange of information between the parties) would be completed in September and trial would be held in October, and a preliminary injunction requiring that SNG (i) provide GGYC with SNG's club sailing rules and (ii) identify where a two-team match between SNG and GGYC in July 2008 would be held[9].

[66]    On August 22, 2007, the Court granted an order sought by GGYC requiring SNG to promptly answer a request to speed up the legal process for resolving its proposed new rules for defending the next America's Cup[10]. The order only set a schedule for the parties' submissions on GGYC's application and did not address the substance or the merits of the Application[11]. SNG's written response to the motion was due to be filed 5 September and a hearing on the motion before the New York Court is scheduled for 10 September[12].

---

[9] Ibid.
[10] See the press release published on August 22, 2007 on GGYC's website "Golden Gate granted court order to advance America's Cup resolution".
[11] See the press release published on August 28, 2007 on the 33rd America's Cup website "Golden Gate Yacht Club v. Société Nautique de Genève: Arbitration/Litigation status (as of 24 August 2007)".
[12] Ibid.

[67]    In its email to the Panel dated August 31, 2007, SNG stated:

> "*In short, the order accelerates by nine days the time by which SNG must file its first response GGYC's filings, but is restricted to the ex-parte application for an expedited trial, for SNG to provide the location of the match sought by GGYC, and provide the rules and regulations of such match. The date for filing the response is 1500hrs 5th September 2007 and a hearing has been setdown for 1400hrs 10th September 2007 (all NY time) to address these issues.*
> *The order does not affect SNG's application to the Panel or the work of the Panel.*"

## DISCUSSION OF THE ISSUES

### 1. JURISDICTION OF THE PANEL

[68]    In its letter dated July 27, 2007, GGYC has questioned the validity of the Protocol. GGYC has not, however, alleged that, as such, the arbitration clause contained in the Protocol is invalid.

[69]    It is a well known principle of international arbitration that the validity of an agreement, on the one hand, and the validity of the arbitration clause contained therein, on the other, are two separate and autonomous issues. This is sometimes referred to as the principle of "autonomy of the arbitration clause" or as the doctrine of "separability".

[70]    This has been explained by leading authors as follows:

> "*Most arbitration agreements are, however, contained in an arbitration clause inserted in the main contract. It is primarily in these cases where the autonomy of the arbitration clause is an issue, i.e. the interaction between*

56

*the status of the main contract and the jurisdiction of the arbitrator, What happens if the main contract is deemed to be void or illegal ?, What is the effect of the arbitration clause after the termination of the main contract ? This is the realm of the "doctrine of separability", Further, the autonomy of the arbitration agreement has a bearing on the question of whether the law governing the rest of the contract also extends to the arbitration agreement.*

*The doctrine of separability recognises the arbitration clause in a main contract as a separate contract independent and distinct from the main contract. The essence of the doctrine is that the validity of an arbitration clause is not bound to that of the main contract and vice versa.. Therefore the illegality or termination of the main contract does not affect the jurisdiction of an arbitration tribunal based on an arbitration clause contained in that contract. The obligation to resolve all disputes by arbitration continues even if the main obligation or indeed the contract expires or is vitiated.*

*Separability protects the integrity of the agreement to arbitrate and plays an important role in ensuring that the parties intention to submit disputes is not easily defeated, In this way it also protects the jurisdiction of the arbitration tribunal. While the doctrine of competence-competence empowers the tribunal to decide on its own jurisdiction, the doctrine of separability ensures that it can decide on the merits."*[13]

[71]   No party to this case nor GGYC have challenged the validity of the arbitration clause as such. It therefore does not appear necessary to address the issue. Because, however, third parties may be affected by the present decision and/or by decisions which this Panel could be taking in the future, it has nonetheless appeared appropriate for this Panel to also discuss whether it has jurisdiction to rule on its own jurisdiction, before reviewing whether it has jurisdiction in this particular case.

### *1.1. Issues*

[72]    Accordingly, two different issues are to be decided:

- First, the competence of the Panel to rule on its own jurisdiction;
- Second, if so, the Panel's jurisdiction to rule on the present matter.

### *1.2. Applicable rules and discussion*

#### 1.2.1.  The competence of the Panel to rule on its own jurisdiction

##### 1.2.1.1.    The Protocol

###### 1.2.1.1.1. The provision of the Protocol

[73]    The Panel acquires competence to rule on its own jurisdiction from the Protocol itself. Indeed, Article 23 of the Protocol provides that "*The Sailing Jury and the Arbitration Panel shall have the power to determine their respective jurisdiction upon receiving an application. In case of doubt on whose jurisdiction shall prevail, the Arbitration Panel shall determine jurisdiction. Its decision shall be final and binding*".

###### 1.2.1.1.2. New York arbitration law

[74]    The Protocol provides in Article 26(a) (Rules of Procedure) that:

"*Both the Arbitration Panel and the Sailing Jury shall act in accordance with New York arbitration law.*"

---

[13] See J. Lew, L. Mistelis and S. Kröll, *Comparative International Commercial Arbitration*, The Hague / London / New York (Kluwer Law International) 2003, Chapter 6, 6-8 to 6-10, pg. 102.

The Panel therefore considers it appropriate to assess whether "*New York arbitration law*" contains any provision which could prevail on the aforesaid Article 23 of the Protocol.

[75]    "*New York arbitration law*" is codified in article 75 of the New York Civil Practice Law and Rules ("**CPLR**").[14]

[76]    It does not appear to this Panel that article 75 of CPLR contains any provision regarding the issue at stake.

### 1.2.1.1.3. U.S. arbitration law in general

[77]    In respect of the issue in the United States in general, Gary Born has said: "*In the absence of a detailed guidance from the FAA [Federal Arbitration Act], U.S. Courts were historically divided over the extent to which an arbitrator had the authority to rule on his own jurisdiction under the FAA. [...] this uncertainty was largely resolved in the United States by the Supreme Court's decision in* First Options of Chicago, Inc. v. Kaplan"[15].

[78]    In *First Options of Chicago, Inc. v. Kaplan*[16], a decision delivered in 1995, the US Supreme Court addressed, *inter alia*, what it defined as the "*who*" question.  The issue in that respect is whether the primary power to decide on the arbitrability of the dispute lies with the arbitrators or with a Court of law.  The US Supreme Court ruled that the answer to the "who" question (i.e. what the US Supreme Court also refers to "*the standard of review question*") depends on whether the parties agreed to arbitrate that particular issue, in other words did the parties agree to submit the arbitrability question itself to arbitration.

---

[14] See A. Sim, *To waive or not to waive : New York and federal law on waiver of the right to compel arbitration*, 43 N.Y.L Sch. L. Review 609.
[15] G. Born, *International Commercial Arbitration: Commentary and Materials*, page 84 (2000).
[16] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). See also W. Park, *The Arbitrability Dicta in First Options v. Kaplan: What Sort of Kompetenz-Kompetenz Has Crossed the Atlantic?*, 12 Arb. Int'l 137 (1996).

[79]    The US Supreme Court then went on to address the question as to the criteria that should be applied by a Court when deciding whether the parties had agreed to submit the arbitrability question to arbitration (i.e what the US Supreme Court refers to as "*how*" a Court should decide).  Although the US Supreme Court stated that, generally, the Courts should apply ordinary state law principles that govern the formation of contracts, it added an important qualification with respect to the context where a court is called upon to decide whether a party had agreed that arbitrators should decide arbitrability. In that respect, the US Supreme Court stated that courts should not assume that the parties agreed to arbitrate unless there is clear and unmistakable evidence that they did so.

[80]    As already mentioned in point [73] of this decision, Article 23 of the Protocol provides that "*The Sailing Jury and the Arbitration Panel shall have the power to determine their respective jurisdiction ...*".  Accordingly, the parties to the Protocol have clearly, expressly and unmistakably agreed that the arbitrators, i.e. the Panel, would have the power to decide on the question of arbitrability. Consequently, applying the First Option v. Kaplan test, the Panel considers that it has the power to rule on its own jurisdiction.

### 1.2.1.2.    The principle of competence-competence

[81]    Third parties, which are not a Party to the Protocol, might be affected by the present decision. It therefore appears appropriate to note that, since the Panel is technically an arbitral tribunal, the general principle known as "*competence-competence*" applies.

[82]    Pursuant to the competence-competence principle, the Panel has competence to rule on its own jurisdiction.

### 1.2.1.2.1. Meaning of the principle of competence-competence

[83]  The principle of competence-competence "*recognises the competence of the arbitral tribunal to rule on its own jurisdiction [...]*"[17]. Craig, Park and Paulsson have stated that "*In its simplest formulation, competence-competence means no more than that arbitrators can look into their own jurisdiction without waiting for a court to do so. In other words, when one side says the arbitration clause is invalid, there is no need to halt the proceedings and refer the question to a judge*"[18]. This rule is seen by Fouchard Gaillard and Goldman as "*among the most important [...] rules of international arbitration*"[19].

### 1.2.1.2.2. Justification of the principle

[84]  Poudret and Besson have written that the principle of competence-competence is "*essentially based on a practical rationale, namely to avoid that a party which disputes the jurisdiction of the arbitral tribunal prematurely seizes the courts, or obstructs the arbitral process*"[20]. The rule is thus "*intended to ensure that a party does not succeed in delaying the arbitral proceedings by alleging that the arbitration agreement is invalid or non-existent*"[21] and that, above all, "*[...] the most solid justification for the principle [...] lies in the presumed will of the parties to confer on the arbitrators the power to decide all aspects of their dispute, including jurisdiction, while the courts retain the power to control their decision but not to take their place*"[22].

---

[17] J.-F. Poudret, S. Besson, *Comparative Law of International Arbitration*, para. 457 *et seq* (2007).
[18] L. Craig, W. Park, J. Paulsson, *International Chamber of Commerce Arbitration*, para. 28.07 (1998).
[19] P. Fouchard, E. Gaillard, B. Goldman on *International Commercial Arbitration*, para. 650 (1999).

[20] J.-F. Poudret, S. Besson, *Comparative Law of International Arbitration*, para. 457 (2007).
[21] P. Fouchard, E. Gaillard, B. Goldman on *International Commercial Arbitration*, para. 660 (1999). See also E. Gaillard, *Les Manoeuvres Dilatoires des Parties et des Arbitres dans l'Arbitrage Commercial International*, 1990 Rev. Arb. 759.
[22] J.-F. Poudret, S. Besson, *Comparative Law of International Arbitration*, para. 457 (2007).

### 1.2.1.2.3. A widely recognized principle

[85]    Fouchard, Gaillard and Goldman have underlined that "*The competence-competence principle is now recognized by the main international conventions on arbitration, by most modern arbitration statutes and by the majority of institutional arbitration rules*"[23]. As a consequence, the basic position that an international arbitral tribunal has jurisdiction to consider and decide on its own jurisdiction must be regarded as a generally accepted principle of international arbitration law, which is, absent contrary indication by the parties, incorporated into international commercial arbitration agreements[24].

[86]    The principle is recognized by leading international arbitration conventions. As an example, Article 41(1) of the ICSID Convention provides that "*The Tribunal shall be the judge of its own competence*" (see also Article V para. 3 of the 1961 European Convention).

[87]    The 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, known as the New York Convention, deals with the conditions for recognition and enforcement of foreign arbitral awards. According to van den Berg, although the Convention is silent on the issue of competence-competence (for the reason that it "*only deals with the conditions for recognition and enforcement of awards*"[25]), pursuant to such Convention "*it would make sense that an arbitrator be permitted to rule provisionally on issues pertaining to his competence, subject to subsequent judicial control*"[26].

---

[23] P. Fouchard, E. Gaillard, B. Goldman on *International Commercial Arbitration*, para. 653 (1999).
[24] *See* International Law Commission, *Model Rules on Arbitral Procedure With a General Commentary*, Arts. 1(3), 9 (1958), II Y.B. I.L.C. 83 (1958) (Art. 1(3): "If the arbitral tribunal has already been constituted, any dispute concerning arbitrability shall be referred to it."; Art. 9: "The arbitral tribunal, which is the judge of its own competence, has the power to interpret the compromis and the other instruments on which that competence is based."); ILC, *Memorandum on Arbitral Procedure, Prepared by the Secretariat*, Doc. A/CN.4/35, II Y.B. I.L.C. 157, 165 (1950) ("it seems well-established that the tribunal has the right to judge as to its own powers (competence de la competence)"); *Award in Case of the Betsey (Lord Chancellor Loughborough)*, in J. Moore, *International Arbitrations* 326-27 ("the doubt respecting the authority of the commissioners to settle their own jurisdiction was absurd; and that they must necessarily decide upon cases being within or without, their competency").
[25] P. Fouchard, E. Gaillard, B. Goldman on *International Commercial Arbitration*, para. 654 (1999).
[26] A. J. van den Berg, *Court Decision on the New York Convention*, in *The New York Convention of 1958*, ASA Special Series No. 9, para. 222 (August 1996).

[88]    Competence-competence is also recognized in most of the main international arbitration rules (see Article 6.2 of the ICC Rules, Article 23.1 of the LCIA Rules, Article 21 of the ICSID Rules, Article 21.1 of the Swiss Rules).

[89]    The doctrine of competence-competence has been affirmed by international arbitral tribunals regardless of the applicable law of the seat. The vast majority of arbitration tribunals' conclusions lends support to the doctrine's status as a general principle of international law. This is confirmed by the virtually complete absence of any contemporary arbitral award, under any legal system, denying the existence of the competence-competence principle. In that respect, the *TOPCO v. Libya* preliminary award on jurisdiction, is very widely and frequently mentioned and can thus be considered a leading precedent. In such case, the arbitration tribunal declared that "*International case law has continuously confirmed that arbitrators are necessarily the judges of their own jurisdiction...*" and based its decision primarily on "*... a customary rule, which has the character of necessity, derived from the jurisdictional nature of the arbitration, confirmed by case law more than 100 years old and recognized unanimously by the writings of legal scholars*"[27]. In another frequently mentioned award rendered pursuant to the ICC Rules, the arbitral tribunal explained that "*[t]he principle of 'competence-competence' is widely recognized by doctrine and jurisprudence*"[28].

