UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------x
                                            :
TEAM NEW ZEALAND LIMITED,                   :
                                            :
                    Plaintiff,              :    Case Nos. 08-Civ-2228, 08-Civ-4215
                                            :
            v.                              :
                                            :
SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM            :
ALINGHI, S.A., AC MANAGEMENT, S.A.,         :
and ERNESTO BERTARELLI,                     :
                                            :
                    Defendants              :
-----------------------------------------------------------x
```

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
COMPEL ARBITRATION</u>**

**Table of Contents**

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

    A.    TNZ and RNZYS Establish the Practice of Resolving Disputes Through the America's Cup Arbitration Panel ...........................................2

    B.    After Winning the 31st and 32nd America's Cups, SNG Continues TNZ's Practice of Resolving Disputes Through the America's Cup Arbitration Panel ............................................................................................3

    C.    TNZ Submits a Notice of Entry with Agreement to Arbitrate....................4

    D.    TNZ Files Its Instant Lawsuits in Contravention of Its Express Agreement to Arbitrate................................................................................6

ARGUMENT...................................................................................................................................7

    A.    TNZ Entered into an Agreement to Arbitrate All Claims Relating to the Protocol and Deed of Gift ..............................................................8

    B.    TNZ's Claims "Arise Out Of Or Relate To" Both The Protocol and Deed of Gift and Thus Fall Within Its Agreement to Arbitrate.................9

    C.    TNZ's Statutory Claims Are Arbitrable ...................................................12

    D.    Both Cases Should Be Dismissed, Not Stayed, Because All Claims Brought Therein Are Arbitrable ................................................................13

CONCLUSION..............................................................................................................................14

## Table of Authorities

**Page**

**Cases**

*Alemac Ins. Servs., Inc. v. Risk Transfer, Inc.*,
    No. 03 Civ. 1162 (WHP), 2003 U.S. Dist. LEXIS 26764 (S.D.N.Y. Aug. 28,
    2003) ...................................................................................................................... passim

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349 (2d Cir. 1999) ....................... 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ....................................... 7

*Baxter Int'l, Inc. v. Abbott Labs.*, 315 F.3d 829 (7th Cir. 2003) ................................................... 13

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir. 1997) .......................... 11

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*,
    923 F.2d 245 (2d Cir. 1991) ....................................................................................................... 7

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984) ............................................................. 9

*Golden Gate Yacht Club v. Société Nautique de Genève*,
    856 N.Y.S.2d 24 (table), 2007 N.Y. Slip Op. 52496U (N.Y. Sup. Ct. Nov. 27,
    2007) ......................................................................................................................................... 3

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003) .......... 8, 13

*JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ............................................... 10, 12

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001) ..................................................................................................... 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) .......................... 12, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ................................ 7

*New York's Health & Human Serv. Union v. NYU Hosps. Ctr.*,
    No. 02 Civ. 9165 (WHP), 2003 U.S. Dist. LEXIS 4343 (S.D.N.Y. Mar. 20, 2003) .......... 7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ....................................... 8

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ............................................................... 9

*Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191 (S.D.N.Y. 2006) ............................................... 13

*Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90 (2d Cir. 2002) ........................................ 13

*Shearson /Am. Express v. McMahon*, 482 U.S. 220 (1987) ........................................................ 12

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)..................................................................................7

*Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26 (2d Cir. 2001)...........................8

**Statutes**

9 U.S.C. § 3 ...............................................................................................................13

9 U.S.C. § 206...........................................................................................................7

Defendants Société Nautique de Genève ("SNG"), Team Alinghi, S.A. ("Alinghi"), AC Management, S.A. ("ACM"), and Ernesto Bertarelli (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion to Compel Arbitration of the claims raised in Plaintiff Team New Zealand Ltd.'s ("Plaintiff" or "TNZ") two related actions, *Team New Zealand Ltd. v. Société Nautique de Genève et al.*, No. 08 Civ. 2228 ("Antitrust Complaint") and *Team New Zealand Ltd. v. Société Nautique de Genève et al.*, No. 08 Civ. 4215 ("Contract Complaint") (collectively, the "Complaints") and to dismiss the Complaints.

