UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
TEAM NEW ZEALAND LIMITED,                                       :
:
                    Plaintiff,    :   Case Nos. 08-Civ-2228, 08-Civ-4215
:
        v.                                                    :
:
SOCIÉTÉ NAUTIQUE DE GENÈVE, TEAM                                :
ALINGHI, S.A., AC MANAGEMENT, S.A.,                             :
and ERNESTO BERTARELLI,                                         :
:
                    Defendants    :
----------------------------------------------------------------x


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. iii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT.................................................................................................................................2

      I.      TNZ's Challenge To The Enforceability Of The Arbitration Agreement Within The Protocol Must Be Referred To And Resolved By The Arbitration Panel ..................................................................................................2

      II.     TNZ Is Unable To Establish Either Procedural Or Substantive Unconscionability .....................................................................................................4

           A.     The Protocol Was Not The Result Of Procedural Unconscionability .........5

           B.     The Protocol Is Fair and Is Not Substantively Unconscionable ..................7

      III.    TNZ's Claims Fall Within The Scope Of The Arbitration Agreement .................10

CONCLUSION.............................................................................................................................13

## TABLE OF AUTHORITIES

### Cases

*Altschul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158 (2d Cir. 1967) .................................................................................................. 11

*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002) ................................................................................................................... 9

*Brower v. Gateway 2000*, 246 A.D.2d 246, 676 N.Y.S.2d 569 (N.Y. App. Div. 1998) ................................................................................. 5, 7

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) .................................. 2

*Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324 (S.D.N.Y. 2003) ................................................................................................................. 10

*Dale v. Prudential-Bache Secs. Inc.*, 719 F. Supp. 1164 (E.D.N.Y. 1989) ................................................................................................................... 3

*Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002) .................................. 9

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003) ............................................ 11

*Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) ....................................... 11

*Gillman v. Chase Manhattan Bank*, 135 A.d.2d 488, 521 N.Y.S.2d 729  (N.Y. App. Div. 1987) ................................................................................ 5

*Golden Gate Yacht Club v. Société Nautique de Genève*, No. 602446/07, 2008 WL 2885725 (N.Y. App. Div. July 29, 2008) ................................................................................................................... 1

*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) ....................................... 8

*In re Currency Conversion Fee Antitrust Litig.*, No. 04 Civ. 5723 (WHP), 2005 WL 2364969 (S.D.N.Y. Sept. 27, 2005) ..................................... 3

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ......................... 3, 11

*Mehler v. Terminix Int'l. Co.,* 205 F.3d 44 (2d Cir. 2000) ............................................ 11

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ................................................................................................................. 12

*Pacs Indus., Inc. v. Cutler-Hammer, Inc.*, 103 F. Supp. 2d 570 (E.D.N.Y. 2000) .............................................................................................. 5

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645 (2d Cir. 2004) .................................................. 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ............................................................................................................................. 2

*Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 535 N.E.2d 643 (1989) ..................................................................................................................... 4, 10

*State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131 (N.Y. App. Div. 1983) ................................................................................................................... 5, 9

*Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005) ............................................................................................................................ 8

**Other Authorities**

RICHARD A. LORD, WILLISTON ON CONTRACTS (4th ed. 1998) ........................................................ 7

Defendants Société Nautique de Genève ("SNG"), Team Alinghi, S.A., AC Management, S.A., and Ernesto Bertarelli (collectively, "Defendants") respectfully submit this reply memorandum in further support of their Motion to Compel Arbitration and in reply to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration.