[90]    There is broad acceptance of the competence-competence doctrine by the UNCITRAL Model Law (art. 16(1)), and by "*most recent laws on arbitration*"[29], notably in Europe (for example, English[30], German[31], French[32], Belgian[33], Dutch[34],

---

[27] *Texas Overseas Petroleum Co v. Government of the Libyan Arab Republic*, Nov. 27, 1975 Preliminary Ad-hoc Award, 17 I.L.M. 1 (1978), IV Y.B. Comm. Arb. 177 (1980).
[28] *Final Award in ICC Case No. 8938*,XX IVa Y.B. Comm. Arb. 174, 176 (1999).
[29] P. Fouchard, E. Gaillard, B. Goldman on *International Commercial Arbitration*, para. 655 (1999).
[30] See Arbitration Act 1996, s. 30.
[31] See ZPO, Art. 1040(1).
[32] See NCPC, Art. 1466. See also, as an example, the *Zanzi* decision (the French *Cour de cassation* ruled in a very general manner that it "is for the arbitrator to determine his own jurisdiction"), 1999 Rev. Arb. 260.
[33] See Belgian Judicial Code, Art. 1697(1).
[34] See Code of Civil Procedure, Art. 1052(1).

Italian[35] and Swiss[36] law have adopted it). Also, "*Recent decisions have confirmed the principle, giving it a very broad scope*"[37].

[91]    In England, the arbitrability of a dispute as to whether an agreement to arbitrate exists (and therefore the recognition of the competence-competence principle) is now beyond doubt: Pursuant to Section 7 of the English Arbitration Act 1996 ("*separability*") "*Unless otherwise agreed by the parties, an arbitration agreement which forms or was intended to form part of another agreement (whether or not in writing) shall not be regarded as invalid, non-existent or ineffective because that other agreement is invalid, or did not come into existence or has become ineffective, and it shall for that purpose be treated as a distinct agreement*"[38]. Competence-competence is enshrined in the English Arbitration Act 1996 at Section 30: "*Unless otherwise agreed by the parties, the arbitral tribunal may rule on its own substantive jurisdiction, that is, as to - (a) whether there is a valid arbitration agreement; (b) whether the tribunal is properly constituted; and (c) what matters have been submitted to arbitration in accordance with the arbitration agreement*".

### 1.2.1.2.4. Effects of the Competence-competence Doctrine

[92]    It is generally considered that the principle has "both positive and negative effects"[39]. Fouchard, Gaillard and Goldman assert that "*The positive effect of the competence-competence principle is to enable the arbitrators to rule on their own jurisdiction, [...]. However, the negative effect is equally important. It is to allow the arbitrators to be [...] the first judges of their jurisdiction. In other words, it is to allow them to come to a decision on their jurisdiction prior to any court or other judicial authority, and thereby to limit the role of the courts to the review of the award. The principle of competence-competence thus obliges any court hearing a claim*

---

[35] See ICCP 2006, Art. 817(1).
[36] See PILS, Art. 186(1).
[37] P. Fouchard, E. Gaillard, B. Goldman on *International Commercial Arbitration*, para. 655 (1999).
[38] See also Harbour v. Kansa [1992] 1 Lloyd's Rep 81; 1993 1 Lloyd's Rep 455.
[39] P. Fouchard, E. Gaillard, B. Goldman on *International Commercial Arbitration*, para. 660 (1999).

concerning the jurisdiction of an arbitral tribunal [...] to refrain from hearing substantive argument as to the arbitrators' jurisdiction until such time as the arbitrators themselves have had the opportunity to do so"[40].

[93]    The Panel therefore determines it has jurisdiction to rule on its own jurisdiction.

### 1.2.2. The Panel's jurisdiction to rule on the present matter

[94]    Article 21 of the Protocol provides that "Any dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents, the interpretation or breach thereof, shall be resolved by arbitration in accordance with the provisions of this Protocol, except if and where otherwise expressly set forth in this Protocol. Such arbitration shall be final and binding".

[95]    Pursuant to Article 1.1(d) of the Protocol, an "Applicable Document means any document made under authority of this Protocol and includes the documents referred to in Article 2.5". The documents referred in Article 2.5 include "(a) the Deed of Gift" and "(b) this Protocol".

[96]    Consequently, such as in the present case, the disputes, protests or claims in relation to the Protocol and/or the Deed of Gift shall be resolved by arbitration.

[97]    Moreover, Article 22 of the Protocol provides that "There shall be two dispute resolution bodies: a Sailing Jury, which shall interpret provisions or resolve disputes of a sporting or technical nature arising under the Competition Regulations, the Notices of Race, the Sailing Instructions and the Racing Rules, and an Arbitration Panel, which shall interpret all other provisions of this Protocol or resolve other disputes. The Sailing Jury and the Arbitration Panel shall in making any determination give effect to all provisions of this Protocol".

---

[40] Ibid.

[98]    SNG's Application regards the compliance of the Protocol with the Deed of Gift. It therefore is a "*other disputes*" as referred to in Article 22 of the Protocol. As a consequence, the Panel has jurisdiction to rule on the present case.

### 1.3. Conclusion

[99]    The Panel determines that (i) it has the competence to rule on its own jurisdiction and that (ii) it has jurisdiction to rule on the present matter. The other issues are therefore properly able to be considered by the Panel.

## 2. ELIGIBILITY TO CHALLENGE

### 2.1. Issue

[100]   The Panel has been asked whether the challenge for the 33rd America's Cup made by CNEV on June 29, 2007 is a valid challenge pursuant to the Deed of Gift.

### 2.2. Applicable rules

[101]   The Deed of Gift dated 24 October 1887 contains the following provision relating to eligibility to challenge for the 33rd America's Cup:

> "*Any organized Yacht Club of a foreign country, incorporated, patented, or licensed by the legislature, admiralty, or other executive department, having for its annual regatta an ocean water course on the sea, or on an arm of the sea, or one which combines both, shall always be entitled to the right of sailing a match of this Cup, with a yacht or vessel propelled by sails only and constructed in the country to which the Challenging Club belongs, against any one yacht or vessel constructed in the country of the Club holding the Cup*".

[102]   The qualifications that a challenging yacht club has to meet are in summary:

(a) The yacht club must be "an organized yacht club";

(b) It must be "foreign";

(c) It must be "incorporated, patented or licensed"; and

(d) Have an "annual regatta" on an "ocean course on the sea, or on an arm of the sea, or one that combines both".

[103] The Deed of Gift provides that a yacht club meeting these criteria "*shall always be entitled to the right to sailing a match for this Cup*". This means that a club holding the Cup cannot, if the criteria set forth in the Deed of Gift are met, deny a yacht club a match for the Cup.

[104] It is not challenged that CNEV is a Spanish yacht club. Accordingly, it is of a foreign country in respect of SNG.

[105] The issues in the present Application are therefore the following:

(a) Is CNEV an organized yacht club?

(b) Is CNEV incorporated, patented or licensed?

(c) Does CNEV have an annual regatta on an ocean course on the sea, or on an arm of the sea, or one that combines both?

(d) Did therefore SNG as trustee have an obligation to accept CNEV's challenge?

## 2.3. Discussion of the submissions

### 2.3.1. Preliminary comment

[106] The Panel accepts SNG's submission that historically one of the traditions of the America's Cup is a broad and liberal interpretation of the requirements of the Deed of Gift as regards the qualifications of challenging yacht clubs and receiving of challenges. The concept has been to permit rather than deny entry to Challengers.

It would appear that this liberal approach is consistent with the terms of the Deed of Gift and with New York law as applied by New York courts with regard to the America's Cup.

[107]   The Panel notes that SNG stated that in 1984 the then Trustee of the America's Cup, the Royal Perth Yacht Cub of Western Australia Inc, petitioned the Supreme Court of the State of New York as to whether the Chicago Yacht Club was entitled to challenge. The issue was whether the Chicago Yacht Club, which held regattas on Lake Michigan, met the obligation in the Deed of Gift to have an annual regatta on "ocean water course on a sea, or an arm of the sea, or one that combines both". Despite Lake Michigan being more than 1500 kilometers from the sea, the Court declared that "...*the Deed of Gift entitles the Chicago Yacht Club, a club of a foreign (i.e. competing) country as contemplated on the Deed of Gift, to enroll and compete as a contestant for the "America's Cup*" "[41].

[108]   RNZYS challenged for the America's Cup for the 26th Match held in 1987, the 28th Match held in 1992, and the 29th Match in 1995. Its challenges were accepted by the then Trustee, Royal Perth Yacht Club of Western Australia Inc. and for 1992 and 1995 by the San Diego Yacht Club. Following RNZYS victory in the 29th Match, it became the Trustee of the America's Cup from 13th May 1995 until its defeat in the 31st Match on March 2, 2003. SNG's submission that throughout such periods RNZYS was neither incorporated, patented nor licensed by any authority has not been disputed, including by RNZYS.

[109]   A letter dated November 30, 2000 from the New York Yacht Club[42] (the first trustee of the America's Cup from 1857 until 1983) to RNZYS, in which it expressed its views on challenger entries, after recommending that a challenger should be capable of becoming a trustee should it win, states "*The New York Yacht Club also believes that it is in the best interests of the America's Cup and within the spirit and*

---

[41] The Royal Perth Yacht Club of Western Australia (N.Y. Sup. Ct.) Order dated 20th September 1984, Index no. 18436/84.
[42] Attached as Annexure 7 to SNG's submission.

*the intent of the Deed of Gift, that as many eligible yacht clubs as possible should be permitted to compete*".

### 2.3.2. What constitutes "an organized yacht club"?

[110]  There is no specific guidance in the Deed of Gift as to what constitutes an "organized yacht club".

[111]  CNEV provided SNG with evidence that it is organized under the laws of Spain pursuant to the requirements of Spanish law for a club of its nature, and that it has board of directors, rules, and a head office and other facilities. It was incorporated, adopted Articles of Incorporation, made arrangements for sailing events including its annual regatta and appointed officers. The Articles of Incorporation of CNEV include provisions on respect of:

1. "*CNEV is a private sports club endowed with its own legal personality and with the capacity to act in order to achieve its goals and purposes [...] and in particular the promotion of sailing practices through the organization of national as well as international regattas within the national territory [of Spain]*" (Article 1 of CNEV's Articles of Incorporation);

2. "*The duration of [CNEV] shall be unlimited*" (Article 5 of CNEV's Articles of Incorporation);

3. Chapter II provides for "*Types of Members, Admission, Rights and Obligations*";

4. Chapter III concerns "*About loosing the condition of Member*";

5. Chapter IV provides for "*Temporary leave of Members and their return*";

6. Chapter V provides for "*Responsibilities of the Club*";

7. Chapter VI provides for "*Correspondence with other water sports clubs*";

8. Chapter VII provides for "*Representation and Management*";

9. Chapter VIII provides for "*Documents*";

10. Chapter IX concerns "*About the Company's economy*";

11. Chapter X concerns "*Modification of the Articles of Incorporation and dissolution of the Club*".

[112]  Also, in its submission in the present case and in the two affidavits which it filed (see supra point [55] to [57]), CNEV added information as to the composition of its Board of Directors, which is formed by a Chairman and four Vice Chairmen.

**Decision**

[113]  The Panel considers that the CNEV submissions and evidence establish that CNEV is an organized yacht club under the laws of Spain and meets the terms of the Deed of Gift.

### 2.3.3.  **What constitutes "incorporated, patented or licensed"?**

[114]  A yacht club must be incorporated, or have some other official governmental registration or recognition. There is no requirement in the Deed of Gift as to when or for how long the yacht club must be incorporated. In the Panel's view, under New York law there is no basis for inserting terms or requirements into the Deed of Gift that do not otherwise appear in the text.

[115]  Pursuant to the applicable Spanish law ("Ley del  Deporte de la Comunidad Venciana" nb 4 of December 20, 1993, Clause 42 paragraph 3), a sporting club must file for registration in the Register of Sport Entities of the Community of Valencia. CNEV's Articles of Incorporation were executed by Notarial Deed on, respectively June 19 and 27, 2007 (see above point [49]). CNEV was entered in the Public Register of Sport Entities of the Community of Valencia on June 28, 2007. Accordingly, CNEV has been properly incorporated  and this occurred before July 3, 2007.

[116]   In its submission, SNG identified the officers of CNEV (see supra point [56]) being persons well-known in the international sailing community, who have been associated with prior America's Cups and who are fully familiar with what is needed in order to be a Challenger for the America's Cup.

[117]   SNG also submitted by way of further background:

(a)   On 17 December 2004, SNG accepted a challenge for the 32nd America's Cup from the Real Federacion Española de Vela because SNG considered that it complied with the requirements of the Deed of Gift.

(b)   During 2005 SNG received correspondence from the New York Yacht Club and the RNZYS expressing concern at the acceptance of a challenge from Real Federacion Española de Vela, the Royal Spanish Sailing Federation, claiming that the challenge should have been through a yacht club, not a federation of yacht clubs.

(c)   The letters received were a result of intensive lobbying by BMW Oracle's Mr. Tom Ehman who was at the time Chairman of the Challengers Commission. The members of the Challengers Commission at their subsequent meeting on 4th February 2005 refused to become involved in the issue, and the issue was not raised or protested during the 32nd America's Cup by any competitor, including GGYC.

(d)   Partly in response to the concerns raised, and to endeavour to avoid doubts for the 33rd America's Cup, the Spanish Sailing Federation challenged through a yacht club representing all of Spain, rather than itself or through a local yacht club that may not attract support from all of Spain.