## PRELIMINARY STATEMENT

TNZ, a New Zealand entity, and the yacht club for which it sails, the Royal New Zealand Yacht Squadron ("RNZYS"), executed a Notice of Entry on July 25, 2007 to compete for the 33rd America's Cup, in which they "unconditionally agree[d] and accept[ed] to be bound by the dispute resolution provisions of the Protocol" Governing the 33rd America's Cup ("Protocol"). Ex. A at § 4.[1]  This dispute resolution provision mandates that "*[a]ny dispute, protest or claim arising out of or in relation to this Protocol and/or the [Deed of Gift]*" shall be resolved by arbitration. Ex. B at § 21 (emphasis added). The Protocol further provides that: "Each person or entity . . . having the right to make an application to the . . . Arbitration Panel hereunder shall not resort to any other court or tribunal than the . . . Arbitration Panel." *Id.* at § 35.

Here, each and every allegation in the Complaints is inextricably intertwined with the Protocol and the Deed of Gift governing the America's Cup. Indeed, without the Protocol and the Deed of Gift, the Complaints would be stripped of virtually all their allegations. For

---

[1]   Citations in the form "Ex. __" refer to exhibits in the Affidavit of Jonathan K. Youngwood, dated July 3, 2008.

example, the alleged breach of contract relates to TNZ's refusal to "sign onto the Protocol unless the parties agreed in advance upon the location and date of the 33rd America's Cup."  Contract Compl. ¶ 39.  The Antitrust Complaint alleges that the "Protocol . . . unreasonably restrains trade and reduced competition."  Antitrust Complaint ¶ 6.

The claims asserted in the Complaints fall squarely within the language of the Protocol's arbitration provision.  By submitting a Notice of Entry, TNZ therefore made an unequivocal decision to arbitrate these claims.  The Court should compel TNZ to arbitrate its disputes in accordance with the Protocol and dismiss the Complaints.

## BACKGROUND

**A.  TNZ and RNZYS Establish the Practice of Resolving Disputes Through the America's Cup Arbitration Panel**

The practice of resolving America's Cup disputes through an "America's Cup Arbitration Panel" dates back to 1995, when TNZ, as the racing team for RNZYS, won the 29th America's Cup.  After winning the 29th America's Cup, TNZ, through its yacht club RNZYS, issued a protocol to govern the 30th America's Cup, including the formation of an America's Cup Arbitration Panel to resolve disputes.  TNZ and RNZYS promulgated a similar protocol to govern the 31st America's Cup (the "31st Protocol") after winning the 30th America's Cup.

The 31st Protocol again set forth a broad arbitration agreement whereby all disputes relating to the 31st Protocol or the Deed of Gift were subject to mandatory arbitration before the 31st America's Cup Arbitration Panel. Ex. C at Clarification #1 ("The America's Cup Arbitration Panel ('ACAP') remains empowered to interpret and resolve disputes in accordance with Article 22.3 of the Protocol in connection with any matters relating to the Deed of Gift . . . and the Protocol").  The 31st America's Cup Arbitration Panel resolved numerous disputes regarding the 31st Protocol and the Deed of Gift, including a dispute between TNZ and SNG

2

regarding the validity of SNG's challenge under the Deed of Gift. Ex. D at ¶ 1 ("[The Panel] also received the application by the Royal New Zealand Yacht Squadron ('RNZYS') regarding the validity of the challenge by SNG and seeking interpretations of the Deed of Gift . . . ."). The arbitration panel ruled SNG's challenge to be valid under the Deed of Gift, noting that "[n]either the Deed of Gift nor the Protocol have any provision requiring the annual regatta to have been held prior to the lodging of a challenge, nor that the annual regatta must have been held more than once." *Id*. at ¶ 16. At no time did TNZ object to the arbitration panel's authority to resolve questions relating to the Deed of Gift.