## PRELIMINARY STATEMENT

Plaintiff Team New Zealand Ltd. ("TNZ") has over the course of the short life of this case presented an ever-changing series of arguments to the Court in an effort to avoid its clear agreement to arbitrate the subjects of the two cases pending before this Court. Now, while ignoring the recent decision of the Appellate Division, First Department, TNZ chooses to present a newly concocted unconscionability argument that was nowhere mentioned in its May 16, 2008 pre-motion letter to the Court nor suggested at either the June 20, 2008 conference or the July 25, 2008 hearing. The argument is insupportable on its face and, in any event, under long-established federal law, is for the arbitral panel to decide. In addition, TNZ's renewal of its arguments that the contract and fiduciary duty claims are outside the scope of the arbitration agreement fail for the reasons stated in Defendants' Opposition to Plaintiff's Motion to Remand. The arbitration agreement is a broad one and became binding when TNZ signed on to the Protocol that was recently confirmed to be valid by the Appellate Division, First Department.[1]

---

[1] Nowhere in its brief does TNZ acknowledge that its allegations have now been rejected by the New York courts. Indeed, TNZ's 19-page opposition brief entirely ignores the recent decision of the New York Appellate Division, First Department in *Golden Gate Yacht Club v. Société Nautique de Genève*, No. 602446/07, 2008 WL 2885725 (N.Y. App. Div. July 29, 2008), which reversed the trial court's decision upon which TNZ heavily relies in its Complaints. The First Department rejected assertions substantively

**ARGUMENT**

I.   **TNZ'S CHALLENGE TO THE ENFORCEABILITY OF THE ARBITRATION AGREEMENT WITHIN THE PROTOCOL MUST BE REFERRED TO AND RESOLVED BY THE ARBITRATION PANEL**

In an effort to avoid the arbitration agreement into which it voluntarily entered, TNZ claims the agreement is unenforceable due to unconscionability. TNZ's unconscionability contention is irrelevant at this stage because, under controlling Supreme Court and Second Circuit case law, any challenge to the enforceability of the Protocol must be referred to and resolved in the first instance by the arbitration panel itself.

Just as TNZ disregards the Appellate Division's reversal of the trial court decision that it relies upon, TNZ ignores forty years of Supreme Court and Second Circuit precedent unequivocally establishing that challenges to the enforceability of a contract as a whole must be resolved through arbitration, not by courts. The Supreme Court established this principle in 1967, in the context of a claim of fraud in the inducement of the contract. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself . . . the federal court may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."). And just two years ago, the Court reaffirmed this principle and held that this requirement applies whether the contract is claimed to be voidable or void. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448-49 (2006) (holding that "a challenge to the validity

---

similar to those advanced by TNZ and declared that CNEV was a valid yacht club whose challenge for the America's Cup complied with the Deed of Gift.

of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator," whether the contract as a whole is alleged to be voidable or even alleged to be void).

In regard to claims of unconscionability in particular, the Second Circuit has expressly held: "Claims of unconscionability and adhesion contracts are similarly included within the *Prima Paint* rule." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 170 (2d Cir. 2004) (internal quotation marks and citation omitted).[2] In *JLM Industries* the Second Circuit was presented with an attempt to avoid arbitration on the ground that an arbitration agreement between traders and shippers of chemicals was an unenforceable contract of adhesion. The court began by expressing skepticism with regard to the claim, noting that "[t]ypical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis." *Id.* at 169 (quoting *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)). The court nonetheless refused to pursue the issue since it was "an issue for the arbitral panel to decide," given that the plaintiff's argument was an attack on the whole contract with the defendants. *Id.* at 170. *See also Dale v. Prudential-Bache Secs. Inc.*, 719 F. Supp. 1164, 1169 (E.D.N.Y. 1989) ("[A] claim of fraudulent inducement, duress or unconscionability involves the formation of the entire contract and must be determined by the arbitrator.").

Here, TNZ's claim of unconscionability is aimed at the agreement as a whole, rather than being limited to and targeted at the arbitration clause in particular. TNZ contends

---

[2] Indeed the Court, at the July 25, 2008 discovery hearing, distinguished its decision in *In re Currency Conversion Fee Antitrust Litigation*, No. 04 Civ. 5723 (WHP), 2005 WL 2364969 (S.D.N.Y. Sept. 27, 2005) on the ground that plaintiffs in that case, unlike TNZ, attacked specifically the arbitration agreement rather than the whole agreement. Hearing Tr. 13:20-14:4, July 25, 2008.