(e)   CNEV will be represented by Desafio Español. This is an established and credible competitor in the America's Cup.

[118]   The Panel accepts SNG's submission that there are several historical examples of recently formed yacht clubs to challenge for the America's Cup whose challenge has been accepted by past trustees including the New York Yacht Club, the San Diego Yacht Club and the RNZYS. The examples submitted by SNG are:

(a) Secret Cove Yacht Club was incorporated on 29th December 1980, three months after the conclusion of the 1980 Cup. It had only been in existence for three months when it made its challenge on 30th March 1981, which was eventually accepted by the New York Yacht Club. Secret Cove had been formed for the sole purpose of challenging for the America's Cup. A recently published authoritative and comprehensive history of the America's Cup noted: *"The challenge came from the Secret Cove Yacht Club of Calgary, an organisation that, for a considerable time, had difficulty in gaining acceptance for its challenge by the New York Yacht Club. Initially, the Canadians were refused entry, but, after six months, the NYYC agreed it was a genuine organisation and not a commercial venture. It had, however, been formed solely for the purpose of challenging, as Marvin McDill, the syndicate head, wished to avoid provincialism within this frequently divided country. He wanted to challenge through a club that had no ties, as he wanted to be able to work with all Canadian sailing clubs without being attached to one of the elitist organisations of the Canadian yachting establishments"[43].*

The purpose and intent in forming the Secret Cove Yacht Club was similar to the purpose and intent of the Royal Spanish Sailing Federation in forming CNEV.

(b) The Mercury Bay Yacht Club which challenged on 15th July 1987 was incorporated on 30th September 1986, less than 9 months before, and operated out of a derelict car on a beach, which was well publicized and photographed at the time.

(c) An Australian challenger for 1995, Southern Cross Yacht Club, was incorporated on 19th April 1993, immediately prior to challenging, and was accepted by San Diego Yacht Club. The aforesaid author wrote *"oneAustralia's challenge was through the Southern Cross Yacht Club. This Club was created especially for the challenge, whose spiritual headquarters*

---

[43] Page 70, Volume 2, "An Absorbing Interest: The America's Cup 1851-2003 – A History", by Bob Fisher, John Wiley & Sons Ltd, Chicester, England 2007.

were at Red Rocks Point, a headland in Victoria, south east of Melbourne"[44].

(d) A second Australian challenge for 1995, the Australian Yacht Club, was similarly formed and incorporated for the purpose of challenge and whose challenge was accepted by the San Diego Yacht Club. The author of the above history wrote of this challenge "...Syd Fisher's Australian challenge which was lodged by the Australian Yacht Club, another organisation created especially for an America's Cup Challenge"[45].

(e) In 2000, Dennis Connor challenged through the Cortez Sailing Association. The challenge was accepted by RNZYS. Searches of public records in California show that it does not appear to have been incorporated until 12th August 2002, more than 2 years after it competed in the 2000 America's Cup.

[119] In the Panel's view, the Deed of Gift does not require a yacht club to have been incorporated or otherwise in existence for any particular period prior to acceptance of its challenge. The Deed of Gift also does not require that a challenging club be incorporated for any purpose other than challenging for the America's Cup. Accordingly, there would be no basis under the Deed of Gift for the Trustee to reject a challenge from a yacht club just because that club is new.

[120] CNEV was incorporated for the purpose to challenge in the 33rd America's Cup in order to avoid further controversies about the capacity of the Royal Sailing Federation to become Challenger under the Deed of Gift and, which is more relevant, the availability of such federation to become trustee under the Deed of Gift. As CNEV claims in its submission, it is "not a 'ghost' club but is simply a new Club with the firm intention of being a normal Club and eager to organize Regattas at the Sea".

---

[44] Ibid Page 180, Volume 2.
[45] Ibid Page 180, Volume 2.

[121]   The Panel deems it appropriate to comment in that respect about the statements made by GGYC[46] that SNG only has "*masquerading as adversaries*"[47] and that clubs opposed to SNG and CNEV "*are frozen out from the adjudication*"[48]. GGYC chose not to fully participate in this arbitration which it was invited to do, including on a without prejudice basis. Four other clubs, all of which are of substance, namely RCYC, RTYC, RNZYS and DCYC, have had their challenges accepted and have been a formal part throughout this case. None of such challenging clubs have submitted that they support the GGYC views.

**Decision**

[122]   The Panel considers that the submissions and evidence from CNEV and SNG establish that CNEV meets the requirements of being "*incorporated, patented or licensed*" in terms of the Deed of Gift.

### 2.3.4.  What constitutes an "annual regatta"?

**SNG's submission**

[123]   SNG submitted that there is no requirement in the Deed of Gift that an annual regatta be held before a challenge is made by a yacht club.

---

[46] See GGYC's letter to the Panel's Chairman dated July 27, 2007 (point [14]).
[47] Ibid., page 3, paragraph 2.
[48] Ibid., page 2, last paragraph.

[124]  SNG further submitted that, as a matter of practice among America's Cup participants, it is recognized that a regatta need not be held before a challenge is made. This concept was affirmed by the then America's Cup Arbitration Panel appointed under the Protocol Governing the 31st America's Cup in a decision delivered on 17 December 2000 in respect of SNG's then challenge for the America's Cup. The Panel ruled at paragraph 16:

> "[16] Neither the Deed of Gift nor the Protocol have any provision requiring the annual regatta to have been held prior to the lodging of a challenge, nor that the annual regatta must have been held more than once. The only requirement is that the challenging club must be a yacht club "having for its annual regatta an ocean water course on the sea [...]" If it has such a regatta, it is eligible".

[125]  Such 31st America's Cup Arbitration Panel decision and the lack of SNG holding an annual regatta prior to challenging was never contested by GGYC whilst a competitor in the 31st America's Cup. SNG submitted that under the provisions of the then applicable Protocol, if SNG would have been ineligible to proceed to the Match for the America's Cup against the then defender, GGYC's representative would have proceeded to that Match to compete for the America's Cup.

[126]  As another example, Secret Cove Yacht Club of Canada, which challenged for the 1983 Cup, was a newly formed club when it challenged and had never held an annual regatta at the time of its challenge. Its first annual regatta was at the time of acceptance scheduled for many months later, on 10th October 1981. Notwithstanding that Secret Cove had never before held a regatta, the New York Yacht Club ultimately accepted its challenge.

## Decision

[127]  The Panel determines that CNEV was not required to hold an annual regatta prior to acceptance of its challenge.

[128]   The Panel further determines that CNEV fulfills the "annual regatta" requirement of the Deed of Gift[49]. On July 13 and 14, 2007, CNEV held an Optimist Regatta in Santander[50]. It confirmed, before acceptance of its challenge, that it will hold annual regattas on the sea throughout the duration of the 33rd America's Cup. It has now organized the "Vuelta a España" Regatta, that is currently taking place from September 2 to September 24, 2007[51].

### 2.3.5. Trustee duties

[129]   Under the terms of the Deed of Gift, SNG submitted that it is obliged to accept the first valid challenge it receives.

[130]   The Deed of Gift provides in the last sentence of its 11th paragraph "*And when a challenge from a club fulfilling all the conditions required by this instrument has been received, no other challenge can be considered until the pending event has been decided*".

[131]   The Deed uses the word "event" in this passage rather than the word "match" or "races" which are frequently used elsewhere. This indicates an intention to cover a wider potential time period than just the match itself.

[132]   The New York Supreme Court described the limited options available to the trustee when it receives a valid challenge in its ruling regarding the Mercury Bay case when it considered the validity of the Mercury Bay Boating Club's challenge:

> "*Therefore, in the face of a properly tended challenge, San Diego Yacht Club, having accepted the cup pursuant to the terms of the Deed may either accept the challenge, forfeit the cup, or negotiate agreeable terms with the*

---

[49] See CNEV's submission and the affidavit by Mr. Manuel Chirivella.
[50] See affidavits by Mr. Manuel Chirivella and Mr Gerardo Pombo García, and Annex A to the submission of CNEV.
[51] See affidavit of Mr. Gerardo Pombo García, Annex B to the submission of CNEV and documents filed by CNEV on September 5, 2007.

*challenger….Accordingly, the relief requested by the parties is granted solely to the extent of declaring that Mercury Bay Boating Club has tended a valid challenge and that San Diego yacht club must treat it as such in accordance with the terms of the Deed".* [52]

This particular decision in the Mercury Bay case was not appealed, and remains good law on how SNG should act when presented with a challenge which on its face is valid.

[133] SNG as trustee of the America's Cup submitted that it determined that the challenge of CNEV complied with the terms of the Deed of Gift in a manner consistent with similar decisions made by past trustees, and with the decisions of the New York State Courts.

## Decision

[134] As soon as a challenge "*has been received from a club*", the Deed of Gift, by stating that "*no other challenge can be considered*", does not permit any consideration to another challenger. The Deed thus does not permit to negotiate with several potential challengers of record.

[135] Nothing in the Deed of Gift leaves it open to a third party to question those terms agreed as acceptable by the trustee and the Challenger of Record. If invited to participate, a challenger has the freedom to enter the competition or not at the agreed terms.

[136] No one is obligated to compete. If it wants to compete, this has to be under the rules agreed by SNG and CNEV. This has been the position of America's Cup Challengers for a long period of time.

---

[52] Mercury Bay Boating Club Inc. v. San Diego Yacht Club and Royal Perth Yacht Club of Western Australia Inc (N.Y. Sup. Ct.) (Judgment dated 25th November 1987, Index No. 21299/87 and 21809/87).

[137] The first challenge received by SNG, as trustee, was from CNEV and, as such, SNG was obliged to accept CNEV's challenge.

### 2.4. Conclusion

[138] The Panel determines that CNEV's challenge meets the requirements of the Deed of Gift.

[139] The challenge for the 33rd America's Cup made by CNEV on July 3, 2007 entitles CNEV to challenge for the America's Cup as Challenger of Record, and SNG is obligated to accept (as it was the first valid challenge it received).

## 3.  COMPLIANCE OF THE PROTOCOL WITH THE DEED OF GIFT

### 3.1. Issue

[140] The Panel now turns to the issue whether the Protocol signed by SNG and CNEV meets the requirements of the Deed of Gift.

[141] The Panel considers that this issue can be usefully subdivided in 2 sub-issues, namely:

      (i)      Does the Protocol comply with the Deed of Gift?

      (ii)     Should some specific clauses be reconsidered by the Defender and the Challenger of Record?

### 3.2. Applicable rule

[142] Pursuant to the Deed of Gift, "*the Club challenging for the Cup and the Club holding the same may, by mutual consent, make any arrangement satisfactory to both as to the dates, courses, number of trials, rules and sailing regulations, and any and all*

*other conditions of the match, in which case also the ten months' notice may be waived.*"

### 3.3. Discussion

#### 3.3.1. Does the Protocol comply with the Deed of Gift?

[143]  SNG submitted that the Deed of Gift contemplates that the club challenging for the Cup and the Club holding the Cup should make reasonable efforts to make satisfactory arrangements regarding the Match to be held. They submitted it is recognized by the New York State Court of Appeals in the Mercury Bay opinion that there is no duty on either party when arriving at mutual consent.

[144]  Pursuant to the Deed of Gift, "*any arrangement*" can be made "*by mutual consent*" provided these requirements are "*…satisfactory to both* ['the Defender and the Challenger of Record']". Here, SNG and CNEV have so agreed in the Protocol, and that agreement should be recognized under the Deed of Gift.

[145]  If they fail to agree, the Deed of Gift specifies in detail how the match is to take place. If there is no mutual consent, one of those default terms is that the match is to be "*sailed subject to its* [the Defender's] *rules and regulations so far as the same do not conflict with the provisions of this Deed of Gift*". Subject only to a few provisions which are expressly stated in the Deed of Gift, the donor thus intended for the Defender to establish the rules where there is no agreement.

[146]  There is, in particular, no obligation on the Defender and the Challenger of Record to hold a challenger selection series. This is confirmed by the judgment of the Supreme Court of the State of New York[53] delivered in the *Mercury Bay* case:

---

[53] Mercury Bay Boating Club Inc. v. San Diego Yacht Club and Royal Perth Yacht Club of Western Australia Inc (N.Y. S. Ct) (Judgment dated 6th April 1988, Index No. 01569/88).

*"Under the terms of the deed, unless the parties can agree to another format, the parties must sail a 1-on-1 match race for the cup. Significantly, nowhere in the deed is the possibility of a challenger elimination series mentioned and in fact, throughout much of its history, the America's Cup has been held as a match race. The multinational format was introduced relatively late in the events history, in the 1950s [sic – the first multinational series was held in 1970]".*

*"Examination of the deed and the America's Cup traditions make it clear that the multi-nation elimination format is permissible under the mutual consent clause, but absent mutual agreement a multi-nation series may not be forced upon the competitors".*

This judgment was not appealed and remains good law.

[147]    Under the Deed of Gift, the right of competing is for the first club to challenge. The competition among challengers, the so-called Challenger Selection Series, may – but does not have to – be created by mutual agreement of Defender and Challenger of Record, who are free to do it or not. Therefore, if potential challengers have no right to compete, they have no right to object the Protocol.

[148]    If there is no obligation to hold a Challenger Selection Series, there can be no duties owed to other actual or potential challengers regarding how that series is structured. In any event, there can be no duty owed to potential challengers who may or may not enter the next competition.