### B.  After Winning the 31st and 32nd America's Cups, SNG Continues TNZ's Practice of Resolving Disputes Through the America's Cup Arbitration Panel

In both the 31st and 32nd America's Cups, SNG, through its racing representative Alinghi, defeated TNZ. Ex. E at ¶ 4. Following its victory at the 32nd America's Cup, SNG accepted a challenge from a Spanish yacht club, Club Náutico Español de Vela ("CNEV").[2] Ex. F. Following previous precedent, SNG and CNEV negotiated and published the Protocol, which set forth the rules of competition, rules governing commercial matters, dispute resolution mechanisms, and other miscellaneous provisions about the management of the 33rd America's Cup. Ex. B.

---

[2] On July 20, 2007, Golden Gate Yacht Club ("GGYC") brought an action against SNG in New York Supreme Court alleging breach of fiduciary duty and breach of the terms of the Deed of Gift. GGYC's claims were not subject to binding arbitration because GGYC – unlike TNZ – did not submit a Notice of Entry agreeing to the arbitration provisions of the Protocol. On November 27, 2007, the Supreme Court held, contrary to the decision of the Arbitration Panel, that "CNEV's challenge is invalid and that GGYC is Challenger of Record pursuant to the Deed." *Golden Gate Yacht Club v. Société Nautique de Genève*, 856 N.Y.S.2d 24 (N.Y. Sup. Ct. 2007). The court dismissed the fiduciary duty claim against SNG. *Id.* SNG appealed to the New York Appellate Division, First Department, that portion of the decision disqualifying CNEV and anointing GGYC Challenger of Record. Ex. F. The appeal has been fully briefed and argued and SNG is awaiting a decision.

3

The Protocol permits other yacht clubs to compete in the 33rd America's Cup by submitting a Notice of Entry and agreeing to be bound by the terms of the Protocol. Ex. B at § 4. Nearly a dozen yacht clubs – including Plaintiff – submitted Notices of Entry for the 33rd America's Cup.[3]  Ex. G.

### C. TNZ Submits a Notice of Entry with Agreement to Arbitrate

On July 25, 2007, TNZ and RNZYS submitted a Notice of Entry, agreeing to take part in the 33rd America's Cup under the terms set forth in the Protocol. Ex. A. This Notice of Entry was executed on behalf of Plaintiff by its Managing Director, Grant Dalton, and J.C. Crawford on behalf of RNZYS. *Id*. at 3. In the Notice of Entry, TNZ agreed to be bound by the dispute resolution provisions of the Protocol:

> **4. Arbitration and Dispute Resolution**
>
> The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and the Arbitration Panel in accordance with such provisions of the Protocol. RNZYS further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury, and the Arbitration Panel as provided in the said Protocol and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup.

---

[3] The other yacht clubs that submitted Notices of Entry to the 33rd America's Cup include: (1) Royal Thames Yacht Club; (2) Deutscher Challenger Yacht Club; (3) Circolo Vela Gargnano; (4) Gamla Stans Yacht Sällskap; (5) Club Nautico Gaeta; (6) Reale Yacht Club Canottieri Savoia; (7) Real Club Nautico Denia; (8) Yacht Club de Saint-Tropez; (9) Royal Belgian Sailing Club; and (10) Royal Cape Yacht Club. Ex. G.

*Id*. at § 4.  The Notice of Entry further provides:  "The RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the terms of . . . the Protocol, and all applicable rules and obligations referred to in such Protocol . . . ."  *Id*. at § 3.[4]

The Protocol's dispute resolution provisions include the following broadly worded arbitration agreement:

> **21. RESOLUTION BY ARBITRATION**
>
> Any dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents, the interpretation or breach thereof, shall be resolved by arbitration in accordance with the provisions of this Protocol, except if and where otherwise expressly set forth in this Protocol.  Such arbitration shall be final and binding.