3

that the arbitration agreement is procedurally unconscionable because TNZ "exists solely for the purpose of racing in the America's Cup" and "[i]f TNZ had chosen not to participate in the 33rd America's Cup, it would have faced near certain economic collapse." Opp. at 8. This argument goes to the whole of the agreement, not just to the arbitration agreement. Similarly, TNZ's claim of substantive unconscionability is premised upon its contention that the Protocol (prior to its amendment) allowed SNG and the Challenger of Record, Club Nautico Español de Vela ("CNEV"), to jointly "from time to time amend [the] Protocol by the deletion of terms and/or the addition of new terms." Opp. at 10 (quoting Protocol ¶ 36.1). Once again, this contention attacks the fairness of the Protocol as a whole, not just the arbitration agreement.[3]

## II.   TNZ IS UNABLE TO ESTABLISH EITHER PROCEDURAL OR SUBSTANTIVE UNCONSCIONABILITY

Even if its contentions were properly addressed by this Court, TNZ is unable to satisfy the extremely high standard for establishing procedural and substantive unconscionability under New York law. As it expressly acknowledges in its brief, TNZ must prove both in order to render the contract unenforceable. Opp. at 7 ("Under New York law, 'A [sic] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made . . . .'" (quoting *Gillman v. Chase Manhattan Bank*, 73

---

[3]  TNZ's argument about lack of mutuality likewise is directed to the agreement as a whole. TNZ acknowledges as much in its opposition brief: "The contract as a whole lacks consideration . . . ." Opp. at 12. Indeed, as TNZ itself notes, its argument must go to the whole agreement, because New York law clearly provides that lack of mutuality cannot otherwise be a defense to a claim for performance of an arbitration agreement contained in a larger agreement. *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 137, 535 N.E.2d 643, 646 (1989) ("Mutuality of remedy is not required in arbitration contracts. If there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement."). Hence, this argument too must be referred to the arbitration panel for consideration.

N.Y.2d 1, 10, 534 N.E.2d 824, 828 (1989)).  The doctrine is "primarily a means with which to protect the commercially illiterate consumer beguiled into a grossly unfair bargain by a deceptive vendor or finance company."  *Gillman v. Chase Manhattan Bank*, 135 A.d.2d 488, 491, 521 N.Y.S.2d 729, 732 (N.Y. App. Div. 1987) (internal quotes and citations omitted), *aff'd,* 73 N.Y.2d 1, 534 N.E.2d 824 (1988).  Hence, "where businessmen contract in a commercial setting, a presumption of conscionability arises." *Pacs Indus., Inc. v. Cutler-Hammer, Inc.*, 103 F. Supp. 2d 570, 573 (E.D.N.Y. 2000).  The doctrine should not frustrate "a bargained-for exchange between the parties" or counteract the principle that "parties to a contract are basically free to make whatever agreement they wish"; rather

> the doctrine of unconscionability, with its emphasis on the contract-making process, is really an expression of, rather than an exception to, this principle.  *By focusing on the manner in which a contract is entered into and the status of the parties*, the doctrine is designed to insure freedom of contract and not to negate it.

*State v. Wolowitz*, 96 A.D.2d 47, 68, 468 N.Y.S.2d 131, 145 (N.Y. App. Div. 1983) (emphasis added; internal quotes and citations omitted).

### A. The Protocol Was Not The Result Of Procedural Unconscionability

Procedural unconscionability may be found where "one party lacked any meaningful choice in entering into the contract, taking into consideration such factors as the setting of the transaction, the experience and education of the party claiming unconscionability, whether the contract contained 'fine print,' whether the seller used 'high-pressured tactics' and any disparity in the parties' bargaining power."  *Brower v. Gateway 2000*, 246 A.D.2d 246, 253, 676 N.Y.S.2d 569, 573 (N.Y. App. Div. 1998).  TNZ's own Complaint establishes that there was no procedural unconscionability here.