[149]    SNG and CNEV reached terms satisfactory to them by mutual consent as to the conduct of the 33rd America's Cup. No other party is entitled to disturb those arrangements, although it remains open for prospective challengers to review those terms and decide whether or not to apply to participate in the competition. As CNEV stated in its submission, *"No one is obligated to compete but if it wants to compete it has to be under the rules agreed by [SNG] and [CNEV]."*

### 3.3.2. Should some specific clauses be reconsidered by the Defender and the Challenger of Record?

[150] The Panel does not have the power to amend the Protocol. It however has the power to state that one or more provisions of the Protocol do not comply with the Deed of Gift. Without stating absolutely that specific clauses of the Protocol are not complying with the Deed of Gift, the Panel deems that it is accordingly also entitled to state that it would be preferable to reconsider some clauses of the Protocol and to invite the parties thereto to do so.  This was for instance suggested by the 32nd America's Cup Jury in its decision April 6, 2007 (Case ACJ025, point [59] (iii) *"... the Jury recommends that a Protocol change is made which could be limited to this particular case."*).

[151] GGYC, in its letter to the Chairman of this Panel dated July 27, 2007 (see supra point [14]), has raised doubts about a number of matters including the following:

- Right of the Defender and Challenger of Record to dismiss and replace the Panel members;
- Right of the Defender and Challenger of Record to change the language of the proceedings;
- Right of the Defender and Challenger of Record to change the Panel Rules of Procedure;
- Right of the Defender and Challenger of Record to modify the powers of the Panel;
- Right of the Defender and Challenger of Record to modify the jurisdiction of the Panel;
- Right of the Defender and Challenger of Record to cancel a team which has been accepted as Challenger by the Defender.

[152] A general principle governing international arbitration is that the parties are free to agree on the modalities of appointment or substitution of the members of the

arbitration tribunal, about its seat and about all other issues which shall govern the procedure of the arbitral process.

[153]   Since the clauses which are criticized by GGYC are the result of an agreement reached by the parties to the Protocol (both the initial parties as well as the four yacht clubs which adhered thereto at a later stage without any reservation), this Panel considers that the aforesaid clauses of the Protocol are valid.

[154]   The Panel however recognizes that some of the concerns raised by GGYC should be considered. It is in fact quite seldom for a party to appoint an arbitration panel the members of which can be revoked at any time. This might not be disturbing in an isolated matter considering that, in such case, it is a generally accepted principle in international arbitration that the parties to the litigation fully control the arbitration process[54]. As a consequence, if all parties to such specific case jointly agree, they have the right to modify the procedure or even to terminate the case, which includes the right to revoke the arbitrators' assignment.

[155]   The question at stake here is however different. It is in fact not about two specific parties which are litigating about a specific case in front of a specific arbitration tribunal. It is about the rules governing the functioning of an arbitration panel which is set up with an almost institutional function, for an unknown but in any event a plurality of forthcoming cases, involving a plurality and not yet known number of parties. Also, only two of these parties (the Defender and the Challenger of Record) do, under the current wording of the Protocol, enjoy the rights which are criticized by GGYC. This creates or might create an inequality of treatment amongst all parties which accept to submit to the jurisdiction of the Panel.

---

[54] P. Fouchard, E. Gaillard and B. Goldman on *International Commercial Arbitration*, para. 752 et seq (1999) ("The primacy of the parties' agreement").

82

[156]   For these reasons, the Panel is of the opinion that it would be appropriate for the Protocol to be reconsidered by SNG and CNEV in respect of the following points:

- Right to dismiss and replace the Panel members (Article 24.3 of the Protocol);
- Right to change the arbitration seat (Article 25 of the Protocol);
- Right to change the language of the proceedings (Article 27 of the Protocol);
- Right to change the law applicable to the proceedings (Article 26(a) of the Protocol);
- Right to modify the jurisdiction of the Panel(Articles 21 and 23 of the Protocol);
- Right to modify the powers of the Panel (in general).

[157]   In addition, it would be appropriate for consideration to be given to amending the Protocol whereby once the Rules of Procedure have been agreed and enacted pursuant to clause 26(c) of the Protocol, the Rules of Procedure might only be revoked or amended following consultation with this Panel and approval by the same.

[158]   GGYC has also stated in its letter to the Panel dated July 27, 2007 that "*An adjudicatory proceeding over the validity of the Protocol in which a yacht club must accept the Protocol before they can challenge its validity, while SNG retains the right to terminate their standing if they challenge any provision of the Protocol, is a fatally flawed proceeding*". The Panel considers that this issue can be properly solved by interpreting the Protocol as it stands. In fact, as a matter of principle, an accepted Challenger is entitled to submit to the Panel any issue regarding the Protocol, including its provisions. By doing so, it is thus not in breach of the Protocol and its standing as Challenger cannot, for this simple reason, be terminated. Pursuant to Article 35 of the Protocol ("*Resort to Courts Prohibited*") – but this is a different issue – , there would be a breach of this Protocol if a "*person or entity, including its officers, members and employees, having the right to make an*

*application to the Sailing Jury or the Arbitration Panel hereunder [...] resort to any other court or tribunal than the Sailing Jury or the Arbitration Panel.*"

[159]  The Panel's suggestion that the above matters be reconsidered does not mean that, as a consequence, the Protocol as it stands does not comply with the Deed of Gift.

### 3.4. Conclusion

[160]  The Panel determines that the Protocol signed by SNG and CNEV on July 3, 2007 complies with the Deed of Gift.

[161]  The Panel however believes that it would be appropriate for the Defender and the Challenger of Record to reconsider the Protocol in respect of certain specific points referred above at points [155] and [156].

## SUMMARY OF THE DECISION

[162]  The decision of the Panel is the following:

- The Panel (i) has the competence to rule on its own jurisdiction and (ii) also has jurisdiction to rule on the present matter;
- The challenge for the 33rd America's Cup made by CNEV on July 3, 2007 (i) is a valid challenge entitling CNEV to challenge for the America's Cup as Challenger of Record and (ii) SNG is obligated to accept (as it was the first valid challenge it received);
- The Protocol signed by SNG and CNEV on July 3, 2007 complies with the Deed of Gift; and
- Although this does not affect the compliance of the existing Protocol with the Deed of Gift, the Panel believes that SNG and CNEV should consider

amending the Protocol in respect of some of its provisions as stated in point points [155] and [156].

## PUBLICATION OF THE DECISION

[163]  This decision shall be immediately published by ACM by placing it on the 33rd America's Cup website (www.americascup.com).

## COSTS

[164]  Article 34(b) of the Protocol provides that:

> *"The Arbitration Panel shall award all costs it has or will incur to resolve the arbitration to one or more parties to an application as it considers equitable provided that the starting basis shall be that the losing party or a party seeking an interpretation will be liable for all costs to resolve the arbitration."*

[165]  The Panel was required in the circumstances of the case to carry out substantive activity and give consideration to significant issues raised by GGYC. The case is important and complex. Although no party required a hearing, recognizing the significance of the case the Panel members met in person prior to delivering the decision. The time spent by Panel members was accordingly substantial. Pursuant to Article 34(b) of the Protocol, the Panel costs on the Application are fixed at EURO 86,900 (Eighty Six Thousand Nine Hundred).

[166]  This Application has been made by SNG in order to obtain clarification about fundamental issues. The only opponent is GGYC, which has however chosen to limit its direct involvement in these proceedings to the filing of a letter, and which has not challenged and/or been accepted as Challenger.

[167] Accordingly, all costs shall be payable by SNG. Taking into account their advance on costs of EURO 25.000. SNG shall pay to the Panel the balance amounting to EURO 61,900.

[168] This is a unanimous decision.

The America's Cup Arbitration Panel



_____

Professor Henry Peter, Chairman

Graham A. McKenzie and  Professor Luis María Cazorla Prieto, Members

**EXHIBIT F**

# Provisional Net Surplus Revenue Share

Date: 9/18/2007

| | Classification | Teams In this situation | % Per team In this situation | Teams | Accumulated % per team | TOTAL | as of 31.07.07 Forecasted NS |
|---|---|---|---|---|---|---|---|
| **Netsurplus** (As per Protocol article 4.2 & 4.3) 10.0% | Event Authority (ACM) | N/A | 10.0% | N/A | 10.0% | 10.0% | 6,657,062 |
| 18.0% | All Challengers | 11 | 1.6% | 7 | 1.6% | 11.5% | 7,625,362 |
| 3.5% | LV Semifinals | 4 | 3.4% | 2 | 5.0% | 10.0% | 6,672,192 |
| 9.0% | LV Finalists | 2 | 4.5% | 1 | 9.5% | 9.5% | 6,331,774 |
| 4.5% | LV Winner | 1 | 4.5% | 1 | 9.5% | 9.5% | 9,327,452 |
| 45.0% | Team Alinghi | 1 | 45.0% | 1 | 45.0% | 45.0% | 29,956,780 |
| **TOTALS** 100% | | | 100.0% | 12 | | 100.0% | 66,570,622 |

| | | |
|---|---|---|
| ACM | 6,657,062 | 10.000% |
| Team Alinghi | 29,956,780 | 45.000% |
| ETNZ | 9,327,452 | 14.011% |
| Luna Rossa | 6,331,774 | 9.511% |
| Desafio Español | 3,336,096 | 5.011% |
| BMW Oracle | 3,336,096 | 5.011% |
| China Team | 1,089,337 | 1.636% |
| Mascalzone Latino | 1,089,337 | 1.636% |
| +39 | 1,089,337 | 1.636% |
| Shosholoza | 1,089,337 | 1.636% |
| UITC | 1,089,337 | 1.636% |
| Victory Challenge | 1,089,337 | 1.636% |
| Areva Challenge | 1,089,337 | 1.636% |
| | 66,570,622 | 100.000% |

**EXHIBIT G**

### 6.1.2 Reasons for Decision and Decision in Case No. ACAP 00/6 (17 December 2000)

**Applicants:** Société Nautique de Genève
Royal New Zealand Yacht Squadron

**Panelists:** *Chairman:* Prof.dr.Fernando Pombo
*Arbitrators:* Master John Faire
Mr Donald Manasse
Prof.dr. Henry Peter
Sir David Tompkins QC

**Subject Matter:**
– Deed of Gift
– Eligibility to Challenge
– Annual Regatta on the sea or an arm of the sea
– Validity of SNG challenge
– No Undertaking required as to where next match held

THE AMERICA'S CUP ARBITRATION PANEL

IN THE MATTER of the Protocol governing the XXXI America's Cup.

AND

IN THE MATTER of applications by

(1)  Société Nautique de Genève seeking ratification of the validity of its challenge.
(2)  Royal New Zealand Yacht Squadron regarding the validity of the challenge by Société Nautique de Genève and seeking interpretations of the Deed of Gift.

REASONS FOR DECISION AND DECISION OF THE AMERICA'S CUP ARBITRATION PANEL

[1]  The America's Cup Arbitration Panel ("the Panel") received the application by Société Nautique de Genève ("SNG") seeking ratification of the validity of its

84

## BACKGROUND

a) SNG
b) RNZYS
c) Yacht Club Punta Ala

*ELIGIBILITY TO CHALLENGE*

[10]   SNG is a Swiss yacht club situated at Port Noir on Lake Geneva, Switzerland. It was formed on 3 March 1872. It is one of the oldest yacht clubs in Europe. It currently has 3,044 members. It generally holds its sailing regattas on Lake Geneva.

[11]   On 30 September 2000

86



*Reasons for Decision: Case No. RE/2008*

[illegible paragraph]

[17] [illegible paragraph]

[18] [illegible paragraph]

[19] [illegible paragraph]

[20] [illegible paragraph]

*THE CHICAGO YACHT CLUB DECISION*

[21] The Decision previously recited makes it unnecessary for us to determine the alternative ground advanced on behalf of SNG, namely that the challenge should be declared valid because of the precedent marked by the *Chicago Yacht Club* decision. However we consider that it may be helpful if we express our views on whether that decision should be regarded as a binding or persuasive precedent should the issue arise in the context of a future challenge.

[22] [illegible paragraph]

[23] On 20 September 1989 the Supreme Court made an order in these terms:

[illegible block quote]

88



[23]

[24]

[25]

[26]

[27]

## *THE LOCATION OF A FUTURE DEFENCE*

[28]



THE AMERICA'S CUP ARBITRATION PANEL

AC 99/04

IN THE MATTER of the notice of meeting dated 9 December 1998

AND

IN THE MATTER of an application by

(1) Société Nautique de Genève seeking ratification of the validity of its challenge

(2) Royal New Zealand Yacht Squadron regarding the validity of the challenge by Société Nautique de Genève and seeking interpretation of the Deed of Gift

Decision of the America's Cup Arbitration Panel

[1]    The America's Cup Arbitration Panel ("the Panel") has received the application by Société Nautique de Genève seeking ratification of the validity of its challenge. It has also received the application by the Royal New Zealand Yacht Squadron regarding the validity of the challenge by Société Nautique de Genève and seeking interpretation of the Deed of Gift;

[2]    The decision of the Panel on the validity of the challenge is:

The challenge for the America's Cup made by Société Nautique de Genève by letter of 18 August 2000 is a valid challenge entitling Société Nautique de Genève to challenge for the America's Cup.

(3)    The Panel will deliver its reasons for that decision, and its decisions on all matters raised by the application, in due course.

(4)    This decision is signed by Sir David Tompkins on behalf and with the approval of the members of the Panel.

Executed the ___ day of December 2002

Sir David Tompkins

**EXHIBIT H**

# Notice of Entry

1. **Background**

   This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by qualified yacht clubs to become a Challenging Competitor and forms part of the Event Regulations.

   Definitions used in the said Protocol shall apply to this Notice of Entry

2. **Application**

   I, Andrew Collins am the Rear Commodore (Sailing) of the Royal Thames Yacht Club, 60 Knightsbridge, London SW1X 7LF and I am duly authorised by such yacht club to submit this Notice of Entry.