Ex. B at § 21.  The "Applicable Documents" subject to the arbitration clause include, among other things, the Deed of Gift.  *Id*. at § 2.5.  The Protocol further states that "Each person or entity . . . having the right to make an application to the . . . Arbitration Panel hereunder shall not resort to any other court or tribunal than the . . . Arbitration Panel."  *Id*. at § 35.  The arbitration panel has already issued one decision relating to the 33rd America's Cup.  Ex. H.

The Chairman of the 33rd America's Cup Arbitration Panel is Professor Henry Peter.  The other members are Graham McKenzie, and Luis Maria Cazorla Prieto.  Ex. E at ¶ 38. Professor Henry Peter, the Chairman of the Arbitration Panel, was a member of the 31st

---

[4] The Notice of Entry also acknowledges GGYC's commencement of a lawsuit against SNG and the arbitration proceeding to confirm CNEV as Challenger of Record.  RNZYS and Team New Zealand agreed that ACM, SNG, Alinghi, and their affiliates "are not responsible for any losses or damages that the RNZYS and/or Team New Zealand may incur as a result from GGYC's actions or from any court or arbitration proceedings in connection therewith."  Ex. A at § 6.

5

America's Cup Arbitration Panel (in which TNZ was the Defender) and a member of the Sailing Jury[5] of the 32nd America's Cup. Ex. I.[6]

### D. TNZ Files Its Instant Lawsuits in Contravention of Its Express Agreement to Arbitrate

On March 6, 2008, ignoring its express agreements to arbitrate all claims relating to the Protocol or the Deed of Gift, TNZ filed two actions alleging claims relating to both the Protocol and the Deed of Gift. The Contract Complaint asserts two causes of action, a claim for breach of fiduciary duties under the Deed of Gift premised upon TNZ's claim that SNG negotiated an unfair Protocol, in violation of the terms of the Deed of Gift (Contract Compl. ¶ 54), and a second count alleging that Defendants breached a contract whereby TNZ submitted its Notice of Entry in exchange for Defendants' promise to stage the 33rd America's Cup in 2009 in Valencia, Spain. *Id.* ¶ 58. The Contract Complaint is rife with allegations concerning the fairness and validity of the Protocol and TNZ's agreement to submit a Notice of Entry agreeing to be bound by the Protocol. In fact, an entire section of the Contract Complaint is devoted to the Protocol. *Id.* ¶¶ 22-31.

The Antitrust Complaint contains four causes of action, each attacking the Protocol, under Sections 1 and 2 of the Sherman Act. TNZ alleges that Defendants violated the federal antitrust statutes by negotiating the Protocol with CNEV. Antitrust Compl. ¶¶ 31, 36, 37.

---

[5] The Sailing Jury is generally responsible for resolving disputes of a sporting or technical nature. Ex. B at § 22.

[6] In addition, Professor Peter has written on the topic of arbitration in the America's Cup and is the editor of a book, *Arbitration in the America's Cup* (Henry Peter, ed. 2003). Graham McKenzie, from Auckland, New Zealand, was a member of the Sailing Jury of the 32nd America's Cup. *Id.* Luis Maria Cazorla Prieto is a well-known Spanish sports lawyer and former Chief Counsel to the Spanish Parliament. *Id.*

In each of its four counts, TNZ alleges a breach of the Sherman Act based on SNG's promulgation of the Protocol. *Id.* ¶¶ 56, 61, 68, 74.

## ARGUMENT

Defendants seek to compel arbitration under the Federal Arbitration Act ("FAA"). 9 U.S.C. § 206.[7] The Supreme Court has recognized a strong policy favoring arbitration, and has advised courts that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Contsr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also New York's Heath & Human Serv. Union v. NYU Hosp. Ctr.*, No. 02 Civ. 9165 (WHP), 2003 U.S. Dist. LEXIS 4343, at *3-4 (S.D.N.Y. Mar. 20, 2003). A court should compel arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Alemac Ins. Servs. v. Risk Transfer, Inc.*, No. 03 Civ. 1162 (WHP), 2003 U.S. Dist. LEXIS 26764, at *8 (S.D.N.Y. Aug. 28, 2003).