5

In fact, TNZ alleges that it held a substantial bargaining advantage over Defendants in negotiating the terms under which it would submit its Notice of Entry:

> Defendants were particularly interested in securing TNZ's entry because of the history of rivalry and fierce competition between TNZ and Alinghi in recent years. . . . Alinghi understood that this rivalry enhanced the interest in the America's Cup. Furthermore, Defendants understood that if TNZ entered the race, other challenging teams would follow TNZ's lead.
>
> In addition, pursuant to ACM's agreement with the city of Valencia, Valencia would provide certain contract money only if Defendants could secure the entry of at least nine teams. TNZ's entry to the 33rd America's Cup was thus critical to Defendants.

Contract Compl. ¶¶ 36, 37.

Far from having no bargaining power, if TNZ's complaint is to be believed, it held all the cards. In TNZ's own words, "TNZ's entry to the 33rd America's Cup was thus critical to Defendants." *Id.* ¶ 37. Indeed, according to TNZ's pleadings TNZ drove a hard bargain in the course of its negotiations over the terms of its entry into the 33rd America's Cup:

> While TNZ was not willing to enter the 33rd America's Cup on the terms announced by SNG and CNEV in the Protocol . . . TNZ was willing to sign onto the Protocol on the condition, among others, that the next America's Cup would be held in Valencia in 2009.

Antitrust Compl. ¶ 46.

> TNZ refused to sign onto the Protocol unless the parties agreed in advance upon the location and date of the 33rd America's Cup. Defendants, eager for TNZ to enter the race, agreed, among other things, that the 33rd America's Cup would take place in Valencia, Spain, in 2009.

Contract Compl. ¶ 39.

As a former Cup holder that allegedly negotiated other provisions and extracted other concessions before submitting its Notice of Entry and signing on to the Protocol, TNZ, had

6

every opportunity to negotiate whatever other changes to the Protocol it wanted prior to signing onto it.  Instead, it chose to focus its negotiations on other terms and, according to its own contention, extracted certain additional promises from Defendants as part of the bargain.  TNZ was apparently happy with the arbitration clause and left that provision untouched.

The lack of any procedural unconscionability is alone sufficient to defeat TNZ's claim.

### B. The Protocol Is Fair and Is Not Substantively Unconscionable

TNZ's claim of substantive unconscionability is equally meritless.  Even apart from any consideration of the arbitration agreement's terms, the fact that TNZ chose to negotiate certain terms of the Protocol but elected not to request any changes to the arbitration provision is, in itself, strong evidence that the arbitration provision is not substantively unconscionable.

TNZ's claim of substantive unconscionability fails as a matter of law because it is based on the incorrect factual predicate that SNG can unilaterally dictate the terms of the arbitration.[4]  Rather, under the current Protocol, it is only the arbitrators who, with agreement of both SNG and CNEV, can replace the arbitrators or change the seat of the arbitration panel or the

---

[4] TNZ improperly relies upon an outdated version of the Protocol, which was amended on September 20, 2007.  Only the amended agreement is relevant to the unconscionability analysis.  *See Brower v. Gateway 2000,* 246 A.D.2d 246, 254-56, 676 N.Y.S.2d 569, 574-75 (N.Y. App. Div. 1998) (a party may, by altering an agreement, render an issue of unconscionability "moot").  The September 20, 2007 amendment to the Protocol, included in Exhibit B to Defendant's Notice of Removal, provides a comparison of the Protocol's pre-amended and amended language.  TNZ's citation to *Williston on Contracts* for the principle that the determination of whether a given clause or contract is unconscionable is to be made at the time of its making, 8 RICHARD A. LORD, WILLISTON ON CONTRACTS § 18:12 (4th ed. 1998), is inapplicable here, where there has been a subsequent change to the agreement itself.  Regardless, the original Protocol provided for a fair arbitration procedure.

choice of law governing the arbitral procedure or the arbitral procedure itself.  Am. Protocol ¶ 36.1.  Even prior to its amendment, it was only with agreement by both SNG and CNEV that amendments could be made.