   2.1 **Yacht Club:** The Royal Thames Yacht Club hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

   2.2 **Deed Of Gift:** The Royal Thames Yacht Club is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

       (i)    is not domiciled in Switzerland;
       (ii)   is an organised yacht club;
       (iii)  is incorporated as a private limited company and was registered in England and Wales on the 14 January 2003; and
       (iv)  has an annual regatta on the sea or an arm of the sea.

   2.3 **Certificate of Incorporation**: A certified copy of the certificate of incorporation, of the Royal Thames Yacht Club is annexed to this Notice of Entry (at annex 1).

   2.4 **Annual Regatta**: Details of the Royal Thames Yacht Club's annual regatta on the sea or arm of the sea demonstrating the Challenger meets the obligations in the Deed of Gift are annexed to this Notice of Entry (at annex 2).

   2.5 **Organised**: Details demonstrating how the Royal Thames Yacht Club is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry (at annex 3).

   2.6 **Representation:** The Royal Thames Yacht Club will be represented by:

   TEAMORIGIN LLP (Number OC325168), whose registered office is at 80, Strand, London, WC2R 0NN, United Kingdom.

All communications and notices are to be sent to:

**Representative:**

TEAMORIGIN LLP
80, STRAND,
LONDON, WC2R 0NN
UNITED KINGDOM

Attn:      Sir Keith Mills (Team Principal)
Fax:       +44 020 7152 4300
email:     keithmills@teamorigin.com
Tel:       +44 020 7152 6600

**Yacht Club:**

Royal Thames Yacht Club Limited
60 Knightsbridge,
London, SW1X 7LF
UK

Attn:        The Secretary, Captain David Freeman, LVO, Royal Navy
Facsimile:   +44 (20) 7245 9470
E-mail:      secretary@royalthames.com
Tel:         +44(0)20 7235 2121

3. **Bound By Protocol**

The Royal Thames Yacht Club hereby unconditionally agrees and accepts to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

4. **Arbitration and Dispute Resolution**

The Royal Thames Yacht Club hereby unconditionally agrees and accepts to be bound by the dispute resolution provisions of the Protocol, and in particular, unconditionally submits to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and shall not resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5. **Entry Fee and Performance Bond**

The Royal Thames Yacht Club submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond may be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

6.    **Challenger of Record**

It is acknowledged and agreed the Club Nautico Español de Vela is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of Club Nautico Español de Vela, the Royal Thames Yacht Club may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

Signed by The Royal Thames Yacht Club:

Signature:

Andrew Collins
**Name**

Rear Commodore (Sailing)
**Office**

**Date:**   20ᵗ July 2007



# Notice of Entry



## 1.   Background

This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

Definitions used in the said Protocol shall apply to this Notice of Entry.

## 2.   Application

I, Willy Kuhweide am the Commodore of the Deutscher Challenger Yacht Club e.V. and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by Notary hereunder.

2.1   **Yacht Club:** Deutscher Challenger Yacht Club e.V. hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

2.2   **Deed Of Gift:** Deutscher Challenger Yacht Club e.V. is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

    (i)    is not domiciled in Switzerland;

    (ii)   is an organised yacht club;

    (iii)  is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and

    (iv)  has or will have an annual regatta on the sea or an arm of the sea.

2.3   **Certificate of Incorporation**: An original notarized certified copy of the Deutscher Challenger Yacht Club's certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

2.4   **Annual Regatta**: The Notice of Race of the Deutscher Challenger Yacht Club's annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

2.5   **Organised**: Details, such as the Deutscher Challenger Yacht Club e.V. existing by-laws and its organization regulations, demonstrating how the Deutscher Challenger Yacht Club e.V. is organised and meets the

obligations in the Deed of Gift regarding being an organised yacht club
are annexed to this Notice of Entry.

2.6    **Representation:** Deutscher Challenger Yacht Club e.V. will be
represented by

United Internet Team Germany
*Name of representative (syndicate)*

All communications and notices are to be sent to:

*[Provide address (no PO Box address), fax, and email, telephone details
of both the yacht club and the representative entity (syndicate) with the
name(s) of contact person(s)]*

Yacht club:
DCYC - Deutscher Challenger Yacht Club e.V.
Willy Kuhweide - Commodore
Nepomukweg 4-6
D-82319 Starnberg
Tel.: ++49 (0) 8151-3238
Fax: ++49 (0) 8151-28222
Email: info@dcyc.de

Syndicate:
United Internet Team Germany
Deutsche Challenge S.L.U.
Michael Scheeren - Syndicate Chief
Muelle de Nazaret s/n
Port America's Cup - Base 2
E-46024 Valencia
Tel.: ++49 (0) 171 7875382
Fax: ++34 (0) 96 320 44 71
Email: m.scheeren@ui-team-germany.de

3.    **Bound By Protocol**

The Deutscher Challenger Yacht Club e.V. and the United Internet Team
Germany each hereby unconditionally agree and accept to be bound by the
terms of the said Deed of Gift, the Protocol, and all applicable rules and
obligations referred to in such Protocol including but not limited to those which
will be contained the documents listed in Article 2.5 of the said Protocol, and
any amendment to such Protocol or such rules and obligations that may be
issued from time to time.

**Arbitration and Dispute Resolution**

The Deutscher Challenger Yacht Club e.V. and the United Internet Team Germany each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. Deutscher Challenger Yacht Club e.V. further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5.    **Entry Fee and Performance Bond**

Deutscher Challenger Yacht Club e.V. submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

The entry fee shall be transferred on the following bank account:

**BENEFICIARY BANK :**

**UBS SA**
Rue des Noirettes 35
Case Postale 2600
1211 Genève 2

**BANK ACCOUNT :**

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

**ACCOUNT BENEFICIARY :**

**AC MANAGEMENT SA**
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

6.    **Challenger of Record**

The Deutscher Challenger Yacht Club e.V. and United Internet Team Germany each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, Deutscher Challenger Yacht Club e.V. may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The Deutscher Challenger Yacht Club e.V. and United Internet Team Germany also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The Deutscher Challenger Yacht Club e.V. and the United Internet Team Germany further acknowledge that Societé Nautique de Genève ("SNG") has commenced an arbitration proceeding before the Arbitration Panel constituted under the Protocol in which it asks the Panel to confirm CNEV's status as Challenger of Record.

The Deutscher Challenger Yacht Club e.V. and the United Internet Team Germany each understand that AC Management and SNG cannot be responsible for any losses incurred by Deutscher Challenger Yacht Club e.V. and/or United Internet Team Germany as a result from GGYC's actions.

**Signatures:**

Deutscher Challenger Yacht Club e.V.:

*[signature]*

Name: Deutscher Challenger Yacht Club e.V. - Willy Kuhweide - Commodore
Office: Nepomukweg 4-6, D-82319 Starnberg
Date: 10. August 2007

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY,
POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

United Internet Team Germany:

By countersigning this Notice of Entry United Internet Team Germany confirms its
agreement with its provisions and in particular unconditionally agrees and accepts to
be bound by the terms and conditions of sections 3, 4 and 6 above.

Name: United Internet Team Germany - Michael Scheeren - Syndicate Chief
Office: Deutsche Challenge S.L.U.
        Muelle de Nazaret s/n, Port America's Cup - Base 2, E-46024 Valencia
Date: 9. August 2007

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY,
POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

Amtliche Beglaubigung

Die Echtheit der vor uns stehenden, vor uns
gezeichneten bzw. anerkannten Unterschrift/en der
folgenden Person/en wird amtlich bezeugt:

*Wilhelm Kuhweide, geb 16.01.1943,*
*deutscher Staatsangehörige, in 6402 Küssnacht*

Küssnacht, *08 August 2007*                    *[signature]*

*[notary seal]*

**APOSTILLE**
(Convention de la Haye du 5 octobre 1961)

1. Land: Schweizerische Eidgenossenschaft, Kanton Schwyz
   Country: Swiss Confederation, Canton of Schwyz

Diese öffentliche Urkunde / This public document

2. ist unterschrieben von / has been signed by

   _Hanspq   Ulrich_

3. in seiner/ihrer Eigenschaft als / acting in the capacity of

   _Notar_

4. Sie ist versehen mit dem Stempel/Siegel des/der / bears the stamp/seal of

   _Notariat Küssnacht_

Bestätigt / Certified

5. in / to  Schwyz

6. am / the  _23 August 2007_

7. durch die Staatskanzlei des Kanton Schwyz
   by Chancery of State of the Canton of Schwyz

8. unter / under Nr.  _1340_

9. Stempel:

10. Unterschrift / Signature
    Der Staatsschreiber:

_i.J. L. ..._



**JUSTIZRAT RICHARD BOCK**
**N O T A R**
**Casinostraße 38, 56068 Koblenz**

Tel. 0261/133960    mail: notariat@notar-bock.de    Fax 0261/1339610

**URNr.**                3794/2007

Die vorstehende, vor mir anerkannte Namensunterschrift von Herrn Michael
**Scheeren**, geboren am 22. Juli 1957, wohnhaft in 56414 Wallmerod, Im grauen Berg
11, von Person bekannt, beglaubige ich hiermit.

Koblenz, den 9. August 2007



Notarassessor Sebastian Miesen
als amtlich bestellter Vertreter von
Justizrat Richard Bock,
Notar in Koblenz

**URNr.**                3794/2007

The authenticity of the signature of Mr. Michael **Scheeren**, * 22.07.1957, domiciled in
56414 Wallmerod, Im grauen Berg 11, appearing on the foregoing page is hereby cer-
tified.

Mr. Scheeren is personally known.

Koblenz, 9th August 2007

Junior Notary Public Sebastian Miesen
acting as officially appointed representative
of Notary Richard Bock, Koblenz

**Kostenberechnung** § 54 KostO

Wert: 3.000,-- €
Gebühr §§ 141, 32, 45      10,00 €

Junior Notary Public Sebastian Miesen
acting as officially appointed representative
of Notary Richard Bock, Koblenz

le_07306.doc

**APOSTILLE**

(Convention de La Haye du 5 octobre 1961)

1. Land : Bundesrepublik Deutschland

   Diese öffentliche Urkunde

2. ist unterschrieben von Notarassessor Sebastian Miesen

3. in seiner Eigenschaft als amtlich bestellter Vertreter des Notars JR Richard Bock in
   Koblenz

4. sie ist Versehen mit dem Siegel des Notars

   Bestätigt

5. in Koblenz     6. am 09. August 2007

7. durch den Präsidenten des Landgerichts

8. unter Nr. 910 a E – 1222/07

9. Siegel

10. Unterschrift

   (Hans-Josef Graefen)

Geschäftswert
EUR 3.000,00

Verwaltungsgebühr
Gemäß JVKostO
EUR 10,00

JV 60 Apostille

# Notice of Entry

1. **Background**

   This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.
   Definitions used in the said Protocol shall apply to this Notice of Entry.

2. **Application**

   I, LORENZO RIZZARDI am the PRESIDENT of the CIRCOLO VELA GARGNANO and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by General Secretary of the Comune di Gargnano Dott. Angelo Grassi, hereunder.

   2.1 **Yacht Club:** CIRCOLO VELA GARGNANO hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

   2.2 **Deed Of Gift:** CIRCOLO VELA GARGNANO is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

   (i) is not domiciled in Switzerland;
   (ii) is an organised yacht club;
   (iii) is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
   (iv) has or will have an annual regatta on the sea or an arm of the sea.

   2.3 **Certificate of Incorporation:** An original notarized certified copy of the CIRCOLO VELA GARGNANO'S certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

   2.4 **Annual Regatta:** The Notice of Race of the CIRCOLO VELA GARGNANO annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

   2.5 **Organised:** Details, such as the CIRCOLO VELA GARGNANO's existing by-laws and its organization regulations, demonstrating how the CIRCOLO VELA GARGNANO is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

notice of entry_33rd_ac.

**2.6     Representation:** CIRCOLO VELA GARGNANO will be represented by

PIU 39 CHALLENGE 2007 S.L.
MUELLE DE L'ADUANA S/N
BASE 10
46024 VALENCIA (SPAIN)

All communications and notices are to be sent to:

Don Lorenzo Rizzardi
MUELLE DE L'ADUANA S/N
BASE 10
46024 VALENCIA (SPAIN)
*TEL. 963 812207*
FAX 963 812206
OFFICIAL@PIU39CHALLENGE.IT

C.FEZZARDI@PIU39CHALLENGE.IT

F.FRATTINI@PIU39CHALLENGE.IT

**3.     Bound By Protocol**

The CIRCOLO VELA GARGNANO and the PIU 39 CHALLENGE 2007 S.L.
each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

**4.     Arbitration and Dispute Resolution**

The CIRCOLO VELA GARGNANO and the PIU 39 CHALLENGE 2007 S.L.
each hereby unconditionally agree and accept PIU 39 CHALLENGE 2007 S.L.
to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. CIRCOLO VELA GARGNANO further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

**5.     Entry Fee and  Performance Bond**

CIRCOLO VELA GARGNANO submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by

notice of entry 33rd_ac

us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.
The entry fee shall be transferred on the following bank account:

BENEFICIARY BANK :

UBS SA
Rue des Noirettes 35
Case Postale 2600
1211 Genève 2

BANK ACCOUNT :

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

ACCOUNT BENEFICIARY :

AC MANAGEMENT SA
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland


6.    Challenger of Record

        The CIRCOLO VELA GARGNANO and PIU 39 CHALLENGE 2007 S.L.
each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is
the Challenger of Record under the terms of the Protocol, but that in the event
of the withdrawal or disqualification of CNEV, CIRCOLO VELA GARGNANO may
become the Challenger of Record, as provided under Article 3.3 of the Protocol.

        The CIRCOLO VELA GARGNANO and PIU 39 CHALLENGE 2007 S.L.
also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV
is not a valid Challenger of Record and has commenced a lawsuit in New York
State court seeking to have CNEV removed as Challenger of Record and to have
GGYC inserted in its place.