Section 206 of the FAA provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for . . . ." 9 U.S.C. § 206. To determine whether to compel arbitration pursuant to Section 206, courts inquire "whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." *David L. Threlkeld & Co. v.*

---

[7] The parties' briefing on Plaintiff's Motion to Remand addresses the applicability of the New York Convention. The New York Convention and the implementing provisions of the FAA set forth four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope. *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999). For the reasons set forth in Defendants' Opposition to Plaintiff's Motion to Remand, subject matter jurisdiction exists under Chapter 2 of the FAA.

7

*Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991). When federal statutory claims are asserted, the Court must also consider whether Congress intended those claims to be arbitrable. *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 401 (S.D.N.Y. 2003) (WHP).

### A. TNZ Entered into an Agreement to Arbitrate All Claims Relating to the Protocol and Deed of Gift

TNZ has admitted that it submitted the Notice of Entry and agreed to be bound by the arbitration provision of the Protocol. *See* Pl.'s Mem. of Law in Supp. of its Mot. to Remand at 5-6, 11. TNZ must also concede that the arbitration provision in the Protocol is valid and enforceable regardless of whether the Protocol as a whole is ultimately determined to be valid in the GGYC litigation. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001).

As the Supreme Court has explained, an arbitration clause is legally separable from the remainder of the contract containing the arbitration clause on which an arbitration panel's jurisdiction is based. *See Prima Paint*, 388 U.S. at 403-04. Thus, where, as here, the parties clearly have agreed to empower the arbitrators to resolve any challenges to the existence of the contract as a whole, any challenge is appropriately adjudicated by an arbitrator rather than by a court.[8]

---

[8] TNZ also cannot dispute that the yacht club through which it races for the America's Cup, RNZYS, agreed to the following provision: "RNZYS further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury and the Arbitration Panel . . . and agree and undertake not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup." Ex. A at § 4. TNZ is similarly bound by this additional agreement. "A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999). Here, Plaintiff received a direct benefit from RNZYS's agreement. TNZ alleges that it "exists for the sole purpose of competing in the America's Cup" and that it is a "representative" of RNZYS. Contract Compl. ¶¶ 4, 6. Without the

Finally, TNZ has suggested that it has complaints about the arbitrators that have been selected to serve on the 33rd America's Cup Arbitration Panel. Any objection with respect to the arbitrators or arbitration panel should be resolved, in the first instance, within the arbitration process itself and thereafter, as appropriate, through a post-arbitration challenge to the enforceability of the arbitration decision. *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 174 (2d Cir. 1984) ("The Arbitration Act does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service."). Such concern simply has no bearing on the arbitrability of the dispute, which is the sole question before the Court at this stage.

### B. TNZ's Claims "Arise Out Of Or Relate To" Both The Protocol and Deed of Gift and Thus Fall Within Its Agreement to Arbitrate

TNZ agreed to arbitrate "any dispute, protest or claim ***arising out of or in relation to*** this Protocol and/or the Applicable Documents, the interpretation or breach thereof." Ex. B at § 21 (emphasis added). In the Second Circuit, it is well established that this language creates a "broad" arbitration clause, which is given a strong presumption of arbitrability. *See Alemac,* 2003 U.S. Dist. LEXIS 26764 at *4; *see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (finding no substantive difference between the phrases "relating to," "in connection with," or "arising from," and stating that such language did not limit the scope of arbitration to contractual violations). "[W]here the arbitration clause at issue is a broad one, it is presumptively applicable to disputes involving matters going beyond the interpretation or

---

sponsorship of RNZYS, TNZ would not be permitted to compete in the America's Cup as the Deed of Gift only permits yacht clubs to compete. Thus, Plaintiff may also be compelled to arbitrate under RNZYS's agreement.

enforcement of particular provisions of the contract which contains the arbitration clause." *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (internal quotation omitted).