Nor are the four cases cited by TNZ analogous to the instant case.  In *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), the Fourth Circuit held that defendant Hooters had breached its arbitration agreement with plaintiff Phillips by failing to set up a neutral arbitration forum as required by the agreement.  Rather, Hooters had instituted arbitral rules under which, for example, the short list of potential arbitrators for a given dispute would be drawn up solely by defendant Hooters *after* the dispute had been raised.  173 F.3d at 938-39.  Furthermore, the Court has already distinguished the *Hooters* case from the facts of this case.  July 25, 2008 Tr. at 13.

In *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005), the Sixth Circuit reviewed an arbitration agreement that was marked by numerous disturbing facts, including, for example, that the agreement was made between an employer and its employees whom the employer had pressured and misled and many of whom "have not completed high school and/or were in dire financial circumstances at the time . . . ."  400 F.3d at 374.  The Sixth Circuit held that, in exchange for their commitment to arbitrate any disputes, the employees were given nothing more than "illusory" promises under Tennessee law, since there was in fact no entity that incurred any substantive obligation in exchange for the employees' commitment.  *Id.* at 379-81.  These facts are a world apart from the facts of the 33rd America's Cup Protocol.

8

*Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002) is a Tenth Circuit case applying an "illusory promise" theory and in which, as in *Walker*, one party to the arbitration agreement could, acting alone, "change the arbitration provision at will." *Id.* at 1218.

Finally, *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002), the only one of the four cases that applies New York law – indeed, the only one that applies the doctrine of unconscionability – is a case in which the court's finding of *procedural* unconscionability clearly was the heavier consideration in the court's weighing of both procedural and substantive unconscionability to declare the arbitration agreement in that case unenforceable. *Cf. State v. Wolowitz*, 96 A.D.2d 47, 68, 468 N.Y.S.2d 131, 145 (N.Y. App. Div. 1983) ("[P]rocedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa."). For example, the plaintiff in *Brennan* was an employee who had been provided by her employer with only "several minutes" in which to decide whether to sign the arbitration agreement that she reasonably believed had to be signed in order for her to retain her job. *Id.* at 380. Moreover, the plaintiff in *Brennan* "did not understand the legal significance of the [arbitration] [a]greement" that she signed. *Id.* These facts are clearly distinguishable from the facts of TNZ's arbitration agreement.

Here, the arbitration agreement was not only freely negotiated but reasonable. TNZ points out that paragraph 35 of the Protocol secures to SNG the right to "mak[e] any [court] application it considers in its sole discretion appropriate regarding the administration of the Deed of Gift," Protocol ¶ 35. Such a reservation of rights certainly is reasonable where one party will be dealing with numerous others. *Cf. Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 139,

9

535 N.E.2d 643, 647 (1989) (rejecting unconscionability argument with respect to arbitration agreement requiring employees but not employer to arbitrate claims and explaining: "An employer, who may hire hundreds of employees, should be able to protect itself from the delays and costs of extensive litigation by including as a condition of employment an agreement by the employee to arbitrate claims rather than litigate them."). And as for TNZ's fanciful supposition that SNG might conspire with CNEV to "pack" the arbitration panel, the supposition, while creative, is irrelevant. If open questions remain as to whether the arbitration agreement will be applied in such a manner as to make the ultimate award subject to attack, these theoretical possibilities do not supply a ground for refusing enforcement of the agreement. *See Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003) ("Once [the court] determines that the parties have agreed to arbitrate, the validity and meaning of specific provisions within the Agreement to arbitrate is a matter for the arbitrator to decide.").