        The CIRCOLO VELA GARGNANO and the PIU 39 CHALLENGE 2007 S.L.
further acknowledge that Societé Nautique de Genève ("SNG") has commenced
an arbitration proceeding before the Arbitration Panel constituted under the
Protocol in which it asks the Panel to confirm CNEV's status as Challenger of
Record.

The CIRCOLO VELA GARGNANO and the PIU 39 CHALLENGE 2007 S.L.
each understand that AC Management and SNG cannot be responsible for any
losses incurred by CIRCOLO VELA GARGNANO and/or [PIU 39 CHALLENGE 2007
S.L. as a result from GGYC's actions.

notice_of_entry_33rd_ac

**Signatures:**

*[Club]:*  CIRCOLO VELA GARGNANO

*Renasperi*

Name:  LIEVI LUCIANO  (VICEPRESIDENTE)
Office:  GARGNANO
Date:  23 OTTOBRE 2007

**[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]**

*[Representative – syndicate]:*

By countersigning this Notice of Entry *[representative – syndicate]* confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

+ 3/5 CHALLENGE

Name:  RIZZARDI LORENZO
Office:  VALENCIA
Date:  23 OTTOBRE 2007

**[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]**

**COMUNE DI GARGNANO** *Provincia di Brescia*
Ai sensi dell'art. 21 del D.P.R. 445/2000 si dichiara
autentica la firma di ..LIEVI LUCIANO..............................

apposta in mia presenza, la cui identità è stata da me
accertata mediante ..Conoscenza............................
..............................Personale..............
nf. 3 OTT 2007   SEGRETARIO GENERALE
                  (Dott. Angelo Grassi)

**COMUNE DI GARGNANO** *Provincia di Brescia*
Ai sensi dell'art. 21 del D.P.R. 445/2000 si dichiara
autentica la firma di ..Rizzardi..............................
..............................Lorenzo..............
apposta in mia presenza, la cui identità è stata da me
accertata mediante ..Conoscenza............................
..............................Personale..............
N. 3 OTT 2007   SEGRETARIO GENERALE
                  (Dott. Angelo Grassi)

# Notice of Entry

Application by Gamla Stans Yacht Sällskap to become a Challenging Competitor pursuant to the Protocol Governing the 33rd America's Cup

Definitions used in the said Protocol shall apply to this Notice of Entry.

1.    **Application**

I, Johan Stenman am the Managing Director Gamla Stans Yacht Sällskap and I am duly authorized by such yacht club to submit this Notice of Entry.

1.1    **Yacht Club:** Gamla Stans Yacht Sällskap hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

1.2    **Deed Of Gift:** Gamla Stans Yacht Sällskap is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

(i)    is not domiciled in Switzerland;
(ii)    is an organised yacht club;
(iii)    is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled: and
(iv)    has had and will have an annual regatta on the sea or an arm of the sea.

1.3    **Certificate of Incorporation**: An certified copy of Gamla Stans Yacht Sällskap certificate of incorporation as well as of the trade register extract is annexed to this Notice of Entry.

1.4    **Annual Regatta**: The Notice of Race of the annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

1.5    **Organised**: Details, such as the existing by-laws and its organization regulations, demonstrating how Gamla Stans Yacht Sällskap is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

1.6    **Representation**: Gamla Stans Yacht Sällskap will be represented by Mr. Johan Stenman

1211 Genève 2

**BANK ACCOUNT :**

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

**ACCOUNT BENEFICIARY :**

**AC MANAGEMENT SA**
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

5. **Challenger of Record**

Gamla Stans Ycht Sällskap and Mr. Johan Stenman each acknowledge that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the present terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, Gamla Stans Yacht Sällskap may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

Gamla Stans Yacht Club and Mr. Johan Stenman also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

Gamla Stans Yacht Sällskap further acknowledge that Societé Nautique de Genève ("SNG") has commenced an arbitration proceeding before the Arbitration Panel constituted under the Protocol in which it asks the Panel to confirm CNEV's status as Challenger of Record. It is also acknowledged that the Arbitration Panel has ruled on the issues in question.

Gamla Stans Yacht Sällskap each understand that AC Management and SNG cannot be responsible for any losses incurred by GSYS and/or Mr. Johan Stenman as a result from GGYC's actions.

6. **Confidentiality**

It is agreed between AC Management and SNG, on one side, and Gamla Stans Yacht Sällskap and Mr. Johan Stenman, on the other side that this Notice of Challenge shall be kept strictly confidential and shall not be made public until further notice from Gamla Stans Yacht Sällskap.



2

All communications and notices are to be sent to:

Mr. Johan Stenman, Skeppsbron 18, PO Box 2095, SE-103 13 Stockholm.
johan.stenman@victorychallenge.com
+46 8 562 00004
+46 8 20 37 74 fax
+46 704 13 05 90 mobile

2.   **Bound By Protocol**

Gamla Stans Yacht Sällskap and Mr. Johan Stenman each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained in the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

3.   **Arbitration and Dispute Resolution**

Gamla Stans Yacht Sällskap and Mr. Johan Stenman each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. GSYS further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of such matter regarding the 33rd America's Cup.

4.   **Entry Fee and Performance Bond**

Gamla Stans Yacht Sällskap submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees that a performance bond will be required to be posted by GSYS to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

The entry fee shall be transferred to the following bank account:

BENEFICIARY BANK :

UBS SA
Rue des Noirettes 35
Case Postale 2600



4

**Signatures:**

**Gamla Stans Yacht Sällskap**

**Name:**
**Office:**
**Date:** 2007-11-02

By countersigning this Notice of Entry I Johan Stenman confirms this agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

**Name:**
**Office:**
**Date:** 2007-11-02

**AC Management**

**Name:**
**Office:**
**Date:**




## Notice of Entry

### Background

This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

Definitions used in the said Protocol shall apply to this Notice of Entry.

**2. Application**

I, Lawyer Raffaele Esposito am the President of the Club Nautico Gaeta and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by [*Notary*] hereunder.

**2.1    Yacht Club:** Club Nautico Gaeta hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

**2.2    Deed Of Gift:** Club Nautico Gaeta is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

    (i)    is not domiciled in Switzerland;
    (ii)   is an organised yacht club;
    (iii)  is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
    (iv)  has or will have an annual regatta on the sea or an arm of the sea.

**2.3    Certificate of Incorporation:** An original notarized certified copy of the Club Nautico Gaeta's certificate of Incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

**Annual Regatta:** The Notice of Race of the Club Nautico Gaeta annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

**Organised:** Details, such as the Club Nautico Gaeta existing by-laws and its organization regulations, demonstrating how the Club Nautico Gaeta

Documento4

Page 1 of 5

*(left margin, vertical text):* ASSOCIAZIONE PROFESSIONALE    Dott. NICOLA CAPUANO    Dott. ROBERTO ALTIERO    NOTAI - 80133 NAPOLI - Via Depretis, 5 - Tel. 081 5515241 - Fax 081 5517269

is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

**2.6    Representation:** Club Nautico Gaeta will be represented by

Paolo Scutellaro (Argo Challenge)

---------------------------------------------------

*Name of representative (Syndacate)*

All communications and notices are to be sent to:

Argo Challenge Srl
Via Pietro Micca, 12
10122 Torino, Italy
Ph. +39 011 5067974
Fax +39 011 5624009
Contact person: Mrs. Marcela Senise de Souza

Club Nautico Gaeta
Piazza carlo III
04024, Gaeta ( It ), Italy
Ph. +39 0771460448
Fax +39 0771 452480
Contact person: Dott. Giacomo Bonelli

**3.    Bound By Protocol**

The Club Nautico Gaeta and Paolo Scutellaro - Argo Challenge each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

**4.    Arbitration and Dispute Resolution**

The Club Nautico Gaeta and Paolo Scutellaro - Argo Challenge each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. Club Nautico Gaeta further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

Document4

5.    **Entry Fee and Performance Bond**

Club Nautico Gaeta submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

Documento4

Page 3 of 5

The entry fee shall be transferred on the following bank account:

**BENEFICIARY BANK :**

**UBS SA**
Rue des Noirettes 35
Case Postale 2600
1211 Genève 2

**BANK ACCOUNT :**

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

**ACCOUNT BENEFICIARY :**

**AC MANAGEMENT SA**
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

6.    **Challenger of Record**

The Club Nautico Gaeta and Paolo Scutellaro -Argo Challenge each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, Club Nautico may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The Club Nautico Gaeta and Paolo Scutellaro – Argo Challenge also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The *Club Nautico Gaeta* and Paolo Scutellaro – Argo Challenge further acknowledge that Société Nautique de Genève ("SNG") has commenced an arbitration proceeding before the Arbitration Panel constituted under the Protocol in which it asks the Panel to confirm CNEV's status as Challenger of Record.

The Club Nautico Gaeta and Paolo Scutellaro – Argo Challenge each understand that AC Management and SNG cannot be responsible for any losses incurred by Club Nautico Gaeta  and/or Paolo Scutellaro – Argo Challenge  as a result from GGYC's actions.

**Signatures:**

**Club Nautico Gaeta:**

Lawyer Raffaele Esposito

Name:
Office:
Date:

CONZIONARIO INCARICATO
(DE ANGELIS Franco)

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

**Paolo Scutellaro – Argo Challenge**

By countersigning this Notice of Entry Paolo Scutellaro – Argo Challenge confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

Name:
Office:
Date:

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

NOTAIO
NICOLA CAPUANO
VIA DEPRETIS N° 5    Page 5 of 5
80133 NAPOLI

Documento4

# A P O S T I L L E

(Convention de la Haye du 5 octobre 1961)

1. Paese: **ITALIA**

   Il presente atto pubblico

2. è stato sottoscritto da _Nicola Petruano_

3. agente in qualità di _Notaio in Napoli_

4. è segnato dal contrassegno / timbro

   di _Distretto Notarile di Napoli, T. A. Mole_

   A t t e s t a t o **6 NOV. 2007**

5 a NAPOLI        6. Il

7. da     **PROCURA DELLA REPUBBLICA DI NAPOLI**

           **8° REPARTO - 9° SEZ. - AFFARI CIVILI**

8. sotto il N. _11873/07_

9. Contrassegno / timbro:

10. firma

_Meni_

**Il Sost. Procuratore della Repubblica**
_Dr.ssa Manuela Mazzi_






## Notice of Entry

**Background**

This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

Definitions used in the said Protocol shall apply to this Notice of Entry.

2. **Application**

I, Lawyer Raffaele Esposito am the President of the Club Nautico Gaeta and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by [*Notary*] hereunder.

2.1 **Yacht Club:** Club Nautico Gaeta hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

2.2 **Deed Of Gift:** Club Nautico Gaeta is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

   (i)    is not domiciled in Switzerland;
   (ii)   is an organised yacht club;
   (iii)  is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
   (iv)   has or will have an annual regatta on the sea or an arm of the sea.

2.3 **Certificate of Incorporation:** An original notarized certified copy of the Club Nautico Gaeta's certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

   **Annual Regatta:** The Notice of Race of the Club Nautico Gaeta annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

   **Organised:** Details, such as the Club Nautico Gaeta existing by-laws and its organization regulations, demonstrating how the Club Nautico Gaeta

ASSOCIAZIONE PROFESSIONALE    Dott. NICOLA CAPUANO    NOTAI - 80133 NAPOLI - Via Depretis, 5 - Tel. 081 5515241 - Fax 081 5517269
Dott. ROBERTO ALTIERO

Documento4

is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

**2.6    Representation:** Club Nautico Gaeta will be represented by

Paolo Scutellaro (Argo Challenge)

------------------------------------------------------------
*Name of representative (Syndacate)*

All communications and notices are to be sent to:

Argo Challenge Srl
Via Pietro Micca, 12
10122 Torino, Italy
Ph. +39 011 5067974
Fax +39 011 5624009
Contact person: Mrs. Marcela Senise de Souza

Club Nautico Gaeta
Piazza carlo III
04024, Gaeta ( It ), Italy
Ph. +39 0771460448
Fax +39 0771 452480
Contact person: Dott. Giacomo Bonelli

## 3.    Bound By Protocol

The Club Nautico Gaeta and Paolo Scutellaro - Argo Challenge each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

## 4.    Arbitration and Dispute Resolution

The Club Nautico Gaeta and Paolo Scutellaro - Argo Challenge each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. Club Nautico Gaeta further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

Document04

5.    **Entry Fee and  Performance Bond**

Club Nautico Gaeta submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

Documento4

Page 3 of 5

The entry fee shall be transferred on the following bank account:

**BENEFICIARY BANK :**

**UBS SA**
Rue des Noirettes 35
Case Postale 2600
1211 Genève 2

**BANK ACCOUNT :**

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

**ACCOUNT BENEFICIARY :**

**AC MANAGEMENT SA**
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

**6.    Challenger of Record**

The Club Nautico Gaeta and Paolo Scutellaro -Argo Challenge each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, Club Nautico may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The Club Nautico Gaeta and Paolo Scutellaro – Argo Challenge also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The *Club Nautico Gaeta* and Paolo Scutellaro – Argo Challenge further acknowledge that Societé Nautique de Genève ("SNG") has commenced an arbitration proceeding before the Arbitration Panel constituted under the Protocol in which it asks the Panel to confirm CNEV's status as Challenger of Record.

The Club Nautico Gaeta and Paolo Scutellaro – Argo Challenge each understand that AC Management and SNG cannot be responsible for any losses incurred by Club Nautico Gaeta and/or Paolo Scutellaro – Argo Challenge as a result from GGYC's actions.