### 1. The Contract Complaint "Arises Out Of Or Relates To" The Protocol and the Deed of Gift

Both of the claims in TNZ's Contract Complaint arise out of or relate to the Protocol or the Deed of Gift.

*First*, TNZ's breach of fiduciary duty claim alleges a direct breach of SNG's duty to "exercise the care required by the Deed of Gift." Contract Compl. ¶ 54. TNZ also alleges that SNG breached its duties under the Deed of Gift and engaged in self-dealing "by entering into the Protocol without engaging in the consensual process contemplated by mutual consent clause of the Deed of Gift" and "by structuring the Protocol to advantage themselves at the expense of the trust's beneficiaries." *Id.* TNZ further lists specific areas of the Protocol that were drafted in violation of SNG's duties under the Deed of Gift. *Id.* ¶¶ 22-31.

This court has held that a breach of fiduciary duty claim is arbitrable. In *Alemac Insurance Services,* this court addressed whether a breach of fiduciary duty claim fell within a broad arbitration clause contained in a partnership agreement. The alleged breach of fiduciary duty related to the defendant's failure to fulfill its duties under a separate business consulting contract that did not contain an arbitration clause. This Court held that the breach of fiduciary duty claim "arose directly from the parties' implementation and management of both [agreements]." 2003 U.S. Dist. LEXIS 26764, at *15. Here, Plaintiff's claim stems from Defendants' implementation of the Protocol, which it alleges was performed in violation of the Deed of Gift. Accordingly, TNZ's breach of fiduciary duty claim must be arbitrated.

*Second*, TNZ's breach of contract claim alleges that TNZ and SNG entered into an agreement whereby TNZ would submit a Notice of Entry, agreeing to be bound by the

10

Protocol, in exchange for SNG's agreement to hold the 33rd America's Cup in Valencia, Spain in 2009. Contract Compl. ¶ 39. By its own words, TNZ's breach of contract claim "arises out of or relates to" the Protocol. Specifically, TNZ alleges that it "refused to sign onto the Protocol unless the parties agreed in advance upon the location and date of the 33rd America's Cup." *Id*.[9]

The fact that TNZ alleges an agreement with SNG separate from the Protocol is irrelevant. Arbitration must be compelled even for "collateral" matters that "touch upon" arbitrable issues. *Louis Dreyfus Negoce S.A.*, 252 F.3d at 228. Certainly TNZ cannot in good faith dispute that its breach of contract claim "touches matters" related to the Protocol. *See also Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997) (when reviewing the scope of an arbitration agreement, the focus is on the factual allegations in the complaint rather than the legal causes of action asserted)

Because TNZ's claims are intertwined with the Protocol, the Court cannot say with "positive assurance" that the claims at issue are "not susceptible of an interpretation" that it "touches matters" within the arbitration agreement. *Alemac,* 2003 U.S. Dist. LEXIS 26764, at *8. Arbitration must therefore be compelled.

### 2.    The Antitrust Complaint "Arises Out Of Or Relates To" The Protocol

TNZ's antitrust claims can similarly be traced to the Protocol. TNZ alleges that the Protocol "unreasonably restrains trade and reduces competition by heavily favoring Defendants and unfairly disadvantaging their competition." Antitrust Compl. ¶ 6; *see also id*. ¶¶

---

[9]    In addition, disputes regarding the date and location of the America's Cup are expressly addressed in the Protocol. Section 13.1 of the Protocol governs the venue for the America's Cup. Ex. B at §13.1. It states that ACM will select and announce the venue for the Cup Regatta on or before December 31, 2007; if "it becomes impossible or difficult to hold the Regatta at the Venue, ACM may, on at least 90 days notice, select an alternative venue and/or dates for the Regatta consistent with the provisions of the Deed of Gift." *Id*. Section 13.2 similarly governs the dates for the America's Cup. *Id*. at § 13.2.