## III.   TNZ'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT

TNZ agreed to enter into a broadly worded arbitration agreement governing "[a]ny dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents, the interpretation or breach thereof." Protocol ¶ 21. TNZ does not dispute that its antitrust claims fall within this agreement. But TNZ takes an overly constricted view of arbitrability and insists that the claims asserted in the contract complaint somehow fall outside the scope of the agreement to arbitrate. Such contention however, cannot be squared with Second Circuit precedent making clear that where, as here, an arbitration clause encompasses claims "related to" an agreement, then arbitrable claims are not limited to the interpretation of the relevant documents (as TNZ suggests) but rather will broadly encompass all claims touching

10

upon the subject matter of the agreement. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 176 (2d Cir. 2004); *Mehler v. Terminix Int'l Co.,* 205 F.3d 44, 50 (2d Cir. 2000). TNZ does not cite a single case to refute this proposition.

As discussed further in Defendants' opposition to TNZ's motion to remand, where, as here, there is a broadly worded arbitration agreement, there is a presumption in favor of arbitration. Where an arbitration clause is broad, "[i]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." *JLM Indus.*, 387 F.3d at 172; *cf. Altschul Stern & Co. v. Mitsui Bussan Kaisha, Ltd*., 385 F.2d 158, 159 (2d Cir. 1967) ("Plaintiff cannot avoid the broad language of the arbitration clause by casting its complaint in tort."); *see also Fazio v. Lehman Bros., Inc*., 340 F.3d 386, 395 (6th Cir. 2003) (same). Indeed, this presumption is so strong that there must be "clear and unambiguous or unmistakably clear" language to exclude an issue from the scope of the arbitration agreement. *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir. 1987) (internal quotes and citations omitted).

Thus, "[d]oubts should be resolved in favor of coverage" by the arbitration clause, and arbitration must be compelled here unless the "presumption of arbitrability" is "overcome" by a "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc*., 369 F.3d 645, 653 (2d Cir. 2004) (internal quotes and citations omitted). It is difficult to imagine how the Protocol governing the 33rd America's Cup would not be susceptible to an interpretation that it covers a dispute regarding when and where the 33rd America's Cup will take place. For the reasons set forth in Defendants' opposition to TNZ's motion to remand,

11

TNZ is unable to meet its substantial burden of showing that there is no reasonable way its claims are susceptible to being considered to be covered under the arbitration agreement. Rather than repeating those arguments, Defendants incorporate by reference herein its opposition to TNZ's motion to remand.[5]  Finally allowing TNZ to avoid arbitrating this claim would flood courts with disputes involving the exact scope of arbitration proceedings, and would frustrate "the liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

---

[5]  As addressed in the Opposition to the Motion to Remand, the arbitration provision in the Protocol does not constitute an amendment to the Deed of Gift. Furthermore, TNZ's breach of fiduciary duty claim is premised upon the invalidity of CNEV's challenge, but the First Department has expressly held CNEV's challenge to be proper and valid.

12

## **CONCLUSION**

For the reasons stated above and in Defendants' opening memorandum, TNZ should be compelled to submit its claims to arbitration and the Complaints should be dismissed.

Dated:    New York, New York
          August 7, 2008

                              Respectfully submitted,
                              SIMPSON THACHER & BARTLETT LLP


                              By  s/ Barry R. Ostrager
                                  Barry R. Ostrager
                                  Jonathan K. Youngwood
                                  George S. Wang
                              425 Lexington Avenue
                              New York, New York 10017-3954
                              (212) 455-2000 (phone)
                              (212) 455-2502 (fax)
                              bostrager@stblaw.com (email)
                              jyoungwood@stblaw.com (email)
                              gwang@stblaw.com (email)

                              **Attorneys for Defendants Société Nautique de Genève, Team Alinghi, S.A., AC Management, S.A., and Ernesto Bertarelli**