Documento4

**Signatures:**

**Club Nautico Gaeta:**

Lawyer Raffaele Esposito

**Name:**
**Office:**
**Date:**

PROCURATORE [illegible] INCARICATO
*(DE ANGELIS Franco)*

**[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]**

**Paolo Scutellaro – Argo Challenge**

By countersigning this Notice of Entry Paolo Scutellaro – Argo Challenge confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

**Name:**
**Office:**
**Date:**

**[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]**

*Tali sono le firme del sig Paolo Scutellaro nato a Napoli il 6 settembre 1968 e domiciliato in Napoli via [illegible] 59. apposte in mia presenza e delle cui identità personale io Notaio sono certo.*

*Napoli li 5 novembre 2007*

NOTAIO
NICOLA CAPUANO
VIA DEPRETIS N° 5    Page 5 of 5
80133 NAPOLI

Documento4

# APOSTILLE

## (Convention de la Haye du 5 octobre 1961)

1. Paese: ITALIA

   Il presente atto pubblico

2. è stato sottoscritto da *Nicola Pokquano*

3. agente in qualità di *Notaio in Napoli*

4. è segnato dal contrassegno / timbro

   di *Distretto Notarile di Napoli, T. A. Mole*

   Attestato **6 NOV. 2007**

5. a NAPOLI    6. Il _____

7. da _____ **PROCURA DELLA REPUBBLICA DI NAPOLI**

   8° REPARTO - 9° SEZ. - AFFARI CIVILI -

8. sotto il N. *A87307*

9. Contrassegno / timbro:

10. firma



Il Sost. Procuratore della Repubblica
**Dr.ssa Manuela Mazzi**



# Notice of Entry

### 1. Background

This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

Definitions used in the said Protocol shall apply to this Notice of Entry.

### 2. Application

I am Giuseppe Dalla Vecchia the Commodore of the REALE YACHT CLUB CANOTTIERI SAVOIA (hereinafter the "Club") and I am duly authorized by such yacht club to submit this Notice of Entry, as confirmed by *Notary* hereunder.

**2.1    Yacht Club:** The Club hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

**2.2    Deed Of Gift:** The Club is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

(i)      is not domiciled in Switzerland;

(ii)     is an organised yacht club;

(iii)    is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and

(iv)    has or will have an annual regatta on the sea or an arm of the sea.

**2.3    Certificate of Incorporation:** An original notarized certified copy of the *Club's* certificate of incorporation is annexed to this Notice of Entry.

**2.4    Annual Regatta:** The Notice of Race of the Club's annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

**2.5    Organised:** Details, such as the Club's existing by-laws and its organization regulations, demonstrating how the Club is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

**2.6    Representation:** The Club will be represented by

MASCALZONE LATINO (herein after the "Syndicate")

All communications and notices are to be sent to:

For the Club:

**Reale Yacht Club Canottieri Savoia**
Banchina Santa Lucia, 13- 80132 Napoli - Italy

Contact Person: Commodore Giuseppe Dalla Vecchia

Tel. +39 081 764.61.62 · e-mail: ryccsavoia@iol.it

For the Team:

**Mascalzone Latino srl**
Via Toledo 205
80132 Napoli - Italy

and

**Mascalzone Latino sl**
Paseo de la Alameda 35bis
46024 Valencia
Spain

Contact Persons:

Alessandra Pandarese-General Counsel
and Challenger Representative
+39 3356519884 +34 638030685
alessandra.pandarese@mascalzonelatino.it;

Francesco Aversano CEO
+34 638030606 +393357615275
cecchi@mascalzonelatino.it;

3.      **Bound By Protocol**

The Club and the Syndicate each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

notice_of_entry_33rd_ac ML Draft sent.doc

4.    **Arbitration and Dispute Resolution**

The Club and the Syndicate each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. The *Club* further unconditionally submits to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5.    **Entry Fee and  Performance Bond**

The *Club* submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date but not within 2007:





The entry fee shall be transferred on the following bank account:

**BENEFICIARY BANK :**

**UBS SA**
Rue des Noirettes 35
Case Postale 2600
1211 Genève 2

**BANK ACCOUNT :**

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

**ACCOUNT BENEFICIARY :**

**AC MANAGEMENT SA**
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

6.    **Challenger of Record**

The Club and the Syndicate each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, The *Club* may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The *Club* and the *Syndicate* also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The *Club* and the *Syndicate* each understand that AC Management and SNG cannot be responsible for any losses incurred by the *Club* and/or *Syndicate* as a result from GGYC's actions.

Signatures:

Reale Yacht Club Canottieri Savoia

**Name: Giuseppe Dalla Vecchia**

notice_of_entry_33rd_ac_ML Draft sent.doc

Page 4 of 5

**Office: Commodore**
**Date:**

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

**Mascalzone Latino**

By countersigning this Notice of Entry *Syndicate* confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

---

**Name: Vincenzo Onorato**
**Office: Chairman**
**Date:**

---

[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]

Certifico io sottoscritto dott. Vittorio POLINEA, Notaio in Cicciano, iscritto al Collegio Notarile dei Distretti Riuniti di Napoli, Torre Annunziata e Nola, con studio in Cicciano in Via Dante Alighieri n.7, autentiche le antescritte firme apposte in mia presenza in calce e nel margine dei fogli intermedi, dal Dott. Giuseppe DALLA VECCHIA nato a Napoli l'8 giugno 1930 nella qualità di Presidente del "REALE YACHT CLUB CANOTTIERI SAVOIA" e del Dott. Vincenzo ONORATO nato a Napoli il 15 maggio 1957 nella qualità di legale rappresentante della società "MASCALZONE LATINO S.r.l." della cui identità personale io Notaio sono certo.

Napoli 14 novembre 2007.

notice_of_entry_33rd_ac ML Draft sent.doc

Page 5 of 5

# APOSTILLE

## (Convention de la Haye du 5 octobre 1961)

1. Paese: ITALIA

   Il presente atto pubblico

2. è stato sottoscritto da _Vittorio Folimea_

3. agente in qualità di _Notaio in Giggiano_

4. è segnato dal contrassegno / timbro
   di _Distretto Notarile di Napoli, T.A, Mola_

**Attestato** **16 NOV. 2007**

5 a NAPOLI    6. Il _____

7. da _PROCURA DELLA REPUBBLICA DI NAPOLI_
   _6° REPARTO - 9° SEZ. - AFFARI CIVILI -_

8. sotto il N. _5035/07_

9. Contrassegno / timbro:

10. firma

Il Sost. Procuratore della Repubblica
Dr.ssa Manuela Mazzi



# Notice of Entry



**REAL CLUB
NAUTICO
DENIA**





One Feige Mona K·t
Presidential Surgeon 877
CRTY Dénia (Alicante) - España
http: www.rcnaut.les
email: r code matnaut.
Tel: 965 78 05 00 · 965 78 58 46
Fax: 965 78 78 50



## 1.    Background

This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenging Competitor.

Definitions used in the said Protocol shall apply to this Notice of Entry.

## 2.    Application

I, **Manuel Gonzalez Devesa** am the Chairman of the Real Club Nautico Denia and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by Notary hereunder.

2.1    **Real Club Nautico Denia** hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

2.2    **Deed Of Gift: The Real Club Nautico Denia** is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

   (i)     is not domiciled in Switzerland;
   (ii)    is an organised yacht club;
   (iii)   is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
   (iv)   has or will have an annual regatta on the sea or an arm of the sea.

2.3    **Certificate of Incorporation**: An original notarized certified copy of the **Real Club Nautico Denia** certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

   **Annual Regatta**: The Notice of Race of the **Real Club Nautico Denia** annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

**Organised**: Details, such as the **Real Club Nautico Denia** existing by-laws and its organization regulations, demonstrating how the **Real Club Nautico Denia** is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

2.6    **Representation**: The **Real Club Nautico Denia** will be represented by

Pedro Juan Perello Canal

All communications and notices are to be sent to:

**Real Club Nautico Denia**



Carretera Denia-Javea nº 1. 03700 Denia (Alicante), España
Email.       ayrechallenge@cndenia.es
Tel.         +34 965780989
Fax          +34 965780850
Mobil        +34 636484897
Contact      Luis Nogueroles Peiro

**AYRE Challenge**

C/ Parelladas, nº 12, 3º pta. 15, de Palma de Mallorca (07003), España,
Email.       juridico@ayrechallenge.com
Tel          +34 971214507
Fax          +34 971213 283
Mobil        +34 666553245
Contact      Jose Juan Parets

3.    **Bound By Protocol**

The Real Club Nautico Denia and AYRE Challenge each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

4.    **Arbitration and Dispute Resolution**

The Real Club Nautico Denia and AYRE Challenge each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. Real Club Nautico Denia further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the

AYRE notice_of_entry 33rd_ae.doc

Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33ᵣᵈ America's Cup.

5.    **Entry Fee and  Performance Bond**



The Real Club Nautico Denia submits an entry fee of Euro 50,000.00 with this Notice of Entry and agrees a performance bond will be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

The entry fee shall be transferred on the following bank account:

**BENEFICIARY BANK :**

**UBS SA**
Rue des Noirettes 35
Case Postale 2600
1211 Genève 2

**BANK ACCOUNT :**

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

**ACCOUNT BENEFICIARY :**

**AC MANAGEMENT SA**
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

6.    **Challenger of Record**

The Real Club Nautico Denia and AYRE Challenge each acknowledge and agree that the Club Nautico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, The Real Club Nautico Denia may become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The Real Club Nautico Denia and AYRE Challenge  also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The Real Club Nautico Denia and AYRE Challenge each understand that AC Management and SNG cannot be responsible for any losses incurred by Real Club Nautico Denia and AYRE Challenge  as a result from GGYC's actions.

AYRE notice_of_entry_33rd ac.doc

Signatures:

*Real Club Nautico de Denia:*





Name: Manuel Gonzalez Devesa
Office: Presidente del Real Club Nautico de Denia
Date: 19 de noviembre de 2007

**AYRE Challenge:d**

By countersigning this Notice of Entry confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.



Name: Pedro Juan Perello Canal
Office: Director General AYRE Challenge
Date: 19 de noviembre de 2007

**DILIGENCIA DE LEGITIMACIÓN:**

Yo, **ANGEL C. VICEDO GARCIA**, Notario del Ilustre Colegio de Valencia con residencia en Denia conforme al artículo 207 del Reglamento Notarial DOY FE:

Que la firma que antecede de **DON MANUEL GONZALEZ DEVESA con D.N.I./N.I.F 22448763G** estampada en el anverso del presente folio que forma parte de un documento extendido en cuatro folios numerados del 1 al 4, ambos inclusive, de papel común redactado en el idioma inglés, ha sido puesta en mi presencia, quedando constancia en acta autorizada por mi, en el día de hoy, con el número 2438 de mi protocolo en orden.

En Denia(Alicante), a diecinueve de noviembre de dos mil siete.



YO, **ALFONSO PASCUAL DE MIGUEL**, Notario del Ilustre Colegio de Valencia, con residencia en esta Capital, --------------------------------

DOY FE: Que considero legítima la firma que antecede de **DON PEDRO JUAN PERELLÓ CANAL (D.N.I. 42.989.081-B)**, estampada en el anverso del presente folio que forma parte de un documento extendido en cuatro folios numerados del 1 al 4, ambos inclusive, de papel común redactado en el idioma inglés   cuyo contenido conozco conforme a lo preceptuado en los artículos 252 y 262 del Reglamento Notarial español, por haber sido reconocida en mi presencia por el firmante, quedando constancia en acta autorizada por mi, en el día de hoy, con el 1352 de mi protocolo en orden. ------------------------------------ Valencia, a diecinueve de noviembre de dos mil siete. ----- ---

# Notice of Entry

1. **Background**

   This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenger.

   Definitions used in the said Protocol shall apply to this Notice of Entry.

2. **Application**

   I, Mrs Sophie NORET am the Commodore of the Yacht Club de Saint-Tropez ( YCST ) and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by Me BORTOLOTTI hereunder.

   2.1 **Yacht Club:** Yacht Club de Saint-Tropez ( YCST ) hereby makes application to AC Management SA to become a Challenger in the 33rd America's Cup.

   2.2 **Deed Of Gift:** Yacht Club de Saint-Tropez ( YCST ) is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

   (i)    is not domiciled in Switzerland;
   (ii)   is an organised yacht club;
   (iii)  is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
   (iv)  has or will have an annual regatta on the sea or an arm of the sea.

   2.3 **Certificate of Incorporation**: An original notarized certified copy of the Yacht Club de Saint-Tropez's certificate of incorporation as well as of the trade register extract are annexed to this Notice of Entry.

   2.4 **Annual Regatta**: The Notice of Race of the Yacht Club de Saint-Tropez ( YCST ) annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

Notice of Entry 33rd AC

Page 1 of 4

**2.5**   **Organised**: Details, such as the Yacht Club de Saint-Tropez's existing by-laws and its organization regulations, demonstrating how the Yacht Club de Saint-Tropez is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

**2.6**   **Representation**: Yacht Club de Saint-Tropez will be represented by

**French Sprit 33ème America's Cup SA**

All communications and notices are to be sent to:

French Spririt 33ème America's Cup SA :
          16, rue du Cepoun Sanmartin – F 83990 Saint Tropez
          Tel . : 00.33.678.90.92.16
          Fax :  00.33.498.12.68.20
          Email: americascup33@frenchspirit.net
          Contact : Marc PAJOT

Yacht Club de Saint-Tropez :
          Tour Saint Elme – F 83995 Saint Tropez Cdx
          Tel. :  00.33.679.68.38.41
          Email: info@yachtclubdesainttropez.com
          Contact : Christian CHALMIN

**3.**   **Bound By Protocol**

The Yacht Club de Saint-Tropez ( YCST ) and the French Spirit 33ème America's Cup SA each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

**4.**   **Arbitration and Dispute Resolution**

The Yacht Club de Saint-Tropez ( YCST ) and the French Spirit 33ème America's Cup SA each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. Yacht Club de Saint-Tropez further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5. **Entry Fee and Performance Bond**

Yacht Club de Saint-Tropez ( YCST ) submits an entry fee of Euro 50,000.00 with this Notice of Entry and a performance bond of Euro 950,000.00 by 15 January 2008, as per the provisions of Clauses 3.3 and 3.4 of the Event Regulations.