11

5-6, 28-29, 48, 56.  It further alleges that the Protocol "unfairly enhances Defendants' prospects of winning the next Cup, which means, among other things, that Defendants' rivals will have a dramatically decreased incentive to compete in the America's Cup."  *Id.*   In each of its four counts, TNZ alleges a breach of the Sherman Act based on SNG's promulgation of the Protocol.  *Id.* ¶¶ 56, 61, 68, 74.

In *JLM Industries*, the Court examined several decisions compelling arbitration of antitrust claims.  387 F.3d at 173-175.  In each of the cases, arbitration was appropriate where there was a "broad arbitration clause and the question of its applicability to a dispute rest[ed] on factual allegations which concern[ed] matters beyond the making of a particular contract between the parties and the performance of its terms."  *Id.*  Here, the Court does not have to go that far as there is a direct relationship between the Protocol and Plaintiff's antitrust allegations.  Accordingly, TNZ's federal antitrust claims should be referred to arbitration.

   C.  **TNZ's Statutory Claims Are Arbitrable**

It is well-established that claims brought under the Sherman Act are arbitrable.  *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 638-39 (1985); *JLM Indus.*, 387 F.3d at 179 ("international arbitration of antitrust disputes is appropriate.") (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 315 F.3d 829, 832 (7th Cir. 2003)).  The Supreme Court has held that "nothing in the nature of the federal antitrust laws prohibits parties from agreeing to arbitrate antitrust claims."  *Shearson /Am. Express v. McMahon*, 482 U.S. 220, 239 (1987) (citing *Mitsubishi*, 473 U.S. at 629).

In *Mitsubishi,* the Supreme Court explained that the parties should be bound by an agreement to arbitrate unless Congress itself has evinced an intention to preclude arbitration of the statutory rights at issue.  473 U.S. at 629.  The Court concluded that there is nothing

12

distinctly different about antitrust claims that warrants a departure from the strong federal policy favoring arbitration. *Id.* The Court should follow suit and compel arbitration of the claims asserted in the Antitrust Complaint. *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. at 409 (compelling arbitration of price-fixing claims).

      **D.**    **Both Cases Should Be Dismissed, Not Stayed, Because All Claims Brought Therein Are Arbitrable**

Under the FAA, a case involving claims subject to arbitration should ordinarily be stayed pending resolution of the arbitration. 9 U.S.C. § 3. However, "[w]here all of the issues raised in the complaint must be submitted to arbitration, the court may dismiss an action rather than stay proceedings." *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (citations omitted); *see also Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90 (2d Cir. 2002). This Court has held that where all of the claims are arbitrable, "no useful purpose will be served by granting a stay of . . . [the] claims, and the case may be dismissed." *Alemac*, 2003 U.S. Dist. LEXIS 26764, at *9 (citation omitted). Because all of TNZ's claims are subject to the arbitration provision of the Protocol, the cases should be dismissed.[10]

---

[10]    In the event the Court finds that some or all of TNZ's claims are not arbitrable, Defendants intend to file a motion to dismiss the claims on the grounds set forth in Defendants' pre-motion letters, dated May 9, 2008. As agreed at the June 20, 2008 pre-motion conference, substantive briefing on Defendants' motion to dismiss will be deferred until after the Court resolves Plaintiff's Motion for Remand and Defendants' Motion to Compel Arbitration. Ex. J.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court compel arbitration of the claims asserted in the Complaints and dismiss the Complaints.

Dated:   New York, New York
         July 3, 2008

                                          Respectfully submitted,
                                          SIMPSON THACHER & BARTLETT LLP

                                          By   s/ Barry R. Ostrager
                                                 Barry R. Ostrager
                                                 Jonathan K. Youngwood
                                                 George S. Wang
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000 (phone)
(212) 455-2502 (fax)
bostrager@stblaw.com (email)
jyoungwood@stblaw.com (email)
gwang@stblaw.com (email)

**Attorneys for Defendants Société Nautique de Genève, Team Alinghi, S.A., AC Management, S.A., and Ernesto Bertarelli**

14