The entry fee shall be transferred on the following bank account:

**BENEFICIARY BANK :**
**UBS SA**
Rue des Noirettes 35
Case Postale 2600
1211 Genève 2

**BANK ACCOUNT :**

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

**ACCOUNT BENEFICIARY :**

**AC MANAGEMENT SA**
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

6. **Challenger of Record**

The Yacht Club de Saint-Tropez ( YCST ) and French Spirit 33ème America's Cup SA each acknowledge and agree that the Club Náutico Español de Vela ("CNEV") is the Challenger of Record under the terms of the Protocol, but that in the event of the withdrawal or disqualification of CNEV, Yacht Club de Saint-Tropez may also become the Challenger of Record, as provided under Article 3.3 of the Protocol.

The Yacht Club de Saint-Tropez ( YCST ) and French Spirit 33ème America's Cup SA also acknowledge that Golden Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of Record and has commenced a lawsuit in New York State court seeking to have CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The Yacht Club de Saint-Tropez ( YCST ) and the French Spirit 33ème America's Cup SA each understand that AC Management and SNG cannot be responsible for any losses incurred by Yacht Club de Saint-Tropez ( YCST ) and/or French Spirit 33ème America's Cup SA as a result from GGYC's actions.

Vu pour cer~~~tion matérielle
de la Signature, apposée en ma présence,
de Mr~~ ....... Sophie NORET ...........
...........................................................
Fait à ST TROPEZ... le 13.12.2007

**Signatures:**

*Yacht Club de Saint-Tropez :*

| | |
|---|---|
| **Name:** | **NORET Sophie - Président** |
| **Office:** | **Tour St Elme – 83990 Saint-Tropez - FRANCE** |
| **Date:** | 13 / 12 / 2007 |

**[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]**

**French Spirit 33ème America's Cup SA:**

By countersigning this Notice of Entry, Marc PAJOT confirms its agreement with its provisions and in particular unconditionally agrees and accepts to be bound by the terms and conditions of sections 3, 4 and 6 above.

| | |
|---|---|
| **Name:** | **PAJOT Marc - Président** |
| **Office:** | **French Spirit 33ème America's Cup SA** |
| | **16, rue du Cépoun Sanmartin - 83990 Saint-tropez - FRANCE** |
| **Date:** | 13 décembre 2007 |

**[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY CONFIRMED BY THE HAGUE APOSTILLE]**

Vu pour cer~~~tion matérielle
de la Signature, apposée en ma présence,
de M.: .Marc. PAJOT ...........
...........................................................
Fait à ST TROPEZ... le 13.12.2007

# Notice of Entry

1.   **Background**

   This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by yacht clubs to become a Challenger.

   Definitions used in the said Protocol shall apply to this Notice of Entry.

2.   **Application**

   I, Andre Annicq, am the Commodore of the *Royal Belgian Sailing Club (RBSC)* and I am duly authorised by such yacht club to submit this Notice of Entry, as confirmed by Notary Christophe Beyer hereunder. *AND MAURICE BEKE, Secretary*

   2.1   **Yacht Club:** RBSC hereby makes application to AC Management SA to become a Challenger in the 33rd America's Cup.

   2.2   **Deed Of Gift:** RBSC is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

   (i)     is not domiciled in Switzerland;
   (ii)    is an organised yacht club;
   (iii)   is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled; and
   (iv)    has or will have an annual regatta on the sea or an arm of the sea.

Case 1:08-cv-04215-WHP    Document 11-9    Filed 06/18/2008    Page 57 of 65

2.3   **Certificate of Incorporation:** An original notarized certified copy of the RBSC certificate of incorporation as well as of the trade register extract is/are annexed to this Notice of Entry.

2.4   **Annual Regatta:** The Notice of Race of the RBSC's annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Entry.

2.5   **Organised:** Details, such as the RBSC's existing by-laws and its organization regulations, demonstrating how the [*club*] is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Entry.

2.6   **Representation:** RBSC will be represented by Carbon Challenge Holding GmbH

All communications and notices are to be sent to:

1. Royal Belgian Sailing Club, Attn. Commodore Andre Annicq <u>as private and confidential</u>
   i.   Phone:   +32−475−49 66 58
   ii.  Fax:     +32−9 − 257 02 31
   iii. Email:   Andre@Annicq.com
   iv.  Street:  Eilanderskaai 7,
   v.   City:    9000 Gent – Belgium

2. Carbon Challenge Holding GmbH, c/o Norton Rose LLP, Attn. Florian Breitreiner
   i.   Phone:   +49−89−21 21 48−0
   ii.  Fax:     +49−89−21 21 48−500
   iii. Email:   Florian.Breitreiner@nortonrose.com
   iv.  Street:  Theatinerstrasse 11
   v.   City:    D – 80333 Munich, Germany.

3.    **Bound By Protocol**

The RBSC and the *Carbon Challenge Holding GmbH* each hereby unconditionally agree and accept to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

4.    **Arbitration and Dispute Resolution**

The RBSC and the *Carbon Challenge Holding GmbH* each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. RBSC further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5.    **Entry Fee and Performance Bond**

RBSC submits an entry fee of Euro 50,000.00 with this Notice of Entry and a performance bond of Euro 950,000.00 by 15 January 2008, as per the provisions of Clauses 3.3 and 3.4 of the Event Regulations.

The entry fee shall be transferred on the following bank account:

BENEFICIARY BANK :
UBS SA
Rue des Noirettes 35
Case Postale 2600
1211 Genève 2

Notice of Entry 33rd AC

Page 3 of 5

BANK ACCOUNT :

IBAN : CH 3000 2402 4048 7696 75T
SWIFT : UBSWCHZH80A

ACCOUNT BENEFICIARY :

AC MANAGEMENT SA
20, Route de Pré Bois
CP-1852-1215 Geneva 15
Switzerland

6.    Challenger of Record

The *RBSC* and *Carbon Challenge Holding GmbH* each acknowledge and agree
that the Club Náutico Español de Vela ("CNEV") is the Challenger of Record under
the terms of the Protocol, but that in the event of the withdrawal or
disqualification of CNEV, RBSC may become the Challenger of Record, as
provided under Article 3.3 of the Protocol.

The RBSC and Carbon Challenge Holding GmbH also acknowledge that Golden
Gate Yacht Club ("GGYC") is claiming that CNEV is not a valid Challenger of
Record and has commenced a lawsuit in New York State court seeking to have
CNEV removed as Challenger of Record and to have GGYC inserted in its place.

The RBSC and the Carbon Challenge Holding GmbH each understand that AC
Management and SNG cannot be responsible for any losses incurred by the RBSC
and/or the Carbon Challenge Holding GmbH as a result from GGYC's actions.

Notice of Entry 33rd AC

Page 4 of 5



Signatures:

**Royal Belgian Sailing Club (RBSC):**

Mr André Annicq

Mr Maurice Beke

*Andre Annicq, Commodore*

I, notary E.Chr.Beyer, confirm and attest the above signature is of mr
André Annicq, identity card n° 590 3329505 1949
and of mr Maurice Beke identity card n°590
4360227 06

Name: Notary E.Chr.Beyer
Office: with Office in Ghent/Wondelgem(Belgium)St.Markoenstr.
Date:                      n° 45
        Ghent, the 13th of december 2007

**[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY POSSIBLY
CONFIRMED BY THE HAGUE APOSTILLE]**

**Carbon Challenge Holding GmbH:**

*Giovanni Aun der Mauer, Geschäftsführer/CEO*

By countersigning this Notice of Entry, the Carbon Challenge Holding GmbH confirms
its agreement with its provisions and in particular unconditionally agrees and accepts
to be bound by the terms and conditions of sections 3, 4 and 6 above.

Name:
Office:
Date:

**[NOTARY'S LEGALISATION + CONFIRMATION OF SIGNATORY'S AUTHORITY, POSSIBLY
CONFIRMED BY THE HAGUE APOSTILLE]**

Notice of Entry 33rd AC

*Page 5 of 5*

Official Codification on reverse side

## Official Certification

Seen for authentication of the reverse side signature, affixed in our presence by

**Mr. Hans-Rudolf Aufdermauer-Conrad,** born 19.09.1950, Swiss citizen of Kerns OW, according to his information residing at Ottikerstrasse 27, 8006 Zürich, Switzerland,
who has identified himself by identity card.

Zurich 8, 14.12.2007/ec

B No. 7596/7
Fee: Fr. 20.-

NOTARIAT RIESBACH-ZÜRICH

Max Bodmer, certifying officer



# Royal Cape Yacht Club

With which is incorporated the
TABLE BAY YACHT CLUB

## Notice of Entry

1.    **Background**

This Notice of Entry is issued by AC Management SA pursuant to Article 4 of the Protocol Governing the 33rd America's Cup for application by qualified yacht clubs to become a Challenging Competitor and forms part of the Event Regulations.

Definitions used in the said Protocol shall apply to this Notice of Entry

2.    **Application**

I, ~~Raymond Craig Middleton~~ am the Commodore of the ROYAL CAPE YACHT CLUB and I am duly authorised by such yacht club to submit this Notice of Entry.

2.1    **Yacht Club:** ROYAL CAPE YACHT CLUB hereby makes application to AC Management SA to become a Challenging Competitor in the 33rd America's Cup.

2.2    **Deed Of Gift:** ROYAL CAPE YACHT CLUB is qualified to challenge for the America's Cup under the terms of the Deed of Gift dated 24 October 1887 between George L. Schuyler and the New York Yacht Club regarding a silver cup won by the schooner yacht *America* at Cowes, England on the 22nd day of August 1851, as amended by orders of the Supreme Court of the State of New York on 17 December 1956 and 5 April 1985, and in particular;

(i)    is not domiciled in Switzerland;
(ii)    is an organised yacht club;
(iii)    is incorporated, patented or; licensed by the legislature, admiralty or other executive department of the state in which it is domiciled on the 1905; and
(iv)    has or will have an annual regatta on the sea or an arm of the sea.

2.3    **Certificate of Incorporation:** A certified copy of the certificate of incorporation, patent or license or other document evidencing the incorporation, patent or license of the ROYAL CAPE YACHT CLUB is annexed to this Notice of Challenge.

TEAM
**SHOSHOLOZA**
◆◆◆◆

P O Box 772 Cape Town 8000
Tel: 021 421-1354/5  Fax: 021 421-6028
e-mail: info@rcyc.co.za  www.rcyc.co.za

2.4 **Annual Regatta:** Details of the ROYAL CAPE YACHT CLUB annual regatta on the sea or arm of the sea demonstrating the Challenger meets or will meet the obligations in the Deed of Gift are annexed to this Notice of Challenge.

2.5 **Organised:** Details demonstrating how the ROYAL CAPE YACHT CLUB is organised and meets the obligations in the Deed of Gift regarding being an organised yacht club are annexed to this Notice of Challenge

2.6 **Representation:** ROYAL CAPE YACHT CLUB will be represented by

RAYMOND CRAIG MIDDLETON
*Name of representative*

All communications and notices are to be sent to:

ROYAL CAPE YACHT CLUB
P O BOX 772
CAPE TOWN
8000
REPUBLIC OF SOUTH AFRICA

TEL: +27 021 4211354
FAX: +27 021 4216028
E-MAIL: info@rcyc.co.za

RAYMOND CRAIG MIDDLETON
C/O ROYAL CAPE YACHT CLUB
P O BOX 772
CAPE TOWN
8000
REP OF SOUTH AFRICA

TEL: +27 021 5931620
FAX: +27 021 5931714
E-MAIL: craig@quantumsails.co.za

3. **Bound By Protocol**

ROYAL CAPE YACHT CLUB hereby unconditionally agrees and accepts to be bound by the terms of the said Deed of Gift, the Protocol, and all applicable rules and obligations referred to in such Protocol including but not limited to those which will be contained the documents listed in Article 2.5 of the said Protocol, and any amendment to such Protocol or such rules and obligations that may be issued from time to time.

4. **Arbitration and Dispute Resolution**

ROYAL CAPE YACHT CLUB hereby unconditionally agrees and accepts to be bound by the dispute resolution provisions of the Protocol, and in particular, unconditionally submits to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and

the Arbitration Panel as provided in the said Protocol and shall not resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

5.    **Performance Bond**

ROYAL CAPE YACHT CLUB agrees a performance bond may be required to be posted by us to AC Management SA of up to Euro 950,000.00 at a later date on at least 30 days prior notice.

Signed by ROYAL CAPE YACHT CLUB :

**Signature:** _W. Middleton_

_RAYMOND CRAIG MIDDLETON_
**Name**

_COMMODORE – ROYAL CAPE YACHT CLUB._
**Office**

## CERTIFICATE OF SERVICE

I, Karli Johnsen, hereby certify under the penalty of perjury that on June 18, 2008 I served a true

and correct copy of the attached:

**- DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO REMAND**
**- DECLARATION OF FRED MEYER**
**- AFFIDAVIT OF BARRY R. OSTRAGER**

upon:    Philip M. Bowman
         Boies, Schiller & Flexner, LLP
         575 Lexington Avenue, 7th Floor
         New York, NY 10022

         David Boies
         Boies, Schiller & Flexner, LLP
         333 Main Street
         Armonk, NY 10504

by tendering a true copy of the same in a properly addressed envelope to Federal Express for

one-day overnight delivery service.

Dated: New York, New York

         June 18, 2008

_Karli Johnsen_
Karli Johnsen